UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

KALIN G. DIMITROV,                                        Civil action No.
Plaintiff                                                 1:23-cv-06451 JHR-SLC

-against-

THE UNITED STATES OF AMERICA, THE CITY OF NEW YORK,
TOWNSHIP OF TEANECK, MARLENE DULA, JOHN DOE (Ap.B2),
RAPHAEL PIMIENTA, AS WELL AS NUMBER OF JANE AND/OR
JOHN DOE (DECISION-MAKERS)
Defendants.
_____


# PLAINTIFF'S OBJECTIONS TO REPORT AND
# RECOMMENDATION OF MAGISTRATE JUDGE CAVE FROM
# AUGUST 14, 2023 (ORAL ARGUMENT REQUESTED)

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT...................................................................................................1

I. THE REPORT IS ERRONEOUS...........................................................................................1

II. THE REPORT'S LEGAL ARGUMENT.............................................................................12

   1. Frivolous claims..............................................................................................................12

   2. Irrational claims without a legal theory..........................................................................14

      2.1 Kraft v. City of New York, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order).........15

      2.2 Barton v. Harris, No. 19 Civ. 4924 (CM), 2019 WL 4038762, at *1–2 (S.D.N.Y. Aug. 27, 2019)..............................................................................................................................18

      2.3 Khalil v. United States, No. 17 Civ. 2652 (JFB) (SIL), 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018)...................................................................................................19

   3. Complaint is prolix..........................................................................................................19

III. PLAINTIFF'S COMPLAINT IS NOT FRIVOLOUS AND IRRATIONAL.........................20

   1. Plaintiff's 'legal theory'...................................................................................................20

   2. Plaintiff's claims are not frivolous as law.......................................................................23

      2.1 Plaintiff's Count 1 asserts 1st Amendment claims........................................................23

      2.2 Plaintiff's Count 2 asserts 4th Amendment claims........................................................24

      2.3 Plaintiff's Count 3 asserts Due process claims.............................................................24

      2.4 Plaintiff's Count 4 asserts Equal protection claims......................................................25

      2.5 Plaintiff's Count 5 asserts claims under 42 U.S.C. § 1981...........................................26

      2.6 Plaintiff's Count 6 asserts claims under 42 U.S.C. § 1983...........................................26

      2.7 Plaintiff's Count 7 asserts claims under 42 U.S.C. § 1985(2).......................................27

      2.8 Plaintiff's Count 8 asserts claims under 42 U.S.C. § 1986...........................................28

      2.9 Plaintiff's Count 9 asserts claims under the FTCA.......................................................28

      2.10 Plaintiff's Count 10 asserts claims for Assault...........................................................29

      2.11 Plaintiff's Count 11 asserts claims for Battery............................................................29

      2.12 Plaintiff's Count 12 asserts claims for Defamation.....................................................29

      2.13 Plaintiff's Count 13 asserts claims for Intentional infliction of emotional distress.....29

      2.14 Plaintiff's Count 14 asserts claims for Civil Conspiracy.............................................30

      2.15 Plaintiff's Count 15 asserts claims for Tortuous Interference......................................30

      2.16 Plaintiff's Count 16 asserts claims for Nuisance.........................................................31

      2.17 Plaintiff's Count 17 asserts claims for Trespass.........................................................31

   3. Plaintiff's claims are not irrational nor frivolous as facts................................................32

IV. PLAINTIFF'S COMPLAINT IS NOT PROLIX................................................................36

V. CONCLUSION....................................................................................................................37

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Barton v. Harris*
    No. 19 Civ. 4924 (CM), 2019 WL 4038762, at *1–2 (S.D.N.Y. Aug. 27, 2019) ........ 18, 32
*Benitez v. Wolff*
    907 F.2d 1293, 1295 (2d Cir.1990) (per curiam) ...................................................... 14
*Denton v. Hernandez*
    504 U.S. 25, 32–33 (1992) ................................................................................... 13, 14
*Fitzgerald v. First E. Seventh Tenants Corp*.
    221 F.3d 362, 363–64 (2d Cir. 2000) (per curiam) ..................................................... 12
*Khalil v. United States*
    No. 17 Civ. 2652 (JFB) (SIL) (E.D.N.Y. Jan. 12, 2018) ........................................ 19, 32
*Kraft v. City of New York*
    823 F. App'x 62, 64 (2d Cir. 2020) (summary order) .............................................. 15, 32
*Kraft v. City of New York et al*
    19-cv-10286 JMF, (Nov.5 2019, S.D.N.Y.) ..................................................... 15-17, 32
*Lamb v. Cuomo*
    698 F. App'x 1, 2 (2d Cir. 2017) (summary order) ................................................. 12-13
*Lamb et al v. Cuomo et al*
    16-CV-6568 (Dec.19, 2016 E.D.N.Y.), Dkt  No.9 ............................................. 13-14, 37
*Livingston v. Adirondack Beverage Co*.
    141 F.3d 434, 437 (2d Cir. 1998) ......................................................................... 13, 14
*Neitzke v. Williams*
    490 U.S. 319 (1989) .............................................................................. 13, 14, 23
*O'Neil v. Ponzi*
    394 F. App'x 795, 796 (2d Cir. 2010) ...................................................................... 20
*Salahuddin v. Cuomo*
    861 F.2d 40, 42 (2d Cir. 1988) (summary order) ............................................. 19-20, 37
*Shakur v. Selsky*
    391 F.3d 106, 113 (2d Cir. 2004) ...................................................................... 12-13, 23
*US Dominion Inc. et al v. Fox News Network, LLC*
    filed on March 26, 2021 with The Superior Court of the State of Delaware ................. 37
*Ward v. Lee*
    No. 9:16-CV-1224 (FJS/CFH) (N.D. New York. July 3, 2018) ................................... 9

## STATUTES

28 U.S.C. § 636(b)(1) ................................................................................................. 1
42 U.S.C. § 1981 ...................................................................................... 10, 25, 26
42 U.S.C. § 1983 ............................................................................................. 25, 26
42 U.S.C. § 1985 .......................................................................... 10, 23, 25, 26, 27, 28
42 U.S.C. § 1986 ..................................................................................................... 28

The FTCA .................................................................................................. 9, 10, 11, 22, 28
§ 1915(e)(2)(B)(I) ......................................................................................................... 14

## RULES

Fed. R. Civ. P.  Rule 8 ........................................................................................ 19, 36, 37
Fed. R. Civ. P. Rule 72(b)(2) ..................................................................................... 1
Local Rules of the US District Courts for the Southern and Eastern Districts of New York, Local
Civil Rule 11.1(b)(3) ........................................................................................... 15, 37

## Other Authorities

*Collective Social Identity: Synthesizing Identity Theory and Social Identity Theory Using Digital
Data*
    Davis, Love, and Fares, Social Psychology Quarterly 82(3), June 2019 ........................ 6
*Federal Civil Jury Instructions of the Seventh Circuit*
    (2017 rev.), 8.02 .................................................................................................. 23
*FY 2008 Authorization and Budget Request to Congress*
    FBI 2007 ............................................................................................................ 5
*Lawyer's Manual on Human Trafficking*
    Sup. Ct. of the State of New York, App. Div., First Dep., NYS Judicial Committee on
    Women in the Courts 2013 ...................................................................................... 5
*Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit*
    update Dec. 2022 ................................................................................................. 3
*Merriam-Webster Dictionary - online* ........................................................................... 6, 36
*New York Pattern Jury Instructions: Civil*, Vol. 2A, 3d ed. ................................................. 6
*Preparing for Deposition - A Case Theory Approach for Systematic Preparation*
    Jack McManus, National Association of Attorneys General, www.naag.org ............ 20, 21
*The Theory of the Case*
    James W. McElhaney (originally published in Fall 1979), 2019, American Bar Association,
    americanbar.org ................................................................................................. 20
*The Theory of the Case*
    James A. Johnson, Michigan Bar Journal, March 2021 ............................................. 21

# PRELIMINARY STATEMENT

I, Kalin Dimitrov, the plaintiff in this action and proceeding *pro se,* respectfully submit the

following objections to the Report and Recommendation issued by the Magistrate Judge Cave

('Report') on 8/14/2023 pursuant to 28 U.S.C. § 636(b)(1), and Rule 72(b)(2) of the Federal

Rules of Civil Procedure ('FRCP').

Your Honor, the Report is incorrect and wrongful. It misrepresents Plaintiff's claims

because Judge Cave did report on a relatively small portion of his Complaint (Dkt No.1,

'Comp.'), and what she included in her report from Plaintiff's arguments is quoted mostly

without its context, structure and logic. After that she deemed her own version of the claims as

irrational and frivolous, and recommended to dismiss the Complaint without option for

amending it.

Your Honor, Plaintiff will show bellow that the Complaint is neither frivolous nor

irrational both as law and as facts, nor the Complaint is prolix.

# I. THE REPORT IS ERRONEOUS

The Report in its II. FACTUAL BACKGROUND made many errors, misrepresented plaintiff's

claims (including by ignoring them), and from what was presented Judge Cave used the parts in

different order to create something supporting her claim that the Complaint is irrational and

frivolous, and that it lacks legal theory to rely on. While some of those errors may seem not that

important individually in total they create a different complaint.

Notable is that Report, II make errors in presenting even the very first (laws) and second

(damages and relief) paragraphs of the Complaint.

Plaintiff shows in the Table 1 bellow the errors, inaccuracies, misrepresentations in the Report in comparison to the Complaint, and the Relevant History file[1] to which Plaintiff referred often and now is attached as Exhibit 1 (for consistency with the Complaint referred as 'Rel.').

| TABLE 1 | | |
|---|---|---|
| # | Report, II | Plaintiff's objections |
| 1 | "… claims arising under state law, common law, and the constitutions of New York and New Jersey. (Id. ¶ 1)" | Plaintiff made no claim under the Constitution of New Jersey. See Comp., ¶ 1. |
| 2 | "Mr. Dimitrov's Complain [] contains 324 numbered paragraphs." p.2 | The Complaint has 326 numbered paragraphs. |
| 3 | "On September 1, 2011, Mr. Dimitrov moved from New York City to Teaneck, New Jersey, where the Federal Bureau of Investigation ("FBI") "had already been active . . . by making an arrest on the same street as [P]laintiff's apartment about 3 months" prior to his moving there." p.2 | To the extend Judge Cave views this as an example of frivolousness or irrationality: this is based on an article in patch.com: *Man Arrested in Red Road FBI Raid* by Noah Cohen, posted on May 10, 2011 which refers to a statement of Special Agent James Margolin, then a spokesman for the FBI's New York Field Office (Exhibit 2). Report omits that it was the FBI New York's case – see Comp., ¶ 22 and Ex.,2. |
| 4 | "Beginning in mid-August 2012, and continuing to the present, Defendants and their "agents" have "regularly" surveilled Mr. Dimitrov; tampered with his mail, email, and social media accounts; subjected him to death threats, assaults; and targeted him with "focused directed energy beams." (Id. ¶¶ 24, 35, 53, 58)." p.2 | This sentence is Judge Cave's 'report' on what are Plaintiff's claims in regards Defendants' conduct, because Report's next paragraph is about the 'many examples of this alleged conduct' Report, p.3.<br><br>It is not clear if Judge Cave intends to summarize with that Plaintiff's legal claims (if that then all legal claims presented in Comp., Counts 1-17 are ignored), or Plaintiff's factual theory – then it is misleading because it ignored many Defendants behaviors (the next sentence in the Report adds a few more), there is no representation about how all developed in time, no causation. There are many problems with that. A few of them are addressed bellow. |
| 4.1 | 'Beginning in mid-August 2012, and continuing to the present…' | This statement conflates the development of Defendants' conduct in time and is gross over-simplification. The order of events is closely related to Plaintiff's claims for retaliation. |

---

[1] It contains partially processed factual information from Plaintiff's evidences.

| 4.2 | '...Defendants and their "agents"...' | By putting in quotes 'agents' Report emphasize that it is Plaintiff who wrote about 'agents', most probably viewing that as another example of his irrationality or frivolousness. The agent-principal relation is well established legal concept. See for example *Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit*, update Dec. 2022, 4.4, which defines agent as "a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal. [One may be an agent without receiving compensation for services.] [The agency agreement may be oral or written.]" In many occasions in his complaint plaintiff uses 'agent' in that particular meaning – see an explicit example at Comp., ¶ 240 ('defendants and parties acting as their agents'). |
|---|---|---|
| 4.3 | '...Defendants and their "agents" have "regularly" surveilled Mr. Dimitrov...' | Judge Cave constructs statement(s) as if they are Plaintiff's. He has never used 'regular' or 'regularly' in regards the surveillance he is subjected. In the Complaint plaintiff used 'continuous surveillance' (Comp., ¶ 29), 'continuous and demonstrated surveillance' (Comp., ¶¶ 69, 70), 'constant surveillance' (Comp., ¶¶ 76, 96, 241), 'demonstrated surveillance' (Comp., ¶ 92) and similar. |
| 4.4 | '… tampered with his mail, email, and social media accounts;...' | There is no relevant to this statement information in the paragraphs Judge Cave refers to (¶¶ 24, 35, 53, 58). Probably she refers to Comp., ¶ 45 which reads 'Defendants have interfered with plaintiff's private communications including by deletion of his emails, messages on Viber and Facebook, tampering with his mail (see for example events on 11/20/2014, 2/29/2020-3/5/2020, 2/23/2022), and more.' That paragraph is part of a description of Defendants' conduct aiming to isolate plaintiff and deprive him from resources but Judge Cave ignored the rest of it as for example Id., ¶ 42 (interfered with plaintiff's contracts, employment, and economic prospect), Id., ¶ 43 (interference with social activities), Id., ¶ 46 (engaging the community and businesses through CVE and anti-gang programs). |
| 4.5 | '… subjected him to death threats, assaults, verbal harassment about his "perceived sexual orientation" and "Bulgarian enemies" ...' | This refers to Comp., ¶ 24: "Since about the middle of August 2012 Defendants have assaulted regularly plaintiff: threatening to 'kill' him, throwing 'pebbles' at plaintiff's windows; referring to plaintiff's perceived sexual orientation 'We kill all fagots'; talked about |

| | | |
|---|---|---|
| | | 'Bulgarian enemies'; and more." Paragraph 24 refers to events before Plaintiff's police report to Teaneck Police on 9/11/2012 and is not a summary of the Defendants' conduct as a whole. Despite referring also to Id., ¶ 35 the Report did not use or summarize it.

Apart from those few words the Report ignored entirely plaintiff's claims for discrimination and for being subjected to different treatment than other similarly situated persons. See Id., Counts 4-5. |
| 4.6 | '… and targeted him with "focused directed energy beams."' | Comp., ¶ 58 is the only paragraph containing the quoted words but is not about 'directed energy'. It gives examples for Defendants acting to obstruct Plaintiff from obtaining evidence for his petitions – to the extend that Report intends to summarize that paragraph it is complete disregard of its meaning. The most probable reading is that Judge Cave deemed Plaintiff's use of the words 'focused directed energy beams' enough to show his irrationality and frivolousness.

Plaintiff points that on 8/16/2023 Google search of 'directed energy beam' produced 49,700,000 results, of 'directed energy' – 508,000,000 results, and search in Google Scholar produced 4,850,000 results of academic articles and books about 'directed energy'. In light of that popularity of the term Plaintiff's use of 'directed energy' apparently does not show that he is irrational or frivolous (see his factual support bellow at Rows # 10-11). Significant part of Count 17 is about 'directed energy' but Judge Cave missed it as a whole. |
| 4.7 | '… ¶ 53...' | Judge Cave's reference to Comp., ¶ 53 is a mistake as it has no relevant information to Report's statement. |
| 5 | "Mr. Dimitrov believes that the "aim" of these efforts is to "disrupt" his life; "break [his] "identity" by "imposing homosexuality" on him; "radicalize" him by fabricating "testimonials" and other "evidence" against him; "isolate and deprive [him] of resources" by "cutting his financial, legal, and social support while subjecting him to social pressure"; and interfere with his | This is another mixture of Plaintiff's claims – the first half of the Report's sentence follow mostly Comp., ¶ 28 which summarizes the unifying goals of the Defendants' conduct after 2013 which Plaintiff concluded based on Defendants acts and statements: 'Since [2013] Defendants' acts and statements have shown (at certain times explicitly) that their aim is to disrupt plaintiff, 'break' him, radicalize him, to fabricate 'testimonials' and other 'evidence' against him, and to provoke incriminating response while preventing at the same time any legal challenges...' The second half of Report's sentence quotes in part Id., ¶ 42 even if not referring to it, and it is one point, one of the |

| | | |
|---|---|---|
| | "contracts, employment, and economic prospects by damaging his credibility, preventing contracts to be properly carried, and more." (Id. ¶¶ 28–37)." | radicalization factors between a few others which were ignored. Judge Cave however does not make the distinction between the overarching goals and Defendants' tactics.<br><br>That not only breaks Plaintiff's argument which after ¶ 28 is organized around the radicalization factors, but loses significant part of its meaning. In that way Judge Cave also ignores all but one of the topics Plaintiff emphasized in bold such as that defendants "aim to make plaintiff hostile toward the US… discriminate plaintiff… subjected plaintiff to psychological torture[2]… isolate and deprive of resources [] while subjecting him to social pressure… interfered with plaintiff's safety… always trigger… ", Comp.,¶¶ 28-50.<br><br>Furthermore, the next paragraph of the Report (p.3) shows that the Report's sentences discussed in Row ## 4-5 are meant to represent all Plaintiff's claims adding later "that Defendants interfered with his right to petition the government for redress" Report, p.4 . That is apparently wrong. Judge Cave completely ignored (there is no mention in the Report at all) of Plaintiff's claims in Counts 3, 4, 11, 12, 13, and 16, while others are mentioned with about 4 words (for example Plaintiff's 4th and 14th Am. claims are supposedly addressed (and rejected) by Report's statement that he is "regularly" surveilled – see Row # 4.3).<br><br>From the many problems with that Report statement a few are addressed bellow. |
| 5.1 | 'Mr. Dimitrov believes that the "aim" of these efforts is to "disrupt" his life;..' | The sentence starts and continue quoting single words from Plaintiff. In this case Judge Cave quoted 'aim' and 'disrupt', and to the extend this is because she believes that shows irrationality/frivolousness – to 'disrupt [somebody]' or to 'disrupt an operation' is language used both by the FBI and academy, and is one of the goals the FBI pursue in regards terrorists or criminals. See *FY 2008 Authorization and Budget Request to Congress*, FBI 2007 ('The mission of the FBI's CT program is to prevent, <u>disrupt</u>, and defeat terrorist |

---

[2] "The forms of psychological abuse, like physical abuse, are many, varied, and designed to keep victims off balance, frightened, and in constant, debilitating states of stress. … Traffickers aim to break victims' identities so that they will not only submit to all their demands but also to the demands of [others.]" *Lawyer's Manual on Human Trafficking*, Sup. Ct. of the State of New York, App. Div., First Dep., NYS Judicial Committee on Women in the Courts 2013

| | | operations before they occur'. (underlining added)) |
|---|---|---|
| 5.2 | '… "break [his] "identity" by "imposing homosexuality" on him;…' | Here instead of following Comp., ¶ 28 ('break[3] [plaintiff]') Judge Cave replaced that with partial quotes from Id., ¶ 37[4] with different meaning: 'breaking [his] identity' by "imposing homosexuality" on him;...' (Report) <br><br> Even if what is in the Report is viewed as resume of Plaintiff's claims about the identity attacks on him, it is partial and incomplete – that conduct is not limited to '"imposing homosexuality" on him', even if sexual orientation/gender indeed play significant part of a social identity[5]. Furthermore imputing homosexuality is defamation per se (see *New York Pattern Jury Instructions: Civil*, Vol. 2A, 3d ed., p.389 'imputing homosexuality to the plaintiff, has recently been added as an additional category of slander per se'), but Judge Cave ignored Comp., Count 12: Defamation. |
| 5.3 | '..."radicalize" him by fabricating "testimonials" and other "evidence" against him;...' | As in Row # 4.3 by mixing Plaintiff's words in quotes Judge Cave implies that he stated that – this time with significant harm to the meaning of his argument. Plaintiff has never stated that Defendants radicalize him 'by fabricating "testimonials" and other "evidence"' – that is wrong to the meaning of both – 'radicalization' and 'fabrication of evidence', and misrepresents his argument. <br><br> Comp.,¶ 28 reads: 'Since [2013] Defendants' acts and statements have shown (at certain times explicitly) that their aim is to [] radicalize him, to fabricate 'testimonials' and other 'evidence' against him, and to provoke incriminating response while preventing at the |

---

3  Merriam-Webster's relevant definition of 'break' is "6 a: to defeat utterly and end as an effective force: DESTROY ... b: to crush the spirit of (somebody)… c: to make tractable or submissive… d: to exhaust in health, strength, or capacity..."

4  Comp.,¶ 37'Breaking' plaintiff's identity by imposing homosexuality, creating situations in which there is an identity issue (Rel.,E.1.2.1), using variations of his name or nicknames ('Kalini', 'Kevin', 'Iron man'), destroying plaintiff's more-than-15-years-long career as an Art or Creative Director (Rel.,E.2.3 and 2.4), and more (see bellow ¶ 50);' And Id., ¶ 50 reads: 'According to Defendants' radicalization models an identity crisis is a significant factor in the radicalization process. To create identity crisis in plaintiff defendants have set his systematic isolation and alienation (see Rel.,E.3), continuous attacks on plaintiff's sex and ethnicity (using the whole range of obscenity in regards the perceived sexual orientation of plaintiff (gay) and opposite to the way he is and how he defines himself – straight male, including showing lustful thoughts and humiliation (rejection) of plaintiff (see above ¶ 38 about 'fagot', woman-like remarks)), attacks on his social image (publicly labeling him a criminal, terrorist, spy, 'police enemy', see Count 12), and more.'

5  "... identities are internalized meanings attached to the self as a unique person, an occupant of a role, and/or as a member of a group [.] While group identity refers to membership in a community of specific others (e.g., family, school, political organization), social identity refers to status categories that denote one's position within the broader social structure (e.g., race, gender, age)." *Collective Social Identity: Synthesizing Identity Theory and Social Identity Theory Using Digital Data*, Davis, Love, and Fares, Social Psychology Quarterly 82(3), June 2019

| | | same time any legal challenges…' Furthermore, in relation to his claims Plaintiff pointed to a few important factors for radicalization from the publicly known radicalization models (see Comp., footnote 3 ('push factors'), *Id*.,n.4 (grievance/hostility toward the US), *Id*.,n.8 (discrimination), *Id*.,n.9 (frustration), *Id*.,n.12 (trigger event), and *Id*.,n.14 (identity crisis/cognitive opening)) to show how well Defendants' conduct fits the models.<br><br>Regardless of the reason why Judge Cave fabricated the assertion in the Report a knowledgeable reader would think that Plaintiff is irrational and frivolous. |
|---|---|---|
| 5.4 | '"isolate and deprive [him] of resources" by "cutting his financial, legal, and social support while subjecting him to social pressure"; and interfere with his "contracts, employment, and economic prospects by damaging his credibility, preventing contracts to be properly carried, and more."' | This statement quotes Comp.,¶ 42, which is one of the factors Plaintiff talked about in ¶ 28 ('… Because of that instead of going on in chronological manner the factual narrative reviews the factors defendants have set for plaintiff.'). Why Judge Cave chose this one but ignored all others is not clear, but the result is a misrepresentation of Plaintiff's argument as a whole, which, as pointed above, shows how Defendants' conduct fits the radicalization models, how provocative it is, and how they try to evade a judicial challenge. |
| 6 | "The Complaint details many examples of this alleged conduct. For instance, on September 6, 2012, the FBI, the JTTF, and the Teaneck public schools jointly "rehearsed a police raid on [P]laintiff's apartment."" | This is an error in presenting Comp., ¶ 24 which reads: "Since about the middle of August 2012 Defendants have assaulted regularly plaintiff: threatening to 'kill' him, throwing 'pebbles' at plaintiff's windows; referring to plaintiff's perceived sexual orientation 'We kill all fagots'; talked about 'Bulgarian enemies'; and more. On 9/6/2012 Defendants rehearsed a police raid on plaintiff's apartment (see Rel., ¶ 15). Plaintiff found later that that activity was activity of the FBI, JTTF/NYPD, and Teaneck public schools (on 9/7/2012 Defendants talked about the 'agents', the need to include 'local powers', one stated that 'arrest' is not possible because it is a 'different state')."<br><br>Judge Cave wrongly interprets 'activity' in its 3rd sentence to mean only the 'rehearsed [] police raid' on September 6, 2012, and misrepresents the claim – it is due to the Defendants' conversation on 9/7/2012 that Plaintiff concluded that the activity since 'about the middle of August 2012' (*Id.*) is activity of the FBI and JTTF/NYPD. Teaneck Public Schools' participation was apparent at about 1PM on 9/6/2012. See Rel., ¶ 15 *et seq.* (Ex. 1). |

| 7 | "On September 11, 2012, the Teaneck police "denied any knowledge [of or] participation" in that incident, and Mr. Dimitrov filed "a report for organized harassment and threats." (Id. ¶ 25). In response, "the FBI and NYPD/JTTF started [a] full criminal and counterterrorism investigation against [P]laintiff which about 11 years later is still ongoing, and since then Defendants have interfered with every sphere of Plaintiff's life." (Id. ¶ 26). The "involvement of Teaneck police is evidenced by the fact that police concealed the acts [he] reported," issuing "only a short misleading report," and "refus[ing] to give [P]laintiff any information about the persons or agencies behind the reported activities." (Id.)" | Judge Cave omitted significant part of the argument in regards Teaneck police' involvement in ¶ 26 (she wrongly attributed part of ¶ 25 to ¶ 26 too). Additionally to what she quoted "a [Teaneck] police officer only told plaintiff he is 'knocking on a wrong door' in 2013[], [Teaneck police] did not investigate plaintiff's report, nor they investigated any other reports and verbal petitions plaintiff have made with Teaneck police since then. Moreover – uniform Teaneck police officers have started to participate overtly in the activities against plaintiff since 2013." *Id*.. (A prominent recent example of Teaneck police participation are the events on 1/20/2023, about two months after Plaintiff's Notice of claims – see Rel., ¶ 81 *et seq*. (Ex. 1), and Comp., ¶¶ 34, 55, and 111). Judge Cave's omission makes the argument about Teaneck police' involvement very weak in comparison to Plaintiff's full argument.

Furthermore it is a fact that Plaintiff filed a police report with Teaneck police on 9/11/2012 and a few more in the following years (Comp., ¶ 64), police did not investigated any of them. Plaintiff requested from Teaneck Police Records materials related to his reports, and based on the response he made the statement about the concealment of information in Teaneck police records.
In regards the FBI and JTTF/NYPD investigation, Plaintiff defined the meaning of 'investigation' in Comp., n.6, and briefly mentioned Defendants' demonstrative surveillance, the overt participation of officers, agents and officials, who showed they consider him 'Bulgarian criminal/terrorist/spy/fagot who 'hits police'' (Comp., ¶ 29 ). Plaintiff's more detailed argument is in Rel., C (Ex.1). Defendants have made explicit statements in regards Plaintiff being under investigation. For example on 3/4/2020 uniform Teaneck police officers and an FBI agent talked under Plaintiff's windows about the FBI 'fighting Bulgarian', "Get Kalin heard that.".. "Investigating threat". (see Rel., ¶ 27 (listing more examples of explicit statements) and ¶ 55 (about that exchange)).

Apart from that Judge Cave stated wrongly the reason why Plaintiff went to police on 9/7/2012 - not about that 'incident' but for the conduct since the middle of August 2012. |

| 8 | "The following is a representative paragraph from the Complaint:..." | Here Judge Cave abandons any pretense and shows that the quotes she selected are for the only purpose to demonstrate how irrational and frivolous are Plaintiff's claims. Without any context she chose as illustrative Comp., ¶ 316 which would be reviewed bellow. |
|---|---|---|
| 9 | '"The Defendants' deliberate invasion of [P]laintiff's apartment with directed energy (apart from [D]efendants['] intentional disregard to [P]laintiff's complaints) can be seen in EF used as punishment in response to [P]laintiff's actions. ...' | In regards 'directed energy' Count 17 – Trespass gives resume of the argument about Defendants' use of directed energy (see more detailed version in Rel., D), and for Plaintiff's complaints and Defendants' knowledge see Comp., ¶¶ 318 and 315. Quoting paragraph 316 without context apparently does not give the whole argument.<br><br>As for the 'punishment', because Judge Cave did not address most of Plaintiff's retaliation claims here is a brief summary of Defendants' explicit statements in that regard in the Complaint: the previous paragraph (¶ 315) quotes Defendants' man talking about "punish[ing]" Plaintiff, ¶ 33 provides Defendants' statements from the same time period as ¶ 316 (Nov.-Dec. 2022): "on 11/23/2022 after plaintiff filed his Notice of claims (11/10-11/14/2022) [Defendants] stated that they need 'to shush it' and 'punish' plaintiff; on 11/24/2022 ("Have to punish." (10:15PM)); on 12/3/2022 ("What's going on?" "I don't know." "They are gonna punish him" (1:50AM)); on 12/18/2022 ("Make Kalin to stop."); or on 1/20/2023 (Teaneck police officer: "Stop. Really suppress Kalin []." Dula (NYPD/JTTF): "Hush, then forget." Loomer (Teaneck police): "Get him [to] stop.")." Examples of Defendants statements in regards punishing Plaintiff can be found also in Comp., ¶¶ 55, 79, 164, 171, 212, and 300. |
| 10 | '… For example after delivery of Plaintiff's Notice to the FBI under FTCA was acknowledged (11/14/2022) the charge on the floor behind his desk doubled to up to 60 V/m for a few days. ...' | This is a factual statement inferring retaliatory animus by the temporal proximity with the Notice of claims' acknowledgment, and by the Defendants' statements quoted in Row # 9 above (both are usual methods for showing causal connection)[6]. However Plaintiff's statement is not the full representation of relevant events – on 11/14/2022 all 3 Notice of claims he had filed were acknowledged. |

---

6   See for example *Ward v. Lee*, No. 9:16-CV-1224 (FJS/CFH) (N.D. New York. July 3, 2018) "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, [], and statements by defendants as to their motives." (quoting Barclay v. New York, 477 F.Supp.2d 546, 558 (N.D.N.Y. 2007))

| | | In relation to the factual part – as evidence of the truth of his statement Plaintiff attaches as Exhibit 3 graphics showing his handheld GQ Multi-Field Meter's scanning results, and frames from Plaintiff's security video records showing him scanning his floor at the relevant time frame. |
|---|---|---|
| 11 | '… In response to [P]laintiff writing the previous paragraphs and sentences (6/13/2023) the charge of his bed in the night increased to 76 V/m (on 6/12/2023 bed was charged 65–66 V/m) and the EF from B2 at 2 m above [P]laintiff's floor increase[d] about 10 times—to 51 V/m (from 5-9 V/m on 6/12/2023). In the morning of 6/14/2023 [P]laintiff was awakened by focused pressure and electric shocks at lower back (later he detected about 550 V/m there), and pressure at head.' | This also is factual statement similar to the previous one, and the argument about retaliatory animus is the same.<br><br>As evidence of the truth of these statements Plaintiff attaches 3 exhibits with graphics from his handheld GQ Multi-Field Meter, and frames from security videos showing Plaintiff scanning at the time and place he stated. See:<br>Exhibit 4 – 6/12/2023-6/14/2023 (Bed),<br>Exhibit 5 – 6/12/2023-6/14/2023 (Ap.B2), and<br>Exhibit 6 – 6/14/2023 (Back). |
| 12 | '… At 9:08AM there were two pebble-at-window kind of knocks. Defendants' man suggested under [P]laintiff's windows to 'sue neighbors' (9:43AM), and defendants' woman commented that he 'survived direct attack' (at about 10:50AM). See more examples at Rel., D."' | This is a factual statement, and as demonstrated in Rows ## 10-11 above Plaintiff has evidence to support such claims.<br><br>This ends the paragraph 316, and from the above it should be clear that the claims Plaintiff made are neither irrational nor frivolous. |
| 13 | "Mr. Dimitrov further alleges that Defendants interfered with his right to petition the government for redress. (ECF No. 1 ¶ 321). First, Defendants allegedly interfered with Mr. Dimitrov's ability to litigate an employment discrimination action that he previously filed in this court. (Id.) Second, Defendants allegedly interfered with Mr. Dimitrov's efforts to exhaust his FTCA claim:..." (footnote omitted) | This is another example of mixing Plaintiff's words, this time in much larger scale – mixing paragraphs and Counts. Despite talking about Plaintiff's First Amendment, 42 U.S.C. § 1981, and § 1985(2) claims (Counts 1, 5, and 7) Judge Cave refers to and makes conclusions on Id., ¶ 321 which is in Count 17 (it gives examples for Defendants' trespass on Plaintiff's chattels), and for her second conclusion refers to and quotes large part of ¶ 257 which is in Count 14 – Civil conspiracy. Judge Cave completely ignored Plaintiff's argument for Defendants' interference with his right to petition the government, as well as his argument for trespass and civil conspiracy. The result is a misrepresentation of his claims. |

| | | Plaintiff addresses the question about his legal claims in III.2 bellow. |
|---|---|---|
| 14 | 'Defendants' contact with each other and actions in coordination to 'stop' and 'suppress' [P]laintiff was demonstrated for example on 11/10/2022 when [P]laintiff finalized his Administrative claims under the FTCA during the night (in the morning [D]efendants' agents near and inside his building commented that he 'Don't sleep.' 'He didn't stop', and that they should 'suppress' him. Dula (NYPD/JTTF officer) in ap.B2 responded: 'Let him go to depress.') and went to the FBI New York Field Office building at 26 Federal Plaza, New York, NY 10278-0004 with intention to file the claims in person. Demonstrating that he is under surveillance FBI agents and uniform officers (FBI officers, Sheriff's deputies or DHS) next to and inside the building waited for [P]laintiff, commented him ('Delay Kalin.' 'Depress.'), actively interfered and successfully prevented [P]laintiff from filing in person his Administrative claims. ' | The statements Judge Cave quotes are factual and in large part a description of events – they are neither irrational, nor frivolous.<br><br>Comp., ¶ 257, as part of Plaintiff's civil conspiracy claim, focuses on the connection, relation, and coordination between the parties. Judge Cave did not quote the paragraph in full however – it continues: "Those agents and officers [next to and inside the FBI New York Field Office building] had prepared a few statements in Bulgarian and talked among other things in plaintiff's presence about '*cmpax*' ['fear' in Bulgarian]. A few days later, on 11/21/2022 Dula in ap.B2 stated that plaintiff "Really gets *cmpax* ['fear' in Bulgarian] (of what we have)."; on 12/18/2022 Dula talked again about '*cmpax*' in regards plaintiff: "I'll get him *cmpax*." See more at Rel., ¶ 5980 *et seq.*. When on 12/21/2022, 10:44PM plaintiff started working on his records from 11/10/2022 defendants in ap.A3 knocked strongly on his wall, and targeted plaintiff's eyes with a focused beam of directed energy (plaintiff detected 500 V/m at his right eye)."<br><br>Plaintiff addresses the question about his legal claims, including his Civil conspiracy claims, in III.2 bellow. And what happened in Plaintiff's visit to the FBI New York on 11/10/2022 is described in details at Rel., G, page 412-13 (Ex. 1). |
| 15 | 'Mr. Dimitrov seeks money damages and declaratory and injunctive relief. (ECF No. 1 ¶ 2).' | Plaintiff does not seek declaratory and injunctive relief, but "compensatory damages, punitive damages, costs and all other and further relief as this Court deems just and proper". Comp., ¶ 2 |
| | [This concludes the Report's II. Factual background.] | |

Judge Cave did not provide rational explanation why she ignored almost all of the Plaintiff's legal claims and about 2/3 of his factual claims. Judge Cave did not give rational explanation why she considers the factual statements to be frivolous or irrational knowing that

Plaintiff has records as evidence in support to his claims: for example in Comp., ¶ 257 (more than a half from which Judge Cave quoted in the Report (see the table above Row #14)) Plaintiff stated he has records from 11/10/2022 when he visited the FBI New York Field Office building ("...plaintiff started working on his records from 11/10/2022 ..." *Id*.).

## II. THE REPORT'S LEGAL ARGUMENT

To establish court's authority to dismiss Plaintiff's claim even where a plaintiff has paid the filing fees Report quotes *Fitzgerald v. First E. Seventh Tenants Corp*., 221 F.3d 362, 363–64 (2d Cir. 2000) (per curiam) (citing Pillay v. INS, 45 F.3d 14, 16–17 (2d Cir. 1995) (per curiam)).

The *Fitzgerald* case is very different than this action. The appeal is for Fitzgerald's third action filed with S.D.N.Y. for the same claims. The first two (*Fitzgerald v. Abrams*, No. 93 Civ. 8229 (S.D.N.Y. Jan. 13, 1994), *Fitzgerald v. First East Seventh St. Tenants Corp*., No. 96 CIV. 0126 (S.D.N.Y. Mar. 15, 1996) were dismissed but Fitzgerald was given *leave to replead* within 21 days in each of them, and in both cases he didn't do so (*Id*.) Furthermore *Fitzgerald* court referred to *Pillay v. INS*, 45 F.3d 14 (2d Cir. 1995) (per curiam) which pointed "the need to exercise this authority [to dismiss a claim as frivolous] with care and discrimination to ensure that nonfrivolous claims are *fully considered* and fairly decided." *Id*.. (emphasize added). The Report didn't do that.

## 1. Frivolous claims

In regards to 'frivolous' the Report refers to three 2d Cir. cases: *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004); *Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir. 2017) (summary order), and

*Livingston v. Adirondack Beverage Co*., 141 F.3d 434, 437 (2d Cir. 1998). To define 'frivolous' these cases rely on *Neitzke v. Williams*, 490 U.S. 319 (1989) ("a complaint [] is frivolous where it lacks an arguable basis either in law or in fact"), and Denton v. Hernandez, 504 U.S. 25, 32–33 (1992) ("As we stated in Neitzke, a court may dismiss a claim as factually frivolous only if the facts alleged are "clearly baseless," 490 U. S., at 327, a category encompassing allegations that are "fanciful," id., at 325, "fantastic," id., at 328, and "delusional," ibid. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible...").

Notable is that the court in *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) "examined" Shakur's four claims – 2 under the 1st Amendment, Due Process, and Equal protection, and addressed each of them before reaching its conclusion. In comparison – the Report didn't even mentioned Plaintiff's claims, but for Defendants' interference with his "right to petition the government for redress." Report, p.4  representing it partially and because of that is misleading.

The second 2d Cir. case – *Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir. 2017) (summary order) – is an illustration for 'irrational and the wholly incredible' (quoting Denton v. Hernandez, 504 U.S. 25, 32–33 (1992)). Lamb filed "at least six previous pro se complaints" with E.D.N.Y. before the one appealed in 2d Cir.. (*Lamb et al v. Cuomo et al*, 16-CV-6568 (Dec.19, 2016 E.D.N.Y.), Dkt  No.9). The last complaint had "486 pages with additional 80 pages of exhibits." Id., but its length was not considered as reason for the dismissal. To the extend Plaintiff's complaint is compared by implication to Lamb's complaint here are a few of Judge Seybert's quotes from it:

"Plaintiffs believe that they have been "covertly surgically altered by installation of implanted devices . . . into Plaintiffs' bodies causing egregious effects of punishment upon plaintiffs." (Compl. at 3.) Plaintiffs allege that they have evidence "that prove there are devices inside plaintiffs' bodies, there are scars on plaintiffs from covert surgery, electrical energy tests and other facts prove plaintiffs have been implanted with devices . . . . (Compl. At 3.) … Plaintiffs'

lengthy, rambling allegations are disjointed, and nonsensical. The gravamen of Plaintiffs' claims is that New York State laws authorize these secret, unauthorized unconstitutional. "experimental" procedures and are thus (Compl. at 2-3, 12, 19, 21, 41, 88-89 and passim.)" *Lamb et al v. Cuomo et al*, 16-CV-6568 (Dec.19, 2016 E.D.N.Y.), Dkt No.9.

The third case is *Livingston v. Adirondack Beverage Co*., 141 F.3d 434, 437 (2d Cir. 1998)

in which the court found that the dismissal is improper, and stated that:

"A claim is frivolous not when a court doubts its validity, but rather when it lacks an arguable basis in law-for example, when a plaintiff claims an infringement of *a legal interest that does not exist*. … when an in forma pauperis plaintiff raises a cognizable claim, his complaint may not be dismissed sua sponte for frivolousness under § 1915(e)(2)(B)(I) even if the complaint fails to "flesh out all of the requisite details."" (internal quotations omitted, emphasize added)

## 2. Irrational claims, without a legal theory

The Report returns to the question about 'frivolous' and 'irrational' in Report, III.B. this time

directly asserting that Plaintiff's claims "rise to the level of the irrational, and there is no legal

theory on which he can rely. See Denton, 504 U.S. at 33." *Id*.. The only time *Denton* court wrote

about 'legal theory' is this:

"...we observed that the in forma pauperis statute, unlike Rule 12(b)(6), "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id., at 327. "Examples of the latter class," we said, "are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." Id., at 328." (quoting *Neitzke v. Williams*, 490 U.S. 319 (1989))

*Livingston v. Adirondack Beverage Co*., 141 F.3d 434, 437 (2d Cir. 1998) clarifies that:

"A claim is based on an "indisputably meritless legal theory" when either the claim lacks an arguable basis in law, Benitez v. Wolff, 907 F.2d 1293, 1295 (2d Cir.1990) (per curiam), or a dispositive defense clearly exists on the face of the complaint. See Pino v. Ryan, 49 F.3d 51, 53 (2d Cir.1995)"

Judge Cave does not claim that Plaintiff's legal theory is 'indisputably meritless' however,

but that he has 'no legal theory on which he can rely' Report,III.B, and *Denton* court has nothing

to do with such assertion. Plaintiff's objections to Judge Cave's statement in regards his legal theory are bellow in III.2.

Judge Cave brings three more cases in support that Plaintiff's claims are irrational and frivolous which will be discussed bellow.

### 2.1 Kraft v. City of New York, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order)

Judge Cave used a quote from *Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order) to categorize Plaintiff's claims, and gave in her Report space for that summary order which is about a half of the space she gave to her description of Plaintiff's claims (Report, p.2, 2d paragraph). As Judge Cave imply great similarity to Plaintiff's case Plaintiff provides for comparison the complaint in *Kraft v. City of New York et al*, 19-cv-10286 JMF, (Nov.5 2019, S.D.N.Y.) ('Kraft') as Exhibit 8, and a brief comment.

Kraft's complaint is 84 pages long single-line spaced text (about 150 pages if formatted in accordance to Local Civil Rule 11.1(b)(3)) without the exhibits. The range of Defendants in Kraft is enormous: the USA, NSA, CIA, DHS, DOJ, "other agencies of the federal government", the City of New York, State of New York, and hundreds or even thousands of individuals as:

"JOHN DOES, police officers and non—uniformed and under-cover police officers of the New York City Police Department, the identity and number whom is presently unknown; individually and in their official capacity as New York City Police Officers, RICHARD ROES, supervisory police officers of the City of New York, the identity and number of whom is presently unknown; … unknown federal law enforcement officers or agents or employees, and unknown officials employees of the Federal Bureau of Investigation ("FBI")… real persons whose names and identity are presently unknown;… William Woes, unknown New York State law enforcement officers or agents or employees, employed by the State of New York and staffed at and/or for, and/or employed at and/or by the New York State Intelligence Center, the identity of whom is presently unknown; individually and in their official capacity, Zeke Zoes, unknown officials and officer policy makers and supervisory employees, including the director, employees of the New York State Intelligence Center ("NYSIC Fusion Center") and New York State Police, who are employees of the State of New York, real persons whose names and identity are presently unknown; individually and in their official capacity, Tom Toes unknown New York State law enforcement officers or agents or employees, employed by the State of New York and staffed at and/or for, and/or employed at and/or by the New York State Homeland Security and Emergency

Services, the identity of whom is presently unknown; and Victor Voes, unknown officials and
officer policy makers and supervisory employees, including the Director, employees of The New
York State Homeland Security and Emergemncy Services and New York State State Police, who
are employees of the State of New York, real persons whose names and identity are presently
unknown, Defendants."

Kraft claims are repetitive and not organized. For example statements about the incident

on 8/7/2018 are scattered at ¶¶ 39-41, 49, 74-82, 100-101, and more; statements about the man

who assaulted him on 8/7/2018 (who he repeatedly claims is a confidential informant) and about

his behavior are at ¶¶ 50-67, 69-70, 74-82, 162, 210, and 212.

As an illustration of the repetitions in Kraft in general see these examples:

"104. The August 7, 2018 incident described herein occurred in furtherance of
Defendants' law enforcement officers' improper, illegal, outsized, pervasive, and excessive
misconduct and abuse, and excessive force, targeted and used against Plaintiff pursuant to fusion
center surveillance and investigation.
105. The August 7, 2018 incident described herein occurred in furtherance of Defendants'
law enforcements' improper, illegal, outsized, pervasive and excessive misconduct, harassment,
and abuse,and excessive use of force, targeted and used against Plaintiff pursuant to fusion center
surveillance and investigation, which has violated and deprived him of his U.S. Constitutional
rights, including his protections under the Fourth Amendment and First Amendment, as further
set forth in this Second Amended Complaint.
106. The August 7, 2018 incident described herein occurred in furtherance of a
multijurisdictional surveillance and investigation by Defendants' law enforcement through the
use of officers' improper, illegal, outsized, pervasive, and excessive misconduct and abuse,and
excessive force, targeted and used against him pursuant to fusion center surveillance and
investigation that reflects a single command authority, Defendant Unknown federal law
enforcement official, due to the uniformity of its mode of operation, programmatic and real time
harassment and abuse towards Plaintiff. …
179. The August 7, 2018 incident occurred in furtherance of Defendants actions since
2014 up through the date of the filing of this action Defendants Unknown Federal Law
Enforcement Officers, through their, use, control and direction of the CPS, and/or as undercover
federal law enforcement officers, acting under color of law, engaged in long term warrantless and
abusive surveillance and long term regular and pervasive use of overt harassment tactics,
including repeated threats and use of violence, directed to Plaintiff Kraft, causing him severe
psychological injury, whereby Defendants Unknown Federal Law Enforcement Off1cer's
conduct was not objectively reasonable under the circumstances in deprivation of Plaintiff
Kraft's Fourth Amendment rights. Defendants Unknown Federal Law Enforcement officers are
individually liable under Plaintiff's Bivens Claims, which is a constitutional tort.
180.The August 7, 2018 incident occurred in furtherance of Defendants actions since 2014
Defendants Unknown Federal Law Enforcement Off1cer's long term abusive and warrantless
surveillance and long term regular and pervasive use of overt harassment tactics, including
repeated threats and use of violence, directed to Plaintiff Kraft, causing him severe psychological

injury, whereby Defendants Unknown Federal Law Enforcement Off1cer's conduct was not objectively reasonable under the circumstances and deprived Plaintiff of his Fourth Amendment rights, including his right to be free 'om the unjustified intrusions of his personal security by the police, as well as his reasonable expectation of privacy in the whole of his movements, and to be free from unreasonable excessive use and display of force and manpower, causing him severe psychological harm. Defendants Unknown Federal Law Enforcement officers are individually liable under Plaintiffs Bivens Claims, which is a constitutional tort.

181.The August 7, 2018 incident occurred in furtherance of Defendants actions since 2014 up through the date of the filing of this action the Defendants Unknown Federal Law Enforcement Officers who, through their use, control and direction of CPS, and/or as undercover police officers, acting under color of law, engaged in warrantless surveillance and regular and pervasive use of overt harassment tactics, including multiple and repeated threats and use of violence, against Plaintiff Kraft, causing him severe psychological injury, which conduct was not objectively reasonable under the circumstances, and was for and in retaliation of Plaintiff Kraft exercising his First Amendment rights, including begging for money, depriving him of his constitutional protection under the First Amendment."

Mr Kraft's 'logic' is illustrated in ¶¶ 83-89 where he describes the events by which he concluded that NYPD officer Bautista's 'actions and statements' are part of the conspiracy to cover up the incident on 8/7/2018: his conclusion was based only on officer's comment that he do not believe Mr. Kraft's claim that the man who assaulted him is a confidential informant.

The 'logical' reasoning for Kraft's claim that he is targeted by almost all federal agencies, and more is that no other entity would do it, and from that point he concluded that it must be the whole complex of federal and state agencies which work jointly in fusion centers:

"The conduct, scope, intensity, and pervasiveness of 24 hours a day surveillance in combination of the outsized and excessive use of manpower and repeated threats of violence against Mr. Kraft, in the macro is too active to be controlled, operated, and directed by private enterprise whose goals are achieving financial gain. These operations require extensive financing with no return on investment. This programs operations could only be financed through state and governmental financing and support, such as the nationwide network of fusion center surveillance and investigation." Id., ¶102

The points above should be enough to make abundantly clear how different is Plaintiff's complaint and his case from those of Mr. Kraft. For more see Kraft's complaint (Exhibit 8).

**2.2 Barton v. Harris, No. 19 Civ. 4924 (CM), 2019 WL 4038762, at \*1–2 (S.D.N.Y. Aug. 27, 2019)**

The next legal case the Report refers to is *Barton v. Harris*, No. 19 Civ. 4924 (CM), 2019 WL 4038762, at \*1–2 (S.D.N.Y. Aug. 27, 2019). Barton's complaint is handwritten (see Exhibit 7), has hundreds of defendants, and requests 3 trillion dollars compensation. Barton had had more than 20 complaints with the court before this case. Despite that Judge McMahon went through the complaint and reported its content as follows:

"Plaintiff first makes assertions about his illegal prosecution by the New York County District Attorney's Office in 1995, his "false mockery of justice trial," and the Legal Aid Society's failure to represent his interest on appeal. (ECF No. 2, p. 5.) Plaintiff alleges a conspiracy between the government, his former girlfriends, and various members of his family to deny him due process and keep him incarcerated. He refers to being doused with gasoline and set on re in 1995, which was to deter him from exposing "the illegality of [his] conviction," and attributes these actions to the prosecutors and judge in his criminal case. (ECF No. 2, p. 24, 32). Plaintiff asserts that as a result of these events, he lost his life and liberty, he was denied the pursuit of happiness and the ability "to choose [his] own sexuality," and he sustained physical, emotional, and mental scars. (ECF No. 2, p. 6.)

Plaintiff also makes rambling and, at times, incoherent assertions about rapes, molestation, and pedophilia involving various people from his life, including many of his relatives. He alleges that after he impregnated Latia Harris, she hid the child's birth from him, and as the child grew up, Jean and Vanessa Escourse "orchestrated the depraved heinous acts of pedophilia against [the] child." (ECF No. 2, p. 25.) Plaintiff further claims that other children were repeatedly molested and raped by members of the Escourse family and others but that nothing was done. Plaintiff asserts that "these atrocious[,] heinous[,] depraved acts of rape and pedophilia" were revealed to the government and media before his incarceration in 1994, but that members of the New York County District Attorney's Office allowed these atrocious acts to continue unabated. (ECF No. 2, p. 27.)

Plaintiff's complaint continues along the same vein, with allegations about his former girlfriends having his children and the children then being subjected to rape and other abuses; his mother having a vendetta against him because she was raped by Plaintiff's biological father, his uncle, and other family members; his family and the Escourse family placing hexes on him; Rakim Mayers concealing his true identity as Plaintiff's son; and Plaintiff's wish for a DNA test to prove that he is Mayers' biological father. Plaintiff also asserts that a host of well-known individuals and entities are committing malfeasance against him." *Barton v. Harris*, No. 19 Civ. 4924 (CM) (S.D.N.Y. Aug. 27, 2019)

This should be enough to show the apparent difference with Plaintiff's case and his complaint, but for further comparison Baton's complaint is attached as Exhibit 7.

**2.3 Khalil v. United States, No. 17 Civ. 2652 (JFB) (SIL), 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018)**

The last of the three cases Judge Cave brings in support to her claim that Plaintiff's claims are irrational and frivolous is *Khalil v. United States*, No. 17 Civ. 2652 (JFB) (SIL) (E.D.N.Y. Jan. 12, 2018). Mr. Khalil filed two complaints with E.D.N.Y. and one with the United States Court of Federal Claims, requesting an award of $550,000,000.00. His claims as reported by the court include:

""covert or overt" *4 surveillance of plaintiff's activities on the "world wide web (internet/electronic) and telephone conversation[s]." (Id. ¶¶ II.B-D., III.A.) According to the amended complaint, from June 16, 2011 to the present, plaintiff has suffered "a denial of service attack on [his] personal computer" and "the federal government has failed to protect [his] internet rights." (Id. ¶ 13.) Plaintiff also complains that the government has violated his rights by "intruding [his] private computer or iPhone and monopolizing or compromising his internet privacy and rights to free expression." (Id.) Plaintiff further complains that the government has "allowed a schizophrenic bipolar federal employee [to] violate[] online impersonation laws and cyber stalking laws." (Id. ¶ 14.) … plaintiff claims the "FBI in controlling advertisement and search results in an attempted brainwashing scheme, and is a violation of the plaintiff's fourth amendment right." (Id.)"

From the above it is clear that Plaintiff's case is very different then Khalil's.

Plaintiff's objections in regards 'irrational' and 'frivolous' are given bellow in III.

## 3. Complaint is prolix

The Report states that "the Complaint, which spans 95 pages and contains 326 paragraphs, is prolix and violative of Rule 8 [of the Federal Rules of Civil Procedure ('FRCP')]. The Complaint should be dismissed on this independent ground." (*Id.*, p.6) Judge Cave quoted *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (summary order) in the Report: "Court may dismiss a complaint sua sponte under Rule 8 where it is prolix, and "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."" (Report, p.5) Because Plaintiff's complaint is apparently not 'confused, ambiguous, vague, or otherwise unintelligible'

(even the cases in II.2 above were not dismissed because of that) Judge Cave did not make that

point, and relies only on its length missing that *Salahuddin* court actually reversed the district

court's decision and stated that when it comes to complaint's length "Salahuddin should have

been given an opportunity to file an amended complaint" *Id*.. Judge Cave referred also to *O'Neil*

*v. Ponz*i, 394 F. App'x 795, 796 (2d Cir. 2010) but O'Neil was also given "opportunity to amend

her complaint" before the dismissal.

Because of the above Judge Cave's recommendation to dismiss Plaintiff's complaint as

prolix and 'on this independent ground' is apparently wrongful.

Plaintiff's objections are given bellow in IV.


# III. PLAINTIFF'S COMPLAINT IS NOT FRIVOLOUS AND IRRATIONAL

Plaintiff's Complaint is frivolous neither as law, nor as facts, nor it lacks a legal theory.

## 1. Plaintiff's 'legal theory'

The Report claims that "there is no legal theory on which [Plaintiff] can rely" Report, III.B.

If Judge Cave understands by 'legal theory' Plaintiff's legal claims (legal theories of a

case are "the legal theories of the claim or defense" *The Theory of the Case*, James W.

McElhaney (originally published in Fall 1979), 2019, American Bar Association,

americanbar.org, which are "set out in the elements of the complaint's claims" *Preparing for*

*Deposition - A Case Theory Approach for Systematic Preparation*, Jack McManus, National

Association of Attorneys General, on https://www.naag.org as accessed on 8/21/2023 ("Preparing

for Deposition")) then she is apparently mistaken that there are no such. About Plaintiff's legal

claims see III.2 bellow.

Judge Cave is also wrong if she meant that there is no case theory as it is too early to talk about Plaintiff's case theory. See for example *Preparing for Deposition* (stating that at depositions stage 'apart from the legal theory set out in the elements of the complaint's claims, these theories [factual and case theories] have not yet been finalized, so the goal is to consider alternative theories'); see also *The Theory of the Case,* James A. Johnson, Michigan Bar Journal, March 2021 (talking about trial: 'The first step is preparing a theory of the case').

Finally, if by 'legal theory' Judge Cave meant Plaintiff's factual theory ('factual theory is a hypothesis about the underlying events of the case', *Preparing for Deposition*), she provided a misleading partial and disjointed interpretation aiming to prove Plaintiff is irrational and frivolous, and to corrects the Report Plaintiff gives here both: a factual theory and a shorter than the Complaint's version factual narrative.

This is a case of outrageous abuse of the Defendants' law enforcement  and counterterrorism powers used to harm, suppress, radicalize and provoke Plaintiff because he, a Bulgarian living alone who is, according to them, a 'fagot', recorded them and filed a police report with Teaneck police on 9/11/2012. In retaliation to his police report Defendants escalated the case characterizing falsely Plaintiff as 'Bulgarian criminal/terrorist/spy/fagot' hitting police, and, acting with the knowledge that there is neither criminal nor antigovernment activities by him, they employed for many years methods violating the Constitution and laws to 'destroy' him.

The brief factual narrative is as follows.

Both the FBI and NYPD have investigative powers and discretion to investigate persons without any suspicion of crime. The word investigation, as used, means a systematic goal oriented conduct aiming to produce or obtain evidence, however Defendants' conduct may have been called at different periods a threat assessment, preliminary investigation, a program, or else.

Plaintiff noticed he is a subject of Defendants' activity in 2012. In August 2012 their conduct became overtly discriminatory ('Bulgarian', 'fagot') and abusive (threats to kill plaintiff, pebbles at his widows). In response to Plaintiff's police report with Teaneck police on 9/11/2012 Defendants expanded rapidly the scope of their actions against him, and based on that, on their conduct in the years since then, on their categorization of him, and on their explicit statements in regards investigating him Plaintiff believes that since then he has become a subject of a counterterrorism and criminal investigation.

Since his police report from 9/11/2012 Defendants' uniform officers, officials, and agents comment in Plaintiff's presence that he is a Bulgarian criminal, terrorist, spy, fagot who hits police, and he has been subjected to harassment, victimization, ostracism, and sabotage everywhere he goes. Defendants act in coordination, engaging communities and businesses, and their conduct includes his demonstrative surveillance, interference with his contracts and economic opportunities, suppressing his petitions and his actions in preparation of petitions, and more. For example Teaneck police did not investigate Plaintiff's report from 9/11/2012, nor any other report he filed since then.

Defendants' conduct fits radicalization models (including those of NYPD and the FBI) – their demonstrative harmful behavior aims to make Plaintiff hostile to the US, Defendants act to isolate and alienate him, deprave him of support, pressure him, to frustrate and keep him off balance (always trigger him), to provoke identity crisis and an illegal response. Defendants' conduct has been violating the Constitution and laws and continue without remedy despite Plaintiff's petitions, including after his Notice of claims with NYC, Teaneck, and the FBI (under the FTCA).

## 2. Plaintiff's claims are not frivolous as law

All Plaintiff's claims are not trivial[7], each of them has been litigated many times and that shows that Plaintiff asserts infringement of established legal interests. His claims have arguable basis in law, and each of his claims can provide relief. Because of that Plaintiff's claims should not be dismissed as frivolous. See *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004): "No portion of a complaint stating "a claim upon which relief may be granted" should be dismissed by screening mechanism of §1915A." (quoting *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989))

The Report does not even mention Plaintiff's legal claims (apart from the Defendants' interference with his right to petition – although not presenting it in full), and to correct that Plaintiff provides bellow a brief of all of them as they are in his Complaint.

### 2.1 Plaintiff's Count 1 asserts 1st Amendment claims.

Defendants violated Plaintiff's *right to petition the government*.

"Defendants' policy/practice/custom that continue for many years without change is to disrupt plaintiff's work on petitions and restrict his ability to uncover legal claims by preventing him to receive legal counsel (see ¶¶ 162-165), preventing him to obtain or preserve evidence for the violations, or otherwise obstruct his work including by intimidation and harassment (see Rel.,D, E, I and J)." Comp., ¶ 54 (facts in support are in ¶¶ 55-61). "The FBI significantly interfered with plaintiff's presentation of petitions…" Id., ¶ 62 (Plaintiff briefly describes events at the FBI New York Filed Office building on 11/8/2017 and 11/10/2022, and quotes Defendants officers and agents. See also Rel., ¶¶ 45-46 (events on 11/8/2017), and Rel., G (events on 11/10/2022)). "Defendants have policy/practice/custom for many years to obstruct and ignore plaintiff's petitions…" Comp., ¶ 63 (facts in support in ¶ 64. See also 136, and Count 7 – § 1985(2)).

Defendants violated his *right to associate*.

"In order to isolate plaintiff Defendants have significantly interfered with his right to associate with others [] by disseminating the false narrative about him as Bulgarian criminal/terrorist/spy/fagot who 'hits police', [by] engaging community and private parties in the activities against him (utilizing anti-gang and CVE programs, see Rel., n.109), setting an opposition and alienating him (see Counts 12, 15)." Comp.,¶ 65 (facts in support in ¶¶ 66-68)

---

7   "A claim is frivolous if it is so trivial that there is no chance it would succeed in court or be settled out of court after it was filed;" *Federal Civil Jury Instructions of the Seventh Circuit (2017 rev.)*, 8.02

Defendants violated his *right to privacy* (see Id., ¶ 69 *et seq*.).

Defendants *retaliate to Plaintiff's protected conduct* – preparing and filing petitions. "The entire

Defendants' conduct since 9/11/2012 is substantially motivated by desire to punish plaintiff for

his protected conduct." Comp., ¶ 79 (providing explicit statements by Defendants in that regard.

See also ¶¶ 82-85). Plaintiff addressed all elements of a retaliation claim.[8]

## 2.2 Plaintiff's Count 2 asserts 4th Amendment claims.

"Defendants have intruded on plaintiff's person, home, and effects without legitimate
justification for 11 years and ongoing." Comp., ¶ 89. "Defendants conduct is *search* under the
4th Amendment. Defendants have invaded and/or obtained information from protected areas
such as plaintiff's home – the apartment on the first floor in Teaneck, NJ and the adjacent to it
building's curtilage in front of his windows; his private communications; his personal computer
and laptops, phones, and other papers and effects (see for example ¶ 106 et seq.). Plaintiff has
reasonable expectation of privacy for those areas and effects, and they are socially recognized as
areas with reasonable expectations of privacy." Comp., ¶ 95 (emphasize added) (¶¶ 97-103 give
examples of Defendants' behavior demonstrating their surveillance from 6 days: 1/19/2018,
2/14/2022, 3/19/2022, 6/19/2022, 6/25/2022, 6/5/2023, but a lot of other examples in the
Complaint show that. (See more at Rel., C.3, F, I, and J)).

   "Defendants' interference with plaintiff's possession of his private emails, and his files
stored on his private computer and laptops is *seizure* under the Fourth Amendment." Comp., ¶
104 (emphasize added) (¶¶ 105-109 give factual examples in support). "Defendants physically
invaded plaintiff's home…" Id. ¶ 111 (giving examples). "Defendants use excessive force and
have significantly interfered with plaintiff's possession of his body []. Plaintiff has reasonable
expectations of privacy of the functioning and movements of his body at home and outside
because the functioning of his body and senses is private, and home is well recognized protected
area. Defendants' use of directed energy to target plaintiff both in his home and outside is not
reasonable ..." Comp., ¶ 110 (for directed energy see Count 17).

## 2.3 Plaintiff's Count 3 asserts Due process claims.

"Defendants abuse their power by using it to oppress and harm plaintiff acting neither with
legitimate reasons, nor in service of legitimate governmental objective – but to punish him for
exercising his constitutional rights (¶ 79), and more. Defendants act with apparent discriminatory

---

8   *Dolan v. Connolly et al.*, 794 F.3d 290 (2d Cir. 2015) [And similar Carruth v. Bentley, No. 18-12224 (11th Cir.
    November 7, 2019)] "To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a
    plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse
    action against the plaintiff, and (3) that there was a causal connection between the protected speech and the
    adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir.2009) (internal quotation marks omitted)." See also
    n.2 above.

animus (see Counts 4-5), and deprive plaintiff of rights such as: (a) The right to be free from unjustified intrusions on personal security. … (b) The right to be free from unreasonable governmental investigation. ... (c) The right to be free from intentionally inflicted illegitimate physical pain and injuries, and other health troubles. … (d) The right to be free from psychological torture. ..." Comp., ¶ 115 (giving factual examples for each of them).

"[] defendants' actions should have been implemented in a fair manner in accord with the *procedural due process*. Instead Defendants deny plaintiff fundamental procedural fairness, and their conduct is a gross abuse of government authority – rather than fighting crime and terrorism, they continue a baseless, outrageous, out-of-control investigation of plaintiff for more than 11 years and ongoing in order to punish and radicalize him." *Id*., ¶ 116 "Defendants have not [] afforded [Plaintiff] the opportunity to properly challenge his classification as a Bulgarian criminal/terrorist/spy/fagot hitting police." *Id*., ¶ 119

Plaintiff addressed all elements of a Due Process claim: (1) protected interest or fundamental right (rights under 1st, 4th, 5th, and 14th Amendments (Comp., Counts 1,2, and 4), and 4 other fundamental rights (Comp., ¶ 115)), (2) its deprivation, (3) by outrageous state action (substantive due process), or without due process (procedural due process).

## 2.4 Plaintiff's Count 4 asserts Equal protection claims.

"Defendants deprive plaintiff of the equal protection under the laws with their policy/practice to participate and tolerate attacks on him, to deny him security against intentional and arbitrary discrimination, to obstruct and/or ignore his petitions, as well as by applying against him the facially neutral policies of detection and enforcement of law in criminal and counterterrorism contexts (including community-oriented CVE, and anti-gang programs) motivated by retaliatory and discriminatory animus…" Comp., ¶ 124.

Plaintiff addressed all elements of a selective enforcement claim: (1) selective treatment which includes showing that (a) Plaintiff is a member of a protected class (Id., ¶ 124), and (b) similarly situated persons (comparators) treated differently (see Id., ¶¶ 126-127); and (2) motivated by discrimination, or as punishment or inhibition to the exercise of constitutional rights (see Id., Counts 1-3 and 5), or by a malicious/bad faith intent to injure the plaintiff (Id., ¶ 125).

Because of the similar factual base, the above is also related to Plaintiff's claims under 42 U.S.C. § 1981 (which Plaintiff presented additionally in Count 5 as to individual Defendants, NYC and Teaneck (under § 1983)), and § 1985(3).

Plaintiff addressed all elements of § 1985(3) claim: (1) conspiracy (see Id., ¶ 129, and

Counts 6, 7 and 14) with racial discriminatory animus (Id., ¶ 130, and Counts 5, 7), (2) aiming to

deprive plaintiff of the equal protection of the laws, (3) overt act in furtherance, and (4) harm.

### 2.5 Plaintiff's Count 5 asserts claims under 42 U.S.C. § 1981.

"Defendants have discriminated plaintiff on the base of his race: white Eastern European with
Bulgarian ethnicity, ancestry and national origin. Their animus is clearly shown in their disparate
and adverse treatment of plaintiff in comparison to all similarly situated non-Bulgarians []
Defendants regularly identify plaintiff by his ethnicity, ancestry and national origin ('Bulgarian'),
and have made multiple and explicit derogatory references to him based on his ethnicity,
ancestry and national origin such as 'Bulgarian fagot', 'Bulgarian mob', 'Bulgarian enemy' (see
for example Rel.,¶¶ 18, 29, 32). " Comp., ¶ 134 "Defendants have discriminated against plaintiff
by significantly interfering with his right to sue... preventing plaintiff to give evidence or
suppressing the evidence he provided..." Id., 135-136 "... creating severe and pervasive hostile
environment based on plaintiff's protected characteristics, and have significantly altered the
conditions of his life, and his enjoyment of his tangible and intangible properties." Id., ¶ 140
(listing relevant Defendants' behaviors). "Defendants have the power and authority to intervene
with plaintiff's existing and prospective contracts, and in discrimination against him they have
interfered with his right to make and enforce contracts. " Id., ¶ 137

Plaintiff addressed all elements of § 1981 claim: (1) he is a member of a racial minority, (2)

defendants' intent to discriminate on the base of race, and (3) discrimination affecting protected

under § 1981 activities.

### 2.6 Plaintiff's Count 6 asserts claims under 42 U.S.C. § 1983.

Plaintiff addressed the 2 essential elements in § 1983 claim: (1) deprivation of rights

(constitutional rights under 1st, 4th, 5th and 14th Amendments, and rights under 42 U.S.C. §§

1981, 1985, and 1986, as shown in Counts 1-5, 7-8); (2) by person acting under the color of law

(the actions of defendants NYC and Teaneck, their officials, officers, and agents acting in official

capacity and/or acting in execution of municipal policies/practices/customs in regards plaintiff

are state actions. Defendants' actions against plaintiff are committed in performance of 'actual or

pretended duty'.)

Further Plaintiff asserted four conspiracies which started at about mid 2012-2013:

1. "Defendants have orchestrated and conspired to isolate and discredit plaintiff in public. See Counts 1,12, 15, and Rel., E.3." Comp., ¶ 152
2. "Defendants have orchestrated and conspired to neutralize plaintiff's activities and to punish him for his prior activities by using government policies for illegal purposes – motivated by discrimination and retaliation, and with the knowledge that the allegations against him are baseless. That includes defendants et al.'s conduct aiming to disrupt plaintiff's preparation and presentation of petitions. See Counts 1, 7, and Rel., E.2." Comp., ¶ 153
3. "Defendants have orchestrated and conspired to prevent plaintiff from obtaining relief including by suppressing facts and creating a 'conspiracy of silence'. See Counts 1,7, 8, and 14." Comp., ¶ 154
4. "Defendants have orchestrated and conspired to coerce plaintiff into crime including by creating false incriminating evidence against him, labeling him a Bulgarian 'criminal/terrorist/spy/fagot', introducing extreme views in regards violence, creating very hostile and abusive environment, provoking plaintiff 11 years and ongoing, and more." Comp., ¶ 155

Plaintiff addressed the 3 elements of a §1983 claim for conspiracy: (1) agreement between two or more actors at least one of them – a state actor, (2) to act in concert to inflict unconstitutional injury, and (3) overt act causing injury (¶¶ 149-150 give examples showing coordination, contact, and common plan).

## 2.7 Plaintiff's Count 7 asserts claims under 42 U.S.C. § 1985(2).

"Defendants act in concert to deter plaintiff from attending the courts of the US (both as a party and witness), and interfere and obstruct the due course of justice with intent to deny him the equal protection under the laws (see Counts 1, 4, 6)." Comp., ¶ 161, see also Count 14.

Plaintiff addressed all elements of a §1985 claim: (1) existence of conspiracy involving state with racial/ethnicity and national origin discriminatory animus (¶ 172, see also Counts 5, 6, 14), (2) aiming to obstruct, or defeat, in any manner, the due course of justice and deprive plaintiff of the equal protection under the law, and (3) an overt act that harmed Plaintiff. Examples include Defendants' interference with his search for legal counsel (¶¶ 162-164), with the course of his previous litigation (¶ 166), with his work in preparation (¶¶ 167-171).

**2.8 Plaintiff's Count 8 asserts claims under 42 U.S.C. § 1986.**

"Defendants have the power to prevent or help preventing the wrongful acts, they have had many years to deliberate and remedy the wrongs, but intentionally chose not to do that. Instead defendants allowed the wrongful conduct to continue for more than 11 years (and ongoing) regardless of plaintiff's complaints and efforts to address the issues. The most resent demonstrative refusal of defendants to stop or prevent the commission of wrongs in violation of §1985(2) and (3) is their conduct after plaintiff had filed his Notices of claims." Comp., ¶¶ 176-177.

Plaintiff addressed all elements in § 1986 claim: (1) actual knowledge of § 1985 conspiracy

(undeniable after the Notice of claims), (2) power to stop, prevent or aid preventing the § 1985

violation (Jane and/or John Doe decision-makers, supervisors), (3) defendants neglected or

refused to prevent § 1985 violations, and (4) wrongful act was committed. He provided factual

examples of Defendants conduct after he filed Notice of claims (¶¶ 177-186).


**2.9 Plaintiff's Count 9 asserts claims under the FTCA.**

"The acts and events set forth constitute negligent and wrongful acts and omissions of agents and employees of the U.S. Government, inter alia, discrimination, assault, battery, defamation, infliction of emotional distress, civil conspiracy, tortuous interference, nuisance, and trespass while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the laws of the New York State and the State of New Jersey. " Comp., ¶ 191 (factual examples are in Counts 10-17)

    "Defendant's decisions about plaintiff's investigation and its methods are discretionary but go far beyond defendant's discretionary authority by deliberately violating plaintiff's constitutional rights and his rights under the laws. Defendant has no discretion to create and execute discriminatory, unconstitutional policies and practices (in this case in violation of the First, Fourth, Fifth and Fourteenth Amendments), in violation of federal statutes (42 U.S.C. §§1981, 1985, 1986), or its regulations (for example the FBI violate the well settled principles against entrapment in AG's Guidelines on FBI Undercover Operations, May 3, 2002. V.B). All of that precludes the application of discretionary function exception in this case." Comp., ¶ 193

    "Additionally because Defendant's agents and officers are investigative or law enforcement officers of the United States Government and their tortuous conduct is within the scope of their office and employment the "law enforcement proviso" effectively overrides discretionary function exception, as well as the intentional tort exception. " Comp., ¶ 194

**2.10 Plaintiff's Count 10 asserts claims for Assault.**

"Defendants assaulted plaintiff by deliberately putting him in fear of harmful contact or physical injury including by, but not limited to, direct and indirect threats in the context that government wants to 'kill', 'destroy', 'get' him because they consider him Bulgarian criminal/terrorist/spy/fagot who hits police." Comp., ¶ 198. "Defendants have the apparent ability to carry out their threats …" Comp., ¶ 202. (And giving examples of Defendants' state of mind (¶ 199), threats to frame Plaintiff (¶ 200), threats to kill him (¶ 201)).

**2.11 Plaintiff's Count 11 asserts claims for Battery**

"Defendants' regular wrongful physical contacts with plaintiff and his effects are intended to harm and/or deeply upset them. Plaintiff has never consented with the contacts, and has made significant efforts to evade them. Defendants have used directed energy…" Comp., ¶¶ 205-207

**2.12 Plaintiff's Count 12 asserts claims for Defamation.**

Plaintiff addressed all elements of a defamation claim: (1) false statements about Plaintiff or

defamation per se, (2) publication, (3) without privilege, and (4) harming Plaintiff.

"Defendants have made multiple defamatory statements about plaintiff as 'Bulgarian criminal/spy/terrorist/fagot/crazy' who 'hits police', and 'wants to destroy [defendants]'. Those statements have been premeditated, disseminated and repeated at every location plaintiff goes" Comp., ¶ 213. "[] the statements [] are made with the knowledge of their falsity and with complete disregard about the truth []. Absent any criminal conduct by plaintiff Defendants' dissemination of the false narrative serve no public interest." Comp., ¶ 235. "Defendants' statements are defamation per se because they charge plaintiff with serious specific crimes as a homicide [n.19], of being a 'bank robber' (¶ 217), 'Bulgarian mob' [n.20], or as a terrorist/lone wolf/security threat (Rel.,¶¶ 99.7, 102.5, 7518). Defendants' statements injured plaintiff's business and profession (plaintiff's unemployment since 2016, failed start of his Idea-hunters business in 2012 and since then). Additionally Defendants' demonstrative investigation (see Rel.,C) and surveillance of plaintiff (Rel.,C.3) show to any average person that plaintiff had committed a crime and/or is a security threat/terrorist/spy. Also defamation per se are Defendants' statements imputing homosexuality to plaintiff…." Comp., ¶ 216 (examples of Defendants' statements are given in ¶¶ 217- 229, 231-232).

**2.13 Plaintiff's Count 13 asserts claims for Intentional infliction of emotional distress.**

"Defendants [] have apparent power to damage plaintiff's interests, and in order to harm him they have engaged in extreme and outrageous conduct which exceeds any reasonable bounds of decency. For 11 years and ongoing defendants and parties acting as their agents have deliberately acted against plaintiff to cause, and indeed have caused serious mental distress – a distress which

no reasonable person should have to endure." Comp., ¶ 240. "Defendants have deliberately subjected plaintiff to systematic and coercive campaign of continuous harassment and verbal abuse (including sound and directed energy attacks, psychological torture, victimization, and more), prolonged physical pain, disruption of his senses, death-threats, constant surveillance, 'patrolling' under plaintiff's windows, disruption of services, deterioration of living conditions (putting pets and cockroaches in and next to plaintiff's apartment), and more. See Rel., D and E." Comp., ¶ 241 (¶¶ 242- 249 give examples. See also Rel., E.1.2).

Plaintiff addressed all elements of Intentional infliction of emotional distress claim: (1) extreme

outrageous conduct, (2) intent to cause distress, or disregard of the substantial probability of

causing distress, (3) causal connection between the conduct and injury, and (4) severe emotional

distress.

## 2.14 Plaintiff's Count 14 asserts claims for Civil Conspiracy

"Defendants act in concert, consciously, and in agreement about their general purpose – to disrupt, harm, radicalize and entrap plaintiff, even though they might perform different functions, or different parts of the plan. Defendants act in coordination with each other and direct third parties to follow a common scheme, common design which follows their model(s) of radicalization process… " Comp., ¶ 254 (examples in ¶¶ 257-261, ¶ 265 – Teaneck Public Schools as third party).

Plaintiff addressed all elements of Civil conspiracy claim: (1) agreement between 2 or more

parties, (2) overt act in furtherance, (3) intentional participation, and (4) harm in result. See also

Counts 4, 6, and 7.

## 2.15 Plaintiff's Count 15 asserts claims for Tortuous Interference

"Defendants interfered with plaintiff's business, profession, and contracts, deliberately harming his protected interests without proper justification." Comp., ¶ 270 (¶¶ 271-276 interference with Plaintiff's contract with his landlords. ¶¶ 278-281 with his employment contracts and opportunities).

Plaintiff addressed all elements of the claim: (1) existing contract, (2) Defendants' knowledge

about the contract, (3) intentional procurement of breach of contract, and (4) damages.

## 2.16 Plaintiff's Count 16 asserts claims for Nuisance.

"Defendants et al. acting in concert on the public areas adjacent to plaintiff's building which are in front/under plaintiff's windows, as well as in the building's corridor – a limited public area have interfered substantially and offended public morals, endangered the safety in the area, and interfered with the convenience and comfort of considerable number of people in the building and on Cedar lane and Red Road streets." Comp., ¶ 285. "Plaintiff suffer special loss from defendants' conduct described above, he suffers the most in comparison to other members of the community because he is (one of) the closest to those activities, the conduct is directed at him, and intends to disturb him, ruin his comfort, and harm his health and safety. The cumulative harm due to the proximity and the time plaintiff has been exposed to that conduct is also unique to him than to random persons in those public areas (especially in regards to area next to his apartment as random persons are in those areas for very limited time than plaintiff). Because of the above the harm plaintiff suffers is different in kind from the community in large." Comp., ¶ 293 (¶¶ 286-291 examples, ¶ 292 at parks, streets and other public areas, ¶ 294 Teaneck deliberately indifferent).

"Defendants know with substantial certainty that any sound near plaintiff apartment's windows, or in the building's corridor (even not on his floor) will intrude on plaintiff's property through the air. Similarly Defendants know that sounds of knocking, dragging, drilling, or other noise made on the walls, floor, or ceiling shared with plaintiff, or within the neighboring apartments (when sufficiently loud) will intrude on plaintiff's property through the vibrations and air. Also Defendants know that certain pipes pass through plaintiff's room, his restroom, or in his walls, or that certain pipe lead to his heater, and knocking, drilling or making other noise on them will trespass on plaintiffs' apartment due to vibrations and air." Comp., ¶ 297 (¶ 298 Defendants make deliberate noise, ¶ 299 Plaintiff's requests to stop noise, ¶¶ 300-303 examples).

Plaintiff addressed all elements of PUBLIC NUISANCE: (1) substantial interference with (2) public rights, and (3) special injury to plaintiff. And all elements to PRIVATE NUISANCE: (1) substantial interference, (2) intentional, (3) unreasonable, (4) interference with plaintiff's right to use and enjoy his "land", and (5) caused by other person's acts or lack of acts.

## 2.17 Plaintiff's Count 17 asserts claims for Trespass.

"Defendants have deliberately used and use directed energy to go into plaintiff's apartment and get in contact with him and his chattels which results in harming him, and have substantially diminished his ability to use and enjoy his properties for many years." Comp., ¶ 307 (¶¶ 308-310 physics of electricity, electromagnetic fields, ¶¶ 313-314, 316 examples, ¶ 315 Defendants' explicit statements in regard their use of directed energy against Plaintiff).

"Defendants intentionally and without plaintiff's consent interfered with plaintiff's intangible properties and his use and enjoyment of those chattels. For example defendants interfered with plaintiff's email accounts with Yahoo.com, gmail.com, and abv.bg, and his information in those email accounts; with his domain idea-hunters.com, and its information

stored on the servers of x10hosting.com till about 2022; with his files and information stored on his laptop Dell Inspiron 17, and more (see Rel.,¶ 1843 et seq.)" Comp., ¶ 319 (¶ 321 examples)

### 3. Plaintiff's claims are not irrational nor frivolous as facts

The Report did not give rational explanation why it claims the facts in the Complaint are irrational or frivolous, but gave three dismissed 'broad [government] conspiracy' cases in support. Even a brief reading however shows that they are very different and not relevant to this action: in *Kraft v. City of New York et al*, 19-cv-10286 JMF, (Nov.5 2019, S.D.N.Y.) (2d Cir. affirmed) defendants are hundreds if not thousands – including USA, CIA, DOJ, DHS, NSA, the FBI, and more, and Mr. Kraft concluded that they all are after him because no private entity would do that (see more above at II.2.1, and Ex.8). *Barton v. Harris*, No. 19 Civ. 4924 (CM), 2019 WL 4038762, at *1–2 (S.D.N.Y. Aug. 27, 2019) also have hundreds of defendants, government played relatively small role in the allegations, Mr. Barton requested 3 trillion dollars compensation, and notably he had filed more than 20 cases with the court before that one (see II.2.2, and Ex.7). The third case *Khalil v. United States*, No. 17 Civ. 2652 (JFB) (SIL) (E.D.N.Y. Jan. 12, 2018) requested an award of $ 550,000,000 for 'cover and overt surveillance of plaintiff's activities on the "world wide web (internet/electronic) and telephone conversation[s].' and similar, and stated that NYS use him "as a scapegoat for their anger and frustration for the terrorist attacks on 911." Id.. (See more at II.2.3)

To the extend that Judge Cave implies that a claim for 'broad [government] conspiracy' by itself is irrational and frivolous – that is apparently wrong. Even the recent news show that such claim is erroneous – see January 6th prosecution cases, including the recent indictment of Mr. Trump; Mr. Trump's indictment in Georgia together with other high ranking government officials (Secretary of State for example), or even the famous 'Muller Report' – the Report On The Investigation Into Russian Interference In The 2016 Presidential Election, from March 2019.

Before stating that the Complaint is irrational and frivolous Judge Cave invented a couple of "plaintiff's" statements in the Report's Factual Background (see Plaintiff's objections in Table 1, Rows 4.3, and 5.3), mixed parts and misinterpreted his arguments (see for example Id., Row 13), and ignored the majority of direct evidence, the evidence with Plaintiff's personal knowledge as witness of the events, the existence of objective evidence, and many facts based on circumstantial evidence in his Complaint. The Report quoted a few examples which supposedly are self-evidently irrational and frivolous, and which, as Plaintiff have shown in Table 1, apparently are neither. See for example Id., Rows 10-11 where he provides objective evidence (Exhibits 3-6) in support to his statements for Defendants using directed energy in retaliation to his protected conduct, and the methods he used to show the causation between his protected conduct and their retaliation (which are the methods courts regularly use – see above n.6).

Because Judge Cave quoted only small part of his argument for the involvement of Teaneck police (as made in Comp., ¶ 26), and implied that Plaintiff's reasoning is like what she had quoted, additional to his objections to her reading in Row 7 Plaintiff gives here a more detailed version of his argument as an example of his reasoning.

In Comp., ¶ 26 Plaintiff gave 5 points in support to his claim that Teaneck police is involved in the conduct against him: (1) they concealed the acts Plaintiff reported on 9/11/2012 adding only a short misleading report in its system (see Rel., ¶ 20), (2) didn't gave information to

Plaintiff about the persons behind those acts (at this point Judge Cave stopped, omitting the rest

of the argument) but "a police officer only told plaintiff he is 'knocking on a wrong door'"

(Comp., ¶ 26), (3) didn't investigate his police report from 9/11/2012, (4) has not investigated

any of the Plaintiff's reports since then, and (5) uniform Teaneck police officers overtly

participate in the activities against Plaintiff since 2013.

     In regards (4) Plaintiff filed reports with Teaneck police also on 11/20/2014 (stolen

delivery, Rel., ¶¶ 1837, 2014); on 10/10/2016 (hacked laptop, personal and financial information

accessed, deleted thousands of files, Rel., ¶¶ 957, 2015); on 1/9/2019 (fraud – contract with

Verizon, officers' commented Plaintiff receives: 'special treatment', Rel., ¶¶ 1980, 2018, Comp.,

¶ 263); on 3/5/2020 (stolen check, fraud, Rel., ¶¶ 2019, 2059); and on 2/23/2022 (broken

delivery, stolen drugs, Rel., ¶ 333). (See also Comp., ¶¶ 64, 136), and no detective was appointed

to any of those reports, no actions taken, no investigation done.

     As for (5): Plaintiff has had more than 20 direct encounters with uniform Teaneck police

officers since 2012, and many indirect (when uniform officers talked about him but not with

him). Apart from his police reports examples include more than 15 visits to police – Plaintiff

offered his full cooperation at the beginning of 2013 (Comp., n.7, Rel., ¶¶ 20, 2005), checked for

any development on his reports, and visited a few times Teaneck police Records Bureau and

requested copies of the materials in their system related to the reports he filed (that is how he

knows what is entered in the police system and can compare that with what he provided to the

police for example on 9/11/2012 as stated in (1) above). About those events see for example Rel.,

¶¶ 647 (10/14/2019), 52 (12/5/2019), 132 (3/12/2020), and  246 (7/12/2021).

     Furthermore uniform Teaneck police officers rang on Plaintiff's doorbell and/or knocked

for example at 1:50AM on 9/19/2013 "Just to check"; and at 7AM and at 7:20AM on 9/21/2013

Sunday, "Wrong address." (Rel., ¶ 1921). An important for the Plaintiff's claims example are the

events from 1/20/2023, two months and one week after Plaintiff filed his Notice of claims, in which uniform Teaneck police officers used a call to 911 as a pretext to bang on his door, to enter his apartment, and then talked about him with the "squad"– see Rel., ¶ 81 *et seq*. (Ex. 1), and Comp., ¶¶ 34, 55, and 111).

Examples of Plaintiff's indirect contacts with uniform Teaneck police officers include the events under his windows on 10/13/2013 at 2AM (about 6 uniform Teaneck police officers, 3 police cars, and persons who presented themselves as 'FBI' awakened Plaintiff talking under his windows about him, about Gyro (before Plaintiff had a meeting with Gyro set through a recruitment agency), said prepared phrases in Bulgarian, and more. Rel., ¶¶ 34, 1802, 2142); on 3/4/2020 (officers and an FBI person talked "Now (recording) police. []." "Not according to the FBI." … "I'll mock Kalin.. Don't believe..." "[] police devise." "Got you scared .. homicide []." FBI: "Get Kalin heard that.".. "Investigating threat." Rel., ¶¶ 55, 2075); on 5/10/2022 (Rel., ¶¶ 80, 410); on 8/29/2022 (Rel., ¶ 3969); and on 11/27/2022 (2 police cars, a truck branded Sheriff of Bergen, Crime Scene Unit parked near his windows, person made photos of his windows with flash light on, Rel., ¶ 5962). Officers also have gotten in Plaintiff's building and talked in its corridor about him as for example on 4/11/2020 ('Bulgarian', Rel., ¶ 480). Or got close to him in public areas as for example on 7/4/2022 (on Cedar lane street officer in police car "That is Kalin. He had backpack." Rel., ¶ 2227); and on 7/28/2022 (officer and a family talking at public area "Kalin… Have to push…" Rel., ¶ 2940 *et seq*.).

Teaneck police works with Teaneck Public Schools – see Rel., 839 *et seq*.. - and events for example on 11/14/2018 (Rel., ¶ 859), and 9/30/2021 (officer warned students about "Bulgarian", Rel., ¶ 867) show they are in contact, act in coordination, and under police' direction in regards to Plaintiff (for example on 5/10/2017 Teaneck High School students followed Plaintiff on his

street and after he stopped walking they commented "Kalin stop." "Call the police.." "Move three seconds. Hear me now?" "Yea." "They'll tell you what-ta (persuade)." Rel., ¶ 852).

In the light of the facts above, even as they are – listing significant number but not all relevant events in which **uniform** Teaneck police officer participates, and without details – Plaintiff's claim that Teaneck police participates in the asserted in his Complaint unlawful and unconstitutional conduct is neither irrational nor frivolous.

And as demonstrated from all of the above the Complaint is neither irrational nor frivolous as facts.

## IV. PLAINTIFF'S COMPLAINT IS NOT PROLIX

The Complaint is based on Defendants' conduct in more than 11 years. Plaintiff presented a factual narrative in the Complaint (11 pages), and additionally provided facts in support of his legal claims in Counts 1-17 (all together - 78 pages).

In her claim that Plaintiff's complaint is prolix[9] Judge Cave rely only on its length – 95 pages, 326 paragraphs[10]. She did not point to an example in Plaintiff's complaint for excess of words, unnecessary repetition, or statements irrelevant to the case. Even if there were such examples they are negligible in comparison, for example, to the repetitions, irrelevant statements and more in the complaint in *Kraft v. City of New York et al,* 19-cv-10286 JMF, (Nov.5 2019, S.D.N.Y.) (quoted in part and briefly discussed in II.2, attached as Exhibit 8). Notable is that despite its repetitions, its disorganized and broken argument in 540 paragraphs Kraft's complaint was not categorized as 'prolix' or as violating Rule 8, FRCP (it is 84 pages long single-line

9    Merriam-Webster defines prolix as "1: unduly prolonged or drawn out: too long; 2: marked by or using an
     excess of words".
10   Report, p.6 "Moreover, the Complaint, which spans 95 pages and contains 326 paragraphs, is prolix and
     violative of Rule 8. The Complaint should be dismissed on this independent ground."

spaced text, and after formatting it in accord to Local Civil Rule11.1(b)(3) complaint would be

about 150 pages long without exhibits). In *Lamb et al v. Cuomo et al,* 16-CV-6568 (Dec.19, 2016

E.D.N.Y.), Dkt No.9 (see above II.1) court stated that the complaint is "486 pages [long] with

additional 80 pages of exhibits" but did not characterize it as 'prolix' or as violating Rule 8,

FRCP.

      Another example for a complaint exceeding 95 pages is the complaint in the popular

recently case of *US Dominion Inc. et al v. Fox News Network, LLC* filed on March 26, 2021 with

The Superior Court of the State of Delaware (139 pages without Exhibits) in which the factual

allegations were presented in 80 pages, and the only count for defamation – in 41 pages.

      All those examples show that a 95-pages-long complaint with 326 paragraphs is neither

unusual, nor that such length automatically violates Rule 8, FRCP.

      Finally, even if complaint was prolix its dismissal is inappropriate. In *Salahuddin v.

Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (another case quoted in the Report) the court was explicit

that "the dismissal for noncompliance with Rule 8 without leave to amend [is] an abuse of

discretion."


# V. CONCLUSION

The Report is clearly erroneous on account of Plaintiff's claims, and did not interpret the

complaint as a *pro se* complaint. In support to her argument that Plaintiff's claims are irrational

and frivolous Judge Cave brought legal cases which are not relevant to his case, and wrongfully

claimed that a 95 pages-long complaint violates Rule 8 and should be dismissed on that bases

alone. Because Plaintiff's complaint is frivolous and irrational neither as law nor as facts, nor it

is prolix, Plaintiffs respectfully requests the Court to reject the Report and allow the case to

proceed with service of process.



Dated: 8/28/2023

Respectfully submitted,                    __S/_____

                                           Kalin Dimitrov
                                           805 Red Road, Apt. A2
                                           Bergen County, Teaneck, NJ 07666
                                           Telephone: +1 646 378 8286
                                           Email: kdcase2023@gmail.com

                                           *Plaintiff, proceeding pro se*