# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FREDERICK J. KEITEL, III, individually,

and on Behalf of FJK IV PROPERTIES, INC.,

a Florida Subchapter S Corporation;       **CASE NO. 1:21-cv-08537-JMF**

FLORIDA CAPITAL MANGEMENT LLC,

a Florida limited liability Corporation;

FJK PROPERTIES, INC., a Florida

Sub Chapter S Corporation and

FJK III PROPERTIES, Inc.,

a Florida Sub Chapter S Corporation

    Plaintiffs,

vs.

THOMAS B. D'AGOSTINO, SR., et al,

    Defendants.

_____/

## SECOND AMENDED RICO COMPLAINT AND VERIFIED DERIVATIVE ACTION

COMES NOW, Plaintiffs Frederick J. Keitel, III, ("Keitel"), Pro Se, and FJK IV

Properties, Inc., Florida Capital Management, LLC, FJK Properties, Inc., FJK III

Properties, Inc., through the undersigned counsel, Spencer B. Robbins, and respectfully

files this **SECOND  AMENDED RICO COMPLAINT**  against Defendants, THOMAS B.

D'AGOSTINO, SR., and THOMAS B. D'AGOSTINO, JR., as Trustee(s) for the

THOMAS B. and ELZBIETA D'AGOSTINO 1997 CRT TRUST, a New York Charitable

CRT TRUST, (D'Agostino Trust"); ELZBIETA D'AGOSTINO, ("ED"), SCHAIN LEIFER

GURALNICK; a New York Certified Public Accounting firm, ("SLG"); KAREN STEIN,

("Stein")individually and on behalf of SCHAIN LEIFER GURALNICK a New York Certified Public Accounting firm; TEE JAY OF FLORIDA, RLLP; a Virginia limited partnership ("RLLP"); TEE JAY OF FLORIDA, G.P.; a Virginia general partnership ("G.P."); ERIC C. CHRISTU, ("Christu"), individually, as partner on behalf of SHUTTS & BOWEN, LLP ("Shutts"), JONATHAN P. HART, individually, and as a partner of SHUTTS & BOWEN, LLP ("Hart"); ROBERT L. KING, Esq, ("King"), individually and on behalf of The Law Offices of Robert L King; THOMAS B. D'AGOSTINO, JR., ("JR"), individually and as an officer and director of FJK TEE JAY, INC., a Florida Subchapter S corporation; FJK-TEE JAY, LTD., a Florida Subchapter S Corporation,  TEE JAY OF FLORIDA, RLLP, a Virginia Tee Jay of Florida, RLLP,  and Tee Jay of Florida, G.P.,  a Virginia general partnership;  JONATHAN D'AGOSTINO, ("JD") individually and as an officer and director of FJK TEE JAY, INC., and FJK-TEE JAY, LTD., TEE JAY OF FLORIDA, RLLP, a Virginia Tee Jay of Florida, RLLP,  and Tee Jay of Florida, G.P., a Virginia general partnership; LARRY GLICK, ("Glick"), individually and as partner on behalf of SHUTTS & BOWEN, LLP; JAMES A FARRELL,  ("Farrell"), individually and as partner and member of the executive committee of SHUTTS & BOWEN, LLP, a professional  Liability Company; ARTHUR J. MENOR, ("Menor"), individually and as partner and member of the executive committee of SHUTTS & BOWEN, LLP, (SHUTTS),a professional  Liability Company; FJK TEE JAY, INC., a Florida Subchapter S Corporation, ("INC"), ; FJK-TEE JAY, LTD., ('LTD'),a Florida Subchapter Corporation; HEATHER L. REIS, ("Reis"), individually and as a partner in FOX ROTHSCHILD, LLP, ("Fox"),  a professional liability company; ANDREW ROSE, Esq., ("Rose"),  THE ESTATE OF MEENU SASSER ('Sasser"); NASON YEAGER, GERSON,

2

HARRIS & FUMERO, P.A. ("Nason Yeager"),a Florida professional association formerly HAILE SHAW  PFAFFENBERGER P.A., a Florida professional association,  WILTON WHITE ("White"), individually and as a partner in HAILE SHAW  PFAFFENBERGER P.A., (Haile Shaw") ; AND PETER J CALLAHAN ("Callahan"); PJC FUNDING, a Florida limited liability Corporation;  LESLIE ADAMS  ("Adams") individually and as partner in HAILE SHAW  PFAFFENBERGER P.A., (Haile Shaw"), ZIMMERMAN, KISER & SUTCLIFFE, P.A., a professional association. RICHARD BLACKSTONE WEBBER, II, Esq., individually, as U.S. Panel Trustee, and partner in ZIMMERMAN, KISER & SUTCLIFFE, P.A., a Florida professional association; BRADLEY ANDERSON, Esq., individually, and as partner in ZIMMERMAN, KISER & SUTCLIFFE, P.A. a professional association; KEVIN P. ROBINSON, Esq., individually and as partner in ZIMMERMAN, KISER & SUTCLIFFE, Richard Blackstone Webber, II, P.A., ., individually and as partner in ZIMMERMAN, KISER & SUTCLIFFE P.A., and **VERIFIED DERIVATIVE ACTION,**  Plaintiffs, Frederick J. Keitel, III, ("KEITEL"), individually and on behalf of and as a shareholder of FJK IV Properties, Inc ("FJK IV"), through the undersigned counsel, Spencer B. Robbins, when all actions took place or by operation of law, files this Verified Derivative Action and hereby sues the Defendants: FJK-Tee JAY, Inc., FJK-Tee Jay, LTD and its Officers and Directors Thomas B. D'Agostino, Jr., and Jonathan D'Agostino; and its lawyers Shutts & Bowen, LLP; Eric Christu; Jonathan Hart; Larry Glick; Heather Reis; Fox Rothschild and FJK IV Properties Inc.. Lawyers ZIMMERMAN, KISER & SUTCLIFFE, P.A., a professional association. RICHARD BLACKSTONE WEBBER, II, Esq., individually, as U.S. Panel Trustee, and partner in ZIMMERMAN, KISER & SUTCLIFFE, P.A., a Florida professional association; BRADLEY ANDERSON,

3

Esq., individually, and as partner in ZIMMERMAN, KISER & SUTCLIFFE, P.A. a

professional association; KEVIN P. ROBINSON, Esq., individually and as partner in

ZIMMERMAN, KISER & SUTCLIFFE, P.A. in support thereof states:

## <u>VENUE AND JURISDICTION\</u>

1.This is a Federal Diversity action in excess of $30,000,000.00 for  violation of the

federal RICO under statute 18 U.S.C §1962, 1962(c), and conspiracy to violate of the

federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and

New York Penal law Article 460, known as the Organized crime Control Act complaint

by Frederick J. Keitel, III, individually, Florida Capital Management, LLC ,and FJK IV

Properties, Inc., against individuals, lawyers, law firms, their clients, corporation(s), and

partnerships named herein, and a Verified Derivative Action under FRCP 23.1; Fla.

Stat. §  620.2002(2) and New York Business Corporate Law § 626 on behalf of

Frederick J. Keitel, III and FJK IV Properties, Inc who owned stock during the time of the

actions.

2. Venue and jurisdiction is proper in this court and in New York County, New York,

based upon the diversity of plaintiff and defendants, action in excess of $30 million,

criminal actions including Federal RICO actions under 18 U.S. C  § 1961, §1962, bank

fraud,  mail and wire fraud under 18 U.S. C  § 1341 &  § 1343, and Derivative Action

that took place in New York County, New York.

3. Plaintiff Frederick J. Keitel  is a New York resident, FJK-Tee Jay, INC.,  FJK-Tee Jay,

LTD, both have New York City, New York office and mailing addresses, and conduct all

financial transactions and business from 10 E 40th Street,  # 2710, New York City, New

4

York 10016, Both RLLP Virginia Registered limited liability Partnership,  and G.P, are Virginia Registered General Partnership, Thomas B. D'Agostino, Jr., Jonathan D'Agostino, Elzbieta D'Agostino, and Thomas B. D'Agostino, Sr., and Thomas B. D'Agostino, Sr., and Thomas B. D'Agostino JR., as Trustee(s) for the THOMAS B. and ELZBIETA D'AGOSTINO 1997 CRT TRUST, ("D'Agostino Trust"), a New York Charitable CRT TRUST, registered in State of New York Trust, located in New York County, New York and are/were all residents of New York City and Westchester County when INC, LTD, RLLP and G.P were incorporated and resides of New York City and Pound Ridge, Westchester County, New York, during these actions alleged.

4. All the financial transactions took place from LTD and INC offices at  10 E 40th Street, # 2710, New York City, New York 10016  where all bookkeeping and accounting services are located, and Stein and SLG  are located, and all LTD, INC, RLLP, G.P.'s corporate bank accounts, corporate records, CPA, accountants, are located, all checks written mailed and/or funds wired in violation(s) of state and federal mail and wire fraud 18 U.S.C § 13431 &  § 1343 originated from 10 E 40th Street,  # 2710, New York City, New York 10016 as well as all tax records were prepared, signed and sent.

5. All conditions precedent to this action have occurred, have been performed, or have been waived.

6. This action is brought not as a collusive action to confer jurisdiction, that the court would otherwise lack.

## **PLAINTIFFS**

5

7. Plaintiff Frederick J. Keitel, III, ("Keitel"), is an individual residing in New York City, New York, and is otherwise sui juris.

8. Plaintiff FJK IV Properties, Inc., ("FJK IV"), is/was a Florida subchapter S corporation, located in Palm Beach County, Florida and is otherwise sui juris.

9. Plaintiff Florida Capital Management , LLC, ("FCM"), is a Florida limited liability corporation, located in Palm Beach, Florida and otherwise sui juris.

10. FJK Properties, Inc. ('FJK"),is a Florida Sub Chapter S Corporation, located in Palm Beach County, and is otherwise sui juris,

10A. FJK III Properties, Inc., ("FJK III"), is a Florida Sub Chapter S Corporation, located Palm Beach County, and is otherwise sui juris,

## DEFENDANTS

11. Thomas B. D'Agostino, Sr., and Thomas B. D'Agostino JR., as Trustee(s) for the THOMAS B. and ELZBIETA D'AGOSTINO 1997 CRT TRUST, ("D'Agostino Trust"), a New York Charitable CRT TRUST, registered in State of New York Trust, located in New York County, New York, and otherwise sui juris.

12. Schain Leifer Guralnick; ("SLG"), a New York Certified Public Accounting firm located in New York County, New York, and licensed to practice accounting and is otherwise sui juris

13. Karen Stein  is and individual and partner of SLG, located in New York County, New York, and is a licensed New York Certified Public Accountant licensed to practice accounting and is otherwise sui juris

14. Defendant Tee Jay of Florida, RLLP , ("RLLP"), is a Virginia limited partnership, registered in the State of Virginia, with New York mailing address and conducting business from New York County, New York and located in Palm Beach County and is otherwise sui juris.

15. Defendant Tee Jay of Florida, G.P.,  ("G.P."),  is/was a Virginia general partnership, registered in State of Virginia, with a New York mailing address and conducting business from New York County, New York and located in Palm Beach County and is otherwise sui juris.

16. Defendant FJK IV Properties, Inc.,  ("D-FJK IV"), is a Florida subchapter S corporation, located in Palm Beach County, Florida and is otherwise sui juris.

17. Defendant FJK Tee Jay, Inc., ("INC"), is a Florida Sub Chapter S Corporation, with a New York City, New York mailing address, conducting business from New York County, New York and located in Palm Beach County and is otherwise sui juris.

18. Defendant  FJK Tee Jay, Ltd., ("LTD"), is a Florida Sub Chapter S Corporation, with a New York City, New York mailing address, conducting business from New York County, New York and located in Palm Beach County and is otherwise sui juris.

19. Jonathan D'Agostino, ("JD"), is an individual, is/was a resident  of New York County and Pound Ridge, Westchester County, New York and is otherwise sui juris.

20. Thomas D'Agostino, Jr., ("JR"), is an individual, is/was resident of New York, and is otherwise sui  juris.

21. Elzbieta D'Agostino ("ED"), is an individual, resides of New York City, and Pound Ridge, Westchester County, New York, and is otherwise sui juris.

22. Thomas D'Agostino, Sr., ("SR"), is an individual, with homes located in Pound Ridge, Westchester County, New York, New York City, New York and Palm Beach County, Florida, and is otherwise sui juris.

23. Eric C. Christu ("Christu"), is an individual, attorney at law in Florida, a Partner in Shutts and Bowen, located in Palm Beach County, Florida, licensed to practice in the State of Florida, and otherwise sui juris.

24. Jonathan Hart ("Hart"), is an individual, attorney at law with Shutts, is located in Palm Beach County, Florida, licensed to practice law in the State of Florida, and otherwise sui juris.

25. Larry Glick (GLICK), "), is an individual, attorney at law with Shutts, is located in Dade County, Florida, licensed to practice law in the State of Florida, and otherwise sui juris.

26. Robert King ('King"), in an individual, attorney at law, located in Broward County, Florida, licensed to practice law in Florida, and is otherwise sui juris

27. Arthur J. Menor, ("Menor"), is an individual, attorney at law, Managing Partner of Shutts & Bowen, LLP, West Palm Beach office, member of Shutts' Executive Committee, is a lawyer licensed to practice law in Florida, located in Palm Beach County, Florida, and otherwise sui juris.

8

28. James A. Farrell, ("JF"), is an individual, attorney at law with Shutts, registered agent of FJK TEE Jay, LTD and INC, located in Palm Beach County, Florida, licensed to practice law in the State of Florida, and otherwise sui juris.

29. Shutts and Bowen, LLP, ("Shutts"), is a law firm located in Palm Beach County, Florida, and is licensed to practice law in the State of Florida, and otherwise sui juris.

30. Heather L Reis, ("REIS"), in an individual, attorney at law, located in Palm Beach County , Florida, licensed to practice law in Florida and is otherwise sui juris.

31. Fox Rothschild LLP, (FOX"), is a limited liability corporation, licensed to practice law in Florida and located in Palm Beach County, Florida and is otherwise sui juris.

32. Andrew Rose, (ROSE"), is an individual, attorney at Law, licensed to practice law in Florida,  residing in Collier County, Florida, and is otherwise sui juris.

33. The Estate of Meenu Sasser, ("SASSER")a deceased individual, who was located in Palm Beach County, Florida

34. Wilton White ("WHITE"),a deceased individual, and former attorney who was located in Palm Beach County, Florida and is otherwise sui juris.

35. Peter C. Callahan, ('CALLAHAN"), is an individual, located in Palm Beach, County Florida and is otherwise sui juris.

36. PJC FUNDING, ("PJCF"), a Florida limited liability Corporation located in Palm Beach, County Florida and is otherwise sui juris.

37. Leslie Adams, ("ADAMS), is an attorney at, located in Indian County, Florida, and is licensed to practice law in the State of Florida, and otherwise sui juris.

9

38. Gary Woodfield ("WOODFIELD"),  is an individual, attorney at law in Florida, a Partner Nason Yeager, Gerson, Harris & Fumero, P.A. a Florida professional association  (formerly Haile Shaw Pfaffenberger, P.A. located in Palm Beach County, Florida,  licensed to practice in the State of Florida,  and otherwise sui juris.

39. Haile, Shaw Pfeiffenberger, PA, ("HaileShaw"), recently merged/acquired by Nanson Yeager Gerson Harris & Fumero PA is a law firm located in Palm Beach County, Florida, and is licensed to practice law in the State of Florida, Pfeiffenberger, P.A., and otherwise sui juris.

40. Richard Blackstone Webber, II, Esq., ("WEBBER"), is an attorney, a U.S. Panel Trustee, located in Orlando, Orange County, Florida, is licensed to practice law in the State of Florida, is otherwise sui juris.

41. Bradley Anderson, ("ANDERSON"), is an attorney, located in Orlando, Orange County, Florida, is licensed to practice law in the State of Florida, is otherwise sui juris

41. Zimmerman Kiser & Sutcliffe P.A. ("ZIMMERMAN "), is a Florida Professional Association, specializing in the practice of law, located in Orange County, Florida, and is otherwise sui juris.

43. Kevin Robinson, ("ROBINSON"), is an attorney, located in Orlando, Orange County, Florida, is the managing partner in Zimmerman, and is licensed to practice law in the State of Florida, is otherwise sui juris

44. All conditions precedent to the bringing of this action, if any, have been performed, waived or satisfied.

10

**Unnamed Co-Defendants and Co-Conspirator's Subject to Federal Approval, Who Participated in RICO, Fraud , Conspiracy and Obstruction of Justice, But Either Have Immunity or Relief Hasn't Been Requested**

45. Heidi Feinman, ("FEINMAN"),is an attorney, and senior trial lawyer for The United States Trustee's Office, licensed to practice law in Florida, located in Miami, Dade County, Florida, subject to federal requirements and approval and is otherwise sui juris.

46. Steven R. Turner, ("TURNER"), former Assistant U.S. Trustee, Southern District of Florida, licensed to practice law in Florida, located in Miami, Dade County, Florida, subject to federal requirements and approval and is otherwise sui juris, who was ordered/referred *sua sponte* by the Chief Judge of the U.S Bankruptcy Court to conduct (or refer to the U.S Attorney's Office), a criminal investigation into corruption and case fixing by Robert Furr, U.S. Panel Trustee and Heidi Feinman, senior trial counsel for the U.S. Trustee Office on July 13, 2016. Mr. Turner hired and signed the U.S. Trustee's Office ("UST"), order hiring Richard Blackstone Webber, II, as Trustee for bankruptcy estate of Frederick J. Keitel, on November 17, 2016, without disclosing his conflicts and past association with Furr and Judge Kimball.

47. Clifford J. White, III, Director, Office of the United States Trustee's Office, ("D-UST"), located in Washington, D.C. subject to federal requirements and approval, and is otherwise sui juris.

48. Ariel Rodriguez, ("RODRIGUEZ"),is an attorney, and trial lawyer for The United States Department of Justice, Office of the U.S. Trustee, licensed to practice law in Florida, located in Miami, Dade County, Florida,  named defendant subject to federal requirements, approval and is otherwise sui juris.

49. Robert C Furr, ("FURR"), is an attorney, and Panel Trustee, The United States Trustee's Office, licensed to practice law in Florida, located in Boca Raton, Palm Beach County, Florida, who was dismissed from all lawsuit by Judge Kimball and Court approval and is otherwise sui juris.

50. Paul G. Hyman, ("CHIEF JUDGE"), former Chief Judge of the U.S Bankruptcy Court, Southern District of Florida, who ordered *sua sponte* and directed from the bench, the Assistant U.S. Trustee, Southern District of Florida and/or the U.S. Attorney, Southern District of Florida, or Department of Justice ("DOJ") to conduct investigation into corruption, case fixing, extortion and threats by Robert Furr and Heid Feinman, and others, and is otherwise sui juris.

51. Erik P. Kimball ("Judge Kimball"), is a U.S. Bankruptcy Judge, Southern District of Florida, assigned Case No 15-21654 by Hon. Paul Hyman, Chief Judge of U.S. Bankruptcy Court, Southern District of Florida who recused himself on July 13, 2016 after *sua sponte* ordering and referring an investigation into corruption, case fixing, extortion and threats involving  UTS senior trial lawyer Heid Feinman , and UTS Panel Trustee Robert C. Furr,  then assigned the case to Kimball, the only other Judge in West Palm Beach Division, and is otherwise sui juris.

52. Estate of Meenu Sasser, ("MS"), a deceased individually, not in her judicial capacity, as former Palm Beach County Circuit Court. and is otherwise sui juris.

53. Jamie Goodman, ("J.GOODMAN"), Palm Beach County Circuit Court, mentored by Judge Meenu Sasser, in one of his first cases *Tee Jay of Florida, RLLP vs. FJK IV Properties, Inc,* Case No 502016CA010381XXXXMB-AI, and is otherwise sui juris.

12

54. Cymonie Rowe, ("J.ROWE"), Palm Beach County Circuit Court, mentored by Judge Sasser, forced to recuse herself sui sponte in September 2016, after first refusing to recuse herself on Motion to Disqualify, to avoid a Writ of prohibition, appeal to the 4th DCA, and is otherwise sui juris.

55. Richard L. Oftedal, ("J.Oftedal"), former Palm Beach County Circuit Court, assigned to THOMAS B. D'AGOSTINO, SR., and THOMAS B. D'AGOSTINO, JR., Trustee for the THOMAS B. and ELZBIETA. D'AGOSTINO 1997CRT TRUST v. *Frederick J. Keitel, III and Florida Capital Management, LLC*, ("FCM"), Case No 502013CA003840XXXXMB, and is otherwise sui juris.

## SECOND AMENDED RICO COMPLAINT

56. This is an action for violation of the federal RICO under statute 18 U.S.C § 1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act complaint by Frederick J. Keitel, III, individually, and Florida Capital Management, LLC ,FJK Properties, Inc., FJK III Properties Inc., and FJK IV Properties, Inc., against all defendants named herein, including multiple individuals, lawyers, law firms, their clients, corporation(s), and partnerships and the Trustee, named herein, who acted at all times as willing participants in the RICO actions; AND

## VERIFIED DERIVATIVE ACTION

57. This is a verified derivative action under FRCP § 23.1; Fla. Stat. 617.07401, and Fla. Stat. § 620.2002, Business Corporate Law Section § 626(b) for equitable relief and damages, filed by Plaintiffs Frederick J. Keitel, III, ("KEITEL"),individually and as

13

shareholder of  Plaintiff FJK IV Properties, Inc ("FJK IV"), who owned stock when all actions took place and/or by operation of law, for equitable relief and damages, plus interest, costs and attorney's fees, on behalf of Frederick J. Keitel, III and FJK IV Properties, Inc (and INC and LTD), who own stock during the time of the claims and challenge as an exception to the continuous shareholder rule, due to multiple egregious predicate criminal actions, including fraud, extortion, threats, conspiracy to defraud, mail and wire fraud, perjury and suborning perjury, bank, mortgage fraud, and fraudulent payment of interest for a non-existence loan, to defraud and steal Keitel's FJK IV stock, prevent this derivative lawsuit, and challenge the fraud leading to, during and the Palm Beach County Sheriff's Sale, by INC, LTD, RLLP, G.P. its officers and directors, lawyers, Shutts, Christu and in house CPA and accounting firm SLG located in New York and hereby sues the following Defendants  Jonathan D'Agostino, ("JD"), individually, Thomas B. D'Agostino, Jr. , ("JR"), individually and as directors and officers in Tee Jay of Florida G.P., ("G.P."),  a Virginia General Partnership, Tee Jay of Florida, RLLP,  ("RLLP"), a Virginia Registered Limited Liability Partnership, ("G.P."), FJK-Tee Jay, Ltd, ("LTD"), a Florida limited liability partnership; FJK-Tee Jay, Inc., ("INC"),  a Florida Subchapter S Corporation and FJK IV Properties, a Florida subchapter S corporation;  and all law firms, lawyers and Trustee and lawyers Shutts & Bowen, LLP, Eric Christu, Jonathan Hart, Larry Glick, Heather Reis, Fox Rothschild, Webber, Anderson, Robinson, Zimmerman and in house INC, INC, LTD, RLLP, G.P.  in house bookkeeper, CPA  Stein and accounting Firm SLG and in support thereof and states that this is a Motion for Leave to file First Amended RICO and Verified Derivative Action

58. *This action is filed as an exception to fraud in the Derivative Action is a direct result of "inciting criminal incidents" and criminal fraud actions by the officers and directors and court appointed escrow agents Shutts & Bowen, LLP and partner Eric Christu against a FJK IV, a shareholder of LTD and INC, , in violation of: 18 U.S.C. § 1961(1)(A), extortion and racketeering activity; 18 U.S.C. § 875 threats and extortion; Fla. Stat. 836.05 threats, extortion; 18 U.S.C. § 1512, intimidation of a federal witness in a federal U.S. bankruptcy courthouse prior to testifying and paying off all judgments, to redeem stock, (see affidavit of banker/lender Fred Latsko), as a result of violation of 18 U.S.C. § 1341 and §1343, mail and wire fraud; 18 U.S.C. §1621 perjury, suborning perjury 18 U.S.C. §162; ,and multiple other violations of federal and state criminal statutes to prevent shareholders from redeeming shares or their stock, including interfering with court a ordered sheriff's sale; and refusal to turn over critical financial documents prior to court ordered sheriff's sale, all violations with the specific intent to deprive or prevent a derivative action from going forward, this court should allow "an exception 'to the continuous ownership rule'", allow the derivative action to go forward and allow punitive damages, to deter other companies from similar criminal actions, threats, extortion, and bullying shareholders forcing them under duress and intimidation to sell, give up or prevent redemption of their stock, and or defrauding a shareholder before, during and after a Sheriff's Sale to prevent the shareholder from redeeming his stock during the continued threats and extortion.*

**JURISDICTION AND VENUE**

59. Venue and jurisdiction is proper in this court and in New York County, New York, based upon the aforementioned diversity, and Federal RICO actions under 18 U.S. C

15

section  § 1961, § 1962 and  § 1962(d); Fla. Stat  §  895.01 - § 895.05, New York Penal Law  Article  460, known as Crime Control Act Federal RICO Action and Fla. Stat. §620.2002, Florida Business Corporate Act ("FBCA"), Derivative Actions under FRCP 23.1, NYBCL § 626. (b) and Fla. Stat. § 620.2002(2), FCBA. Fla. Stat. §617.07401.

60. Defendants G.P. is a Virginia Registered Limited partnership and RLLP, is a Virginia registered limited liability partners and Virginia Registered Limited partnership, which conduct all business from  10 E 40th Street, #2710, New York, New York 10016, have in house CPA and accountants , bookkeeping, address, banking accounts; FJK-Tee Jay, INC.,  and FJK-Tee Jay, LTD;  have offices in New York City, New York mailing addresses and conduct all financial transactions and business from  Thomas B.  D'Agostino, Jr., and Jonathan D'Agostino, located in New York

County, New York are/were all residents of New York City and Westchester County when INC, LTD, RLLP and G.P were incorporated and resided in New York City, and Pound Ridge, Westchester County, New York, during these alleged actions, and all the financial transactions took place in New York and Frederick J. Keitel, III, is a New York  Resident.

61. All business took place from New York, including  all LTD, INC, RLLP, G.P.'s bookkeeping, tax records, all

checks were written mailed and funds sent through  wire transfers, all corporate  bank accounts  and CPA, Karen Stein and her company SLG are located in New York City,

at 10 E 40th Street, #2710, New York, New York 10016,  and also named in  RICO

 complaint and as material witnesses in the Derivative

16

actions, and New York is  where  multiple criminal predicate actions including mail and

wire fraud, fraud, tax fraud, Bank  fraud.  The Palm Beach County

Sheriff Sale, denial of redemption of the property in The Palm Beach County Sheriff's

sale, and other criminal actions,  giving raise to both RICO and Derivative action

occurred in, or are still occurring in New York County, New York.

62. Thomas B. D'Agostino, Jr., and Jonathan D'Agostino, are/were all residents of New
York City and Westchester County at all relevant times, when INC, LTD, RLLP and G.P
were incorporated and resided in New York City, and Pound Ridge, Westchester
County, New York, during these alleged actions.

 63. All the financial transactions took place in New York City, New York, including  all

LTD, INC, RLLP, G.P.'s bookkeeping, tax records, all checks were written mailed and

funds sent through  interstate commerce by wire transfers, all corporate  bank accounts

and CPA, Karen Stein and her company SLG are located in New York City, New York,

and Stein and SLG are defendants in the RICO complaint and as material witnesses in

the Derivative actions.

64. New York is were multiple criminal predicate actions including interstate mail and

wire fraud, fraud, tax fraud, and fraud in withholding financial information from Plaintiffs

Keitel and FJK IV and 4th amendment violation of due process and notice to be heard,

before and during the Palm Beach County Sheriff's Sale taking of FJK IV personal

property, and fraud and violation of due process in denial of redemption of the property

by The Palm Beach County Sheriff's Department during and other criminal actions,

giving raise to both RICO and Derivation actions, for equitable relief and damages, plus

interest, costs and attorney's fees, FJK IV Properties, Inc (Keitel, INC and LTD), who

own stock during the time of the claims, with exception to the continuous ownership rule shareholder requirement, due to multiple egregious predicate criminal actions, including fraud, extortion, threats, conspiracy to defraud, mail and wire fraud, perjury and suborning perjury, bank and mortgage, and illegal redemption of final judgment of foreclosure, and   by  of INC, LTD, RLLP, G.P.  and its officers and directors, lawyers, and in house CPA and accounting firm herein located in New York

65. Plaintiffs Keitel, FJK IV and on behalf of LTD and INC made specific demands, notified all defendants in this derivation action that Keitel and FJK IV would also file a RICO complaint and would file multiple cause of actions against defendants and on the general partner FJK-Tee Jay, Inc., LTD, RLLP, G.P., its officers and directors JD, JR, its law firm and lawyers, Shutts & Bowen, LLP, and Christu, Hart and Glick, and Farrell and Menor as  members of Shutts executive committee, as well as Stein and SLG  prior to initiating  this action, and notice of all cause of actions  and such a demand was made pursuant to Fla. Stat. §617.07401, and/or would be futile, useless and unavailing, under FRCP 23.1, NYBCL § 626. (b) and Fla. Stat. § 620.2002(2), and a sham complaint previously filed in an action by U.S. Bankruptcy Trustee Richard Blackstone Webber, II, in Adv. Proc 17-01245-EPK,  who conspired with Bradley Anderson ("Anderson"), Kevin Robinson ("Robinson"), Zimmerman, Kiser & Sutcliffe ('Zimmerman'), and others, including JR, JD, LTD, INC and Shutts & Bowen , LLP, Eric Christu, Larry Glick and Jonathan Hart, who acted together, filed the complaint after the statute of limitations, to defraud Keitel individually and as president of FJK IV Properties, Inc, FJK IV, LTD and INC.

66. Plaintiff's Keitel, FJK IV, INC and LTD have made between 20- 30 written demands on INC, LTD, RLLP JD and JR its officers and directors, their CPA and accounting firms, and corporate their  lawyers and law firms regarding: mail; and wire fraud, fraud, , bank fraud, mortgage fraud, illegal redemption of final judgment on foreclosure, illegal fraudulent first mortgage on LTD,  fraud in backdating fraudulent mortgage interest on LTD, filing false and fraudulent affidavits, corporate resolutions, organizations charts, hiring lawyers who suborn perjury; refusing to file federal tax returns  and Florida Corporate tax returns to defraud Keitel and FJK IV;  including filing false and fraudulent financial documents and formation to secure  a federally approved mortgage by means of fraud, tax fraud by Thomas B D'Agostino, Sr and Elzbieta D'Agostino conduct from SLG New York), with the knowledge and help of JR, JD, Karen Stein and SLG conspiring with LTD, INC and Tee Jay of Florida RLLP: and Breach of Fiduciary Duty.

67. Plaintiffs Keitel and on behalf of FJK IV, LTD, INC believe notice was made, as precaution and alternative, plead that if this court determines specific demand wasn't made to  the general partner FJK-Tee Jay, Inc., LTD, RLLP, G.P., and its lawyers, Plaintiffs  initiated this action, because INC , LTD, RLLP, G.P., JD, JR and its lawyers were all on notice pursuant to *FRCP 23. 1;* NYBCL § 626(b); FBCA Fla. Stat. § 617.07401, and Fla Stat. § 620.2002(2). From  15-20 email demands and  notice of all cause of actions  and such a demand would be futile under both state and federal statutes, because its officers and directors participated in the fraud, conspiracy, perjury and mail and wire fraud against Keitel and FJK IV, to claim more than 50% of in INC and LTD stock.

68. Venue and jurisdiction is proper in this court and  in New York County, New York, based upon the aforementioned diversity,  both defendants RLLP and G.P. are Virginia Are registered limited liability partners and Virginia Registered Limited partnership, and Federal RICO actions under 18 U.S. C section 1961,1962 and Derivative Actions herein,  Plaintiff Frederick J. Keitel  is a New York resident,  FJK-Tee Jay, INC.,  FJK-Tee Jay, LTD,  Tee Jay of Florida RLLP and Tee Jay of Florida,  G.P., have New York City, New York mailing addresses and conduct all financial transactions and business from New York City, New York;  Thomas B. D'Agostino, Jr., and Jonathan D'Agostino, located in New York County, New York are/were all residents of New York City and Westchester County when INC, LTD, RLLP and G.P were incorporated and resided in New York City, and Pound Ridge, Westchester County, New York, during these alleged actions, and all the financial transactions took place in New York City, New York, including  all LTD, INC, RLLP, G.P.'s bookkeeping, tax records, all checks were written mailed and funds sent through  wire transfers, all corporate  bank accounts  and CPA, Karen Stein and her company SLG are located in New York City, New York,  also named in  RICO complaint and as material witnesses in the Derivative actions, and New York is were  multiple criminal predicate actions including mail and wire fraud, fraud, tax fraud, without financial and fraud in The Palm Beach County Sheriff Sale, denial of redemption of the property in The Palm Beach County Sheriff's sale, and other criminal actions,  giving raise to both RICO and Derivative actions, that occurred in, or are still occurring in New York County, New York.

69. All conditions precedent to this action have occurred, have been performed, or have been waived.

70. This action is brought not as a collusive action to confer jurisdiction, that the court would otherwise lack.

71. <u>All RICO Defendants ("ARD")</u> shall include the following individuals, entities and enterprises: JR and JD individually, and as officers and directors of G.P., RLLP, LTD, INC;  Shutts & Bowen, LLP, Christu, Glick, Hart, Rose, King, SR and JR as Trustee for the D'Agostino Trust, Reis, Fox, Stein, SLG, SR, ED, Callahan, PJCF, White, Adams, Woodfield, HaileShaw (also known as Nason Yeager"), Webber, as Trustee, individually, and as a partner in Zimmerman, Kiser, Sutcliffe, P.A., Anderson, Robinson and Zimmerman, Sutcliffe, P.A., unless singled out individually, then they will referred by name only.

72.  <u>All Derivative Action Defendants ("ADAD"),</u> shall include the following: JR and JD individually and as officers and directors of  G.P., RLLP, LTD, INC, Shutts & Bowen, LLP, Christu, Glick, Hart, Rose, King, Reis, Fox, Stein, SLG, SR, ED, Callahan, PJCF, White, Adams, Woodfield, HaileShaw (also known as Nason Yeager"), Webber, as Trustee, individually, and as a partner in Zimmerman, Kiser, Sutcliffe, P.A.; Anderson, Robinson individually and as members of Zimmerman, Kiser, Sutcliffe, P.A., unless singled out individually, then they will referred by name only.

## **GENERAL ALLEGATIONS**

## **FJK TEE JAY, LTD, FJK TEE JAY, INC AND FJK IV PROPERTIES, INC**

73. On December 29, 1998, FJK-Tee Jay, Inc, )"INC"), a Florida corporation was formed (see FJK-Tee Jay, INC SHAREHOLDERS AGEEMENT (The Corporation) (exhibit "1").

Its undisputed that the SHAREHOLDERS AGREEMENT FOR  FJK TEE JAY, INC., is

and always has been the controlling document of all these proceedings.

74. The SHAREHOLDERS AGREEMENT FOR  FJK TEE JAY, INC., the controlling

document, was signed by Thomas D'Agostino, Jr.,  as General Partner of TEE JAY OF

FLORIDA, **G. P**. a Virginia general partnership, on December 30, 1998, and as a

director, vice-president, secretary and treasurer of INC, and  Fredrick J. Keitel, III signed

as president of FJK IV Properties, Inc, and as President of INC, and states:

> "THIS SHAREHOLDER AGREEMENT ("Agreement") is made and entered into this 30th day of December, 1998 by and between **FJK IV PROPERTIES, INC., a Florida corporation (hereinafter referred to as "Properties**") of P.O. Box 3243, Palm Beach, Florida 33480, and  **TEE JAY OF FLORIDA, G.P., a Virginia general partnership,  (hereinafter referred to as "TEE JAY")** of 240 Royal Palm Way, Palm Beach, FL 33480 (collectively referred to hereinafter as "Shareholders' and acknowledged by FJK – TEE JAY INC., a Florida corporation (hereinafter "Corporation").

> "WHEREAS, the corporation is organized under the laws of the State of Florida: and"

> "WHEREAS, Properties and TEE JAY are the sole Shareholders of the Corporation, with each owning shares in the Corporation as hereinbelow described (the "Stock")"

> " Properties            100 shares"

> "TEE JAY            100 shares  and"

75.  On December 29, 1998, FJK-Tee Jay, Ltd., ("LTD"), a Florida limited partnership

was formed (see FJK-Tee Jay, INC  Limited Partnership Agreement).

76. FJK-Tee Jay, INC. ("INC"), is a Florida Subchapter S corporation and General

Partner of LTD, owns 1% of LTD and controls operations of LTD.

INC is/was  equally owned by FJK IV and Tee Jay of Florida, G.P., each owning 50%

(or .05% each of the 1%);

77. FJK IV Properties, Inc., ("FJK IV"), is a Florida Corporation that owned 49.5% of in FJK-Tee Jay, LTD and is 100% owned by Frederick J. Keitel, III.

78. FJK IV Properties, Inc., ("FJK IV"), is a Florida Subchapter S Corporation that owns 50% of 1% of INC, and at all times relevant was owned by Frederick J. Keitel, III.

80. Tee Jay of Florida G.P., is a Virginia general partnership ("G.P."), that owns 50% of 1% of INC, and is owned by JR and JD.

81.  Tee Jay of Florida , RLLP,  Virginia Registered Limited Liability Partnership, ("RLLP") that owned 49.5% of LTD., and is owned by JR and JD.

82. Frederick J. Keitel, III, was the President of INC and a director from December 29,1998 until June 20, 2015, then removed based on affidavits and testimony of JD, that RLLP was always an owner of INC stock.

82. Thomas B. D'Agostino, Jr., was vice-president, secretary and treasurer , and a director of INC, who signed the Shareholders Agreement for FJK-Tee Jay, INC as genera, partner of G.P.

83. Defendants, Thomas D'Agostino, Jr, ("JR"), and Jonathan D'Agostino are equal owners of  RLLP and GP.

84.  Tee Jay of Florida G.P., is a Virginia general partnership ("G.P."), and was administratively dissolved in 2004, and upon information and belief was reinstated in 2015 or 2016.

85.  There is no mention in the FJK Tee Jay, INC Shareholder Agreement anywhere, of RLLP ever owning or controlling any interest in INC.

86.  At all times, only Tee Jay of Florida G.P. ("GP") was and is the only entity ever mentioned as the owner of INC,

87. The original mortgage on FJK-Tee Jay, LTD, at 241 Royal Palm Way, Palm Beach, Florida was $2,400,000.00 from GE Capital.

88.  Stein and SLG, the long term certified Public Accounting firm, who handled all the taxes for  the entire D'Agostino family, Sr, Jr, JD, RLLP, GP, D'Agostino Trust and their other entities was hired by JR the Vice President, Treasurer and Secretary of LTD and INC, (and SR), as the accounting firm for LTD and INC.

89. In 1999-2000, Workflow Management, ('Workflow"), a public signed a 10 year lease with LTD and INC to occupy the entire property at 241 Royal Palm Way, Palm Beach, Florida, do a build out of the interior, that was negotiated by Workflow's CEO,  SR, and divisional president JR, both member of the board of directors of Workflow.

90. Unbeknownst to Keitel, SR was stealing materials and improvements from Workflow's build-out of LTD, double dipping from Workflow, and ordering material for his personal use of his home also under construction at 118 Seaview Avenue, Palm Beach, Florida.

91. The interiors and materials meant for Workflow's buildout at  LTD, 241 Royal Palm Way, were fraudulently  diverted from Workflow building to SR and ED's new home under construction at 118 Seaview Avenue, Palm Beach Florida, using the same interior designer for both projects.

24

92 . In 2001 SR and JR (both officers and Directors of Workflow), misrepresented that Workflow was in serious financial trouble, on the verge of bankruptcy, and needed to get out of its lease with LTD, or default on its lease.

93. Keitel, who owned 2 building across the street at 230 and 240 Royal Palm Way, was in negotiations to move Citicorp Private Bank into his building at 230 Royal Palm Way in a 10 year long term, 10,000 sf lease.

94. As a result of JR (vice president, treasurer and secretary of LTD and INC, as well as Divisional President of Workflow), and SR's assurances that Workflow would default on their lease (or declare bankruptcy), couldn't continue to pay rent, Keitel as president of INC and general partner of LTD, convinced Citicorp to move and sign a lease with LTD's 241 Royal Palm Way building, instead of Keitel's FJK building, to prevent the LTD building from going dark, or having Workflow as a non-paying tenant in bankruptcy.

95. As a result of JR and SR's misrepresentation, covering up their own fraud and misappropriation from Keitel, LTD brought out Workflow's lease, paid Workflow $500,000.00 in cash, and $700,000.00 in ten payments of $70,000. over 10 years due to SR and JR's false misrepresentations, fraud, theft of services, tax fraud and other criminal conduct.

96. As a result of JD and SR intentional misrepresentations, fraud and theft, Keitel, FJK, FJK IV, LTD, INC, was damaged, and FJK Properties, Inc lost over $8 million dollars and $500,000.00 income for 10 years.

97. Unbeknownst to LTD, INC, FJK or Keitel at the time, , FJK and Keitel was defrauded by SR, ED, JR, JD, RLLP, G.P. and Workflow, with LTD and Keitel personally paying

25

for SR's (and JRs'), criminal conduct, illegal misappropriation of funds and materials from Workflow, a public company to SR's own personal use, causing LTD and INC to be sued by Workflow in 2012. Keitel, a lawyer, settled Workflow's lawsuit against LTD, on favorable terms for LTD.

98. In 2002, JR. was fired as divisional president of Workflow and from the Board of Directors, a publicly held company that SR was Chairman and CEO.

100. Also in 2002, SR was fired as CEO of Workflow Management, Inc., ("Workflow"), a publicly traded company.

101. In 2003 and 2004, SR was fired as Chairman of Workflow, after an exhaustive audit, by both Workflow Board of Directors, ('BOD's"), internal auditors and outside CPA firm, Price Waterhouse, investigating SR's (and Jr's) illegal activities and cover-up. And SR forced to pay back and give up over $3,000,000.00 in cash and benefits, for misappropriation of funds, lying to CPA-special audit committee and Board of Directors investigating SR (and JR), or face criminal indictment. (see 2002-2003 SEC Q10 filings by Workflow, and press releases).

102. Workflow also received $1,200,000.00 in payments from LTD, as a result of the criminal conduct of JR as vice president, secretary, treasurer and director of INC and LTD.

103. SR and his wife ED, didn't own any stock or have an interest in LTD or INC, when they and JR defrauded LTD and INC out of $1,200,000.00, without ever declaring the money, or paying taxes on it.

104. As a result of JR and Sr's criminal conduct, (facts unknown to LTD and Keitel at the time), and desperate for cash, JR and SR requested that LTD and INC to refinance LTD's mortgage, so SR could take out $1,440,000.00 cash.

105. On January 6, 2004, LTD signed a new mortgage refinancing with General Electric Business Asset Funding Corporation for $4,900,000.00.

106. Unknown to Keitel at the time, the LTD check register and substantial evidence proves that SR personally received a wire transfer of $1,440,000.00 from LTD, and had JR, JD, SR, Stein and SLG fraudulently claim the transfer was to RLLP, to avoid SR paying income taxes.

107. JR, as Vice President, Treasurer and Secretary of LTD, acted with JD, SR, Stein and SLG, to wired SR $1,440,000.00, and disguised the payment as a distribution to RLLP, to avoid reporting the $1,440,000.00 cash on personal taxes for SR, and his wife Elzbieta D'Agostino, and defraud LTD and INC.

108. At all times until late 2012, LTD, INC, Keitel and FJK IV were unaware of the fraud by SR, JR, JD, ED, RLLP, GP, using Stein, SLG, LTD and INC to intentionally covered-up over $2,100,000.00 in cash payments to SR, disguised as distributions to RLLP.

109. From 2000 until 2012, Thomas D'Agostino, Sr, received over $2,000,000.00 from LTD on behalf of JR and JD, without ever paying any taxes on the payment, in violation of IRA regulations from JR, JD and RLLP from Stein and SLG, who also represented SR, JR,JD, ED, G.P., RLLP and D'Agostino Trustee CPA Karen Stein and accounting firm SLG, who had multiple conflicts of interest and sent SR.

27

110. From 1999 until 2014, JD and JR never received any money or distribution from LTD or RLLP from , Karen Stein and SLG, long time D'Agostino family tax accountants, while SR and his wife ED took all the distribution without declaring any income**.** See the FJK-Tee Jay, LTD check register, while I was general partner, and Stein and SLG wrote all the checks and participated in taking care of all the books and records.

111.  The LTD check register was controlled by SR and under the direction of Stein and SLG, and neither JR and JD ever received a payment from LTD from 1998 until sometime after June 2015,  and never received any money form distributions from LTD, because SR and ED looted  $2.1 million through Fraud in violation of IRS rules, regulations and fraud.

### March  2005 - Florida Capital Management – D'Agostino Trust

112. 0n March 5, 2005 FCM and Keitel closed/purchased 237 Brazilian Avenue, a 100 x 180 lot in Palm Beach, Florida under his company FCM, for $2.5 million.

113 . Keitel and FCM put down $500,000.00 cash and FCM and Keitel signed and borrowed $2,000,000.00 as first mortgage with the D'Agostino Trust

I114. n March 2005, Keitel's former bookkeeper wired $2,000,000.00 from his New York bank account to Charles Lubitz's ("Lubitz"), at Boose Casey Ciklin Lubitz et al., Trust Account ("Boose Casey"), attorneys for FCM and Keitel.

115. On March 15, 2005 Keitel, FCM and their lawyers Boose Casey et al., wired $1,230,000.00 to Robert King, Esq., Trust Account for Thomas B. D'Agostino, Sr., and Thomas B. D'Agostino JR., as Trustee(s) for the THOMAS B. and ELZBIETA D'AGOSTINO 1997 CRT TRUST, ("D'Agostino Trust"), a New York Charitable CRT

TRUST, registered in State of New York Trust, and located in New York County, New York for the partial repayment of a $2,000,000.00 mortgage taken out by Keitel and FCN on March 5, 2015 from D'Agostino Trust.

116. Lubitz and Boose Casey never received a receipt or recorded partial payment of the mortgage to D'Agostino Trust from Robert King, Esq., counsel for the D'Agostino Trust.

117. . At all times since March 15, 2005 SR and JR as Trustees of the D'Agostino Trust, and Robert King, lawyer for the D'Agostino Trustee knew that the wire transfer for $1,230,000.00. was meant as partial repayment for the $2,000,000.00 loan as per the documentation of FCM and Boose Casey ID client numbers and the (i)wire transfer to Robert King, Esq., Trust Account, (ii) the Note and (iii) on the warranty deed loan documents was for partial payment on the $2,000,000.FCM loan.

118. King thereafter fraudulently misappropriated the funds from the D'Agostino Trust, and in violation of 18 U.S.C. 1341 & 1343 mail and wire fraud, sent the money directly to SR and ED personal account, instead of D'Agostino Trust, without ever recording it as a partial repayment and reduction of the FCM $2,000,000.00 first mortgage.

119. The D'Agostino Trustee's, SR and JR illegally diverted mortgage repayment using interstate wire transfers for the New York State Chartered Charitable Trust to SR and ED personally, defrauding the Trust, stealing the money, to avoid paying income taxes, in violation of federal tax laws, and New York State Charitable Trust and Estate laws.

120. The failure to record the partial payment of $1,230,000.00 went unnoticed until late 2012, when Keitel request information from SR, who refused to answer and sued FCM and Keitel for the entire $2 million, plus interest.

122. On June 28, 2013, SR testified under oath, that he received $1,230,000.00 from his lawyer Robert King, and that he couldn't remember what it was for, but it was for some business transaction.

### April 2012 Callahan, PJCF, Mortgage to FJK, FJK III and Keitel

123. In February 2012 Keitel had valuable assets in excess of $45,000,000.00 and a net worth of over $25,000,000.00, prior to the action of Callahan, White, HaileShaw, and the actions of SR, JR, JD, and RLLP.

124. Keitel was renegotiating a loan with GE Capital for FJK 230 Royal Palm Way, Palm Beach and FJK III, 240 Royal Palm Way, Palm Beach (worth $24.5 million with equity of $11 million),

125. Keitel had to reduce his GE loan from $14.6 million down to $10.6 million at 5.5%(GE had $1 million of FJK/FJK III money in reserve escrow).

126. Keitel spoke with his father-in-law, Peter Callahan, a successful business who agreed to give Keitel/FJK/FJKIII a $3.2 million loan for 27 months at 6%, at family discount rate loan", a little higher than the 2-3% he charges his daughters.

127. Despite a firm commitment, hand shake deal, Callahan insisted he'd have increase the rate from 6%, then to 8% .

128. Relying on Callahan's assurances and firm commitment at 8%, Keitel personally borrowed $225,000.00, at 4% from a third party, payable directly to his wife, Patricia

Callahan ("T-Callahan"), Callahan's daughter for mortgage and taxes on her house. Callahan then insisted on 12% (rate mezzanine lenders charge).

129. As the GE Capital was emailing the closing documents, Callahan started to renege on his firm commitment, 48 hours before the dual closing and sent closing documents demanding a 14% interest rate, which Keitel rejected. Two hours before close of business day, the night before the GE closing, Callahan and his lawyers, HaileShaw and White breached the terms of their agreement sent draft of a "Participation Agreement", demanding Keitel/FJK/FJK III pay an additional 10% participation kicker amount, in additional to the 12 % interest rate, (for return on investment of 60%-80% on a simple second mortgage), threatening to sabotage the GE closing, extorting Keitel, FJK and FJK III, and forcing cancellation the GE scheduled closing, breaching Keitel/FJK/FJK III agreement and GE went into court to foreclose on Keitel, FJK and FJK III properties.

130. Keitel, FJK and FJK III was forced to agree to amended some of Callahan terms, since on reliance by Keitel/FJK/FJK III on Callahan's promise and commitment, Keitel personally and FJK/FJK III, dropped all counterclaims and affirmative defenses against GE, released their lawyer, and was now vulnerable to losing the property and over $10 million equity due to Callahan fraud, breach of oral agreement/contract

131. After the April 17, 2012 dual closing, the closing document were hundreds of pages, agreed on beforehand, Keitel realized that Callahan PJCF, White and HaileShaw fraudulently changed the terms of the loan overnight before the closing, in a classic "bait and switch scheme " without the knowledge or consent Keitel/FJK/FJKIII, intentionally defrauding Keitel in a return on investment for Callahan at the usury rate of

over 60%. Callahan stated that the switch in documents overnight was a mistake, never intended, Callahan's lawyer White would get it fixed and before rerecording  the title and mortgage  with the clerk's office.

132. Callahan and White never changed the terms, and in July-August 2014, refused Callahan  refused to accept full payment of the mortgage , with interest,  and take a Note for the fraudulent Participation Agreement,  so Keitel, FJK and FJK III could close on another mortgage at 5.5%.

133. Instead Callahan, PJCF instead sabotaged FJK/FJK III/ Keitel's ability to refinance at a 5.5% rate, holding the usury rate - participation of $1.6 million, by fraud, mail and wire fraud, fraud, as a weapon to prevent Keitel from refinancing, and charging a default interest of 25%, plus the $1.6 participation during the exact time Keitel was in a dispute with SR and JR Trustee for the  D'Agostino Trust and his sons, JR, and JD, G.P., and RLLP.

### FJK TEE JAY, LTD,  FJK TEE JAY, INC  AND  FJK IV  PROPERTIES, INC

134. Also beginning in 2012, Keitel as Manager of LTD, and President of INC, requested Karen Stein and SLG, long time accountants and CPA firm to the D'Agostino family, SR, ED, JR, JD, RLLP, GP, D'Agostino Trust,  and CPA's to LTD, and INC, conduct an audit to address the financial irregularities, tax evasion and fraud  involving the fraudulent payments of over $2,100,000.00 in illegal payments by Stein, SLG, JR, JD,  SR, from LTD, INC, from 2001 through 2012, to avoid SR and ED paying income taxes, a crime under the U.S. Tax Code, 26 U.S.C. 7201.

135. Unknown to Keitel, the 2012 request by Keitel to Stein and SLG  triggered an on-

going conspiracy by SR, JR, JD, RLLP, GP, Stein, SLG, and later 2013 by Shutts, Christu, Hart, Glick, Rose, King, RLLP, GP, (SR), Reis and Fox (2015), using LTD, INC RLLP,and others including, Webber, Anderson, Robinson, Zimmerman(herein referred "WARZ"), in 2016, UTS (2015), and Callahan, White, Adams, Woodfield and HaileShaw (2012 – 2018).

136.All Defendants in ADA and ADAD participated as an association-in-fact enterprise to

defraud Keitel and his companies FJK, FJK III, FJK IV and FCM out of

tens of millions of dollars in stock, real and personal property, falsely defamed and

ruined Keitel's credibility, through fraud,

tax evasion, perjury, suborn perjury, filing false and fraudulent pleadings, affidavits,

corporate documents, tax returns, illegal redemption of Final Judgment on

Foreclosure, placing an illegal mortgage on LTD, and backdating "default interest" in

September 2014 BY JR, JD, SR, LTD, IND, RLLP, Shutts, Christu, Hart, Rose

and King, to loot LTD, INC, FJK IV and Keitel out of over $12 million.

137. The Shareholders Agreement of INC was never changed, RLLP never owned any

shares in INC and never owned any stock in INC, despite the false and fraudulent

affidavit's corporate resolutions, organizational charts and motion and pleadings filed by

Eric Christu and Shutts & Bowen, LLP.

138. JD and JR continuously conspired with Christu, Hart, Glick, Shutts, Rose, King,

Reis, and Fox Rothschild, signed false and fraudulent affidavits, corporate resolutions,

statements, documents, and pleadings alleging that RLLP owned 50% of INC, from

inception when 'TEE JAY OF FLORIDA, G.P ("TEE JAY"), was the actual owner of 50% of INC stock, (not RLLP)

139. April-August 2012: JR, JD, RLLP and SR wanted JD, 25 year old investment banker, who claimed to be an expert in mortgage loans to head up refinancing-mortgaging of the LTD property, in foreclosure.

140. Unknown to Keitel, as president of INC general partner of LTD, that JR, JD, RLLP and SR met with a broker, and provided false and fraudulent financial information and withheld material information of foreclosure lawsuit, default and non-payment of property taxes from the broker and federal lender Archetype Mortgage Capital ('AMC'),, in a conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1344, to executes or attempt to execute a scheme or artifice to defraud a financial institution: or obtain any of the moneys, funds . . . by means of false or fraudulent pretenses, representations, or promises, and mail and wire fraud, 18 U.S.C. § 1341 and 1343 and New York, North Carolina and Florida criminal statutes, all predicate acts under the RICO statutes.

141. JR, JD, SR, individually and on behalf of RLLP, LTD and INC . committed violated mail and wire fraud, 18 U.S.C. § 1341 and 1343; and bank fraud, in violation of 18 U.S.C. § 1344, against AMC, a North Carolina lender, (acquired and name change June 19, 2013 to Starwood Property Trust NYSE: STWD) in violation of multiple federal and state: New York, Florida and North Caroline criminal statutes, to defraud the mortgage lender on a $4.8 million loan, and then in a separate incident mortgage fraud, mail and wire fraud by JR, JD, SR, RLLP who conspired to put the mortgage and deed in JR and JD's name only, without FJK IV or Keitel name, in another separate mail and

34

wire fraud on June 25, 2012 to defraud FJK IV and Keitel, out of their stock and interest in LTD and INC real property at 241 Royal Palm Way, Palm Beach, Florida (see Commitment Letter dated June 25, 2012).

142. In late August and September 2012, after three separate loan commitment letters by AMC all three backdated by the broker to June 25, 2012, even though Keitel received them July 2, 2012 and August 7 and 14, 2012.  Keitel as president of INC and LTD spoke with the broker Andrew Fechter, senior managing director, Pine & Seligman, 708 Third Ave, New York, NY, and discovered  that when JR, JD and SR met with a broker in New York, they provide false and fraudulent information and documents in violation of 18 U.S.C. § 1344, to defraud Archetype Mortgage Capital in North Carolina, failed to  notify the lender, that LTD was in foreclosure, behind on mortgage payments, taxes and other financial issues to commit fraud.

143. As a direct result of fraud, bank fraud and mail and wire fraud by JR, JD, SR, RLLP, G.P., on behalf of LTD and INC without Keitel's knowledge or consent AMC cancelled the loan commitment, and GE Capital who waited 4 months for the loan commitment immediately moved to foreclose LTD and INC

144. At all times in 2012, JR, JD and SR, RLLP and G.P. were purposely working behind Keitel's back to commit fraud, breach of fiduciary duty, causing the GE mortgage to go to foreclosure, so JR, JD, SR, Rose, King and others could devalue the price of LTD, and force Keitel and FJK IV to sell below market value.

145.On October 2 and 3, 2012, Robert King, attorney for SR, JR, JD, RLLP and GP sent  emails to JD and  SR, along with two other attorneys for SR, JR and JD, RLLP,GP

Andrew Rose indicting Keitel didn't know anything about their nefarious behavior or Breach fiduciary Duty to sabotage the LTD financing, defraud FJK IV and Keitel, out of their stock FJK IV, by tortuously interfering with GE Capital to defraud FJK IV and Keitel.

146. As a result of the actions of JD, JR, SR, RLLP and GP's breach of fiduciary duty and their lawyers King and Rose actions, and tortious interference with GE,  GE to impose default interest and penalties that caused severe damages to LTD, INC Keitel and FJK IV.

147 . Beginning in October 2012,  RLLP, G.P., JR, JD, SR, ED, King, Rose and others, including Shutts, Christu, Hart and Glick in 2013, conspired with each other, and others, including Robert Furr, Charles Cohen Heidi Feinman, Ariel Rodriguez (Oct.2015), and Heather Reis, Fox Rothschild , Peter Callahan, Wil White, Leslie Adams, Gary Woodfield and Haile Shaw, Richard Webber, Bradley Anderson, Kevin Robison and Zimmerman Kiser & Sutcliffe law firm and lawyers in 2016, in a long term association-in-fact all with the same common qualified purpose, to defraud Keitel, FJK, FJK III, FCM and FJK IV, out of over $40 million, in stock, real estate, distributions and profits on real estate investments owned by Keitel.

148. Keitel as President of INC and LTD was forced to sign a purchase and sale agreement to sell LTD for $10,200,000.00 (profit of over $7.5 million, plus distribution of $4 million) to avoid a foreclosure.

149. As a result of the actions of defendants JD, JR, SR, RLLP and G.P., King, Andrew Rose, CPAs Stein and SLG, the court entered a Final Judgment of Foreclosure (see Adv, Complaint Case No 16-01440-EPK).

150. On December 3, 2012, Jonathan and Thomas B. D'Agostino, Jr., filed a Complaint, on behalf of their partnerships, to stop the sale of LTD, and stated that G.P., owned 50% 0f INC stock:

"TEE JAY OF FLORIDA, RLLP, a Virginia Registered Limited Partnership and TEE JAY OF FLORIDA, G.P., a Virginia General Partnership vs. FJK-TEEJAY, LTD, a Florida Limited Liability Company, and FREDERICK J. KEITEL, individually and as President of FJK-TEE JAY Inc., a Florida Corporation", Case No. 502012CA02934XXXXMB-AO.

151. The complaint states in first paragraph: "COME NOW Plaintiffs TEE JAY OF FLORIDA, RLLP, (TJFR), a Virginia Registered Limited Partnership and TEE JAY OF FLORIDA, **G.P., (TJFG**) a Virginia General Partnership by and through its undersigned attorney , and sues  FJK-TEE JAY, LTD, (FTJ)  a Florida Limited Liability Company and FREDERICK J. KEITEL, (KEITEL) individually, and as President of FJK-TEE JAY Inc., a Florida Corporation, and states":

152. The complaint states In paragraph # 2: "Plaintiff TJFG and Properties each own 50% of the shares of FJK – TEE JAY, Inc, (GP) which owns 1% interest in FTJ and acts as Genera; Partner of FTJ."

153. The lawsuit was approved and filed on behalf of Jonathan D'Agostino, Thomas B D'Agostino, Jr  and their companies "TEE JAY OF FLORIDA, RLLP and TEE JAY OF FLORIDA, G.P was based on the SHAREHOLDERS AGREEMENT FOR  FJK TEE

JAY, INC. (The Corporation), signed by Thomas D'Agostino, Jr.,  as General Partner of TEE JAY OF FLORIDA, **G. P**. on December 30, 1998.

154.  The Shareholders Agreement of INC was never changed, RLLP never owned any stock in INC despite multiple false and fraudulent affidavit's corporate resolutions, organizational charts, motion and pleadings filed by JD, JR, G.P., Shutts, Christu, Hart, Rose, INC and LTD (May 2013-January 2022),and Reis, Fox, Webber, Anderson, Robinson and Zimmerman (2016-2019), to defraud Keitel, FJK IV and FCM.

155. On January 14, 2013, SR, King, Rose and JR, JD, RLLP illegally redeemed the Final Judgment on Foreclosure, through mail and wire fraud, fraud in the redemption of property through the court, when Rose claimed to be LTD and INC counsel to redeem the property, that could only be redeemed by Keitel, as president of INC, as general partner of LTD (see Judge Cox's June 6, 2013 order and opinion in the transcript).

156. Rose, Christu, Shutts, RLLP, SR, JR,JD, conspired to file a false and fraudulent Motion for Indirect Criminal Contempt against Keitel, and maliciously attempted  to prosecute the offense for months, without standing, in violation of court orders,  which was dismissed and vacated on June 6, 2013, after a 3 hour hearing, who accused Christu and Rose of violating court order

157.  On May 8, 2013, Jonathan D'Agostino, signed a Verified Derivative Counterclaim notarized in New York County, New York, on behalf of RLLP and his brother Thomas D'Agostino, Jr,  (an officer and Director of INC), prepared and filed by RLLP's  law lawyers, Shutts',  Christu, Hart and Rose, falsely stating that RLLP was  50% owner of INC. (Rose filed 12/3/12 Complaint for RLLP and G.P, stating G.P. owned INC stock).

158. JD, JR, RLLP, Shutts, Christu, Hart and Rose deliberately didn't attach the INC Shareholders Agreement (INC-SHA"), the controlling document, providing G.P. owned INC stock, and instead used a false/fraudulent chart stating RLLP owned INC stock.

159. At all times from May 3, 2013 until present JD, JR, RLLP, Shutts, Christu, Hart, Glick, Rose, LTD and INC, and Reis, Fox, Webber, Anderson, Robinson and Zimmerman in 2016  willingly join the association-in-fact enterprise of racketeering activities, multiple predicate acts below, conspired to deliver through mail and wire fraud, affidavits, charts, perjury, suborning perjury falsely claiming RLLP owned 50% of INC,  instead of addressing the Shareholder Agreement of FJK-Tee JAY, INC (Corporation), the controlling document of INC, caused over $30 million in foreseeable damages to FJK IV and Keitel's businesses, property (FCM), stock and money.

160. At all times, defendants JD, JR, RLLP, G.P., LTD, INC, Shutts, Christu, Hart, Glick, the following corporate resolutions, letters, sworn affidavits, charts, motion, pleading signed by JD, JR, RLLP, prepared by Stein, SLG, Christ, Hart, Shutts, Rose, Glick (2016 by Reis Fox, Webber, Anderson, Robinson, Zimmerman) were all false and fraudulent, with the intent to commit, and did commit the following federal and state violation

161. JD, JR, RLLP, Stein, SLG, Christ, Hart, Shutts, Rose, Glick, LTD, INC  (Menor, Farrell), violated the more than 20 counts of fraud, under 18 U.S.C. 47, Fla. Stat. § 817.034 Florida Communications Fraud Act, and more than 20 each of counts of the following: mail and wire fraud by ARD's and all ADAD's in violation of mail and wire fraud 18 U.S.C. § 1341 & § 1343; 18 U.S.C. 47, Fla. Stat. § 817.034 Florida Communications Fraud Act,  bank fraud18 U.S.C. § 1344, by JD, JR, RLLP, G.P., SR,

39

Stein, SLG, (April 2012 to September 10, 2012); and intent to defraud on a federally back mortgage in violation of 18 U.S.C. § 1344, and 18 U.S.C. § 1341 & § 1343 by JD, JR, RLLP, Stein and SLG; fraud Fla. Stat. § 775.082 and mail and wire fraud 18 U.S.C. § 1341 & § 1343 against Palm Beach County Clerk's Office in the illegal redemption of final judgment of foreclosure and conspiracy to commit fraud January 12-14, 2013 (Fla. Stat. § 775.082) by SR, JR, King, Rose, Christu, JD, JR, RLLP and G.P., multiple counts of tax fraud and tax evasion 2001- 2016, by Sr, ED,JR, JD, RLLP, G.P., Stein, SLG violation of 26 U.S.C. 7201, from 2001 through 2014 by JR, SR. ED, JD, RLLP, G.P., Stein, SLG, and by Christu, Hart, Shutts, Glick, JR, SR. ED, JD, RLLP, G.P., Stein, SLG 2012 through 2022; mortgage fraud by JR, JD, RLLP, G.P., INC, LTD, Stein, SLG Christu, Shutts, Rose, King, Hart, Shutts mortgage fraud and usury (Fla. Stat. § 687) beginning about September 16, 2014 and continuing to 2022, more than 10 counts of perjury by JD and JR, in violation of Fla. Stat. § 837.02 and Fla. Stat. § 837.03; more than 10 counts of suborning perjury by Christu, Hart, Glick, Shutts, Rose 2013 to 20121 and Reis and FOX 2016 – 2018, in violation of Fla. Stat. 775.082 775.083: and more than 30 counts of mail and wire fraud in violation of 18 U.S.C. § 1341 & 1343 on each and every document, affidavit, chart, motion, pleading mailed, wired and/or emailed intentionally filed meant to defraud FJK IV, Keitel, FCM, on date and incident indicated below:

162. All defendants in RICO in ARD and in Derivative Action ADAD, committed mail and wire fraud 18 U.S.C. § 1341 & § 1343 on each and every incident below and willingly participated, and jointly managed and operated an enterprise through a pattern of

racketeering activity, in an association-in-fact group for the common purpose of committing RICO offenses and Keitel, FJK, FJK III, FCM and FJK IV.

(1). 2001 – 2012, SR and ED collected more than $2.1 million t with disclosing to the IRS, tax fraud, evasion 2001- 2016, by Sr, ED,JR, JD, RLLP, G.P., Stein, SLG violation of 26 U.S.C. 7201, from 2001 through 2014 by JR, SR. ED, JD, RLLP, G.P., Stein, SLG, and by Christu, Hart, Shutts, Glick, JR, SR. ED, JD, RLLP, G.P., Stein, SLG.

(2).March 2012 through January 2013, bank fraud, 18 U.S.C. § 1344 by JR, JD, RLLP, G.P., Rose, King against Archetype Capital;

(3) March 2012 through February 2016, 18 U.S.C. § 1341 & § 1343 more than 20 occasions, Callahan, PJCF, White, Adams, Woodfield, HaileShaw against FJK, FJK III, Keitel including April 17, 2012 bait and switch of mortgage document, to defraud FJK, FJK, Keitel 18 U.S.C. 47, Fla. Stat. § 817.034 Florida Communications Fraud Act, and multiple counts of mail and wire fraud in the collection of legal fees 18 U.S.C. § 1341 & § 1343, including bankruptcy court, November-February 6, 2016 HaileShaw, White, Adams , Woodfield;

(4). July 9, 2013, JR,JD, RLLP, G.P., LTD, INC, Christu, Hart, Shutts, Rose signed false and fraudulent corporation resolutions firing Keitel as president of INC and board member, appointing JD, based on fraud, perjury, suborning perjury, that RLLP owned 50% of INC stock,

(5).Stein and SLG refused to turn over LTD and INC books and records to Keitel, so tax returns could be filed multiple counts of tax fraud and tax evasion 2001- 2016, by Sr, ED,JR, JD, RLLP, G.P., Stein, SLG violation of 26 U.S.C. 7201;

(6).July 9, 2013: Action by Written Consent of Shareholders of FJK-Tee Jay, INC., signed by JR & JD.

(7) July 9, 2013: Action by Written Consent of Directors  of FJK-Tee Jay, INC., signed by JR and JD.

(8) On July 9, 2013 Jonathan D'Agostino, and Thomas D'Agostino, Jr, separately signed on behalf of **Tee Jay of Florida, RLLP**,  two separate false and fraudulent corporate resolutions:  ACTION BY WRITTEN CONSENT OF THE SHAREHOLDERS OF FJK Tee Jay, Inc. stating:

"WHEREAS **Tee Jay, Inc** is owned equally by two Shareholders, FJK IV Properties, Inc ("FJK IV") and Tee Jay of Florida, RLLP ("TJF"):

(9) There is no such corporation called Tee Jay, Inc, registered or owned by either Jonathan D'Agostino, and/or Thomas D'Agostino, Jr., in Virginia or Florida.

(10) Since Tee Jay of Florida, RLLP was never  a shareholder of FJK TEE JAY, INC., neither Jonathan D'Agostino, and/or Thomas D'Agostino, Jr couldn't  sign the resolution on behalf of RLLP and INC, committed fraud, breach of fiduciary duty owned to FJK IV and Keitel, as president of INC wire fraud 18 U.S.C. § 1341, mail and wire fraud 18 U.S.C. § 1341 & § 1343; 18 U.S.C. 47, Fla. Stat. § 817.034 Florida Communications Fraud Act;

(11). July 9, 2013:  Corporate Resolution: SHAREHOLDERS AGREEMENT FOR  FJK TEE JAY, INC., signed by JR and JD list the corporation as: **Tee Jay, Inc.,**  being equally owned by FJK IV and RLLP.

42

(12). July 19, 2013.  Christu-Shutts, Rose, JR, JD, RLLP, G.P., INC and LTD fraudulent letter to Keitel notifying him that on behalf of JR, JD, RLLP , INC and LTD informing Keitel, that he has been removed as president of INC and as a director in INC and LTD, by RLLP, JR and JD, with attached Action by Written Consent of Directors  of FJK-Tee Jay, INC., dated July 9, 2013 and Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by JR & JD; Both documents list Tee Jay, Inc being equally owned by FJK IV and RLLP.

(13) Stein, SLG, JR, JD, RLLP, G.P. LTD, INC from 2012 until 2016 deliberately conspired to withhold corporate tax returns for 2013, 2014 and 2015 to defraud FJK IV and Keitel, for a 3 year period, while they looted  LTD rental payment to pay illegal fraudulent mortgage payments to SR, for $1.9 million, deplete funds and prevent distributions to FJK IV, mortgage fraud and usury (Fla. Stat. § 687), fraud Fla. Stat. § 775.082  and mail and wire fraud 18 U.S.C. § 1341 & § 1343.

(14) As a result  of JR, JD, RLLP, G.P.,INC, LTD, Stein SLG, with Shutts, Christu, Hart, Rose, SR, King,  conspiracy to defraud FJK IV and Keitel, the IRS issued Demand for Tax Liability to LTD  in 2013, 2014 and 2015 multiple counts of tax fraud and tax evasion 2001- 2016, to defraud FJK IV and Keitel.

(15). November 22, 2013: Christu-Shutts again published a Letter, Notification Removal of Keitel  as counsel for FJK-Tee Jay, LTD.,  Wells Fargo Bank, N.A. vs. FJK-Tee Jay, LTD and INC., Case No. 502012CA004665XXXXMB-AN:  FJK-Tee Jay, LTD., et al., vs. Thomas B. D'Agostino, Sr., Case No. 502012CA023240XXXXMB-AN, again Shutts, Christo, hart, JR, JD filed same fraudulent exhibits, in 10-12 counts of  violation of mail

43

and wire fraud 18 U.S.C. § 1341 & § 1343; 18 U.S.C. 47, Fla. Stat. § 817.034 Florida Communications Fraud Act.

(16). September 19, 2014:  SR, JR, JD, GP, RLLP, King Rose (Christu and Shutts), filed an illegal backdated first mortgage on LTD for $4.7 million, then paid $1.9 million in illegal backdated fraudulent interest, in violation Fla. Stat. § 817.034 Florida Communications Fraud Act, wire fraud 18 U.S.C. § 1341, mail and wire fraud 18 U.S.C. § 1341 & § 1343; 18 U.S.C. 47, Fla. Stat. § 817.034 Florida Communications Fraud Act,

(17) LTD and INC had no mortgage from January 14, 2013, until September 19, 2014, fraud mortgage by until JR, JD, RLLP, G.P., LTD, INC, SR, King, Rose, Shutts, Christu,

(18). October 2, 2014: Shutts, Christu Hart sent another letter notifying Frederick J. Keitel, III of INC and LTD removal of Keitel as counsel with all fraudulent documents, wire fraud 18 U.S.C. § 1341, mail and wire fraud 18 U.S.C. § 1341 & § 1343; 18 U.S.C. 47, Fla. Stat. § 817.034 Florida Communications Fraud Act.

(19). November 10, 2014: Demand Civil Theft Demand Pursuant to Fla. Stat. Sec. 772.1, by LTD, INC and RLLP,  Jr, JD draft by Shutts and Christu, for approximately $750,000.00, tremble damages of $2,225,000.00, based on same false affidavits, wire fraud 18 U.S.C. § 1341, mail and wire fraud 18 U.S.C. § 1341 & § 1343; 18 U.S.C. 47, Fla. Stat. § 817.034 Florida Communications Fraud Act.

(20). November 22, 2013: Christu-Shutts Letter notification Removal of Frederick J. Keitel, III as counsel for FJK-Tee Jay, LTD.,  in cases:  Wells Fargo Bank,  Case No. 502012CA004665XXXXMB-AN:  FJK-Tee Jay, LTD., et al., vs. Thomas B. D'Agostino, Sr., Case No. 502012CA023240XXXXMB-AN, again with same fraudulent documents,

violation of 18 U.S.C. § 1341, mail and wire fraud 18 U.S.C. § 1341 & § 1343; 18 U.S.C. 47, Fla. Stat. § 817.034 Florida Communications Fraud Act

(21). May 14, 2014,  G.P., RLLP, JR, JD, Rose, Shutts, Christu, Hart, LTD, INC  filed their second Motion to Termination Keitel, Case No. 50-2012-CA-004665XXXXMB-AN: with fraudulent documents attached, in violation of Judge McSorley, Judge Brunson (Nov 28, 2012),  and June Cox's (June 6, 2013 Orders prohibiting RLLP, JR, JD, Shutts & Bowens, and Eric Christu from appearing in Wells Fargo, violation of 18 U.S.C. § 1341, mail and wire fraud 18 U.S.C. § 1341 & § 1343; 18 U.S.C. 47, Fla. Stat. § 817.034 Florida Communications Fraud Act

163. Keitel opposed the nominations of Judge Sasser to the U.S. District Court, Southern District of Florida (2014), and 4th DCA, (with other lawyers), Judge Sasser hated Keitel, did everything in her power to stay on Keitel's cases and destroy him, ruling against substantial evidence.

164. From January 2014 until her death in 2019, Judge Sasser's hatred Keitel, and anyone who opposed to her unsuccessful nominations to U.S. District Court and 4th DCA, she refused to recuse herself.

165. Shutts, Christu, Glick, Hart, JR, JD, SR, RLLP, D'Agostino Trust used her hatred against Keitel, negative influence on Judges Goodman and Oftedal,  both ruled against substantial evidence based on fraud, mail and wire fraud introduced by fraudulent affidavits, documents by  Shutts, Christu, Glick, Hart, after Trustee Webber was appointed, refused to allow Keitel to intervene, filed affidavits, and dismissed all FCM and FJK IV counterclaims, affirmative defenses and fired FCM, FJK IV lawyers.

166.  March 2015, Shutts, Christ, Hart, JD, JR, RLLP,G.P., LTD, INC file their 4th Motion to Terminate Keitel, as Counsel Case No 502014CA003785XXXXMB-AJ. with same perjured affidavit, fraud, JD falsely, while  testified that RLLP owned INC stock, and Judge Goodman first case (mentored by Sasser from his chambers), ruled against Keitel, dismiss him as counsel, and although not plead, made it retroactive 2013.

167. Keitel chose to out his companies into bankruptcy to get out of state court, Judge Sasser, and her sister,  Assistant USA,  called on friends in the Bankruptcy Court, UST, Feinman and Shutts lawyers, Glick, to threaten Keitel, as she allowed Christu Glick, Hart to introduce  the false/fraudulent affidavits and documents and granted a summary judgment against FJK IV, based on RLLP owner of INC stock, after Keitel was denied motion to intervene, by Judge Kimball, Webber and Shutts lawyers , Webber refused to file Fla R. Civ. P 1.540 to overturn judgment based on fraud, mistake excusable neglect.

168. December 21, 2015 deposition of Christu, who pull away documents for Keitel, after realizing that they showed that LTD fraudulently paid $430,000+- for SR's legal invoices, to defraud FJK IV of  distributions, using mail and wire fraud, fraud, conspiracy, tax fraud.

169. January 2016, JR, JD, RLLP, LTD, INC conspired with Shutts, Christu, Hart, Glick, Reis, Fox, when they signed false/fraudulent Adv. Proc complaint (16-01440-EPK, that RLLP owned 50% of INC, from inception  sent through mail and wire fraud.

170. Plaintiffs were fighting against 30+ defendants, Judges Kimball, Sasser, Oftedal, Goodman, after Sasser defamed Keitel to every judge.

171. February 5, 2016, Keitel's  lawyers wired SR's Shutts  lawyers Larry Glick,
$4,431,615.55 to release FJK IV stock held in escrow by Shutts & Bowen as court
appointed escrow agents, but Shutts, Christ, Glick and Hart  who had multiple conflicts
of interest, and represent, RLLP, LTD, INC, JR, JD and SR, refused to give Keitel back
his FJK IV, Keitel fired Furr & Cohen for fraud, and  Keitel never got his stock back.

172. Keitel owned FJK IV,  LTD  and INC stock from 1998, until defendants Jonathan
D'Agostino ("JD"), and Thomas D'Agostino, Jr, ("JR"), individually and as officers and
directors of LTD, INC, RLLP, G.P., ED, SR and JR as Trustee for D'Agostino Trust, and
their lawyers,  Andrew Rose, Robert King, Eric Christu, Larry Glick, Jonathan Hart,
Farrell, Menor and Stein, SLG, Shutts & Bowen LLP, (as escrow agents for FJK IV
Properties, Inc.), , refused to give distributions for 9 years, threatened Keitel banker in
the U.S. federal courthouse when Fred Latsko showed up to testify, and tender
cashier's checks and pay all judgment to help Keitel. Redeem his FJK IV stock.

173. Shutts, Christu, Hart, Glick, Menor and Farrell conspired to committed fraud
before, during and after the Palm Beach Sheriff's Sales, even after Keitel tendered
$2,325,000.00, in multiple egregious criminal  racketeering violations  to defraud Keitel
out of his FJK IV stock to prevent this RICO and Derivative lawsuit

174. Beginning in October 2015, Judge Sasser, (Keitel's nemesis), acting outside of her
judicial capacity as a judge, requested directly or indirectly, special favors from the U.S
Trustee's office, Shutts & Bowen lawyers and Robert Furr, a prominent U.S Panel
Trustee (and Keitel lawyer) and the U.S bankruptcy court, to interfere with and force
Keitel through duress, threats and extortion to dismiss both Sasser's, (and Shutts and
their lawyers) from a civil lawsuit filed in Palm Beach Circuit Court.

47

175. Keitel refused for 2 months until the pressure and threats were so great that he would have all his assets seized, that in December 2015, Keitel agreed to a quid pro quo with the brokered by his own lawyer, Furr with the UST Feinman and Rodriguez and Judge Hyman to reinstate one of Keitel's cases, if he agreed to file a dis missal of all claims against the Sasser's, which he did on December 12, 2015.

176. However, since Keitel refused to dismiss Shutts & Bowen, LLP, Christu Hart and other, Furr, and his firm turned on Keitel, continued to threat and extort Keitel, with Feinman, Rodriguez, and Shutts, Christu, Glick and Hart.

177. On January 13, 2016, against Keitel's specific instruction to put off the sale of his properties, FJK and FJK III, Keitel then fired Robert Furr.

178. April 2016, PBSA and PBPD began  investigation into allegation of corruption, case fixing, extortion, threats based on an audio recording against Furr and Feinman.

179. May 2016, Judge Hyman permanent law clerk intentionally mislead the PBPD and PBSA investigating extortion and threats.

180. July 13, 2016:  Hon. Paul G. Hyman, Chief Judge orders investigation into corruption, case fixing, extortion and threats against Feinman, UTS, Robert Furr, recuses himself, assigns case to Judge Kimball, only other judge in West Palm Beach Division (Judge Hyman acknowledges Kimball's conflicts), and named Keitel as witness investigation involving Judge Sasser interference against Keitel (Oct. 2015).

181. Keitel was persecuted by U.S Trustee, Feinman, Rodriguez, Assistant U.S. Trustee, Steven  Turner, Judges, Hyman and Kimball, Shutts, Fox, \opposing counsel seeking to take advantage of Keitel during the corruption investigations from October

48

2015 in a managed and operated enterprise, through a pattern of racketeering activity including extortion, threats, fraud, perjury, quid pro quo deals against Keitel by U.S Trustee, Judges, lawyers, using interstate mail and wire fraud, perjury, suborning perjury, filing false and fraudulent affidavits.

182. Defendants  Shutts, Christu, Hart, Glick, JD, JD, RLLP, INC, LTD  Reis, Fox and Webber, Anderson, Robinson and Zimmerman ("WARZ"), individually and jointly drafted, prepared and filed motions, pleadings, answers  and documents, in a complaint, Adv. Proc. 16-01440-EPK, that they knew were false and fraudulent on their face,  while they drafted, filed and sent them through mail and wire fraud, after filing was a fraudulent  claim in the bankruptcy court in January 2016

183. All pleadings filed by JR, JD, RLLP, LTD, INC and Shutts are based on false and fraudulent affidavits and documents, including that RLLP, a limited liability partnership falsely owned stock in INC, Subchapter S corporation beginning in 1998, despite having no ownership interest in INC.

184. The  FJK-Tee Jay, INC Shareholders Agreement,  ("INC-SHA"), is clear on its face, RLLP never owned stock in INC, and all defendants named herein both RICO and Derivative action had common purpose and scheme to defraud plaintiffs Keitel, FJK IV and FCM out of real estate, property, personal property-stock, and money, while acting in an illegal and criminal manner, outside their scope of their roles in their individual companies, corporations, partnerships, and/or law firms.

185. In August 28,  2016, Reis, Fox, Christu, Hart, Glick, Shutts JD.,JR, RLLP filed a false and fraudulent complaint on behalf of RLLP and LTD,  *Complaint to Determine*

*Debt and Determine Dischargeabilty* , DOC. 1, Case No 16-01440-EPK, to defraud Keitel out of personal and real property, stock and distributions, dividends, profits and equity of over $15 million, while Christu and Shutts were supposed to be escrow agents protecting FJK IV and Keitel's rights in FJK IV stock, and all ARDs' and ADADs, knew that Judge Kimball was so conflicted, that he would, and did rule against Keitel on each and every issue from August 2016 until case closed on May 12, 2020, and then reopened  the case in an oral decision in January 26, 2022, before reversing himself on January 28, 2022; and during the same time,  Shutts lawyer Larry Glick secretly and nefariously funneling deposition documents of Furr, to UTS senior trial lawyer, Feinman, both under investigation, an obstruction of justice, to help her coordinate her testimony, with Furr's, to impede and obstruct.

186. On November 16, 2016, Judge Kimball on motions from UTS, Furr, Shutts and Reis and Fox converted Keitel's Ch 11 case to a Ch 7, and seized all Keitel's assets (as threated by UTS Feinman, Furr and others in Oct. 2015), appointed Webber.

187. On December 15, 2016, Judge Kimball , took evidence including audio recording and all documents from Keitel, in chambers, in camera, alone, refused to allow or invite interested parties, counsel or U.S Trustee's office or law enforcement, to view the material evidence, then intentionally misrepresented the contents and criminal conduct of Robert Furr, sealed the evidence to cover up criminal conduct implicating the Furr, Feinman, UST  and Chief Judge, so law enforcement can't view evidence.

188. Judge Kimball's actions without criminal jurisdiction  prevented law enforcement: U.S Attorney Office, ("USA"), FBI, U.S Trustee's Office, ("UST"), Palm Beach State

Attorney's Office ("PBSA") and Palm Beach Police Department ('PBPD') from viewing any of the material evidence during 2 on-going investigations.

189. Judge Kimball intentionally impeded, obstructed two federal/state investigations, lied about the contents, began a three  year vendetta to retaliate, punish and falsely discredit Keitel as a material witness, in violation of  18 U.S.C. § 1505, 1510, 1512 and 1513,  with all Defendant in both the RICO, Derivative action attacking Keitel, FCM and FJK IV, with Judge Kimball, Judge Sasser and Judge Oftedal.

## Most Important Issues with Substantial Evidence for Plaintiffs FCM and FJK IV

190.  (i) who owned INC according to the INC Shareholders? See first paragraph:  FJK IV and Tee Jay of Florida G.P., a Virginia general partnership own INC stock.

(ii), why didn't Webber contest or submit any of the following evidence on June 26, 2017, for  Plaintiff D'Agostino Trust Motion for Foreclosure on FCM-237 Brazilian Ave; (i) forensic export report that FCM and Keitel paid off the entire mortgage and over paid by $880,000. With $1,230,000.00 wire payment on March 15, 2005, (with 12 different accounting scenarios); (ii)  Judge Brunson issued Order Denying  Motion for Partial Summary Judgment on April 25, 2016, on payment, Foreclosure and  res judicata with the same exact facts and sent for trial, (iii)  April15 and May 6, 2015 (see 235 page Transcript) in a nine hour evidentiary hearing before Chief Judge, who opined SR not believable regarding, didn't believe $1,230,000.00 wire payment was a gift, and not partial payment of $2 million mortgage;;  (iv) 4th DCA decision denying same issues:  (v) Richard Jarolem,  FCM lawyer's sworn affidavit attesting to strong case and full payment no res judicata and (vi) why did Webber dismiss all counterclaims, affirmative

defenses, and affidavits for June 26, 2017,  hearing which would have defeated the foreclosure with a one day  "jury trial',  with the exact same evidence and testimony in front of Judge Hyman on April; 15, 2015 when he believed Keitel, and thought SR was "not believable" and lacked credibility; (iii) why didn't WARZ either (a) submit Keitel's affidavit or (b) argue, that RLLP had no standing, never owned FJK IV stock and request dismissal of the case based on fraud, perjury, suborning perjury by JD, JR, RLLP, Shutts, Christu, Glick and Hart?

191. All defendants ARD, and ADDA allowed the court(s), to rule against substantial evidence , fraud and perjury to retaliate against Keitel, who was defenseless, barred from participating and denied intervention into the FCM and FJK IV cases.

**All Defendants in both the RICO action and Derivation action had the  Same Common Purpose and Goal, and  Engaged in an Association-in-Fact Enterprise through a Pattern of Racketeering Activities, that Included at Least One Predicate Acts for Each Defendant, but most committed multiple Acts Under 18 U.S.C. § 1961, § 1962 and  § 1962(d); Fla. Stat  § 895.01 - § 895.05, New York Penal Law Article  460, known as Crime Control Act Federal RICO Action and Fla. Stat. 620.2002, Florida Business Corporate Act ("FBCA"),  Derivative Actions under FRCP 23.1, NYBCL § 626. (b) and Fla. Stat. § 620.2002(2), FCBA. Fla. Stat. §617.07401,that Caused Over  $40 Million in injury to Plaintiffs' Business, Property, Stock, Assets with the following results:**

192. The common purpose of all Defendants was to prevent Keitel from either mortgaging, refinancing, redeeming repurchasing FCN from Trustee and/or getting his assets back in Sheriff's Sale , so he reaps the equity in each property and/or FJK IV stock, due to fraudulent financials to prevent distributions to FJK IV-Keitel.

193. Every defendant was relying on Judge Kimball, Judge Sasser and Judge Oftedal, especially after Keitel filed sealed documents  in his Emergency Motion to Disqualify Judge Erik P Kimball, on October 26, 2017, with transcripts, proving beyond a

reasonable doubt, that Judge Kimball lied about material evidence, sealed and covered up the criminal conduct, to prevent the FBI, USA, UTS, UTA Criminal Division and PB State Attorney and PBPD from viewing the evidence, proving Keitel was truthful.

### July 2014 – 2016  Callahan, PJCF, Mortgage FJK, FJK III, Keitel and FCM

194. In July 2014 – May 2015 Callahan  refused to accept full payment with interest and take a Note for the fraudulent Participation Agreement,

195. Callahan, PJCF, White, Adams and HaileShaw conspired, deceived, sabotaged and defrauded plaintiffs, held Keitel/FJK/FJKIII assets and properties hostage, while charging a 25% default rate, plus 10% fee above the Palm Beach County property appraisal of $8.7 million, for a return on cash of almost 80% in a mail and wire fraud, mortgage scam, under 18 U.S.C 1341 & 1343, and Florida Usury law, to prevent FJK/FJK III/Keitel from refinancing with new lenders at 5.5% interest rate.

196.   During the same time, White, Adams, Woodfield, and Callahan  were attempting to defraud Keitel, force him to sell FJK and FJK III for a 25% discount to $24.5 million value to a HaileShaw client,  FRI INVESTORS, withholding key information, that White was a board member, FRI was a client, and White and HaileShaw were billing Keitel.

197. Callahan, PJCF, White Woodfield, HaileShaw  were also secretly interfering with GE Capital's first mortgage, which Callahan brought for $10.6 million to foreclose on Keitel, behind Keitel's back, causing Keitel/FJK/FJK III to file for bankruptcy to prevent Callahan PJC, HaileShaw, and White from personally gaining over $11 million profit.

198. Callahan, PJCF, White, HaileShaw, Adams and Woodfield, filed White's sworn affidavit in the bankruptcy court, under penalty of perjury with the proof of claims, that Fair Market Value of FJK/FJK III, property is $24,500,000.00.

199. During the same period, White, Adams, Woodfield and HaileShaw were fraudulently inflating their fees and double billing invoices, sent and filed fraudulent invoices in violation mail and wire fraud, for total of $336,000.

200. White and HaileShaw were over billing FJK, FJK III and Keitel on behalf of Callahan and PJCF for (1) work on the fraudulent Participation Agreement and closing (2) representing their client, FRI in attempting to buy FJK and FJK III (3) Callahan and PJCF mortgage closing and (4) bankruptcy work, as a result of HaileShaw, White Callahan and PJCF own actions with fraudulent Participation Agreement.

201. At all times, HaileShaw and White's knew the invoices were fraudulent, billing for almost 958 hours.

202. At all times beginning in March 2012 to December 2017, Callahan, White HaileShaw, Adams and Woodfield engaged in, managed and operated an enterprise through a pattern of racketeering activity, including threats, extortion, fraud, bank and mortgage fraud, using mail and wire fraud under 18 U.S.C. 1341 & 1343 and interstate banking system and Florida law, by bait and switch tactics.

203. At all times, Callahan, PJCF, White and HaileShaw conspired to, threatened, defrauded and interfered with Keitel, FJK and FJK III business relationship with GE Capital, by their last minutes **extortion, threats** and tactics to gain an advantage over

Keitel, FJK and FJK III, after acting as a confidential fiduciary advisor to Keitel, FJK and FJK III, breached that fiduciary duty, to take advantage of and defraud Keitel, FJK, FJKIII, to steal buy the GE Capital's first mortgages, foreclose and take prime, first class properties, FJK, FJK III and $11 - $15 million in equity.

204. As a result of the fraud, tortious interference with GE, usury interest, Keitel's forced to sell the building, and wanted his file sue Callahan PJCF, White and HaileShaw, for fraud in the bankruptcy case even though Callahan was his Father-in-law.

205. In January 2016 Callahan agreed that instead of a lawsuit, that he would finance Keitel's FCM development, for $5.2 million (taking Keitel's friend/banker Louis Capano's place. (Capano had $90 million in 1031 exchange money, and was one of Delaware's largest home/apartment and commercial builders), put up supersedeas bond because Keitel was developing townhouses for Callahan's daughter, Keitel's wife, Keitel doing a 1031 exchange save $3.4 million in taxes and get back his FJK IV stock held by Shutts as escrow agents.

206. In furtherance of the fraud, Callahan even had Keitel talk with Callahan's accounting firm to set up the details, including the tax implications, and Bessemer Trust to arrange for the Supersedeas Bond, to bond off a FJK IV judgment, and Keitel set up a 1031 Exchange account with an independent company as required under IRS rules for the tax free exchange.

207. Keitel had a private plane ready to fly the documents at the last minute at closing so they would be timely filed with the Palm Beach County Clerk's Office, and at the last second, the day of the closing.

208. Callahan breached the  agreement, (knowing it was too late for Capano to come to the rescue), causing Keitel/FJK/FJK III, FCM (and FJK IV Properties, Inc., another Keitel property), the following damages (a) loss of FJK IV stock valued at $8 million that supersedes bond would recover; (b) loss of the $5.9 million that was set to go into escrow to save taxes and be used for FCM mortgage (c ) loss of FJK and FJKIII 1031 tax exchange making FJK, FJK III and Keitel personally liable for taxes in excess of $3,400,000.00, which defendants Callahan and HaileShaw knew about, before their maliciously actions, and (d) loss of the FCM investment worth $11 million.

209.. As part of Keitel's bankruptcy plan, Keitel needed a one page firm commitment letter for the court, proof that Keitel/FCM had a firm commitment for the $5,200,000.00 loan to develop the FCM property, even though White appeared in court, months before and told the Court Callahan would fund the project, he never did.

210. On February 5, 2016, hours prior to the closing Keitel of FJK and FJK III building, Callahan, PJCF, White and HaileShaw again reneged, breached their agreement and oral contract costing Keitel in excess of $15 million in damages and taxes, and continued their enterprise to defraud Keitel, even though Callahan collected his money, White, Adams, Woodfield and HaileShaw collected their fraudulent inflated legal fees.

211. When Callahan breached his agreement to Keitel, even though Keitel paid the full judgment, $4,431,615.55,   Shutts Glick, Christu, SR  refused to return Keitel's FJK IV

stock on February 5, 2016 after Keitel's lawyer, Furr wired the full amount to Shutts/Glick to paid the entire judgment.

## Florida Capital Management - D'Agostino Trust Evidentiary Hearing

212. April15, 2015 and May 6, 2015 Judge Hyman held a nine (9) hour evidentiary hearing on the FCM case and opined on 8 separate occasions that he didn't believe SR's testimony, that Keitel's payment of $1,230,000.00 "was a gift" and that the testimony flew in the face of credibility. (also see para. 190(ii)).

213. The substantial evidence, wire transfer, the Note and warranty deed all had the FCM- Boose Casey client ID number, and Judge Hyman didn't believe D'Agostino's testimony.

214. King fraudulently misappropriated the funds from the D'Agostino Trust, and in violation of 18 U.S.C. 1341 & 1343 mail and wire fraud, sent the money directly to SR and ED personal account , instead of D'Agostino Trust, without ever recording it as a partial repayment and reduction of the FCM $2,000,000.00 first mortgage, D'Agostino testified he never reported it to anyone or paid taxes, in violation of the IRS code on tax evasion and fraud, and in violation of federal tax laws, and New York State Charitable Trust and Estate laws.

215. Shutts was the escrow agent still holding Keitel's FJK III stock in escrow, when Christu, Hart, Glick, Sr, King and others conspired to defraud Keitel, by perjury, suborning of perjury, by having King falsely bolster the false testify of Sr, falsely testifying that King never represented the Thomas B D'Agostino, Sr., and Elzbieta M. D'Agostino 1997 CRT Trust Charitable ("Trust"), Trust in 2005 when King received a

wire transfer of $1,230,000.00 from Charles Lubitz, Esq., Boose, Casey , Ciklin, Lubitz et al.,  to Robert L. King Trust Account on March 15, 2015 on behalf of Client File No. K689-39606.

216. . The Chief Judge of the U.S. Bankruptcy court held  nine hours of evidentiary hearing, observed the demeanor of SR, King and Keitel, and stated and opined that in his opinion, the court  didn't believe SR, didn't  believe his testimony, found he lacked credibility, and Judge Hyman stated 8 separate times that D'Agostino was not believable (see April 15, 2015, 235 page transcript Case No 15-10579-PGH),

217.  SR lied during his testimony  saying money the $1,230,000.00 partial payment toward the $2 million mortgage, "was a gift from Keitel", that D'Agostino didn't tell anyone, didn't report it to his accountants, CPA  and didn't pay any federal income taxes on the money.

218.  Keitel denied SR's testimony, produced substantial evidence, wire transfers, mortgage note and warranty deed with Boose, Casey , Ciklin, Lubitz et al., $1,230,000.00 wire through the interstate federal banking system to Robert L. King Trust Account on March 15, 2015 on behalf of Client File No. K689-39606, FCM and Keitel ID number.

219. Judge Hyman, Chief Judge of the U.S. bankruptcy Court, Southern District of Florida opined about SR's testimony on April 15, 2015, transcript. Tp. 41. L6-16, p42, L 5-20

THE COURT:  ...."I  don't believe that a million 230 was a gift. I don't believe that [D'Agostino] testimony.  Your client testified earlier in the State Court case that it was -- dealt with a business transaction, other than the one that involved this lawsuit......"

" I don't believe your client's testimony [D'Agostino], that it was a gift, because I don't- I don't believe anyone gives a million 230 as a gift when he owes someone, the same person, $2,750,000.  I don't believe it."

THE COURT:    "I don't believe that....I don't believe that testimony."

THE COURT:    "That's hard -- that's what flies in the face of credibility."

234. King also lied, when questioned on direct testimony by his own lawyers Christu, Hart, Glick and Shutts ( who also represented SR and the Trust), and King testified on April 15, 2015, that he never represented the Trust when he received the $1,230,000.00 wire transfer on March 15, 2015, and didn't know why he received the money.

220. King, under direct questioning from Mr. Christu:

    Q.    "Were you in any way representing or doing any legal work for the Thomas and Elsbietz Trust back in 2005."

    A.    [by Mr. King],  "No."   T.p.150, L. 20-23

    Q.    "In 2005, as of the of that wire transfer in front of you, were you in any way responsible for accepting payments of any - - on behalf of the Thomas and Elsbieta Trust?"

    A.    "No, I was not."   April 15, 2015,T.p.151, L. 12-16

222. While Judge Hyman opined that he didn't believe Sr's testimony on 8 separate occasions, he relied on the false testimony of King, and the proffer by Christu, on May 5, 2015, that King never represented the trust. (May 5, 2015,transcript p. 246, L.1-6,), and  sent the case back to state court.

223. Judge Hyman asked Mr. Christu the following questions:

    THE COURT:  "If Mr. D'Agostino [meaning Mr. Lubitz] on behalf of the debtor, wired the money to the Trust, why is there no mutually to Mr. King for the Trust, even though Mr. King had nothing to do with the Trust?"

    MR. CHRISTU:   "Well, I guess where is the evidence it was sent to the Trust. Mr. King testified he didn't know about the Trust and never represented the Trust. That's uncontroverted testimony that - -"

    THE COURT:    " There's no question there's a huge pull here as far as that".

224.  Christu,  Hart and Larry Glick, deliberately suborned perjury, and lied in his proffer to Judge Hyman, to re-enforce the false testimony of Sr and King.

225. Christu suborned perjury when he knowingly solicited false direct testimony under oath, intentionally  conspired with Hart, Glick,  King and Sr, on April 15, 2015,  and proffered false testimony to the Court, on May 6, 2015, that King never represented the Trust when King received the $1,230,000.00 wire transfer (2  counts of perjury and suborning perjury are 4 predicate criminal offenses under the RICO statutes).

226. On July 11, 2016 during King's sworn deposition, King not only admitted to representing the Trust from 2004, almost 18 months before receiving the $1,230,000.00 wire payment from Keitel, FCM and Lubitz in March 2005, , but he represented the trust from 2004 least 8 years, until 2012.

   Q.   "  Okay.  In 2005, you were not representing the charitable remainder trust, correct?"

   A.   "Generally,  except for that one instance, that's correct."

   Q.   "Okay.  So you actually, as of the time you received this $1,230,000.00, you had previously represented the trust, is that correct?"

   A.   ". . . yes."

   Q.   " Have  you  taken any steps to correct this incorrect statement with Judge Hyman?"

   A.   "No,  because I didn't  - - considered it,  number one, pretty irrelevant . ."

227. . Christu, Hart, Glick and Shutts represented King for 2 years prior to and after his testimony, prepared King for his  original deposition scheduled  for December 2013, reviewed Kings files and testimony, King's work for the Trust, but Christu filed a Motion for Protective  Order, to prevent King's deposition and notified Keitel's lawyer, Mr.

Keenan, that King wouldn't appear for his 2013 deposition, then prepared and crafted King's fraudulent testimony to booster D'Agostino perjury.

228. Keitel fired Furr, and Furr & Cohen in March 2016, and filed a criminal police report for threats  and extortion, against Furr and Feinman ,UST senior trial lawyer beginning in October 2015 with Judge Sasser and Shutts, Christu, Hart and other.

229. Also in March 2016,  Shutts, Glick, Christu, Hart were secretly and nefariously emailed Feinman, asking her as UST senior trial lawyer to "front-run motions against Keitel, and FCM", as a favor to Shutts and their client, so the court would react more favorably, and Shutts (and Reis, Fox, Furr, and Furr & Cohen, PA) would file exact same joinder motions for their clients, double teaming Keitel, FCM and FJK IV.

230. Substantial evidence proves UST, Feinman ( and Rodriguez), acted together with Shutts lawyer, including Mr. Glick and others, requested that Ms. Feinman and the U.S Trustee's office use their official position to file documents on behalf of Shutts, that Shutts initiated, and wanted to look like the U.S. trustee's Office  filed first, and Shutts only joined in later Glick email dated bate stamped by the DOJ as HF000047 & HF 000048): " Heidi . . . we're prepared to file a motion to convert / dismiss, but frankly such a motion looks better coming from you, with a joiner from us. Larry". [Glick]

231. In another quid pro quo payback to Ms. Feinman, UST, and Robert Furr, Shutts lawyer, Larry Glick secretly and nefariously, passed deposition testimony between  Furr to Feinman, both under investigation for corruption and case fixing, during the investigation, so Feinman could be in lock-step with the same answers as Furr, to avoid criminal prosecution. involving the Miami U.S. Trustee's Office and the West Palm

Beach Division of the U.S. Bankruptcy Court, while Feinman and Furr were prohibited from practicing together by the Chief Judge, were an intentional criminal act to impede and obstruct  state and federal investigations.

232. The investigation was Ordered and referred by the Chief Judge, Hon. Paul G. Hyman, *sua sponte*, on July 13, 2016 directing the Assistant U.S. Trustee, Steven R, Turner, to (a) either conduct the investigation, or refer to the U.S. Attorney, due to U.S. Trustee's conflicts of interest (b)and specifically  interview Frederick J. Keitel, III, as a witness regarding all facts and allegations, including the audio recording and (c) that neither Feinman or Furr will practice against each other, and will not appear before Judge Hyman, unless and until the investigations are concluded.

233. No one ever interviewed Keitel, but did interview both  Furr and Feinman

234. It was suspected, but there was no evidence or conclusive proof at the same, in July 2016 to February 20178,  Shutts & Bowen, Glick and Christu were attempt to obstruct criminal investigations by helping Furr ( and Charles Cohen), and pass information and documents to Feinman to prep her lock-step answers to the investigators to obstruct justice.

235. Feinman testified under oath in her deposition on September 2, 2020, and the DOJ provided only limited discovery, proving Glick was nefariously helping Feinman during the investigation, that Feinman refused to answer most questions, citing privilege by the Department of Justice, including which agency conducted and interviewed her, the FBI, U.S. Attorney or U.S. Trustee's office.

236. That beginning she [secretly and nefariously], received documents, and transcripts of Furr 's testimony from Shutts and Glick in September 2016 and or October 2016 deposition, while both Furr and Feinman also under investigation.

237. It's clear that Shutts and Glick, Christu and Hart were conspiring with the UST Miami office, Feinman and Rodriguez from October 2015 until after Judge Kimball seized Keitel's assets on November 16, 2016, in violation. Of Keitel's 4th amendment right to due process and a hearing prior to taking property.

238. The conspiracy between Shutts and the UTS Miami office continued by the UST office and Ariel Rodriguez in front running motions, even after Feinman was under investigation, giving Judge Kimball an excuse to seize Keitel's assets, convert from Ch 11 to Ch 7, on November 16, 2016 in violation of Keitel's constitutional right to taking property without a hearing, and appointing a trustee on November 16, 2016 (exacting as Furr and Feinman threatened Keitel a year before in October 2015.

**Beginning in 2016 Callahan, White, Adams, Woodfield, HaileShaw merged their Racketeering enterprise and association-in-fact Racketeering with Shutts, Christu, Glick, Hart, SR, JR, JD, ED, RLLP, G.P, LTD, INC, Stein, SLG, Reis and Fox, Furr, UST and  Feinman Rodriguez, and newly Appointed Trustee, Webber, Anderson, Robinson and Zimmerman**

239. All defendants (ARD & ADAD), shared the same common Purpose, to defraud and Cause Injury to Keitel, FJK, FJK III, FCM and FJK IV's Business, personal and real property, FJK, FJK III, FCM and real estate,  FJK IV stock and 50% ownership in LTD/INC's  241 Royal Palm Way, Palm Beach property, distribution of profits, and money and to discredit Keitel as a material Witness in the  on-going Investigations into Corruption, Case Fixing, Threats and Extortion.

240. All Defendants  and willingly Participate in a Operated/Managed Enterprise of Racketeering Activity and multiple coordinated Predicate Criminal Acts to Cause Injury to Keitel, FCM and FJK IV's Business, Personal and Real Property, using  the following predicate criminal acts: Mail and Wire Fraud, Perjury, Suborning perjury, Threats, Extortion, Fraud and other Criminal Acts, including violation of the federal RICO under statute 18 U.S.C § 1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act against Keitel individually,  as president of FJK IV, INC, LTD, and FJK, FJK III, FCM and FJK IV, by all defendants.

241. All defendants  named herein, including lawyers, law firms, their clients, corporation(s), and partnerships in house bookkeepers,  CPA and accountants, who acted at all times as willing participants in this RICO actions and ADAD in the derivative action under  FRCP  § 23.1; Fla. Stat. 617.07401, and Fla. Stat. §  620.2002,  Business Corporate Law Section § 626(b) for equitable relief and damages, filed by Plaintiffs FJK IV and Keitel individually and as shareholder of  FJK IV Properties, Inc ("FJK IV").

242. At all times Keitel owned FJK IV stock when all actions took place and/or by operation of law, during the time of the claims and challenges herein  as an "fraud exception to the continuous shareholder rule", due to multiple egregious predicate criminal acts to steal Keitel's FJK IV Stock, to prevent both Derivative Action, and RICO complaint including:  fraud; conspiracy; extortion; threats;  threats and extortion against a federal witness in U.S. Bankruptcy Court  prior to testifying and redeeming stock held in escrow by Shutts (who's partner made the threats);  conspiracy to defraud; mail and wire fraud; perjury;   4th amendment constitutional due process rights to property;

suborning perjury; bank, mortgage fraud, tax evasion and fraud, and fraudulent payment of interest for a non-existence loan, to defraud and steal Keitel's FJK IV stock.

243.  At all times, Defendant's multiple criminal violations, was to defraud, deprive, threaten and extort FJK IV and Keitel's banker/lenders and Keitel and FJK IV from paying off judgment to get back his FJK IV stock

244. At all times, defendant's criminal acts and fraud were to prevent this derivative lawsuit, and challenge,  the financial fraud leading up to, redemption, and during and after the attempted redemption of FJK IV stock at the Palm Beach County Sheriff's Sale, and after,  by all ADAD defendants. INC, LTD, RLLP, G.P. its officers and directors, lawyers, Shutts, Christu, Glick, Hart,  and in house bookkeepers, accounting and CPA firm SLG located in New York at the same offices of RLLP, G.P., INC, LTD, JR, JD, SR, ED and D'Agostino Trust, and,  the Trustee Webber, Anderson, Robinson and Zimmerman, who committed criminal act including fraud, mail and wire fraud, perjury, threats and extortion against Keitel and FJK IV to prevent this Derivative action and RICO lawsuit.

### December 2016 – December 2017 Florida Capital Management

245. December 2, 2016: Webber, Zimmerman invoices show/prove Webber received and reviewed the $5.5 million appraisal for 237 Brazilian Ave property and Keitel's, development plans/approvals for 237 Brazilian Ave, an overgrown lot 100 x 180.

246. December 15, 2016, Webber delivered a letter to Keitel requesting he submit purchase and sales offer on 237 Brazilian Ave property.

65

247. December 16, 2016: Webber acknowledges receiving FCM CPA expert forensic accounting of all checks and wire transfers proving payoff of D'Agostino Trust mortgage (see 12 different forecast with copies of all check, wires transfer and payment account for, and that if the court accepts Judge Hyman opinion, and opining then D'Agostino Trust was overpaid by $880,000.00 by SR, JR and Robert King's fraud on March 15, 2005 and since, including perjury, suborning perjury and mail and wire fraud.

248. December 30, 2016, Keitel offer full appraisal contract for $5.5 million all cash, immediate closing, and wanted to take all liabilities away from bankruptcy estate, and continue lawsuit against D'Agostino Trust and Trustee SR and JR, for fraud, mail and wire fraud, with FCM 2 separate lawyers law firm, Jarolem and ICE Legal paid a $25,000.00 retainer. (see Jarolem's sworn affidavit attesting to strong FCM case).

249. December 30, 2016: Keitel received multiple calls emails and messages from Callahan, Adams, White and HaileShaw wanting a copy of Keitel confidential offer on FCM, 237 Brazilian property, was a ruse to gain Keitel/FCM's confidence and get confidential information to sabotage the FCM Keitel deal, as per Leslie Adams' email:

 " Rick Do you have an offer on 237 Brazilian? Did you submit it to the trustee? Can you provide us a copy? Thank you, Leslie"

250. January 4, 2017: Webber and Zimmerman lawyer refused to inform Keitel and FCM whether it was ready for January 5, hearing on FCM's 5 motions before the Court. Webber fired FCM and Keitel's lawyers, Jarolem and ICE Legal, and hired his law firm Zimmerman, and Bradley Anderson, who failed to show for the Jan. 5th hearing.

251. January 5, 2017; Webber surprised Keitel, withdrew all FCM counterclaims, affirmative defenses, third party counterclaims, then demanded the judge issue an order stating that Keitel committed a fraud on the court on Webber's proffer, and that there was res judicata on the $1,230,000. Wire transfer, and when Keitel, co-counsel objected to Webber's fraudulent statements, and fraud on the court, Webber, as Trustee, fired Keitel as co-counsel (Judge Otfedal  initially refused, tried to talk down Webber), then Webber demanded  the court follow his and Christu's instructions, and Webber and Christu, Hart and Shutts draft and sent via mail and wire fraud their joint orders for Judge Oftedal, who signed all orders 8 separate orders  based on fraudulent facts given to him.

252. January 5, 2017; Adams, White, Callahan HaileShaw, used Keitel's confidential, and defamed and discredited Keitel, while they were nefariously  was negotiating with Webber, behind Keitel's back, breaching their fiduciary duty (according to Webber – Zimmerman legal invoices).

253. January 6, 2017; Webber rejected Keitel's all cash $5.5 million offer, in a one line rejection, never offered, and refused to speak with Keitel, and immediately accepted an $ 4 million offer from Callahan and his new LLC, conspiring with White, Adams, Callahan, Haile Shaw, Christu, D'Agostino Trust, Hart, Glick and other, including U.S. Trustee's Office, and Robert Furr, and falsely claimed and perjured himself when he testified under oath in September 17, 2020, that he didn't sell Keitel the property, because it was worth $14 million, and had $9 - $10 million in loans, all false.

254. In late December 2016, telephone and emails request from Callahan, White, Adams and HaileShaw to get a copy of Keitel's $5.5 million offer to buy back his FCM

property from the bankruptcy estate seized by Judge Kimball, was a ruse to gain Keitel/FCM's  confidence and get confidential information to sabotage the FCM Keitel deal.

255. Webber ignored the (a) certified appraisal, (b) affidavits, (c)  3rd, 4th and 5th sworn disclosure statements (d)  court documents and (e ) testimony that FCM property at 237 Brazilian Ave., a vacant lot was worth $5.5 million, (yet after multiple conversations with White, Adams, Callahan, Haile Shaw, Christu, Hart, Glick, Shutts, U.S. Trustee's Office, Furr Charles Cohen and others, and Webber testified in September 17,  2020, that he rejected Keitel's all cash offer because the property was actually worth $14 million,  and had $9 - $10 million mortgages, all false statements., the June 26, 2017 final judgment uncontested by Webber was only $5,090,000.

256. At all times, Callahan, HaileShaw lawyer's White and Adams acted and conspired together and with others, to deceive and mislead Keitel into relying  on their false promises and commitments, to the detriment of Keitel and FCM, prevent Keitel from accepting Louis Capano as a partner, so that Callahan and his lawyers, White, Adams and HaileShaw could benefit financially by getting the 237 Brazilian Avenue property for Callahan to develop the townhouses for himself, causing a loss for Keitel in excess of $10,000,000.00.

257. At all times during the entire process, Callahan paid his lawyers White, Adams, HaileShaw  to attend every hearing, receive all the pleadings and documents, while HaileShaw secretly conspired and met with, opposing counsel  Shutts & Bowens lawyers, Eric Christu, Jonathan Hart and Larry Glick, (January  2016) with Webber, and Anderson and Zimmerman December 2016, to sabotage Keitel, FCM and FJK IV.

68

258.  Callahan, HaileShaw, White and Adams, pretending to act as advisors, fiduciaries, confidants, breached their fiduciary duty, by fraud, deception and sabotaging Keitel's plans for developing, to purchase and build the townhouses, by secretly and tortiously interfering with Keitel's business relationships to redeem his property, breached their in a continuous pattern of racketeering activities described herein, and with a common purpose, which merged with Shutts' to steal FCM development profits, and FJK IV stock (In December 2017, Keitel learned that Callahan was intentionally retaliating against Keitel's comments over 2016 Christmas holidays that he was liar, thief and a crook).

259. As a direct and foreseeable consequences of White, Adams, Callahan, Haile Shaw, Christu, Hart, Glick, Shutts, SR, ED,JR, D'Agostino Trust, Webber, Anderson, Robinson and Zimmerman FCM, and Keitel were damaged in the amount of $17 million.

260. In February 2017, Webber Chapter 7 Trustee's Motion to Sell FCM LLC Real Property Free and Clear to a Callahan controlled entity, 237 Brazilian Enterprises LLC, a Florida Limited Liability Company, ECF DOC No. 826, CASE No. 15-21654, filed and dated February 2017 in which Webber stated that the estimated valve of the property is listed as $3.8 million (in January 2015, 2 years earlier)

261. At all times after their appointment, Webber, Anderson, Robinson and Zimmerman acted in concert with Christu, Glick, Hart and Shutts lawyers, Fox, Reis, Robert Furr, Charles Cohen, HaileShaw lawyers White, Adams, and Callahan to discredit Keitel as a material witness, retaliate, and obstruct the investigation by falsely defaming Keitel, then taking the fraudulent court orders drafted by Webber, Christu, Glick, Hart and Shutts and delivering the orders to the USA and/or UTS to impede and kill the investigation, since the court found Keitel committed fraud, strictly on Webber and Christo's false

proffers in a 20 minute non-evidentiary hearing, (despite Judge Hyman opinions, opining, and denial of MSJ on same issues on April 25, 206 by Judge Brunson after a hearing).

262. Adams, White, Callahan HaileShaw, tortuously interfered with and sabotage Keitel's offer and Purchase and Sale contract (with Capano as a partner) being considered by Trustee Webber.

263. As a result of actions and tortuous interference by Callahan, HaileShaw lawyers White and Adams, Webber rejected Keitel's $5.5 million all-cash offer, quick closing, refused to counter offer, refused to talk with Keitel, or entertain any offer for the property, and instead accepted a $4 million offer from Callahan (defrauding Keitel and the bankruptcy Estate and creditors).

264. February 2017, Webber sent via mail and wire fraud, an email and letter to Keitel, threatened and attempted to extort $4 million, to allow Keitel to intervene, the state court case, and a threat that if Keitel didn't pay $4 million, Webber would, and then did object and conspired with Christu, Shutts, Glick and Hart, and others, (including Judge Kimball), to prevent Keitel from filing a sworn affidavit, and copies of the expert forensic accounting, with copies of all checks, wire payment.

265. At the same time Callahan, HaileShaw lawyers, Shutts, Christu, Hart, Glick, Reis, and Fox were all defaming and slandering Keitel, indicating that Keitel could still buy the FCM membership LLC, (lawsuit), for $4 million, but could not buy the property.

266. On June 26, 2017, Webber, Anderson, Robinson and Zimmerman lawyers, ("WARZ"), conspired with each other and others, including Shutts, Christu, Hart, Glick,

SR and JR as Trustees of D'Agostino Trust, when during a hearing on D'Agostino Trust. Motion for Foreclosure, Webber refused to raise any defenses, affirmative defenses, counterclaims or file any documents on behalf of FCM and/or Keitel. There was no defense, despite Judge Brunson's denial of D'Agostino Trustee Motion for Summary Judge on the "same exact issues in her April 25, 2016 decision and order" for a jury trial.

267. Keitel, a lawyer in good standing in 2017, was prevented from intervening or representing his interests due to objections by Webber, Anderson, Robinson, Zimmerman, Christu Shutts, Hart on April 10, 2017, and despite that it was Keitel, who represented FCM when Judge Brunson denied that same motion on April 25, 2016, that when Judge Brunson found the there was no res judicata and rejected that there was no payments , made by FCM and Keitel

268. On June 26, 2017, WARZ intentionally and maliciously defrauded FCM and Keitel, as retaliation and punishment as a material witness, because defendants couldn't afford for Keitel to win even one case, one issue or have a jury trial, rule for Keitel, with the same findings as Judge Hyman on April 15th after a 9 hour evidentiary hearing.

269. Judge Hyman, Chief Judge of the U.S. bankruptcy Court, Southern District of Florida opined about SR's false testimony and lack of credibility, on April 15, 2015, after SR testified that the $1,230 million payment by FCM/Keitel was a gift, and not payment on the $2 million mortgage. See transcript. Tp. 41. L6-16, p42, L 5-20

THE COURT:  ...."I  don't believe that a million 230 was a gift. I don't believe that [D'Agostino] testimony.  Your client testified earlier in the State Court case that it was -- dealt with a business transaction, other than the one that involved this lawsuit......"

" I don't believe your client's testimony [D'Agostino], that it was a gift, because I don't- I don't believe anyone gives a million 230 as a gift when he owes someone, the same person, $2,750,000. I don't believe it."

THE COURT:    "I don't believe that....I don't believe that testimony."

THE COURT:    "That's hard -- that's what flies in the face of credibility."

**Webber, Anderson, Robinson, Zimmerman ("WARZ") Defrauding Keitel and FCM**

270. Webber, Anderson, Robinson and Zimmerman ("WARZ"), committed multiple counts of fraud, bankruptcy fraud and allow mail and wire fraud, perjury when they deliberately allow a judgment of $5,090,000.00 plus fees in another hearing, in which they again committed fraud, of $444,000.00 for a total of $5,534,000.00, even though FCM and Keitel had substantial uncontroverted evidence that the mortgage had been paid off in full, was due back money , (as much as $880,000.00 in over payment), by SR, JR, D'Agostino Trust and King's fraud. (See para 190(ii) herein)

271. The following defenses were available to WARZ to use on June 16, 2017, all backed up by former FCM lawyer, Richard Jarolem's sworn affidavit filed with Webber and the bankruptcy court in February 2017,  four months earlier:

272. Defenses available to WARZ lawyers to defeat D'Agostino Trustees Motion for Foreclosure Judgment:

(i)  Hyman opined  that SR was not believable on 8 separate occasion, not credible, and that Keitel was entitled to credit for the $1,230,000.00 paid to D'Agostino in March 15, 2005 (including 12 years of interest), (ii) Judge Brunson's  Order Denying D'Agostino Trust's Motion for Summary Judgment, (on the same exact issues, dated April 25, 2016),  as the issue on June 26, 2017, (iii) an expert forensic accounting report by FCM and Keitel's  expert, listing  every check paid, a copy of the checks, accounted for and

the $1,230,000.00 wire payment showing that FCM and Keitel paid off D'Agostino Trust, and was owed back over $880,000.00,  (iv) knowledge that there was no res judicata as WARZ falsely proffered to Judge Oftedal  on Jan. 5, 2017 and included in the orders Webber and Christu drafted and submitted for signature (v) sworn affidavit from Richard Jarolem, FCM lawyer fired by Webber, after Webber  hired his own law firm, stating that he believed it's FCM and Keitel's had legitimate defenses, there was no res judicata, and there was payment to the Trust for $1,230,000.000   (vi) a 4th DCA Order denying dismissal of appeal, rejecting D'Agostino Trust, (Christu and Shutts) argument that there was res judicata, and  (vi) July 11, 2016 deposition of Robert King, who admitted his testimony before Judge Hyman was false and he did represent the D'Agostino Trust from 2004-2012, and SR,  when he received the $1,230,000.00 wire transfer on March 15, 2005,

273,  However,  King, Shutts, Christu, Glick, Hart  never corrected his statements to Judge Hyman and failed to notify the court of Christu, Hart, Glick or Shutts client Robert King's materially  false testimony, which also meant the SR lied and committed perjury, and all Shutts lawyers, Christu, Hart and Glick deliberately  suborned perjury.

274. At all times WARZ lawyers all knew that on April 25, 2016, Palm Beach Circuit Court Judge Brunson order, denying D'Agostino Trust's motion for partial summary judgment on the exactly  same issues of  (A) res judicata and (B) payment of $1,230,000.00, that was before Judge Oftedal on June 26, 2017, on the foreclosure, but failed to raise any defenses, and sabotage FCM, Keitel, and the bankruptcy estate as retaliation and punishment for Keitel allegation of corruption and case fixing.

275. WARZ had a quid pro quo arrangement with the UST and Judge Kimball, a "get out of jail free card", for any and all malpractice, fraud, gross negligence, mail and wire fraud, perjury suborning perjury, as long as they continued to discredit and defame Keitel in every hearing, and prevent the cases from a jury trial( with Christu, Glick, Hart and Shutts lawyers), because Judge Kimball would not let Keitel, FCM or FJK IV sue or file a complaint against Webber, Anderson,  Robinson and Zimmerman, because Judge Kimball had total discretion of the "*Barton* Doctrine, where by Keitel would have to petition the court, Judge Kimball for permission, and when Keitel did, Judge rejected his motion.

276. At all times WARZ conspired with each other, and others named herein including but not limited to Callahan, White, Adams HaileShaw and Woodfield , Shutts, Christu, Glick, Hart, ST, JR, D'Agostino Trust, to defraud FCM, Keitel and the Estate creditors, everyone, accepted Shutts clients

276. WARZ intentionally, willfully and wantonly rejected Keitel's $5.5 million all cash offer, that would have paid off the entire mortgage, same the estate $15,000.00 in false and fraudulent legal fees Webber, Anderson,  Robinson and Zimmerman billed the Estate, in an conspiracy to (1) deny Keitel's the property (2) deny Keitel the right to develop his townhouses, (3) deny Keitel's right to a free townhouse worth $7,500,000.00  or (4)  $6 - $7 million profit, on pre-sold townhouse  (5)  the jury trial and opportunity to recover all the money paid and over paid to the D'Agostino trust based on fraud, and most importantly (6) chance for the jury to rule in Keitel favor and clear his credibility, just as Judge Brunson on April 25, 2016, and Judge Hyman had done on April 15, 2015 in hearings.

74

277. In mid-February 2017, after Keitel was surprised in Court to find out that Callahan had the contract for $4 million to purchase 237. Brazilian Ave lot, threatened to sue Callahan, White, Adams, Woodfield and HaileShaw for fraud, tortuous interference, breach of fiduciary duty, until 2017, Callahan agreed to assign his $4 million contract to buy FCM property to Keitel, under the one condition that Keitel give Webber the deposit money directly, so Callahan's money could be released. Keitel agreed.

278. On February 15, 2017: Webber and Anderson inspected the property at 237 Brazilian, a lot with deterring structure empty since 2004, and 100 x 180 lot over grown with bushes in Palm Beach, from Orlando, 250 miles away, chosen from the U.S. District Court, Middle District of Florida, by Assistant UST Turner, because of the on-going investigations.

279. Webber and Anderson knew it was impossible for the property to be worth $14 million, impossible for a $2 million mortgage, paid up until 2010 -2011 according to the complaint to owe a $9 - $10 million mortgage, even at 25 % default rate. Both Webber as Trustee and Anderson were on notice of fraud, by SR, Jr, D'Agostino Trust, Shutts, Christu, Glick, Hart who convinced Webber, the mortgage was in default for $9 - $10 million, because on February 15, 2017 Webber and Anderson viewed the 100 x 180 lot, for Debtor's [Keitel] Motion to Remove the Trustee and Zimmerman for fraud, in the sale of the property, denied by Judge Kimball.

280. After stalling for almost 5 weeks, Callahan, Adams, White and HaileShaw ("CAWWHS"), in a last minute rush, less than 36 hours before the court hearing to approve the sale, (and objection Keitel filed an objection the $4 million sale since Webber rejected Keitel's $5.5 million offer), CAWWHS sent 30-40 pages of a contract,

personal releases and documents and calling Keitel to Keitel using the mail and wire fraud, calling and emailing Keitel to sign the documents and rush them back to Adams.

281. CAWWHS were now demanding demand $550,000.00 non-refundable cash and a note, for the assignment of the contract, never previously discussed as part of the agreement.

282. Unknow to Keitel, was that CAWWHS, conceived a nefarious scheme, after they had received confidential inside,  non-public information from the Trustee, that he was withdrawing the offer the morning of the sale, and CAWWHS, wanted Keitel to immediately  wired funds and sign a Note, because Webber was canceling the contract in less than 18 hours,  and the CAWWHS, agreement was that  funds and Note, were non-refundable, "even if " the contract wasn't accepted for any reason.

283. At all times, CAWWHS, (his sham LLC), intentionally drafted the document with the specific knowledge and intention  to defraud Keitel out of $550,000.00, with full knowledge that the contract was being canceled, would not be approved, and the cash, wire transfer and/or Note   payable to Callahan and or his LLC, was non-refundable:

   (a) CAWWHS intentionally attempted to defraud Keitel, and get as much money as
       possible, and then sue Keitel on the fraudulent Note, once the .
   (b) CAWWHS tried to get Keitel to wire the funds immediately, knowing that contract
       was being withdrawn in hours, when CAWWHS  still tried to get Keitel to sign the
       contract, (at the last second, again), then send  immediate wired Funds-payment,
       sign the Note and be liable for $550,000.00 on a void contract.

284. At all times defendants intentional conceive a scheme to defraud Keitel through the use of mail and wire fraud, telephone calls and the interstate banking system, to defraud Keitel, in a continued pattern of racketeering activities that included multiple predicate acts of: fraud, conspiracy to defraud Keitel, mail and wire fraud, that were managed and operated by Callahan (and White, Adams, Woodfield and HaileShaw), with the full knowledge of Webber, Anderson, Robinson and Zimmerman, and others, including Shutts lawyers.

285. At all times, CAWWHS actions with WARZ, were a continuation of pattern of racketeering with Shutts Glick Christu, Hart, Furr, Feinman, Rodriguez, UST, Turner, Reis, Fox, JR. JD, Sr, Ed, in a continuing pattern of racketeering activities that included multiple predicate acts named herein, that were managed as an enterprise by Christu, Hart, Glick, SR, Webber, Callahan, White, Adams and others [that merged with similar interrelated distinguishing characteristics and incidents with Callahan, White, Adams Woodfield and HaileShaw for a common purpose] to cause and did cause damages to Keitel, FCM, FJK IV, FJK, and FJK III, and cause him to lose his real estate properties, including FJK, FJK III, FJK IV stock and interest in LTD and INC, and be liable for millions of dollars in income taxes, through a pattern of fraud, mail and wire fraud, conspiracy, extortion, threats, perjury, suborning perjury, obstruction of two on-going criminal investigations and retaliation against Keitel as a martial witness.

286. CAWWHS willingly merged their on-going association-in-fact RICO enterprise, with the on-going racketeering enterprise, managed and operated by JR,JD, SR, Christu, Hart, Glick and Shutts, RLLP, LTD, INC and/or participated and merged into the RICO enterprise in late December 2015 or January 1, 2016.

77

287. At all times after their appointment, WARZ  acting in concert with UTS, Rodriguez, Christu, Glick, Hart and Shutts lawyers, CAWWHS, Fox, Reis LTD, INC, RLLP and the D'Agostino Trust and others including Robert Furr, Charles Cohen, HaileShaw lawyers White, Adams, and Callahan acted as an association -in-fact, as an enterprise through a pattern of racketeering activity with the same common purpose   steal and loot Keitel's assets and discredit Keitel as a witness.

288. Glick conspired  with Heidi Feinman, UST senior trial lawyer and the Miami office of the US Trustee's beginning in October 2015, and after the Chief Judge ordered the investigations on July 13, 2016 – February 2017,  (even though she was removed from all Keitel, FJK, FJK III, FJK IV and FCM cases), she continued to conspire with Glick and Shutts lawyers, and continued to retaliate and use her influence, to negatively impact Keitel's cases, with the newly appointed Trustee and Ariel Rodriguez, during her investigations.

289.  At all times, beginning in October 2015, the UST, Heidi Feinman, Ariel Rodriguez and others in the UST Miami Division/Office of the UST office were "front-running motions" on behalf of Shutts & Bowen lawyers and clients:  specifically for Glick, Christu, Hart clients, SR and JR, individually and as Trustees'  D'Agostino Trust, ED, JD and JR officers and directors of RLLP, G.P., LTD, and INC, and RLLP, G.P., LTD, INC.

290.  Beginning in December 2015 UTS, Feinman, Rodriguez was front running for Shutts clients, Reis and Fox clients RLLP and LTD, as well as for Charles Cohen and lawyers for Furr & Cohen Goldstein and Wernick,; and finally  HaileShaw lawyers: Whiter, Adams and Woodfield, with client Peter Callahan and PJCF; against Plaintiff

Keitel personally and his entities, FCM, WMK Properties, FJK, FJK III, and FJK IV., as retaliation against Keitel, for allegations of threats and extortion by Feinman and Furr, beginning in October 2015 and continuing through two state and federal investigations, for corruption, case fixing, threats and extortion, and until the end of the bankruptcy case on May 12, 2020, and then against in January 2022 through February 14, 2022.

291. Plaintiff Keitel's allegations centered on threats and extortion beginning in October 2015 by UTS Feinman, and others against Keitel after he filed a civil law suit against Thomas and Meenu Sasser (in her non-judicial capacity), and the law firm, Shutts & Bowen and Christu, Hart and other for multiple counts including fraud. Keitel allegations that Judge Sasser was fixing cases for Christu and Shutts, was confirmed by Judge Sasser's order ignoring the INC Shareholders Agreements and ruling "its undisputed that RLLP owns shares of INC, which is impossible under the Shareholders Agreement. Webber never mounted a defense, and allowed Shutts, Christu, Hart, Glick. JD, JR, RLLP,LTD and INC to commit a fraud on the court, with Judge Sasser.

292. Keitel complained of, and always knew there was collusion among the UST office, Feinman, Rodriguez, Shutts & Bowen lawyers Glick, Christu, Hart, with Furr & Cohen lawyers (who represented Keitel and his entities, and threatened Keitel in October – December 2015, with UST Feinman), and HaileShaw lawyers, Adams, White and Woodfield and their client Peter Callahan.

293. It wasn't until the case was closed on May 12, 2020, and after Keitel had lost on every motion on every issue, until he finally got a limited deposition of Heidi Feinman, UST, on September 2, 2020, that had been delayed for over two years, due to

79

continuous objections by The Florida Bar senior trial counsel to a Florida Supreme Court Referee.

294. On September 1, 2020, the Department of Justice ("DOJ"), delivered "limited discovery", on behalf of Feinman, who appeared for September 2, 2020, for her "limited deposition", subject to privilege, on most questions and answers, in a civil case.

295. Ms. Feinman testified, and the documents provided demonstrate a clear pattern in corruption and case fixing, in which Shutts & Bowen lawyers, Glick, [Christu and Hart] requested in emails, telephone calls, and voice messages, that Feinman and the UST office "front-run motions" on behalf of Shutts Glick, Christu, Hart and Shutts clients including D'Agostino trust, SR and JR as Trustee, to convert Keitel's cases including FCM from Ch 11 to Ch 7, appoint a Trustee and seize all FCM's assets,[causing Keitel and FCM] over $17 million in damages, and then Shutts, Glick, Christu, Hart client' would file the same, exact motion, because it looks better to the Court.

296. On December 15, 2016, Judge Kimball stated that it was the UST's motions to convert and seize FCM, FJK IV and Keitel's assets, that Shutts , Furr & Cohen, Shutts motions were withdrawn, to protect all lawyers and law firms.

297. Judge Kimball admitted, that there was collusion, up until the last second, then once the Court recognized the collusion and Shutts, Glick, Christ, Hart; Furr & Cohen lawyers pulled back, Reis and Fox, pulled back, so Judge Kimball could allege, that it was the UST office, and not the defendant's lawyers, that he agreed with.

298. According to Keitel's affidavits, motions and pleadings, Judge Kimball's actions at all times, have proven that he's impeded, obstructed material evidence to cover-up

80

criminal  conduct and activity by Furr, Feinman, Chrisrtu and others, intentionally to prevent law enforcement from investigating corruption, extortion and threats which is why Keitel on December 16, 2021 and January 2022 filed letter in opposition to Judge Kimball's  reappointment, and sent additional document upon request by the 11th Circuit Chief Executive, causing Judge Kimball to retaliate against Keitel, hold hearing on January 26, 2022, despite the bankruptcy court haven't lost  jurisdiction 21 months earlier, on May 12, 2020.

299. Keitel has repeatedly given substantial credible evidence, testimony, accused and backed up his allegations that: (i) Judge Kimball participated in, aided, abetted and encouraged, rewarded, and protected (ii)  predicate criminal acts described in the RICO and Derivative actions herein (iii)  allowed any and all criminal actions, including corruption, fraud, perjury, suborning perjury, threats, extortion and obstruction of justice, (iv) as long as it was always directed at or against Keitel, FCM, FJK IV, (v) by Webber, Anderson, Robinson, Zimmerman, (vi) Glick, Christu, Hart, Shutts, Farrell, Menor, (vii) Reis, Fox, (viii) Furr, Cohen, (ix) Feinman, the UST, Rodriguez, (x) Callahan, White, Adams, Woodfield, (xi) SR, JR, JD, ED, (xii) RLLP, G,P,. LTD,INC, (xii)D'Agostino Trust, (xii)  DOJ's documents prove that  Feinman and the UST office,  was requested by Shutts lawyers Glick, Christu, Hart,  to "front-run motions" to the court, in which Shutts would file either Shutts motions, or that Shutts would file exact or similar-same motions, to the court, because Glick stated, it looks better to the court coming from you [UST Heidi Feinman], both Christu and Hart Shutts lawyers were copied, and Feinman was encouraged to contact them, and did, while Glick was on vacation; (xxiii) the documents provided by the DOJ, and the testimony prove that Shutts & Bowen and its

81

Lawyer(s) Larry Glick (others unknow at this time), were secretly attempting to impede, obstruct and interfere during the state and federal investigations, to help the UST office, Feinman and Furr, who pressured Keitel through extortion and threats (with Feinman and UST office) to drop Shutts & Bowen and Christu from a civil lawsuit in October 2015.

300. Shutts and all defendants named herein in para. 299 above, all filed joinder motions, following the lead of Feinman, Rodriguez and the UST, who filed "front-running " motions together, to convert Keitel's Ch 7 to Ch 11, seized all Keitel's assets, appoint a friendly Trustee, as retaliation against Keitel for the federal and state investigations, embarrassing the Bankruptcy Court and UTS, beginning October 2015.

301. When Callahan, Adams, White, Woodfield and HaileShaw reneged on their January 2016, to Keitel and FCM, they did so, and willingly participated with Shutts Christu, JR,JD, SR, RLLP, LTD, INC to gang up on Keitel, as a witness (Callahan and White reviewed Keitel's explosive evidence), discredited him, to get favorable treatment from the UST, Feinman, Furr, Shutts and court, steal his Keitel's assets, FCM property, stock and money for their own benefit.

302. At all times, Shutts and Glick actions, with Christu, Hart, Furr, Feinman, Rodriguez, UST, Turner, Reis, Fox, JR. JD, Sr, Ed, was a continuation of a pattern of racketeering activities that included multiple predicate acts named herein, that were managed as an enterprise by Christu, Hart, Glick and others [that merged with similar interrelated distinguishing characteristics and incidents with Callahan, White, Adams Woodfield and HaileShaw common purpose] and WARZ, to cause and did cause damages to Keitel, FCM, FJK IV, FJK, and FJK III, and cause him to lose his real estate

properties, including FJK, FJK III, FJK IV stock and interest in LTD and INC, and be

liable for millions of dollars through a pattern of fraud, mail and wire fraud, extortion,

threats, perjury, suborning perjury, obstruction of  two on-going criminal investigations

and retaliation against Keitel as a martial witness.

303. On June 23, 2017, Kimball filed a Adv. Proc. 17-01245-EPK, 18 Count, 25 page

complaint charging SR, with fraud on the $1,230,000.00 wire transfer, and SR, JR, JD

conspiracy to commit fraud, backdating illegal mortgage document and interest to

defraud FJK IV and Keitel, and others count, as a "Sham Complaint", knowing that it

was filed and missed critical statute of limitation dates (that were protected by the FCM

case that WARZ fused to raise defenses), and filed upon information and belief,  with

the knowledge and consent of defendants Shutts, Christu, Glick, Hart, SR & JR as

Trustee of D'Agostino Trust, JR, JD, RLLP, G.P., INC and LTD and others, with the

specific intent to cover-up  WARZ  inactions and  refusal  to raise any defenses,

affirmative defenses or allow Keitel to appear, testify or file an affidavit in the FCM, and

(on November 11, 2017  Tee Jay of Florida RLLP v FJK IV Properties, Inc., and Keitel in

Case No 2016CA00010381XXXXMB),  as a reason to drop out and dismiss all

counterclaims, affirmative defenses, third party claims, leaving Keitel defenseless in the

Adv. Proc 16-01440-EPK, without the expert testimony and discovery that WARZ's

conducted and paid for, (see WARZ legal invoices.

304. WARZ had no legal or factual reasons for failing to raises any defenses, affirmative

defenses or dismiss all counterclaims,  in three (3) separate cases, and two jury trial

cases, that couldn't be lost,  FCM and FJK IV, except through  a pattern of racketeering

activity including multiple predicate acts described herein predicate criminal

**June 2017 TEE JAY of  FLORIDA, RLLP Motion for Summary Judgment v. FJK IV**

305.  June 30, 2017:  RLLP filed a complaint: RLLP v FJK IV, Case  No

502016CA010381XXXXMB-AI.  Plaintiffs (RLLP) Motion for Summary Judgment, with

Jonathan D'Agostino's affidavits and all same fraudulent  documents that RLLP owned

50% of INC, , listed herein above.

306.   On October 27, 2017, Christu, Hart, Glick suborn perjury and allows  JD

committed perjury  under oath, that RLLP owns 50% of INC stock, (however, JD admits

INC SHA is the controlling document).   Keitel cross examination of JD:

   *Q.   "Okay, Mr. D'Agostino, could you tell me what entity that you own that owns one half of one percent of the Limited - - I'm sorry, the Inc.?"*

   *A.   "Tee Jay of Florida, RLLP."*

   *Q.   "Now, in a shareholders' agreement, Mr. D'Agostino, wouldn't you agree that that half percent is owned by Tee Jay of Florida GP, a Virginia Limited partnership?"*

   *THE WITNESS:   "It is Tee Jay of Florida GP. . ."   T.p.77,L.7-8*

   *Q.    "So they're two separate corporations, correct?*

   *A.    "Correct".*

   *Q.    "Okay.  Well, then how could Tee Jay of Florida, RLLP purchase one half of FJK-Tee Jay, Inc., where does it get the authority to do that?".*

   *A.    "According to our shareholders' agreement, our shares - -  or your shares of FJK IV were purchased, as evidenced by different letters in here the appropriate and correct way."*

   *Q.    "Tell me how RLLP could purchase something that wasn't owned by them. . . ".*

   *A.    "I'm not sure."        T.p.78, L.17*

   *Q.    "Okay, Show me where it says in there RLLP, can purchase the stock.".*

   *A.    "I made a mistake of saying RLLP and it was meant to be said as GP."  T.p.79, L. 23-24*

   *A.    "Well, in the letter it says RLLP, the letter of July 19, 2013."*

**A.   *"I am not sure  of the corporate governance of how that all went, but as I said, I believe it was RLLP, perhaps it was GP, . . .  T.p.80, L. 1-10***

**307.  Christu also admitted, proffered  during the   October 27, 2017 that the state court order was wrong, and RLLP didn't own INC stock**

**October 27, 2017, transcript page 334, line 8-21**

**MR. CHRISTU:     *" I'd like to the Court to take notice that it specifically says the Tee Jay of Florida G.P., A Virginia general partnership, owns one half of that one per cent.  Now, I understand the other judge made a mistake."***

**MR CHRISTU:   "I understand his whole argument was wrong".**

308.  Christu, Hart,  Glick, Shutts, RLLP, JR, JD, LTD INC and others all knew that their

actions on July 9, 2013 was illegal, based on fraud, and July 19, 2013 letter that RLLP,

JR, JD and Shutts actions were improper, based on fraud when JD, JR and RLLP voted

to take control and Keitel's stock in FJK IV Properties, Inc, and that RLLP had no right

to vote or own Keitel's FJK IV Properties, Inc stock, especially with Shutts as counsel.

309.  November 11, 2017:  Despite JD testimony, and Shutts/Christu proffer that prior

court orders were all wrong, Christu again offered and proffered to the Court all JD and

JR's affidavits corporate resolutions, chart, and letter fraudulently removing Keitel, as

president in  RLLP's Motion for Summary Judgment before  Judge Sasser,  (Keitel's

nemeses), who was dying of cancer, (died months later), and issued an Order Granting

Plaintiff's Motion for Summary Judgment Case 502016CA010381XXXXMB-AI, ignoring

the exact words of the INC SHA,  bases on JD's sworn affidavit and Christo's proffer.

310.  The Order stated that Webber, Anderson, Robinson and Zimmerman failed  to

raise any affirmative defenses, failure to due discovery, causing  FJK IV and Keitel the

loss of millions $10 - $12 millions in damages, and

311.  Webber refused to allow Keitel to submit a sworn affidavit stating that the INC

SHA is the controlling document, RLLP has no standing to file suit, Tee Jay of Florida

G.P, is the owner of INC stock, not RLLP, and RLLP, a Registered limited liability partnership is prohibited by IRS code, from owning shares in a Sub S corporation.

312. Keitel was prohibited by Judge Kimball and Webber from intervening in the state case, and on December 11, 2017, RLLP Motion for Attorney's Fees and Costs in Case No 502016CA010381XXXXMB-AI, was heard and RLLP collected $444,000.00 based on false and fraudulent affidavits and legal fees, in a case where RLLP lacked standing and Webber, Anderson, Robinson, Zimmerman continuously refused to correct the court's prior order under Fla. R. Civ. P. 1.540., Motion for Relief from Judgment based on mistake, fraud, excusable neglect, despite Keitel/FJK IV request to WARZ to file.

313. WARZ's sole intention and common purpose with the ADAC was to discredit, defame Keitel, deny his intervention, leave him without the discovery or experts hired previously hired and paid for by WARZ, and needed by Keitel, and caused and did cause over $30 million in damages and losses to Keitel, FCM and FJK IV.

314. WARZ,'s action at all time were a cover up their actions for failure to also prosecute the and Adv. Proc. 16-01440-EPK and Tee Jay of Florida RLLP v FJK IV Properties, Inc., and Keitel in Case No 2016CA00010381XXXXMB, specific intent to cover-up Webber, Anderson, Robinson and Zimmerman's ( ("WARZ"), actions in the RICO enterprise, association-in-facts relationship by Callahan, HaileShaw lawyers, White, Adams and Woodfield, joined and/or merged with Shutts lawyers Christu, Glick, Hart and WARZ and all defendants in an long running enterprise through a continuing pattern of racketeering activities alleged herein, causing Keitel $30 million+ in damages, loss of profits, due to their collective actions Webber used defraud Keitel, FCM and FJK IV.

86

315.  At all times after their appointment, Webber, Anderson, Robinson and Zimmerman acting in concert with all defendants in RICO and Derivative Action including UTS office and Judge Kimball to discredit Keitel, prevented Keitel's one day jury trial cases from going to trial, and instead allow Judge Sasser and Judge Oftedal (influenced by Sasser), to dismiss cases on summary judgments, and foreclosure actions, without objection, without raising any defenses or affirmative defenses and dismissing all counterclaims causing Keitel, FCM and FJK IV over $30 million.

316.  In August/September 2017, Case No, Adv. Proc. 16-01440-EPK,  Webber dismissed all counterclaims and affirmative defenses, refused to defend the case at the last minute and left Keitel defenseless despite the substantial competence evidence, counterclaims, set-offs that Keitel was prohibited from raising, resulting in a judgment against Keitel for $1.9 million, by Judge Kimball, even though it was impossible for Keitel to have intent, since Judge Kimball knew that Judge Goodman order was totally wrong, based on fraudulent affidavits, corporate resolutions, charts and testimony by JD, and that Shutts, Christu, Hart suborned JD's perjury.  based on perjured affidavits by JD, JR and RLLP.

317. Judge Kimball was a willing participation in all  RICO enterprise(s), charged Keitel with treble damages, in a clear  abuse of discretion, after Keitel's October 26, 2017, Motion to Disqualify Judge Eric P. Kimball, when Keitel filed  sealed transcripts, in Adv. Proc. Case No. 16-01440-EPK,  "proving  beyond a reasonable doubt", that Judge Kimball lied about material evidence and criminal conduct, sealed and covered-up the evidence to prevent the FBI, USA, UST Criminal Division, PBSA, and PBPD from viewing the evidence of corruption, case fixing, threats and extortion, in an investigation

ordered by his own boss, the Chief Judge of U.S. Bankruptcy Court, to discredit Keitel going forward as a witness and/or whistleblower.

318. At all times, WARZ breached their fiduciary duty to the bankruptcy estate, Keitel, FCM, FJK IV and committed multiple counts of mail and wire fraud, when Webber perjured himself, and Robinson suborned perjury on September 17, 2020 before the Florida Supreme Court Referee.

319. WARZ committed fraud and sabotage in the FCM and FJK IV cases, defrauded Keitel, FCM, FJK IV in excess of $ 30 million in the following cases: (a) ADV. PROC. 17-01245-EPK: ($30 million) (b) ADV. PROC. Case No. 16-1440-EPK, In re: Frederick J. Keitel, III, Debtor, FJK TEE JAY LTD., and TEE JAY OF FLORIDA, RLLP, Plaintiffs vs. FREDERICK J. KEITEL, III, ($10-$12 million), Amended Complaint to Determine Debt and Determine Dischargeability of Debt under 11 U.S.C. sections 523(A) and (c) ($5 - $10 million), TEE JAY OF FLORIDA vs. FJK IV AND FREDERICK J. KEITEL, III, Case No. 502016CA010381XXXXMB $8 - $10 million).

320. Webber, Anderson, Robinson and Zimmerman, breached their duty to represent and protect the best interests of bankruptcy Estate of Keitel, its creditor's, Keitel, FCM and FJK IV.

321. All defendants (ARD and ADAD), named herein engaged in RICO enterprise activities and Derivative Actions, as individuals, partnerships, corporations, associations or other legal entities and any union or group of individuals associated-in-fact although not a legal entity (see 18 U.S.C. § 1964(4) engaging in the six elements of RICO, (1) that defendants operated or managed (2) an enterprise (3) through a

88

pattern (4) of racketeering activity that include at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of plaintiffs Keitel, individually and as president, owner manager of FJK IV, FCM (manager of LLC), FJK and FJK III,  (former President of INC and LTD),

322. All defendants (ARD and ADAD), participated in a pattern of racketeering engaging multiple illegal predicated acts described herein, conducted with the same or similar interest, results, accomplices [Christu, Glick, Hart, Shutts lawyers, Farrell,  individually and as partner and members of the executive committee of SHUTTS, a professional Liability Company; Arthur J. Menor, ("Menor"), individually and as partner and member of the executive committee of Shutts, JD, JR, ED, SR, RLLP, INC, LTD, G.P., Stein, SLG, WARZ, and CAWWHS.

323. Schain Leifer Guralnick; ("SLG"), and Karen Stein, ("Stein"), individually and SLG had multiple conflicts of interest, breached their fiduciary duty to Keitel, FJK IV, LTD and INC,  representing SR, ED, JR, JD, RLLP, G.P., D'Agostino Trust and D'Agostino family for over 40 years,  operated as in-house bookkeepers and CPA firm for LTD, INC, RLLP and G.P., sharing the same offices as their representative, engaging and participating in criminal fraud, tax fraud, mail and wire fraud, engaging  in interstate commerce of racketeering activities on behalf of  SR, ED, JR, JD, RLLP, G.P., D'Agostino Trust, D'Agostino family entities, and LTD and INC.

324. At all times, all defendants  (ARD & ADAD),  acted against plaintiffs Keitel, FJK IV, FCM, FJK and FJK III, in actions that are interrelated by distinguishing  characteristics,

were not isolated incidents, and occurred within 5 years after the prior incidents of racketeering conduct.

325. All defendants (ARD and ADAD), acted as an association-in-fact and as a group, shared (a) a common purpose (defraud Keitel, FCM FJK IV, FJK and FJK III), (b) relationship among those associated with the enterprise and (c) longevity over 10 years, sufficient to permit associates to pursue the enterprises purpose of engaging in criminal predicate acts to defraud Keitel, FCM, FJK IV, FJK, and FJK III (and LTD and INC), through fraud, perjury, suborning perjury switch and bait mortgage-loan fraud, illegal redemption of Final Judgment on Foreclosure, backdating illegal mortgage(s), false allegations of indirect criminal contempt charges (dismissed and vacated), scheming to file false and fraudulent sworn affidavits, corporate resolution, failure to file timely tax returns to defraud plaintiffs, and usury interest payments to deplete corporate and partnership funds, beginning in February 2012, and continuing through 2021.

326. All defendants (ARD and ADAD), acted dividually and as associates-in-fact with each other to comply with the elements of an enterprise:

**(1)** operate or manage **(2)** an enterprise **(3)** through a pattern **(4)** of racketeering activities, that includes the following predicate actions: violation of mail and wire fraud (18 U.S.C § 1341 & 1343), fraud, conspiracy to commit fraud, mortgage fraud 18 U.S.C § 1344, backdating interest,(18 U.S.C § 1343, usury, threats, extortion (18 U.S.C § 873, Fla. Stat. § 836.05), breach of fiduciary duty, perjury, (18 U.S.C § 1621 & 1623) and Fla. Stat. §837.02 and § 837.012), conspiracy to draft, sign and file false and fraudulent affidavits and corporate resolutions to defraud Keitel and FJK IV property on multiple occasions, in violation of 18 U.S.C. and Suborning perjury by Shutts and its

90

lawyers Christu, Hart, Glick (violation of  18 U.S.C § 1622) to induce SR, King, (April 15, 2015) in Case No. 15-1076-PGH, and Shutts and its lawyers Christu, Hart, Glick with Fox Rothschild lawyer Reis and inducing  JD and JR to sign and file false lawsuit under penalty of perjury in Adv Proc. Case No. 16-01440-EPK, August 2016 and October 27, 2017, and in multiple sworn affidavits filed again and repeatedly since July 2013, including in 2017 in,  TEE JAY of FLORIDA, RLLP, a Virginia Registered Limited Liability Partnership v. FJK IV Properties, INC, a Florida Corporation;  Case No 502016CA010381XXXXMB-AI;

327. Plaintiffs Tee Jay of Florida, RLLP v. FJK IV Properties, Inc, Motion for Summary Judgment, filed June 27, 2017, (conspired with WARZ), with following exhibits:

(i) Shareholders Agreement for FJK – TEE JAY, INC (The Corporation) (exhibit "1");

(ii) (Exhibit "A" ), sworn Affidavit of Jonathan D'Agostino, with the same fraudulent attachments: (iii) Action by Written Consent of Shareholders of FJK-Tee Jay, INC. signed by JR & JD, July 9, 2013, and (iv) Action by Written Consent of Directors  of FJK-Tee Jay, LTD.  signed by JR & JD, July 9, 2013, and (v) filed and  signed under penalty of perjury Bankruptcy Case Adv proc. Case No. 16-01440-EPK. and other acts, including tax fraud, 26 U.S.C. § 7201 attempting to evade or defeat tax (2002-2014), by SR, ED, JR, JD, RLLP, Stein and SLG;

328.  Coincidentally on or before March 2012, all defendants, (ARD & ADAD), acted with a common purpose and scheme to defraud Keitel, FJK IV, FCM, FJK and FJK III out of property, stock, and millions of dollars, **(5)** that did cause **(6)** injury to plaintiff's business, real estate, property, personal property, including stocks,  including obstruct of justice by Shutts & Bowen law firm and their lawyers Larry Glick,  Eric Christu,

Jonathan Hart and others with the U.S. Trustee's Office, Heidi Feinman, senior trial lawyers, and Ariel Rodriguez, trial lawyer with the Department of Justice, ("DOJ"), Office of the U.S. Trustee ("UST"), and multiple judges named herein, Judge Kimball, Judge Hyman, Judge Sasser, Judge Goodman, who all refused to review the INC SHA, proving that RLLP never owned any stock in INC, and Judge Oftedal who refused to allow Keitel to intervene in FCM, (due to WARZ opposition and false and fraudulent allegations), and refused to consider any evidence of payment by FCM or Keitel, despite overwhelming evidence produced, because of his relationship with Judge Sasser.

329. June 24, 2019,  FJK – TEE JAY, LTD, et al.,  vs. FJK – TEE JAY, LTD et at., Case No. 502012CA023240XXXXMB-AN, Tee JAY of FLORIDA, RLLP, JD, JR,  Motion for Award and Judgment of Attorney's Fees and Cost based on fraud, FJK IV had no representation, due to JR,JD, RLLP, SR fraud and withholding FJK IV distributions.

330. August 21, 2019, FJK – TEE JAY, LTD, et al.,  vs. FJK – TEE JAY, LTD et at., Case No. 502012CA023240XXXXMB-AI, Order and Judgment of Attorney's Fees and Cost against FJK IV Properties, Inc, for $394,552.75 because FJK IV had no representation, due to JR, JD, RLLP, LTD, INC and SR looting  funds, as a result of Shutts and Christu's threats and extortion of Keitel, FCM and FJK IV's banker/lender Fred Latsko, and  RICO activities by JR,JD, RLLP, LTD. INC (Shutts, Christu, Glick Hart Farrell, Menor),  and WARZ including fraud, tax fraud, mail and wire fraud, mortgage fraud, and paying over $4 million to SR, in a fraudulent mortgage scheme.

331.  November 2019, Case No 502019CA014777XXXXMB, FJK TEE JAY, LTD v Frederick J. Keitel, III:  Shutts, Christu, Hart  intentionally omitted Keitel's email address

from the Florida e-portal electronical filing system, mail and wire fraud, to prevent Keitel and FJK IV from notice of hearing, in violation of due process, taking of property, without notice and a hearing, so Keitel/FJK IV couldn't oppose the motion in January 2020, when Keitel never receive Notice of the motion filed or notice of the hearing, in violation of his 4th Amendment right to due process notice and a fair hearing, on January 13, 2020 in which an order restricting the sale of FJK IV stock was issued without Keitel's knowledge.

332. February 13, 2020: Order on Plaintiff's [LTD] Motion for Court Order Instituting Sheriff's Sale/Levy Procedures Relating to Sale of Stock Certificates, heard in violation of Keitel's 4th amendment due process right to notice, a hearing and taking property.

333. Plaintiffs are not requesting the U.S. District Court, Southern District of New York ("SDNY"), set aside the state circuit court orders (despite fraud on their face), based on fraud, conspiracy to defraud, perjury, filing false and fraudulent affidavits, corporate resolutions organization charts motion and pleading, because plaintiffs understand the findings and meaning of the *Rooker-Feldman Doctrine*.

334. Plaintiffs are attacking the constitutional issues and underlying fraud, conspiracy to defraud by defendants in securing judgments, including filing false and fraudulent affidavits, and suborning perjury, mail and wire fraud in violation of 18 U.S.C § 1341 & § 1343, all predicate criminal acts by JD, JR, RLLP, Shutts, Christu, Hart, Glick, Reis and Fox Rothschild, and others (all illegal actions outside the normal course of business, including for lawyers and law firms, under federal and state laws of New York and Florida), including but not limited to violation of Keitel's 4th Amendment constitutional rights to notice and a fair hearing, denied by JR,JR, RLLP,LTD, INC,

93

Shutts as escrow agents for FJK IV stock, Christu, Glick, Hart, Webber, Anderson, Robinson and Zimmerman, in the taking of Keitel's property.

335. All the motions, pleading affidavits, corporate chart outlined in the cases filed herein in state and federal court, Case Nos.: 502016CA010381XXXXMB-AI; Case No. 502012CA004665XXXXMB-AN; Case No. 502016CA003785XXXXMB:  Case No. 502012CA023240XXXXMB-AF; Case No. 502013CA004699XXXXMB-AA, Adv. Proc. 16-01440-EPK, (and conspiracy to defraud FCM, FJK IV and Keitel  in Case No. 17-01245-EPK, filed by defendants Richard Webber, Anderson, Robinson and Zimmerman, with Shutts Christu, Hart and Glick); and Case No. 15-10576-BKC-PGH, against Florida Capital Management, LLC, FJK IV Properties, Inc., and Keitel, were all filed by defendants based on false and fraudulent court motions, pleading, affidavits, corporate resolutions that on their face are fraudulent including conspiracy to defraud FCM, FJK IV and Keitel  in Case No. 17-01245-EPK by Richard Webber as Trustee , Anderson, Robinson and Zimmerman, Shutts Christu, Hart and Glick.

336. In August  2016, Reis, Fox, Christu, Hart, Glick, Shutts JD.,JR, RLLP filed a false and fraudulent complaint, *Complaint to Determine Debt and Determine Dischargeabilty* to defraud Keitel out of personal and real property, stock and distributions, dividends, profits and equity of over $15 million, while Christu and Shutts were supposed to be escrow agents protecting FJK IV and Keitel's rights in FJK IV Properties, Inc., stock.

337.  All lawyers involved  worked for large law firms, their criminal actions exceeded normal boundaries of  the rules of professional conduct, outside ethics and role as lawyers, and were all approved or blessed by their superiors and executive committee members, because the fraudulent legal fees were so great.

338. At all times, the Shutts lawyers named herein and member of the executive committee Farrell and Menor, a managing director in the racketeering scheme and reaped millions in illegal fees, all based on the underlying fraud, mail and wire fraud, perjury, extortion and threats by Shutts & Bowen partners that participate in and managed a criminal enterprise from 2013 until present including Chrtistu, Hart, Glick's and Shutts managing partner Menor, and Farrell.

339. Their actions were criminal actions (outside the normal practices and/or boundaries of normal lawyers), and operated and managed the enterprise through a pattern of racketeering that included multiple predicated acts (over 30 criminal acts), when they conspired with their clients, and lawyers from the U.S. Trustee's and or the Department of Justice, (federal employees, including, state and federal judge that are exempt from civil suits (immunity), and other including JR, JD, SR, Ed, RLLP, LTD. INC, Reis Fox Rothschild, Webber, Anderson, Robinson and Zimmerman Reis, all engaged in activities outside of their corporate duties, or in their capacities as judges and government employees, to obstruct and impede criminal investigation, as well as Callahan, White, Adams and Woodfield, as retaliation against Keitel, FCM, FJK IV, FJK, and FJK III Properties, Inc, with the common purpose to defame Keitel, and obtain through fraud and other criminal predicates all his properties, stock and money (distributions), in a for the purpose of relationship among those associated with the enterprise sharing common purpose.

340. All defendants (ARD & ADAD), and other participants individually and jointly engaged in, participated with the common purpose in an association-in-fact enterprise acted with the common purpose to engage in a scheme to defraud plaintiffs out of real

estate properties located in Palm Beach, Florida including 237 Brazilian Avenue, ("FCM"), 241 Royal Palm Way, ("FJK-TEE JAY, LTD"),  230 and 240 Royal Palm Way, ("FJK and FJK III"), and 412 Brazilian Avenue, ("FCM"), including stock, distributions, money and control of the partnerships and or corporations through a pattern and scheme to defraud.

341.   JR, JD, Sr, RLLP, G,P., INC and LTD conspired with each other and others including,  Shutts lawyers, Christu, Hart, Glick, Farrell, Menor, and Fox Rothschild lawyers, Reis and Dadakis, ("Dadakis"), New York counsel for D'Agostino Trust,  the Trustee Webber, and Zimmerman lawyer Anderson, Robinson and others CAWWHS.

342. The UTS, Feinman, Rodriguez and Turner, worked to defraud FJK IV and Keitel by mail and wire fraud, perjury, suborning perjury (threats and extortion, conspiracy to defraud, tax fraud, illegal backdating interest of a fraudulent mortgage,  false and fraudulent drafting and signing od (i) sworn affidavits, (ii) corporate resolutions (iii) organization ownership charts (iv) motions and (v) pleadings that RLLP owned or had any rights in INC, when the INC Shareholders Agreement signed by Thomas B. D'Agostino on December 30, 1998, as General Partner of Tee Jay of Florida, G.P. and director, vice-president, secretary, and treasurer of INC, certifying that G.P., a separate independent company  owned 50% of INC (not RLLP, a limited liability partnership forbidden by IRS regulations from owning stock in a subchapter S corporation).

343. At all times, Judge Kimball  knew in December 2021-January 2022, that Keitel filed letters of Opposition to the Reappointment of Judge Erik P. Kimball to the U.S. Bankruptcy Court, (filed December 16, 2021),  with the Chief Executive of the Eleventh Circuit Court of Appeals, reviewing whether the 11th Circuit should reappoint Judge

Kimball for another term, when the 11th Circuit executive committee requested more documents/evidence from Keitel

344. Webber, Anderson and Zimmerman acted in a continuing pattern and enterprise with Christu, Hart, Glick, Shutts, Fox, Reis, SR, JR, D'Agostino Trust, White, Adams, Haile Shaw, Callahan and Furr when they conspired and refused to due discovery, file any defense and failed to file any evidence during the hearing on Summary Judgment in RLLP v FJK IV Properties, Inc., and Keitel in Case No 2016CA00010381XXXXMB, resulting in another loss of $10 - $12 million to Keitel, and further damage his credibility, even though RLLP was the wrong party, had no standing to file the lawsuit, could never of received a summary judgment, if Webber filed Keitel's sworn affidavit, or Christu, Hart and Shutts lawyers not intentionally filed false and fraudulent pleading and affidavits by JD, JR, SR, RLLP, LTD, INC, before Judge Sasser, Judge Goodman, Judge Rowe, Judge Oftedal and in U.S. Bankruptcy Court in Case Nos. 15-21654-PGH, 16-0440-ERK, and 17-01245-EPK, while all the judges ignored substantial evidence and the plain language of the FJK Tee Jay, INC Shareholders Agreement.

345. In cases list herein above, Webber, Anderson, Robinson and Zimmerman acted and conspired with RLLP, G.P., LTD.INC, Christu, Hart, Shutts, SR, JD, ED and others including Reis and Fox to ignore the plain facts, refused to file any defense and allowed judgments against Keitel, FCM (damages of $17 million), and FJK IV, t(total $12 - $16 million), to prevent state court jury trials, out of fear Keitel would prevail, and expose the corruption, case fixing, fraud, threats, extortion in the Palm Beach judicial system, West Palm Beach Division of the U.S. Bankruptcy Court and Miami Office of the UST.

346. At all times, Webber, Anderson, Robinson, Zimmerman, Shutts Christu, Glick,

Reis, Fox   and others, including Furr, White, Adams, Haile Shaw, Callahan

continuously planned and  worked to discredit Keitel, as a debtor, material witness in

both investigations, in order to gain an advantage and defraud  millions of dollars in

windfall judgments, real estate, legal fees, costs and expenses, after Judge Kimball was

accused of obstruction of justice, and intentionally misrepresentation material facts to

impede the investigations, and retaliating against Keitel, FJK IV and FCM, because

Keitel was a material witness and whistle blower.

### Shutts & Bowen, LLP, and Eric Christu, Escrow Agents for FJK IV Stock, Criminal Threats Intimidation and Extortion against Fred Latsko, a Federal witness in the U.S. Bankruptcy Courthouse (Keitel's banker/lender),  Prior to His Appearance  to Testify and Deliver Cashier Checks to Redeem FJK IV Stock Held by Shutts, since February 2015

347. On October 17, 2018, Keitel's (and his son Sebastian Keitel), banker/lender/friend

Fred Latsko appeared in the U.S. Bankruptcy Courthouse with cashier's check for the

total amount of $493,000. and proof of funds of over $3.1 million (previously sent to the

Trustee, WARZ, and Shutts & Bowen, LLP and Christu as escrow agents, and Shutts

Hart and Glick representing defendants SR, JR, JD, RLLP, G.P., LTD and INC, to

redeem Keitel's FJK IV stock held by Shutts.

 348. Shutts partner Eric Christu filed motions before Judge Sasser in February 2015

and Judge Sasser granted his motion to take possession and control of FJK IV, Stock,

over Keitel's objections, with Judge Sasser's warning, that neither Shutts & Bowen or

Christu wouldn't breach their fiduciary duty, and the FJK IV stock would be safe.

349. On or about October 15 or 16, 2018, Shutts and Christu requested the  meeting

with Fred Latsko without knowledge or consent of Keitel,  and met with Latsko, minutes

before he was to appear in court, and threatened, intimidated and extorted Mr. Latsko to prevent him from tendering his cashier's checks and proof of funds of $3.1 million to the judge in the U.S. Bankruptcy Court, in violation of multiple predicated acts under the federal RICO statute(s): 18 U.S.C §1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act, in a federal building, after Mr. Latsko ("Latsko"), flew in from Chicago to attend the hearing(s).

350. Shutts and Christu breached multiple conflicts of interest as Fiduciaries, and representing SR, JR, JD, RLLP, G.P., LTD, INC, D'Agostino Trust, all opposed to Keitel, FCM and FJK IV, especially when Christu, Glick, Hart and Shutts continuously themselves committed mail and wire fraud, perjury, suborning perjury, and other predicate acts, including extortion, threats, and obstruction of justice.

351. Upon information and belief, Shutts and Christu acted with the permission and/or consent of WARZ and Shutts clients SR, JR, JD, RLLP, G.P., LTD, INC. after WARZ, Shutts, Christu, Hart and Glick, SR, JR, JD, INC and LTD refused to turn over financial information, evaluations, taxes to Keitel, and his bankers, including Latsko and Louis Capano (who also sent proof of fund of $600,000.00 from M&T Bank), after WARZ, Shutts, Christu and SR, rejected a $2 million all cash offer on behalf of Keitel, and Latsko for the return of FJK IV Stock, refused to cooperate with Keitel's banker and lenders and accept payment in exchange for FJK IV stock, and any and all judgments, liens, legal fees and costs.

352. Shutts, Christu, Glick and WARZ stone walled Keitel and Latsko instead of cooperating, because at all times, they knew that had a "free pass" from Judge Kimball, who wouldn't take any action against the same lawyers that attacked Keitel

353. Fred Latsko brought certified checks ($490,000.00) and he and Louis Capano provide proof of funds for over $3,100,000.00. to Shutts as escrow agents, Christu and WARZ, who all worked to defraud, Keitel, FJK IV, FCM, and the bankruptcy Estate on FJK IV Stock worth $12 million.

354. Fred Latsko filed a sworn affidavit dated December 2018 outlining the threats and extortion by Christ and Shutts in the federal courthouse, to intimidate and tortiously interfere with his business relationship with Keitel, FJK IV, FCM and SKeitel (Keitel's son), and prevent them from lending money, even though they had a cashier's check.

355. As a result of Christu, Shutts lawyers, SR, JR, JD, RLLP, LTD, INC, and WARZ's actions with others to deny all financial to Latsko, Capano, Keitel, FJK IV, FCM and SKeitel to defraud Keitel and FJK IV from getting back his stock, not only was Keitel unable to get his stock back, not only in October-November 2018, but also in April- May 2021, due to fraud, continuous threats, and refusal to allow Sebastian Keitel's lawyer or banker Fred Latsko or Keitel and FJK IV to have the relevant financials needed to redeem and/or buy/bid at the Palm Beach County Sheriffs Sale, due to continued threats, extortion and fear caused by Shutts and Christu's threats, that they will interfere with and prevent recouping Latsko's loans for 20-40 years.

356. At all times Christu , SR, JR, JD, RLLP, GP, LTD, INC, GLICK, the court appoint Trustee Webber, Anderson and Zimmerman and others, conspired to prevent FJK IV

and Keitel  from paying off all judgments, getting FJK IV stock back to prevent a jury trial or  prove the on-going mail and wire fraud, Civil RICO claims, tortious interference and other claims.

357. Any money FJK IV and Keitel put up at the Sheriff's sale, would automatically be 50% of Keitel's money because he owned stock in LTD, which is the reason for the fraud by JR, JD, RLLP, LTD, INC, Shutts, Christo, Hart, Glick, Farrell and Menor.

358. However, by fraudulently withholding critical financials, and fraud in the financials, including illegally paying SR almost $5 million in illegal interest, for never having lent any money to LTD or INC, Shutts Christu, Glick, Hart, Farrell, Menor, JR, JD, RLLP, SR, LTD, INC, Stein and SLG's  sole intent was  to prevent Keitel and/or his son, Sebastian Keitel (and Keitel's banker/lenders/friends(or any interested bidder in violation of  Florida law), from redeeming and/or purchasing back his FJK IV stock.

359. At all times, JR, JD, LTD, INC, RLLP, G.P. SR and their lawyers Christu, Hart, Glick, Farrell Menor all informed their actions was a continuing pattern of Civil  RICO, fraud, mail and wire fraud, together with Shutts' past fraud and criminal activities in violation of  federal RICO statute(s):  18 U.S.C §1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act, as well as Florida and New York statutes (Stein and SLG) on fraud, perjury, and other predicate activity, including misappropriation of millions of dollars from the company, and Christu's  prior criminal threats and extortion of FJK IV and Keitel's banker/lender Fred Latsko (see Fred Latsko's sworn affidavit)

## Sworn Affidavit of Fred Latsko

360.  The following numbers correspond Mr. Latsko's affidavit (exhibit "2")

2. "I'm a friend, lender and/or banker of Frederick J. Keitel, III."

4.  "I also offered in writing to pay off the Mr. Keitel and/or FJK IV Properties, Inc., lien held by Thomas D'Agostino, Sr of $439,483.13 on FJK IV stock, with all interest, cost and expenses and requested a payoff."

5.  "I also sent proof of funds and available cash to help Mr. Keitel buy back-purchase the stock immediately to both Mr. Webber and Mr. Christu."

8.  **On October 17, 2018, I personally spoke with Eric Christu**, a lawyer at Shutts and Bowen, LLP, (:"Shutts"), that represents Thomas D'Agostino, Sr, FJK-Tee Jay, Inc., ("INC"), FJK-Tee Jay, Ltd, ("LTD"), Tee Jay of Florida RLLP, ("RLLP"), Tee Jay of Florida , GP, ("GP"), Jonathan D'Agostino ("JD"), and Thomas D'Agostino, Jr., ("JR"), **in a conference room at the Bankruptcy Court, West Palm Beach, Florida**

9. "Mr. Christu was aware that on behalf of Mr. Keitel, I previously offered the Trustee, Richard Webber $2,000,000.00 for the 49.5% stock in FJK IV Properties, Inc with Frederick J. Keitel, III the owner of the stock, **being held in escrow by Mr. Christu and Shutts."**

10. During that October 17, 2018 conversation, Mr. Christ made threats . . .  He threatened me that he would sue me  . . ."

11.  "Mr. Christu's threats on behalf of FJK-Tee Jay, Ltd, FJK-Tee Jay, INC., RLLP, GP, JD (individually and as president), JR was meant to frighten me, interfere with prevent me and discourage me from helping Mr. Keitel pay the judgment(s), lien to get back his stock in October 2018."

14.  "During the entire time I attempted to get cooperation from . . .Mr. Christu, I was met with their attempts to interfere with mine and Mr. Keitel's attempts to get information and pay off the judgment(s), liens and any costs or expenses."

361. As a result of Christu's threats and attempt to extort prevented Keitel, FCM and

FJK IV from hiring an attorney to represent Keitel's corporate entities, causing further

damage.

362. Shutts, Christu, JD, JR, LTD, INC,  RLLP, GP, Karen Stein CPA firm and Webber,

Anderson, Robinson and Zimmerman conspired to deny Keitel and  FJK IV full access

to all financial Books, Check Register, Records, Taxes returns and deposit slips by

Thomas D'Agostino, Sr who conspired with his D'Agostino's sons, JD, JR and LTD, INC

RLLP, G.P. and Stein and SLG to file a false and fraudulent mortgage and Note of $4,734,000.00 and received over $5,00,000.00 in fraudulent interest payments, penalties and late fees to defraud FJK and Keitel out of over $4,000,000.00, in distribution, to pay off any judgments

363. As a result of all defendant's racketeering activity, including over 30 predicate criminal acts under 18 U.S.C. §1961(1)(A), (B) and (5), Keitel has been injured in excess of $40 million dollars, exclusive of interest, fees and costs.

364. At all times between 2015 through 2021 LTD, INC, RLLP, JD,JR, Stein, SLG, and Shutts and Christu as escrow agents, (and later 2016-2020 WARZ), all denied and refused to give FJK IV and Keitel critical financial records, documents, tax returns evaluations, distributions, and check registered and proof of funds deposited for illegal and fraudulent mortgages, and mortgage payments by SR to JR, JD as officers and directors of LTD and INC.

365. On February 5, 2016, Keitel's lawyer Robert Furr sent a wire transfer to SR's lawyer, Shutts, Glick, Christu, Hart, the same lawyers, Shutts and Christu, who were escrow agents for FJK IV stock, the same lawyers who had multiple conflicts and represented JR, JD, LTD, INC, RLLP and G.P. to refused to return Keitel's FJK IV stock, and later claimed that even though Keitel put $305,000.00 in escrow after paying the full amount Shutts and Christu refused to turnover Keitel's stock.

366. Unknown to FJK IV or Keitel, defendants Shutts, Christu, LTD, INC, RLLP, JD, JR filed motion (December 2019) with the court, and had a hearing without notice, in

January 2020, to take Keitel's FJK IV stock, in violation of Keitel's 4th amendment constitutional right to taking property without due process.

367. Defendants in December 2019 Shutts and Christu, (escrow agents), Hart , LTD, INC, RLLP, JD, JR conspired to defraud FJK IV, Keitel, and Keitel's son Sebastian Keitel, ("SKeitel"), by limiting the bidders in a potential Sheriff's sale of FJK IV and Keitel's stock, when defendants intentional and nefariously omitted, and failed to enter Keitel's email address in the court docket, in Case No 502019CA014777XXXXMB, so Keitel never received notice of the hearing in January 2020, in violation of Keitel's 4th amendment due process rights against taking property without notice and/or a hearing, (so Keitel and FJK IV couldn't object.)

368. In April and May 2021, JD,JR,LTD, INC and Shutts lawyers including Christu refused to allow my son Sebastian (and his lawyer Mr. Machate or his banker/lender, Mr. Latsko), who had a right to my stock under the By-Laws of FJK-Tee Jay, LTD was denied financial records and the right to look at the books and records of LTD and INC to evaluate and conduct due diligence, when defendants, including , LTD,INC, JD JR, and Shutts lawyers Christu intentionally interfered with the auction process, to prevent me from putting up the necessary funds to redeem  my FJK IV stock, to file this derivative complaint and action.

369.  Defendants Shutts and Christu, (escrow agents), Hart , LTD, INC, RLLP, JD, JR actions at all times were to deny Keitel and FJK  ability to redeem FJK IV stock, because LTD didn't have to put up any money, because of the underlying fraud and violation of Keitel's constitutional rights.

370. Defendants Shutts, Christu, Hart, Glick, Farrell, Menor, Stein, SLG, LTD, INC, RLLP, JD, JR, conspired to defraud Keitel, FJK IV and SKeitel, because if they deemed the FJK IV stock, Keitel, FJK IV and/or SKeitel were entitled to 50% of the proceeds from LTD, making their FJK IV stock even more valuable.

371. FJK IV and Keitel were forced to file this derivative action herein, and challenge as an exception, 'inciting egregious criminal incident(s)" to the continuous ownership rule including extortion, threats, mail and wire fraud, illegal mortgage, bank fraud perjury and suborning perjury to prevent the return of FJK IV stock, and conspiracy to defraud Keitel, FJK IV and SKeitel, by Shutts, Christu, Hart, Glick, Farrell, Menor, Stein, SLG, JD, JR, LTD, INC, RLLP and G.P.'s denying relevant financials, tax records, and evidence of loan/mortgage money deposits and receipts..

372. At all times, defendant's actions to deny Keitel's bankers/lenders financials were as well as withholding distribution to FJK IV, was the direct and proximate cause of Keitel and FJK IV being out bid at the action by LTD on May 3, 2021.

373. May 3, 2021 Sheriff's Sale: Keitel offer of $2,300,000.00 was outbid by $2,320,000.00 actual cost-$3,525,000.00), by LTD, after JD, JR, RLLP, G.P., LTD, INC, Stein, SLG, Shutts , Christu, Hart, Glick, Menor, Farrell refused to provide the financials or appraisal from experts & Trustee, (while escrow agents holding FJK IV stock), to allow Keitel, FJK IV and/or his son, SKeitel to pay off the judgment, after Christu/Shutts due to previous threats and extortion of Fred Latsko (Louis Capano), Keitel and FJK IV's bankers/lenders/friends.

374. Keitel managed to get another friend to help, (who also couldn't get financials and was reluctant to bid on May 3, 2021), but put up a $2,325,000.00 cashier's check to redeem FJK IV stock on May 7, 10 and 11, 2021, but the Palm Beach County Sheriff's refused the cashier's check for redemption of FJK IV stock, allowing LTD, JR, JD and RLLP to steal Keitel's stock, for $3,525,000.00, after they previous stated FJK IV stock worthless.

375. All demands for information prior to the Sheriff's sale in writing were ignored, and denied by Shutts & Bowen, LLP as court appointed escrow agent for FJK IV Properties, and later Shutts, Christu, Glick, Hart, Farrell, Menor, JR, JD, LTD, INC Stein and SLG, who all had multiple conflicts by representing including RLLP, JD, JR, SR, LTD and INC, while Shutts and Christu threatened and extorted banker/lender/friend Fred Latsko.

376. Shutts, Christu, JD, JR. RLLP, LTD AND INC refused to allow Sebastian Keitel, (Keitel 25 year son, eligible to own FJK IV stock under the By-Laws), or his lawyer Robert Machate, Esq, (and/or Fred Latsko, also SKeitel's banker/lender/friend) from the right to review financial, refused entry to Shutts Offices, and forced Mr. Machate, a lawyer him to wait over an hour down in the lobby, before refusing entry on April 16, 2021.

377. Despite the rules for a sheriff sale, Shutts refused to give Keitel and FJK IV or anyone else the financial document needed to value FJK IV, LTD and INC's true financial situation, after withholding material financial document over a 6 year period.

378. Keitel and FJK IV was forced to file this derivative action herein, and challenge as an exception, 'inciting incident(s)" to the continuous ownership rule caused by

defendants' JD, JR, LTD, INC, Shutts (escrow agents), and Christu, Hart and Glick's criminal conduct, fraudulent attempt to defraud Keitel and FJK IV, deny relevant financials,   to prevent the redemption of stock prior to the sheriff's sale.

379.  LTD didn't have to put up any money, because LTD used the money and judgment by defrauding  Keitel in Adv Proc. Case No 16-01440-EPK, and violated Keitel's 4th amendment constitutional rights to notice and fair hearing.

380. FJK IV and Keitel were forced to file this  derivative action herein, and  challenge as an exception, 'inciting criminal incident(s)" to the continuous ownership rule caused by fraud, by  defendants JD, JR, LTD, INC, the Escrow Agent of FJK IV stock and it's law partners Shutts (escrow agents), and Christu, Hart and Glick's  egregious  criminal conduct, including extortion, threats, mail and wire fraud, illegal mortgage, bank fraud perjury and suborning perjury to prevent the return of FJK IV stock fraudulent attempt to defraud Keitel and FJK IV, deny relevant financials, through threats and extortion of FJK IV's banker/lenders in a federal courthouse prior to his testimony and tendering full payment on all judgments to redeem FJK IV stock held by the escrow agent to prevent the redemption of stock prior to the sheriff's sale.

381. My demands were ignored, and Shutts & Bowen, LLP as court appointed escrow agent for FJK IV Properties had multiple conflicts by representing including representing RLLP, JD, JR, SR, LTD and INC,  while Eric Christu threatened and extortion by banker/lender/friend Fred Latsko.

382. Karen Stein, SLG, JR, JD, LTD, INC, RLLP, Shutts as escrow agents, Christu, Hart, Glick, Reis, Fox , WARZ all conspired to defraud FJK ad Keitel, by false and

fraudulent accounting, and Shutts, Christu, Hart, Menor Farrell , JR, JD, LTD, INC, RLLP and Stein and SLG  and knew was false to defraud FJK IV  and Keitel, that owned 49.5% of LTD, which according to the Palm, Beach Sheriff's Notice, FJK IV stock gad a capital deficiency, FJK IV worthless, and owed a capital contribution of $1,216,851.23. as of May 3, 2021, all false and fraudulent statements made to defraud a bidder in the sale/auction, in violation of  mail and wire fraud 18 U.S. C. §  1341 & 1343 .

383. At all times, relevant JD, JR, INC, LTD and its in-house accountants Karen Stein and SLG  were also accountants for JR, JD, RLLP, G.P. SR, ED. and D'Agostino family, D'Agostino Trusts, had multiple conflicts of interest and Breach of Fiduciary Duty to FJK IV and Keitel.

## All Defendants Racketeering Activities

384. As a result of all defendant's racketeering activity, including over 30 predicate criminal acts under 18 U.S.C. §1961(1)(A), (B) and (5), Keitel has been injured in excess of $40 million dollars, and injured in the Derivative Action by INC, LTD, RLLP, G.P., and its officers and directors JR and JD, in excess of $25 million.

385.  SR., JR, JD, ED,  RLLP, G.P, Trustee of D'Agostino Trust, King, Rose, Dadakis, Stein, SLG, WARZ, and Shutts lawyers Christu, Glick, Hart, and Farrell and Menor (managing partner), and members of the executive committee of Shutts participated and managed their RICO activities, through a pattern of racketeering activity and predicate criminal actions by  Christu, Glick JD, JR, SR and others that included every named defendant in this actions, involved in individually predicate acts, covering over 30

criminal predicate acts, that caused substantial injuries and damage to Plaintiff's business, real estate, property, stock, money, credibility and reputation that included the all defendants individually, and  as partnerships, corporations,  associations and group of individuals associated-in-fact, although not a legal entity under 18 U.S.C § 1964(4).

386.  Every named defendant individually and jointly committed multiple criminal acts described herein and below, including mail and wire fraud committed in furtherance of a scheme to defraud plaintiff's, fraud, conspiracy to violate  of the federal RICO under statute 18 U.S.C § 1962, 1962(c), Fla. Stat. § 895.01 – § 895.08, and conspiracy in violation of the federal RICO under statute 18 U.S.C § 1962,(d)bank fraud, mortgage fraud, illegal backdating of interest, threats, extortion, tax fraud, conspiracy to defraud, perjury and suborning perjury by Shutts and their lawyers, Christu, Hart, Glick, Rose, King, SLG, Stein, Fox, Reis, and Webber, as Trustee, individually and as a partner with Anderson, Robinson and others in  Zimmerman Kiser, Sutcliffe lawyers, and JD, JD, ED, SR, RLLP, G.P., SR and JR as Trustee of D'Agostino Trustee and JR and JD as officers and directors of LTD and INC.

387.   Peter Callahan, Wilton White, Leslie Adams, Gary Woodfield, HaileShaw, Robert Furr, Charles Cohen, Meenu Sasser, Judge Goodman, The U.S. Trustee's Miami Office, Steven Turner, Heidi Feinman, Ariel Rodriguez, Chief Judge Hyman, Judge Kimball, all joined the enterprise during the 10 years that JR,JD,SR, RLLP, G.P. Rose, King, Shutts and their lawyers, Christu, Hart, Glick managed and operated the enterprise through continuing  pattern of racketeering.

388.  All defendants acted together and with each other for the common purpose of defrauding Keitel's  real estate properties, stock in FJK, FJK III, FJK IV and FCM stock

so they could divide up, control the distributions, equity and profits of over $40 million

for themselves and their companies, by discrediting and defaming Keitel personally and

as a material witness  in the on-going federal and state investigations.

389.  At All times Plaintiffs Keitel and FJK IV  was  shareholder in LTD and INC during

the transactions complained of herein and/or became a shareholder by operation of law.

390.   Defendants LTD, INC, JR, JD, RLLP conspired to defraud FJK IV and Keitel

through multiple predicate criminal actions, including extortion, threats, mail and wire

fraud, mortgage and bank fraud, perjury, suborning perjury, fraud, conspiracy,

tampering with and harassing a witness under Fla. Stat. § 914.22.

391.  All defendants, individually or acting jointly, as a partnership, LLP's, RLLP, LTD

professional associations, charitable trusts and/or corporations,  jointly operated,

managed, engaged in an enterprise, association-in-facts conducting criminal activities

involving a pattern of racketeering (RICO).

 392.   There were over 30  multiple predicate criminal actions from 2012 through 2022,

by all defendants in both RICO and Derivative cases including multiple counts of  mail

and wire fraud under  18 U.S.C § 1341 & § 1343,  fraud, conspiracy to commit fraud,

mortgage fraud, Bank fraud, fraudulent backdating mortgage interest, usury, threats,

extortion, breach of fiduciary duty, perjury, suborning perjury, conspiracy to defraud by

drafting , signing  and filing  false and fraudulent sworn affidavits, corporate resolutions,

fraudulent organizational charts (beginning in 2012, and July 9. 2013 through January

2022), and other acts, including tax fraud./

393. All acts  beginning on or before March 2012,for  common purpose and scheme to defraud and cause damages and injuries to Keitel, FJK IV, FCM, FJK and FJK III, and loss of  property, stock, and millions of dollars, through obstruct of justice by Shutts & Bowen law firm, Larry Glick, Eric Christu and others with the U.S. Trustee's Office, Heidi Feinman, senior trial lawyers, and Ariel Rodriguez, Department of Justice, Office of the U.S. Trustee trial lawyer, and multiple judges named herein, in a conspiracy to retaliate, punished and defame Keitel as a material witness (whistleblower), in investigations before the U.S Attorney's Office, Department of Justice-U.S. Trustee's Office, ("DOJ"), Palm Beach State Attorney ('PBSA"), and Palm Beach Police, ("PBPD")ordered and referred *sua sponte* by Chief Judge, and complaints by Keitel to the Palm Beach Police Department and

394.  All defendants named herein engaged in RICO enterprise activities and Derivative Actions, as individuals, partnerships, corporations,  associations or other legal entities and any union or group of individuals associated-in-fact although not a legal entity (see 18 U.S.C. § 1964(4) engaging in the six elements of RICO, (1)  that defendants operated or managed  (2) an enterprise (3) through a pattern (4) of racketeering activity that include at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of plaintiffs Keitel, individually and as president, owner manager of FJK IV, FCM (manager of LLC), FJK and FJK III,  (former President of INC and LTD),

395.  All defendants  participated in a pattern of racketeering engaging multiple illegal predicated acts described herein, conducted with the same or similar interest, results, accomplices [Christu, Glick, Hart, Shutts lawyers, Farrell,  individually and as partner and members of the executive committee of SHUTTS, a professional  Liability

Company; Arthur J. Menor, ("Menor"), individually and as partner and member of the executive committee of Shutts, JD, JR, ED, SR, RLLP, and INC and LTD

396. Schain Leifer Guralnick; ("SLG"), and Karen Stein, ("Stein"), individually and SLG had multiple conflicts of interest representing SR, ED, JR, JD, RLLP, G.P., D'Agostino Trust and D'Agostino family for over 40 years, operated as in-house bookkeepers and CPA firm for LTD, INC, RLLP and G.P., SR, ED, D'Agostino Trust, JR and JD, sharing the same offices, engaging and participating in criminal fraud, tax fraud, mail and wire fraud engaging, aiding and abetting perjury and fraud and fraudulent corporate document, to defraud plaintiffs, in interstate commerce and racketeering activities on behalf of the companies.

397. At all times, the defendant acted against plaintiffs Keitel, FJK IV, FCM, FJK and FJK III, in actions that are interrelated by distinguishing characteristics, were not isolated incidents, and occurred within 5 years after the prior incidents of racketeering conduct.

398 . All defendants acted as an association-in-fact and as a group, shared (a) a common purpose (defraud Keitel, FCM FJK IV, FJK and FJK III), (b) relationship among those associated with the enterprise and (c) longevity over 10 years, sufficient to permit associates to pursue the enterprises purpose of engaging in criminal predicate acts to defraud Keitel, FCM, FJK IV, FJK, and FJK III (and LTD and INC), through fraud, perjury, suborning perjury switch and bait mortgage-loan fraud, illegal redemption of Final Judgment on Foreclosure, backdating illegal mortgage(s), false allegations of indirect criminal contempt charges (dismissed and vacated), scheming to file false and

fraudulent sworn affidavits, corporate resolution, failure to file timely tax returns to defraud plaintiffs, and usury interest payments to deplete corporate and partnership funds, beginning in February 2012, and continuing through 2021.

## Common Purpose of Defendants

399. Beginning on or before March 2012, with a common purpose and scheme to defraud Keitel, FJK IV, FCM, FJK and FJK III out of property, stock, and millions of dollars, (5) that did cause (6) injury to plaintiff's business, real estate, property, personal property, including stocks, including obstruct of justice by Shutts & Bowen law firm, Larry Glick, Eric Christu and others with the U.S. Trustee's Office, Heidi Feinman, senior trial lawyers, and Ariel Rodriguez, trial lawyer with the Department of Justice, ("DOJ"), Office of the U.S. Trustee ("UST"), and multiple judges named herein, Judge Kimball, Judge Hyman, Judge Sasser, Judge Goodman, Judge Oftedal, who all refused to review the INC SHA, proving that RLLP never owned any stock in INC.

400. While the lawyers involved all worked for law firms, including Chrtistu, Hart, Glick's and Shutts managing partner Menor, and Farrell, their actions were criminal actions (outside the normal practices and/or boundaries of normal lawyers), and operated and managed the enterprise through a pattern of racketeering that included multiple predicated acts (over 30 criminal acts).

401. They conspired with their clients, and lawyers from the U.S. Trustee's and or the Department of Justice, (federal employees, including, state and federal judge that are exempt from civil suits (immunity), and other including JR, JD, SR, Ed, RLLP, LTD. INC, Reis, Fox, Webber, Anderson, Robinson and Zimmerman Reis, all engaged in

activities outside of their corporate duties, or in their capacities as judges and government employees, to obstruct and impede criminal investigation, as well as Callahan, White, Adams and Woodfield, as retaliation against Keitel, FCM, FJK IV, FJK, and FJK III Properties, Inc, with the common purpose to defame Keitel, and obtain through fraud and other criminal predicates all his properties, stock and money (distributions), in a for the purpose of relationship among those associated with the enterprise sharing common purpose.

402. All defendants and other participants individually and jointly engaged in, participated with the common purpose in an association-in-fact enterprise acted with the common purpose to engage in a scheme to defraud plaintiffs out of real estate properties located in Palm Beach, Florida including 237 Brazilian Avenue, ("FCM"), 241 Royal Palm Way, ("FJK-TEE JAY, LTD"), 230 and 240 Royal Palm Way, ("FJK and FJK III"), and 412 Brazilian Avenue, ("FCM"), including stock, distributions, money and control of the partnerships and or corporations through a pattern and scheme to defraud.

403. JR, JD, Sr, RLLP, G,P. D'Agostino Trustees conspired with each other and Shutts lawyers, Chrisrtu, Hart, Glick, Fox Rothschild lawyers, Reis and Dadakis, ("Dadakis"), New York counsel for D'Agostino Trust, Trustee Webber, WARZ, and with

404. The UTS, Feinman, Rodriguez and Turner, worked to defraud FJK IV and Keitel by mail and wire fraud, perjury, suborning perjury (threats and extortion, conspiracy to defraud, tax fraud, illegal backdating interest of a fraudulent mortgage, false and fraudulent drafting and signing of (i) sworn affidavits, (ii) corporate resolutions (iii) organization ownership charts (iv) motions and (v) pleadings that RLLP owned or had

any rights in INC, when the INC Shareholders Agreement signed by Thomas B. D'Agostino on December 30, 1998, as General Partner of Tee Jay of Florida, G.P. and director, vice-president, secretary, and treasurer of INC, certifying that G.P., a separate independent company  owned 50% of INC (not RLLP, a limited liability partnership forbidden by IRS regulations from owning stock in a subchapter S corporation).

405. At all times, Judge Kimball  acted against Keitel, including January 26, 2022, after the bankruptcy case was closed for 19 months, and when he knew Keitel filed letters-Complaint in  Opposition to the  Reappointment of Judge Erik P. Kimball to the U.S. Bankruptcy Court, on December 16, 2021 with the Chief Executive of the Eleventh Circuit Court of Appeals, reviewing whether the 11th Circuit should reappoint Judge Kimball for another term, and the 11th Circuit executive committee  requested more documents/evidence.

406.  August 2016, Shutts, Christu, Glick, Hart, Reis, Fox file Adv. Proc. Case No. 16-01440-EPK with the same false and fraudulent affidavits, corporate resolution, chart, alleging that all checks Keitel wrote after July 9, 2013, were fraud, based on the corporate resolutions.

407. Beginning with the appointment of Webber in November 2016,  Shutts, Christu, JD, JR, LTD, INC,  RLLP, GP, Karen Stein CPA firm and WARZ conspired with each other and others, to deny Keitel and  FJK IV full access to all financial Books, Check Register, Records, Taxes returns and deposit slips by Thomas D'Agostino, Sr who conspired with his D'Agostino's sons, JD, JR and LTD, INC and Tee Jay of Florida RLLP to file a false and fraudulent mortgage and Note of $4,734,000.00 and received over $5,00,000.00 in fraudulent interest payments, penalties and late fees to defraud FJK and Keitel out of

over \$4,000,000.00, in distribution, to pay off any judgments, interfering with FJK IV and Keitel's rights due to fraud before, during and after the May 3, 2012 Sheriff's Sale, in which LTD, using FJK IV and Keitel's money brought FJK IV stock tom intentionally and criminally defraud and interference with FJK IV derivative action herein.

408. Defendants  Shutts, Christu, Hart, Glick, JD, JD, RLLP, INC, LTD  Reis, Fox and Webber, Anderson, Robinson and Zimmerman individually and jointly drafted, prepared and filed motions, pleadings, answers  and documents, in a complaint, Adv. Proc. 16-01440-EPK, that they knew were false and fraudulent on their face while they drafted and filed and sent them through mail and wire fraud.

409. All pleadings filed by JR, JD, RLLP, LTD, INC and Shutts are based on false and fraudulent affidavits and documents, including that RLLP, a limited liability partnership falsely owned stock in INC, Subchapter S corporation beginning in 1998, despite having no ownership interest in INC.

410. The  FJK-Tee Jay, INC Shareholders Agreement,  ("INC-SHA"), is clear on its face, RLLP never owned stock in INC, and all defendants named herein both RICO and Derivative action had common purpose and scheme to defraud plaintiffs Keitel, FJK IV and FCM out of real estate, property, personal property-stock, and money, while acting in an illegal and criminal manner, outside their scope of their roles in their individual companies, corporations, partnerships, and/or law firms.

411. WARZ committed fraud, conspiracy to defraud all creditors (except Shutts clients), malpractice, gross negligence, breach of fiduciary duty,  when they intentionally

dismissed all Keitel, FCM and FJK IV counterclaims, affirmative defenses and set-off, and jury trials, by not contesting any issues, and also defrauded the bankruptcy estate

412.  Despite Sasser's critical opinions of Webber in her order, Sasser, Christu, Hart, Shutts,  Webber, Anderson and Zimmerman all acted against Keitel and conspired against Keitel and FJK IV  causing over $12,000,000.00 in damages by fraud.

413. Webber, Anderson and Zimmerman's refusal to file Keitel and FJK IV's affidavit in opposition to the Motion for Summary Judgment was intentionally done to prevent a jury trial, punish Keitel for the investigation ordered by Chief Judge into corruption and case fixing, damage Keitel's reputation, credibility, and causes loss of property and $17 million in damages.

414.  Defendants Christu, Hart, Glick, SR, ED, JR, JD, RLLP, GP, LTD, D'Agostino Trust, King and Rose,  Stein, SLG at all times since 2013 up to and including the filing of this complaint, acted to conceal the true financials of LTD and INC, to defraud Keitel and FJK IV out of $40 million  in equity, distributions, property and fraudulent payments to SR and Christu, Hart, Glick and Shutts for legal fees filed in violation by mail and wire fraud in interstate commerce

415. At all times from 2012 to October 2021  SR, JR, JD, RLLP, LTD, INC, Stein, SLG, later Rose, King, D'Agostino Trustees, Shutts as escrow agents and lawyers, Christu, Hart, Glick, Reis, Fox Rothschild, Webber, Anderson, Robinson, Zimmerman lawyers, knew that SR, JR, JD, RLLP, LTD and INC  placed  fraudulent first and second mortgages (including January 2020) to payoff off money stolen and looted by SR, JR, JD , RLLP, Christu and Shutts, from LTD, INC with the help of JR, SR, RLLP, Rose,

King, Stein, SLG, Christu, Hart, Glick, Shutts lawyers, and Webber, Anderson, Robinson and Zimmerman.

416. As of October 2021, Webber, Anderson, Robinson, Zimmerman, LTD, INC, RLLP, Christu, Hart and Shutts are still trying to collect over $600,000.00 on-going continuous fraudulent judgments obtained by mail and wire fraud, legal fees and liens as a result of Webber, Anderson, Robinson and Zimmerman's intentional fraud, fraudulent, gross incompetency, negligence and actions to defraud Keitel FCM and FJK IV, as retaliation, to discredit him as a whistle-blower, in a quid pro quo deal, protection agreement with Judge Kimball to obstruct the investigations,

417. U.S. Trustee Richard Webber, conspired with his lawyers, Anderson, Robinson, Zimmerman, his experts, and Shutts Christu, Glick, Hart, SR,JR,JS, LTD, INC, RLLP, falsifying and lying about valuation of stocks, assets, distributions/dividends and real estate valuation from 2016 until 2019, in an effort to defraud FJK IV and Keitel, and did defraud FJK IV and Keitel, causing damages in excess of $12 million in just FJK IV Properties along.

418. U.S. Trustee Richard Webber, conspired with his lawyers, Anderson, Robinson, Zimmerman, his experts, and Shutts Christu, Glick, Hart, SR,JR,JS, LTD, INC, RLLP, conspired with each other, acting together in an association-in-fact, in a pattern of racketeering in October-November 2018, to defraud a debtor (Keitel), FJK IV and Estate creditors in an on-going bankruptcy case in violation of federal offense, under Title 18 U.S.C. §157.

419. At all times since being retained by the D'Agostino's, RLLP, GP, Christu, Hart, Shutts, Reis Fox, Rose, King have conspired with each other and others, to file false fraudulent motions, evidence and affidavits, and intentionally lie and suborned perjury to various Court and Judges as well as threaten, intimidate and tortuously interfere with Keitel's witness's, lenders, bankers, and others for the purpose of defrauding Keitel and his entities.

420. ADAD, Christu, Hart, Glick, Shutts lawyers, Webber, Anderson, Robinson, Zimmerman together with others, acted against Keitel to prevent Keitel from paying off all FJK IV's judgment, liens, and creditors in October 2018, extending to present when Shutts lawyers for LTD, IND, RLLP, JD, JR, SR, GP, refused to give Keitel, FJK IV, and/or SKeitel critical financial from 2013 until 2018, so Keitel couldn't redeem his FJK Stock sold at Sheriff's Auction-Sale on May 3, 2021.

**Derivative Action, RICO, Fraud, Conspiracy, on-going Threats and Extortion by LTD, INC, JR, JD RLLP, SR, Shutts, Christu Glick, Hart, Farrell, Menor, Stein and SLG Before, During and After the Sheriff's Sale of FJK IV Stock May 3, 2021**

421. In April – May 2021 Fred Latsko and others, trying to help SKeitel (and Keitel) redemption of FJK IV stock, were afraid of Christu and Shutts' threats and extortion on behalf of SR, JR, JD, LTD, INC and RLLP, and Christu refused to meet with or give Latsko, or SKeitel's lawyer (Mr. Machate) any financials of LTD/INC.

422. However LTD didn't have to put up any money, because of the underlying fraud in the constitutional issues in the judgment against Keitel, based on JD's testimony.

423. FJK IV and Keitel were forced to file this derivative action herein, and challenge as an exception, 'inciting criminal incident(s)" to the continuous ownership rule caused by fraud, by defendants JD, JR, LTD, INC, the Escrow Agent of FJK IV stock and it's

law partners Shutts (escrow agents), and Christu, Hart and Glick's egregious criminal conduct, including extortion, threats, mail and wire fraud, illegal mortgage, bank fraud perjury and suborning perjury to prevent the return of FJK IV stock fraudulent attempt to defraud Keitel and FJK IV, deny relevant financials, through threats and extortion of FJK IV's banker/lenders in a federal courthouse prior to his testimony and tendering full payment on all judgments to redeem FJK IV stock held by the escrow agent to prevent the redemption of stock prior to the sheriff's sale.

424. May 3, 2021 Sheriff's Sale: Keitel offer of $2,300,000.00 was outbid by $2,320,000.00 by LTD, after JD, JR, RLLP, G.P., LTD, INC Shutts , Christu, Hart, Glick, Menor, Farrell refused to provide the financials or appraisal from experts & Trustee, to allow Keitel and/or his son, SKeitel to pay off the judgment, after Christu/Shutts threats and extortion of Fred Latsko (Louis Capano), Keitel and FJK IV's bankers/lenders/friends in October-November 2018

425. Keitel managed to get another friend to help, and put up $2,325,000.00 to redeem the FJK IV stock on May 7 -11, 2021, but refused by the Palm Beach County Sheriff's for redemption, allowing LTD, JR, JD and RLLP to steal Keitel's stock, they deemed worthless at below FMV, for $3,525,000.

426. In April and May 2021, JD,JR,LTD,INC and Shutts lawyers including Christu refused to allow my son Sebastian (and his lawyer)who had a right to my stock under the By-Laws of FJK-Tee Jay, LTD was denied financial records and the right to look at the books and records of LTD and INC to evaluate and conduct due diligence, when defendants, including , LTD,INC, JD JR, and Shutts lawyers Christu intentionally

interfered with the auction process, to prevent me from putting up the necessary funds to redeem  my FJK IV stock, to file this derivative complaint and action.

427. Keitel's  demands were ignored, and Shutts & Bowen, LLP and Christu as former court appointed escrow agents for FJK IV Properties had multiple conflicts by representing including representing RLLP, JD, JR, SR, LTD and INC,  while Eric Christu threatened and extortion by banker/lender/friend Fred Latsko, and filed motions to limit bids in violation of Keitel's 4th amendment constitutional right to due process to take property without notice.

428. Shutts, Christu, JD, JR. RLLP, LTD AND INC refused to allow Sebastian Keitel, (Keitel 25 year son,  eligible to redeem the FJK IV stock), or his lawyer Robert Machate, Esq, (and/or Fred Latsko, Keitel's banker/lender/friend) from the right to review financial, refused entry to Shutts Offices, and forced Mr. Machate, a lawyer him to wait over an hour down in the lobby, before refusing entry on April 16, 2021.

429. Despite the rules for a sheriff sale, Shutts refused to give Keitel and FJK IV or anyone else the financial document needed to access LTD and INC true financial situation, after withholding material financial document over a 6 year period

430. Keitel and FJK IV was forced to file this  derivative action herein, and  challenge as an exception, 'inciting incident(s)" to the continuous ownership rule caused by defendants' JD, JR, LTD, INC, Shutts (escrow agents), and Christu, Hart and Glick's criminal conduct, fraudulent attempt to defraud Keitel and FJK IV, deny relevant financials,   to prevent the redemption of stock prior to the sheriff's sale.

431. On May 7, May 10th and May 11th, 2021, Keitel attempted to redeem his FJK IV stock, with a cashier's check for $2,325,000.00 to the Palm Beach County Sheriff's Department, but they refused to comply.

432. Keitel was able to tender a cashier's check for $2,325,000.00 to the Palm Beach County Sheriff's Department, days after the Sheriff's sale to redeem FJK IV stock, only because another Keitel lender/banker knew that the FJK IV was worth over $3.6 million, since LTD, JR,JD, RLLP, and Shutts hid the truth value, to defraud FJK IV , Keitel, his bankers and lenders, and his son SKeitel.

433. Since 2017 Shutts, Webber, LTD denied all access to the "real corporate book" refused to give Keitel or his bankers the evaluation that Webber provided to Shutts, in a continuing the RICO pattern of criminal activities named herein, with Judge Kimball's support and blessing.

434. Demand on behalf of FJK IV and Keitel was made to JR, JD, LTD, INC, their lawyers Shutts, Christu, Hart and Glick, Farrell and Menor all the financial documents, accounting, balance statement and check registers since JR, JD and RLLP July 19, 2013 fraudulent move to hold a shareholders meeting and elect JD as director and President of INC.

435. JD, JR, Karen Stein and SLG , in house bookkeeper and accounting firm, that wrote daily checks, also refused to give me tax returns, and critical financial information, records and an accounting for 2012-2016 for the upcoming Sheriff Sale, after JD, JR as officers and director. Webber refuse to turn over tax returns filed.

436. Karen Stein, SLG, JR, JD, LTD, IN\C, RLLP, Shutts as escrow agents, Christo, Hart, Glick, Reis, Fox , WARZ all conspired to defraud FJK ad Keitel, by false and fraudulent accounting, and Shutts, Christu, Hart, Menor Farrell , JR, JD, LTD, INC, RLLP and Stein and SLG  and knew was false to defraud FJK IV  and Keitel, that owned 49.5% of LTD, which according to the Palm, Beach Sheriff's Notice, FJK IV stock gad a capital deficiency, FJK IV worthless, and owed a capital contribution of $1,216,851.23. as of May 3, 2021, all false and fraudulent statements made to defraud a bidder in the sale/auction, in violation of  mail and wire fraud 18 U.S. C. §  1341 & 1343 .

437. At all times, relevant JD, JR, INC, LTD and its in-house accountants Karen Stein and SLG  were also accountants for JR, JD, RLLP, G.P. SR, ED. and D'Agostino family, D'Agostino Trusts, had multiple conflicts of interest and Breach of Fiduciary Duty to FJK IV and Keitel.

438. LTD's winning bid, of $2,320,000.00 combined with the [fraudulent capital contribution],  stated that was needed, means LTD paid $2,320,000.00, plus $1,216,851.23, for FJK IV stock that WARZ  and judge Kimball called was woefully insufficient and worthless" for a total of $3,536,851.23,  was substantial evidence of LTD, INC, JR, JD and Shutts role in fraud in the Palm Beach County Sheriff's sale under Florida law, an another 'criminal inciting incident" and reason to make an exception under the continuous ownership rule.

439. ***Plaintiffs are not attempting to request the U.S. District Court, Southern District of New York ("SDNY"), to set aside the state circuit court orders due to the Feldman Doctrine*** based on fraud, conspiracy to defraud,  perjury, filing false and

fraudulent affidavits, corporate resolutions organization charts motion and pleading,
because plaintiffs understand the findings and meaning  of the **Rooker-Feldman**
**Doctrine**.

440.  **Plaintiffs are attacking the underlying constitutional issues, including but**
**not limited to violation of Keitel's 4th Amendment constitutional rights to notice**
**and a fair hearing,** to deprive Keitel of FJK IV stock, denied by JR,JR, RLLP,LTD, INC,
Shutts as escrow agents for FJK IV stock, Christu, Glick, Hart, Webber, Anderson,
Robinson and Zimmerman, Stein and SLG, and others, in the taking of Keitel's property,
and well as fraud, conspiracy to defraud by defendants in securing judgments, including
filing false and fraudulent affidavits, and suborning perjury, mail and wire fraud in
violation of 18 U.S.C § 1341 & § 1343, all predicate criminal acts by JD, JR, RLLP,
Shutts, Christu, Hart, Glick, Reis and Fox Rothschild, Stein and SLG , and others (all
illegal actions outside the normal course of business, including for lawyers and law
firms, under federal and state laws of New York and Florida).

## COUNT 1
### FEDERAL CIVIL RICO  18 U.S.C. §1962(c)
#### Against All  Defendants

**Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as**
**Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of**
**SLG; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as**
**officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and**
**as a partner in Shutts; Hart individually and as a partner in Shutts; Glick**
**individually and as a partner in Shutts Menor, individually and as a partner in**
**Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP**
**and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for**
**Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Individually, as**
**Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson,**
**Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson**
**Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman**
**Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR.;  Thomas B D'Agostino, JR and**

**Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV, Callahan, White individually and as a partner of HaileShaw; Adams. individually and as a partner of HaileShaw;  Woodfield individually and as a partner of HaileShaw; Haile Shaw, Reis individually and as partner in Fox, and Fox.**

441.

442. This is an action against all defendants for violation of Civil RICO under federal statute 18 U.S.C §1962, 1962(c), and plaintiff was injured as a result.

443. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §1961(3).

Each defendant violated  18 U.S.C. §1962(c) by the acts described in the prior paragraphs, and further described below.

444.  The Enterprise.  All Defendants individually and together formed an association-in-fact for the common and continued purpose described herein and constitute an enterprise within the meaning of  18 U.S.C §1961(1) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

445. Alternatively, the defendants-controlled companies, partnerships of professional association each constitute a separate enterprise with the meaning of 18 U.S.C. §1961(3) and (4) and/or 18 U.S.C. §1962(3).

446. Alternatively, the defendants-controlled companies, partnerships of professional association each constitute a separate enterprise with the meaning of 18 U.S.C. §1961(4)

447. Alternatively, the defendants-controlled companies, partnerships of professional association each constitute a separate enterprise with the meaning of 18 U.S.C. §1961(4)

448. Each enterprise has engaged in and their activities have affected interstate commerce.

449. Pattern of Racketeering Activity. Defendants, each of whom are persons associated with or employed by, the enterprise did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(1) 18 U.S.C. §1961(5) 18 U.S.C. §1962(c ). The racketeering activity was made possible by Defendants' regular and repeated use of false and fraudulent affidavits, corporate resolutions, pleadings, document mail and wire fraud. Defendants had the specific intent to engage in the substantive RICO violation(s) alleged herein.

450. Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. §1961(1)(A); 18 U.S.C. §1961(1)(B); as more specifically alleged below. Defendants each committed at least two such acts or else aided and abetted such acts.

451. The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of repeated conduct during a period of time beginning in 2012 and continuing to the present time, and there is a continued threat of repetition of such conduct.

452. The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity.  Rather, they existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of investing, law, accounting, and real estate 422. Defendants have had and do have, upon information and belief, legitimate business plans outside of the pattern of racketeering activity.

453. Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises and the alternative enterprises  by overseeing and coordinating the commission of multiple acts of racketeering as described below.

454. Predicate Acts: (i) Use of Mails and Wire to Defraud Plaintiffs in Violation of 18 U.S.C. §1341 and  1343; (ii) Obstruction of Justice in violation of 18 U.S.C. §1503: (iii) Extortion in violation of 18 U.S.C. §1961(1)(A);  (iv) Fraud relating to financial institution in violation of  18 U.S.C. §1944;  (v) Tampering with a witness, victim, or an informant in violation of  18 U.S.C. 1512; (vi) Tampering with or Harassing Witness or Victim in violation of Fla. Stat. 914.22;  (vii) Perjury in violation of 18 U.S.C. §1621, and (viii) Perjury in violation of Fla. Stat. 837;  (ix) Suborning Perjury in violation of 18 U.S.C. §1622; (x) Usury in violation of 18 U.S.C. § 86, and  (xi) Usury in violation of Fla. Stat 687:

455.  Predicate Acts:  Use of Mails and Wire to Defraud Plaintiff in Violation of 18 U.S.C. §1341 and  1343; [155-162(1-17), 173; 255-288]; All Defendants committed acts constituting  indictable offenses under 18 U.S.C. §1341 and 1343,  in that they devised or intended to devise a scheme or artifice to defraud Keitel, FCM, FJK IV, FJK and FJK

III  or of false or fraudulent pretenses, representations or promises.  For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers, or received such therefrom.  Defendants also transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings, signs and signals.  The acts of Defendants set forth above were done with the knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such could have been foreseen, even if not actually intended.  These acts were done intentionally  and knowingly with the specific intent to advance Defendants' scheme or artifice.

456. Defendants carried out their scheme(s) in different states and could not have done so unless they used the U.S. mails or  by private or commercial interstate carriers, or interstate wires.  In furtherance of their scheme alleged herein, Defendants communicated among themselves and with Plaintiffs in furtherance of the scheme to defraud Plaintiffs.  The communications were typically transmitted by wire (i.e., electronically) and/or through the U.S mail or  by private or commercial carriers.  Defendant also transmitted or caused the documents to be transmitted by mail or wire multiple times from [2001-2012],   March 2012 through 2022.   Specifically,  Defendants used wire and/or  U.S. mails or  by private or commercial interstate carriers,  on multiple occasions for the purpose of continuing their on-going fraudulent scheme(s).  Defendants Callahan, White, HaileShaw  used wire and/or  U.S. mails or by private or commercial interstate carriers,  on multiple occasions beginning  in March and April 2012, in an effort to defraud Plaintiff(s) in a fraudulent bait and switch mortgage scheme; and Defendants SR, JR, JD, G.P., and RLLP used wire and/or  U.S. mails or

by private or commercial interstate carriers, on multiple occasions beginning  in March 2012 through  June 2021 to defraud Plaintiff(s) in stock and mortgage fraud.  Upon information and belief Defendants SR, JR, JD, G.P., and RLLP also used wire and/or U.S. mails or by private or commercial interstate carriers, on multiple occasions to defraud Archetype Mortgage Capital, fraud relating to financial institution in violation of 18 U.S.C. §1944. [para 140-146].

457. In addition, in furtherance of their scheme, Defendants Callahan, White, HaileShaw also used wire and/or  U.S. mails or by private or commercial interstate carriers, to induce  Keitel to rely on them sign the fraudulent mortgage documents, and Plaintiff attempt to secure a mortgage due to Defendants SR, JR, JD, G.P., and RLLP criminal behavior.  Upon information and belief all Defendants Callahan, White, HaileShaw  and SR, JR, JD, G.P., and RLLP also used wire and/or  U.S. mails or by private or commercial interstate carriers, on multiple occasions[194-202],  Defendants Shutts, Christu, Hart, Glick, Farrell, Menor together with Sr, ED  and SR and JR as Trustees of D'Agostino Trust , JR and JD in dividually and as officers and directors of RLLP, G.P., LTD and INC RLLP, G.P., LTD and INC and Menor also used wire and/or U.S. mails or by private or commercial interstate carriers, on multiple occasions to defraud to defraud Keitel, FCM and FJK IV from April 2013 until present time.  Defendants Webber, Anderson, Robinson and Zimmerman willingly join and participated in the Racketeering enterprise beginning in November/December 2016 and also used wire and/or U.S. mails or by private or commercial interstate carriers, on multiple occasions until may 2020, and then began again in January 2022.

458. Defendants also caused Plaintiff to borrow millions of dollars in funds transmitted using interstate wire communications.

459. Defendant's shared objectives was to divert real estate, stock, distributions and funds to their own benefit, by illegal conduct mentioned herein, and by defaming and discrediting Defendant as a material witness in two separate but similar state and federal investigations into corruption, case fixing, extortion and threats against Plaintiff.

460. Plaintiff(s) reasonably and justifiably relied upon  defendants' false representations, false pretenses and deceptive communications , and  Plaintiff(s) have been damaged as a direct  and proximate result of Defendants' participation in such enterprise, as alleged herein.

461.  Predicate Act: Perjury in violation of 18 U.S.C. §1621, and (viii) Perjury in violation of Fla. Stat. 837:  . Defendants SR, JR, JD,  Christu, Callahan  and Webber committed indictable offenses under 18 U.S.C. §1621in having devised a scheme or artifice to commit perjury themselves to obtain real estate, property, stock, money from Plaintiffs by means of false or fraudulent pretenses, representations or promises.  Defendants perjured themselves on multiple occasions beginning with SR in June 2013, February 2014, April 15, 2015;   JD: June 2013,  July 9, 2013, July 19, 2013, March 2015; April 2015, January 2016, August 23, 2016, September 2017, October 27, 2017 and November 11, 2017 and January 10, 2022;  JR: June 2013, January 2016, August 22, 2016; King April 15, 2015:  Christu:  December 21, 2015, August 31, 2020;  Callahan September 2016;Webber : September 17, 2020. The acts of Defendants set forth above were done willfully and with knowledge that their acts will contribute to the loss of Plaintiffs'' real estate, property, stock, money and/or to discredit Plaintiff's integrity and

130

as a material witness.  These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

462. As part of their scheme as alleged herein, Defendants also aided and abetted the mail and wire fraud in order to facilitate  defrauding Plaintiffs'.

463.  Predicate Act: Extortion in violation of 18 U.S.C. §1961(1)(A);  Defendants' Christu, individually, and as a partner in Shutts & Bowen, LLP and Shutts & Bowen, LLP, and Shutts & Bowen, LLP, as court appointed escrow agents for Keitel and FJK IV stock committed acts constituting indictable offenses under 18 U.S.C. §1961(1)(A), [para. 315-327], in that having devised a scheme or artifice to defraud Plaintiff(s), Keitel [and FJK IV], and withhold stock from his redemption by means of threats, intimidation, representations or creating fear in Plaintiffs' banker/lender/friend Fred Latsko to prohibit him from testifying and delivering funds necessary for Plaintiff to redeem his stock in FJK IV, held in escrow by Christu, Shutts & Bowen LLP and  Shutts & Bowen, LLP, as court appointed escrow agents for Keitel and FJK IV stock.

464. Defendants' Christu, individually, and as a partner in Shutts & Bowen, LLP and Shutts & Bowen, LLP, and Shutts & Bowen, LLP, as court appointed escrow agents for Keitel and FJK IV stock.

465. Shutts and Bowen, LLP is a Florida Limited Liability Partnership with the meaning of   18 U.S.C. §1961(3). Defendant Christu was at all times an agent and partner of Shutts & Bowen LLP, and acting on their behalf of and as an escrow agent with Shutts, when he threatened and extorted Fred Latsko, through fear and intimidation to prevent

him from appearing as a witness in U.S. Bankruptcy Court, to provide cashier checks and funds on behalf of Plaintiff Keitel and FJK IV to redeem FJK IV stock.

466. Upon information and belief   Defendants' Christu, individually, and as a partner in Shutts & Bowen, LLP and Shutts & Bowen, LLP, and Shutts & Bowen, LLP, as court appointed escrow agents for Keitel and FJK IV stock used interstate wire and/or U.S. mails or by private or commercial interstate carriers, on multiple occasions to set up an appointment in order to threatens and extort fear into Plaintiffs' banker/lender Fred Latsko.

467. Criminal threats, extortion in violation of 18 U.S.C. §1961(1)(A), and Fla. Stat. 836.05, and intimidation was used to tamper with  a witness in violation of 18 U.S.C. §1512, by Defendant Christu individually, as a partner with Shutts,  and Shutts & Bowen LLP and Christu and Shutts & Bowen LLP as a court appointed escrow agent for Keitel and FJK IV Properties, Inc[para 315-327].  Defendants Christu and Shutts & Bowen LLP as part of a scheme, performed  these criminal acts to gain additional fees and for the benefit of LTD, INC, RLLP, JR, JD, SR, Menor, Farrell, Hart, Shutts,  Christu personally and as a partner in Shutts & Bowen LLP, and to damage Keitel [and his company, FJK IV].

468. Plaintiff(s) Keitel [and FJK IV], have been damaged as a direct and approximate result of Defendants' Christu, individually, and as a partner in Shutts & Bowen, LLP and Shutts & Bowen, LLP, and Shutts & Bowen, LLP, as court appointed escrow agents for Keitel and FJK IV stock illegal actions, threats, extortion and tampering with a witness appearing before the U.S. Bankruptcy Court

132

469.   Predicate Act:  Suborning Perjury in violation of 18 U.S.C. §1622;  Defendants SR, JR, JD, Christu, Hart, Glick, Shutts, Reis, Fox, Webber, Anderson, Robinson, Zimmerman, King, Rose committed acts constituting indictable offenses  under  18 U.S.C. §1622, in having devised or intended to devise a scheme or artifice to defraud Plaintiffs to obtain real estate, property, stock and money by means of false  or fraudulent pretenses, representations or sworn testimony, defendants schemed and conspired with one another  to get each other, to lie under oath or ignore their false and fraudulent testimony under oath and/or in writings.

470. When the Defendants SR, JR, JD, Christu, Hart, Glick, Shutts, Reis, Fox, Webber, Anderson, Robinson, Zimmerman, King, Rose  committed the acts beginning in June-July 2013, they were each persons  within the meaning of 18 U.S.C. §1961(3) and (5) and/or 18 U.S.C. §1962(3).

471. Defendants SR, JR, JD, Christu, Hart, Glick, Shutts, Reis, Fox, Webber, Anderson, Robinson, Zimmerman, King, Rose committed some or all of the acts described herein, while they were within the United States, through corrupt use of the mails, wires and other means of interstate commerce was used.

472. Plaintiffs have been damaged as a direct and approximate result of Defendants illegal actions in suborning perjury.as alleged herein.

473.   Predicate Acts: (ii) Obstruction of Justice in violation of 18 U.S.C. §1503:

Defendants Shutts, Glick, Christu, Hart, Webber, Anderson, Robinson and Zimmerman committed indictable offenses under 18 U.S.C. §1503 in that having devised  or intended to devise a scheme or artifice to defraud Plaintiffs Keitel FCM and FJK IV to

obtain real estate, property, stock and money by means of false and fraudulent pretenses, representations or proffers, known to be false to improperly influence a judicial body and or governmental investigative agency, and/or secretly, nefariously, and/or by illegal means or activities, help a government employee under investigation coordinate their testimony (or perjury) with another person, also under investigation, impede and or obstruct the investigation by the U.S. Attorney's Office, FBI and/or UST into corruption, case fixing, threats and extortion.

474. When the Defendants Shutts, Glick, Christu, Hart, Webber, Anderson, Robinson and Zimmerman committed the acts described herein, in July 2016 through February 2017, they were each persons within the meaning of 18 U.S.C. §1962(3). Defendants Glick, Christu, Hart, Farrell, Menor were all times an agent of, partner, and or an officer, director , on the executive committee or employee of Shutts & Bowen, LLP, and Webber, Anderson, Robinson were are all times an agent of, partner, and or an officer, director or employee of Zimmerman, Kiser & Sutcliffe, P.A. and acting on their behalf and upon information and belief was at all relevant times shareholders of their respective PA's or LLP.

475. Defendants committed some or all of the acts described herein, while they were within the United States, through corrupt use of the mails, wires and other means of interstate commerce was used.

476. Plaintiffs Keitel and FCM have been damaged as a direct and approximate result of Defendants illegal actions and Obstruction of Justice in violation of 18 U.S.C. §1503, as alleged herein.

477.   Predicate Acts: Usury in violation of 18 U.S.C. § 86, and Fla. Stat §687:

Defendants Callahan, White and HaileShaw and others unknow at this time committed

indictable offenses under 18 U.S.C. § 86, and Fla. Stat §687 in that having devised  or

intended to devise a scheme or artifice to defraud Plaintiffs FJK, FJK III and Keitel to

obtain real estate, property, stock and/or money by means of false and fraudulent

pretenses, representations or in a bait and switch scheme overnight without notice of

consent to obtain return on mortgage and loan in excess of 60% through mail and wire

fraud beginning in March 2012.

478. When the Defendants Callahan, White and HaileShaw and others unknow at this

time committed the acts described herein, they were each persons within the meaning

of 18 U.S.C. § 1961 (3), and Fla. Stat,  White and others unknow at this time were are

all times an agent of, partner, shareholder and or an officer, director or employee of

HaileShaw and acting on their behalf and upon information and belief was  at all

relevant times shareholders of their HaileShaw.

479. Defendants committed some or all of the acts described herein, while they were

within the United States, through corrupt use of the mails, wires and other means of

interstate commerce was used.

480. Plaintiffs FJK, FJK III and Keitel [and FJK IV], have been damaged as a direct and

approximate result of Defendants illegal actions and Usury in violation of 18 U.S.C. §

86, and Fla. Stat. § 687

481.   Predicate Act:  Use of Mails and Wire to Defraud Plaintiff in Violation of 18 U.S.C.

§1341 and  1343 [para. 162(1-17), 73-111,134-192, 255-288] Defendants Thomas B

135

D'Agostino, SR and Thomas B D'Agostino, JR., as Trustees for the THOMAS B. and ELZBIETA D'AGOSTINO 1997 CRT TRUST, a New York Charitable CRT TRUST, (D'Agostino Trust"), [para. 212-238], ELZBIETA D'AGOSTINO, ("ED"), SCHAIN LEIFER GURALNICK; a New York Certified Public Accounting firm, ("SLG"); KAREN STEIN, ("Stein") individually and on behalf of SCHAIN LEIFER GURALNICK a New York Certified Public Accounting firm, committed acts constituting indictable offenses under 18 U.S.C. §1341 and 1343, in that they devised or intended to devise a scheme or artifice to defraud FCM and Keitel or of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers, or received such therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings, signs and signals. The acts of Defendants set forth above were done with the knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

482. Defendants Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., as Trustees for the THOMAS B. and ELZBIETA D'AGOSTINO 1997 CRT TRUST, a New York Charitable CRT TRUST, (D'Agostino Trust"), ELZBIETA D'AGOSTINO, ("ED"), SCHAIN LEIFER GURALNICK; a New York Certified Public Accounting firm, ("SLG"); KAREN STEIN, ("Stein") individually and on behalf of SCHAIN LEIFER GURALNICK a New York Certified Public Accounting firm, carried out their scheme(s) in different states and

could not have done so unless they used the U.S. mails or  by private or commercial interstate carriers, or interstate wires.  In furtherance of their scheme alleged herein, Defendants communicated among themselves and with Plaintiffs in furtherance of the scheme to defraud Plaintiffs.  The communications were typically transmitted by wire (i.e., electronically) and/or through the U.S mail or  by private or commercial carriers. Defendant also transmitted or caused the documents to be transmitted by mail or wire multiple times from March 2005 through 2022.   Specifically, Defendants used wire and/or  U.S. mails or  by private or commercial interstate carriers,  on multiple occasions for the purpose of continuing their on-going fraudulent scheme(s).   Defendants' Thomas B. D'Agostino, SR and  Thomas B. D'Agostino, JR., Trustees of D'Agostino Trust, ED, Stein and SLG used wire and/or  U.S. mails or by private or commercial interstate carriers,  on multiple occasions beginning  in March 2005 , in an effort to defraud Plaintiff(s) in a fraudulent mortgage scheme;

483. In addition, in furtherance of their scheme, Defendants Thomas B. D'Agostino, SR and  Thomas B. D'Agostino, JR Trustees of D'Agostino Trust, ED Stein and SLG also used wire and/or  U.S. mails or by private or commercial interstate carriers, to induce Keitel to rely on them sign the fraudulent mortgage documents,

484. Defendants also caused Plaintiff to borrow millions of dollars in funds transmitted using interstate wire communications.

485. Defendants'  shared objective was to divert real estate, stock, distributions and funds to their own benefit, by illegal conduct mentioned herein, and by defaming and discrediting Defendant as a material witness in two separate but similar state and federal investigations into corruption, case fixing, extortion and threats against Plaintiff.

486. Plaintiff(s) reasonably and justifiably relied upon defendants' false representations, false pretenses and deceptive communications , and Plaintiff(s) have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

487. Predicate Act: Use of Mails and Wire to Defraud Plaintiff in Violation of 18 U.S.C. §1341 and 1343; Defendants Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and Christu, Hart, Glick Menor, Farrell and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents, for Frederick J. Keitel, III, FCM [and FJK IV Properties, Inc], Webber, Anderson, Robinson and Zimmerman and others unknown at this time, Reis individually and as partner in Fox; and Fox and SCHAIN LEIFER GURALNICK; a New York Certified Public Accounting firm, ("SLG"); KAREN STEIN, ("Stein") individually and on behalf of SCHAIN LEIFER GURALNICK a New York Certified Public Accounting firm, and Thomas B D'Agostino, SR, committed acts constituting indictable offenses under 18 U.S.C. §1341 and 1343, in that they devised or intended to devise a scheme or artifice to defraud FCM and Keitel or of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers, or received such therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings, signs and signals. The acts of Defendants set forth above were done with the knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such could have been

foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

488. Defendants Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and Christu, Hart, Glick Menor, Farrell and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Anderson, Robinson and Zimmerman and others unknown at this time, and SCHAIN LEIFER GURALNICK; a New York Certified Public Accounting firm, ("SLG"); KAREN STEIN, ("Stein") individually and on behalf of SCHAIN LEIFER GURALNICK a New York Certified Public Accounting firm, and Thomas B D'Agostino, SR, carried out their scheme(s) in different states and could not have done so unless they used the U.S. mails or by private or commercial interstate carriers, or interstate wires. In furtherance of their scheme alleged herein, Defendants communicated among themselves and with Plaintiffs in furtherance of the scheme to defraud Plaintiffs. The communications were typically transmitted by wire (i.e., electronically) and/or through the U.S mail or by private or commercial carriers. Defendant also transmitted or caused the documents to be transmitted by mail or wire multiple times from 2008 until June 2021. Specifically, Defendants used wire and/or U.S. mails or by private or commercial interstate carriers, on multiple occasions for the purpose of continuing their on-going fraudulent scheme(s).

489. Defendants Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and Christu, Hart, Glick Menor, Farrell and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber,

Anderson, Robinson and Zimmerman and others unknown at this time, and  SCHAIN
LEIFER GURALNICK; a New York Certified Public Accounting firm, ("SLG"); KAREN
STEIN, ("Stein") individually and on behalf of SCHAIN LEIFER GURALNICK a New
York Certified Public Accounting firm, and Thomas B D'Agostino, SR., used wire and/or
U.S. mails or by private or commercial interstate carriers,  on multiple occasions
beginning  in March 2005 , in an effort to defraud Plaintiff(s) in a fraudulent mortgage
scheme;

490. In addition, in furtherance of their scheme, defendants Thomas B D'Agostino, JR
and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD,
INC and Christu, Hart, Glick Menor, Farrell and Shutts & Bowen, LLP and others
unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J.
Keitel, III and FJK IV Properties, Inc stock, Reis individually and as partner in Fox; and
Fox  Webber, Anderson, Robinson and Zimmerman and others unknown at this time,
and  SCHAIN LEIFER GURALNICK; a New York Certified Public Accounting firm,
("SLG"); KAREN STEIN, ("Stein") individually and on behalf of SCHAIN LEIFER
GURALNICK a New York Certified Public Accounting firm, and Thomas B D'Agostino,
SR. also used wire and/or  U.S. mails or by private or commercial interstate carriers, to
induce  Keitel to rely the fraudulent mortgage documents in September 2014, ,
financials, tax returns, false fraudulent mortgage payments and illegally backdated
mortgage payments beginning in October 2014 to present, , illegal redemption of the
final judgment and LTD property in January 2013, and all others financial documents
withheld to cover up fraud.

491. Defendants Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and Christu, Hart, Glick Menor, Farrell and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Anderson, Robinson and Zimmerman and others unknown at this time, and SCHAIN LEIFER GURALNICK; a New York Certified Public Accounting firm, ("SLG"); KAREN STEIN, ("Stein") individually and on behalf of SCHAIN LEIFER GURALNICK a New York Certified Public Accounting firm, and Thomas B D'Agostino, SR. caused Plaintiffs Keitel [and his company FJK IV], to lose millions of dollars, in stock, distributions, real estate and equity, when defendants Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and Christu, Hart, Glick Menor, Farrell and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Anderson, Robinson and Zimmerman and others unknown at this time, and SCHAIN LEIFER GURALNICK; a New York Certified Public Accounting firm, ("SLG"); KAREN STEIN, ("Stein") individually and on behalf of SCHAIN LEIFER GURALNICK a New York Certified Public Accounting firm, and Thomas B D'Agostino, SR. gave false and fraudulent financial information, documents and tax returns, and withheld, critical financial information, false and fraudulent mortgage payments, deposit slips, from January 2013 until present transmitted using interstate wire communications.

492. Defendants' Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and Christu, Hart, Glick Menor, Farrell

and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Reis individually and as partner in Fox; and Fox   Webber, Anderson, Robinson and Zimmerman and others unknown at this time, and  SCHAIN LEIFER GURALNICK; a New York Certified Public Accounting firm, ("SLG"); KAREN STEIN, ("Stein") individually and on behalf of SCHAIN LEIFER GURALNICK a New York Certified Public Accounting firm, and Thomas B D'Agostino, SR.   shared objective was to divert real estate, stock, distributions and funds to their own benefit, by illegal conduct mentioned herein, and by defaming and discrediting Defendant as a material witness in two separate but similar state and federal investigations into corruption, case fixing, extortion and threats against Plaintiff.

493. Plaintiff(s) Keitel and FCM [and FJK IV], reasonably and justifiably relied upon Defendants Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and Christu, Hart, Glick Menor, Farrell and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Anderson, Robinson and Zimmerman and others unknown at this time, and  SCHAIN LEIFER GURALNICK; a New York Certified Public Accounting firm, ("SLG"); KAREN STEIN, ("Stein") individually and on behalf of SCHAIN LEIFER GURALNICK a New York Certified Public Accounting firm, and Thomas B D'Agostino, SR. false representations, false pretenses and deceptive communications,  and withholding distribution Plaintiff(s) Keitel, FCM  [and his company FJK IV] have been damaged as a

direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

494. <u>Predicate Acts: Use of Mails and Wire to Defraud Plaintiff in Violation of 18 U.S.C. §1341 and §1343</u>; Defendants Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, committed acts constituting indictable offenses under 18 U.S.C. §1341 and 1343, in that they devised or intended to devise a scheme or artifice to defraud Keitel and FCM, or to obtain money from Keitel and FCM by means of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme or artifice, Defendants Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers, or received such therefrom. Defendants Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, also transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings, signs and signals. The acts of Defendants Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, set forth above were done with the knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, scheme or artifice.

495. Defendants Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, carried out their scheme(s) in different states and could not have done so unless they used the U.S. mails or by private or commercial interstate carriers, or

interstate wires.  In furtherance of their scheme alleged herein, Defendants Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, communicated among themselves and with Plaintiffs Keitel and FCM in furtherance of the scheme to defraud Plaintiffs.  The communications were typically transmitted by wire (i.e., electronically) and/or through the U.S mail or  by private or commercial carriers.

496. Defendant also transmitted or caused the documents to be transmitted by mail or wire multiple times from January 2005 to April 2017.   Specifically,  Defendants Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, used wire and/or  U.S. mails or  by private or commercial interstate carriers,  on multiple occasions for the purpose of continuing their on-going fraudulent scheme(s)., to defraud Keitel and FCM out of monies in excess or $500,000.00.

497. In addition, in furtherance of their scheme, Defendants Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, also used wire and/or  U.S. mails or by private or commercial interstate carriers, to induce  Keitel and FCM to rely on them sign the fraudulent documents, and contracts for $550,000.00 and to release and indemnify Defendants, based on confidential inside non-public information, that Defendants Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time had, and knew that Plaintiffs Keitel and FCM didn't have.  Upon information and belief all  Defendants Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, also caused Plaintiff to  lose millions of dollars in stock, real estate, money, profits  and funds by their mail and wire fraud activities transmitted using interstate wire communications.

144

498. Defendants' Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, shared objective was to divert real estate, stock, distributions, profits and funds to their own benefit, by illegal conduct mentioned herein, and by defaming and discrediting Defendant as a material witness in two separate but similar state and federal investigations into corruption, case fixing, extortion and threats against Plaintiff.

499. Plaintiff(s) reasonably and justifiably relied upon defendants' Callahan, White, Adams, Woodfield, HaileShaw and others unknow at this time, false representations, false pretenses and deceptive communications , and Plaintiff(s) have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

500. Continuity of Conduct. Defendants' violations of state and federal laws set forth herein, each of which directly and proximately injured Plaintiffs, Keitel, FCM FJK, FJK III[and FJK IV], constituted a continuous course of conduct spanning a period from approximately 2012 to present, which was intended to obtain money, stock, real estate, property, and distributions, through false representations, fraud, deceit, extortion, threats, defamation and other improper and unlawful means. Therefore, said violations were part of a pattern of racketeering activity under 18 U.S.C. §1961(1)(A)(B) and (5).

501. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. §1962(c ) and/or state statutes listed herein.

145

502. The unlawful od Defendants, and each of them , have directly, illegally, and proximately caused and continue to cause injuries to Plaintiffs, in its business. Plaintiffs seeks an award of damages in compensation for , among other things the millions of dollars Defendants stole from Plaintiffs including FJK IV Properties, Inc. stock.

503. Plaintiffs accordingly seeks an award of three times the damages it sustained, return of stock in FJK IV Properties, Inc, stolen, and all missing distributions, and recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute or this court deem appropriate.

## COUNT II

### Conspiracy to Violate Federal Civil RICO, 18 U.S.C. §1962(d )
### Against All Defendants,

**Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc., stock, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A.; Thomas B D'Agostino, SR.; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV, Callahan, White individually and as a partner of HaileShaw; Adams. individually and as a partner of HaileShaw; Woodfield individually and as a partner of HaileShaw; Haile Shaw, Reis and Fox**

474. Plaintiffs Frederick J. Keitel, III**,** Florida Capital Management LLC, FJK Properties, Inc and FJK III Properties Inc., and [FJK IV], re-alleges, repeats and incorporates by reference herein all the allegations in paragraphs 1- 473 and specifically to this Cause

of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 474  -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

475 . This is an action against all defendants for violation of Civil RICO under federal statute 18 U.S.C §1962(d) and Defendants Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A;  Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR.;  Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV, Callahan, White individually and as a partner of HaileShaw;  Adams. individually and as a partner of HaileShaw;  Woodfield individually and as a partner of HaileShaw; Haile Shaw, Reis and Fox and each of them, knowingly, willfully, and unlawfully, conspired to facilitate a scheme which included the operation or management  of a RICO enterprise through a

pattern of racketeering activity as alleged in paragraphs 73-193 and 238-264, 271-346, and above.

476. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §1961(3).

477. Each defendant violated  18 U.S.C. §1962(d) by the acts described in the prior paragraphs, and further described below.

478.  The Enterprise.  All Defendants individually and together formed an association-in-fact for the common and continued purpose described herein and constitute an enterprise within the meaning of  18 U.S.C §1961(1) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

479. Alternatively, the defendants-controlled companies, partnerships of professional association each constitute a separate enterprise with the meaning of 18 U.S.C. §1961(3) and (4) and/or 18 U.S.C. §1962(3).

480. Alternatively, the defendants-controlled companies, partnerships of professional association each constitute a separate enterprise with the meaning of 18 U.S.C. §1961(4)

481. Alternatively, the defendants-controlled companies, partnerships of professional association each constitute a separate enterprise with the meaning of 18 U.S.C. §1961(4)

482. Each enterprise has engaged in and their activities have affected interstate commerce.

483. <u>Pattern of  Racketeering Activity</u>.  Defendants, each of whom are persons associated with or employed by, the enterprise did knowingly, willfully  and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering  activity within the meaning of 18 U.S.C. §1961(1) 18 U.S.C. §1961(5) 18 U.S.C. §1962(c ).  The racketeering activity was made possible by Defendants' regular and repeated use of false and fraudulent affidavits, corporate resolutions, pleadings, document mail and wire fraud.  Defendants had the specific intent to engage in the substantive RICO violation(s) alleged herein.

484. Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. §1961(1)(A);  18 U.S.C. §1961(1)(B); as more specifically alleged below.  Defendants each committed at least two such acts or else aided and abetted such acts.

485. The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of repeated conduct during a period of time beginning in 2012 and continuing to the present time, and there is a continued threat of repetition of such conduct.

486. The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity.  Rather, they existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of investing, law, accounting, and real estate

149

487. Defendants have had and do have, upon information and belief, legitimate business plans outside of the pattern of racketeering activity.

488. Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises and the alternative enterprises  by overseeing and coordinating the commission of multiple acts of racketeering as described below.

489. The conspiracy commenced at least as early as 2012 and is on-going.

490. The conspiracy's purpose was to divert money, real estate, distributions, property and  stock from  Keitel, FCM, FJK IV, FJK and FJK III to their own benefits and to facilitate, discredit and defame Keitel in an effort and as a means to defraud Plaintiffs.

491. Each Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy included above, including but not limited to mail and wire fraud, false and fraudulent misrepresentation, perjury, suborning perjury, extortion, filing false and fraudulent affidavits, corporate resolutions, organizational charts, motions and pleadings, a bait and switch scheme to defraud during a mortgage loan closing, bank fraud, Tax evasion, backdating an illegal mortgage and loan, all to facilitate and manage the scheme to defraud Plaintiffs', Keitel, FCM, FJK and FJK III, and defraud them of stock, property, real estate, distributions and equity as described above.

492. Plaintiffs have been injured and continue to be injured in a business and property by Defendants'

493. Conspiracy in violation of  18 U.S.C. §1962(d ).  The unlawful actions of

Defendants, and each of them, have directly, illegally, and approximately caused and

continue to cause injuries to Plaintiff(s) personally, and in his business or property.

Plaintiffs seeks an award of damages in compensation for, among other things the

millions of dollars Defendants stole from Plaintiffs, and the return of certain properties

stolen, including  FJK IV Properties, Inc., stolen.

494. Plaintiffs accordingly seeks an award of three times the damages it sustained,

return of stock in FJK IV Properties, Inc, stolen, and all missing distributions, and

recovery of reasonable attorneys' fees and costs of investigation and litigation, as well

as any other relief as authorized by statute or this court deem appropriate.

## COUNT III

### Fraud

#### Against All Defendants

**Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A;  Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR.;  Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV, Callahan, White individually and as a partner of HaileShaw; Adams, individually and as a partner of HaileShaw;  Woodfield,  individually and as a partner of HaileShaw; Haile Shaw, Reis individually and as partner in Fox; and Fox**

495.  Plaintiffs Keitel (FJK IV) and FCM  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 494 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 495  -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein, and [INC/LTD/FJK IV: 134-163; 232-245; 245-266; 268-311; 313-349; 350-494] and incorporated them herein, as if fully set forth herein.

496. All Defendants, including  Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Reis individually and as partner in Fox; and Fox ; Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually and as a partner in Zimmerman Kiser & Sutcliffe, P.A;  Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR.;  Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV, Callahan, White individually and as a partner of HaileShaw;  Adams, individually and

as a partner of HaileShaw;  Woodfield,  individually and as a partner of HaileShaw;

Haile Shaw.

497. Upon information and belief, knowingly and intentionally misled Plaintiffs Keitel,

FCM [and FJK IV] with their criminal actions named herein, by failing to disclose

material false statement of facts made with the intent to deceive Plaintiffs and Plaintiff's

reliance  on defendants individually, and as association-in-facts, was damaged by the

misrepresentation, especially when defendants  joined forces for the specific purpose of

defrauding Plaintiffs Keitel, FCM [and FJK IV] out of money, stock, property,

distribution, real estate and profits, through fraud, conspiracy to defraud, extortion,

threats, mail and wire fraud, and all  other unlawful activities set forth herein above.

498. Defendants Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually

and as Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of

SLG; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer

and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner

in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner

in Shutts Menor, individually, and as a partner in Shutts; Farrell individually and as a

partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts

& Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc

stock, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser &

Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe,

P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A;

Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR.;  Thomas B D'Agostino,

JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P.,

LTD, INC and FJK IV, Callahan, White individually and as a partner of HaileShaw; Adams, individually and as a partner of HaileShaw; Woodfield, individually and as a partner of HaileShaw; Haile Shaw. Reis individually and as partner in Fox; and Fox

499. Fraudulent activities include those set forth herein and intentionally concealed criminal actions, mail and wire fraud, threats, extortion, perjury, conspiracy because the intended to mislead Plaintiffs and did mislead Plaintiffs, who relied on their misrepresentations and was unaware of their unlawful activities. Defendants Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR.; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV, Callahan, White individually and as a partner of HaileShaw; Adams, individually and as a partner of HaileShaw; Woodfield, individually and as a partner of HaileShaw; Haile Shaw.

500. Fraudulent acts included those **set forth in paragraphs _____. above.**

501. Defendants' Callahan, White individually and as a partner of HaileShaw; Adams, individually and as a partner of HaileShaw; Woodfield, individually and as a partner of HaileShaw; Haile Shaw intentional misrepresentation of material facts, that they were working together with Keitel and FCM in an advisory and fiduciary relationship, as lenders and advisors to loan Keitel and FCM $5 million dollars from the "Bank of Callahan, at the 'Callahan family discount rate'"), for the development of townhouses on property that FCM owned (FCM was 100% own by Keitel, Callahan's son-in-law), only to find out over the next 12-16 months, that Callahan, White, Adams, Woodfield HaileShaw, and other partners within HaileShaw, unknown to plaintiffs at this time, were sabotaging Keitel and FCM venture and secretly nefariously working with all others defendants, to prevent Keitel and FCM from going forward with the project, when all misrepresenting material facts, and reliance by Keitel and FCM, when defendants and, the Trustee, Webber and his lawyers, all defendants herein were working with all other defendants named herein to defraud Keitel by misrepresentation, perjury, fraud, obstruct of justice, suborning perjury, to discredit, sabotaged and, to defraud Keitel and FCM from doing forward, damaging Keitel in excess of $15 million.

502. Plaintiffs justifiably relied on Defendants Callahan, White, Adams, Woodfield and HaileShaw, Webber Anderson, Robinson and other unknown at this time, representations , Fiduciary relationship and good faith, only to discover, that all defendants were working together, misrepresenting material facts relied by Keitel and FCM, who was unaware of the extend of fraud, defamation and efforts to discredit him, in an effort to steal his development project for themselves.

155

503. Defendants Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR.;  Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV, Callahan, White individually and as a partner of HaileShaw; Adams, individually and as a partner of HaileShaw; Woodfield, individually and as a partner of HaileShaw; Haile Shaw,  conduct was willful, wanton, malicious, and oppressive.

504. Defendants 's unlawful conduct has directly , legally and approximately caused and continues to cause injuries to Plaintiff Keitel in his business and personal life.  The injuries include Plaintiff loss of FCM property, profits, loss of FJK IV stock, set-offs, distributions, real estate, distribution and steady on-going stream of income. Plaintiff Keitel seeks an award of damages in compensation for among things, the millions of dollars Defendants stole from Plaintiff.  Further, Plaintiff seeks the imposition of punitive

damages as a result of defendants' criminal behavior, including perjury, multiple counts of suborning perjury, extortion, threats, and obstruction of justice in an attempt to discredit Keitel as a material witness [whistleblower-witness] in the investigation into corruption, case fixing, threats and extortion all done to prevent Keitel from developing his townhomes.

## COUNT IV

### Civil Conspiracy to Defraud

### Against All Defendants

**Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR.; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV, Callahan, White individually and as a partner of HaileShaw; Adams, individually and as a partner of HaileShaw; Woodfield, individually and as a partner of HaileShaw; Haile Shaw; Reis individually and as partner in Fox; and Fox.**

505. Plaintiffs Keitel (FJK IV) and FCM re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 504 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287, 288-326, 329-340, 367-382, 384-402, above 5o6 -777, 803-886 and 887 – 890 incorporates them as if fully alleged herein.

506. All Defendants, including  Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A;  Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR.;  Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV, Callahan, White individually and as a partner of HaileShaw;  Adams, individually and as a partner of HaileShaw;  Woodfield,  individually and as a partner of HaileShaw; Haile Shaw, Reis individually and as partner in Fox; and Fox,  and each of them, knowingly, willfully, and unlawfully, conspired to facilitate a scheme which included the operation or management  of a RICO enterprise through a pattern of racketeering activity as alleged herein.

507. Defendants, and each of them, combined and agreed with each other and/or others to defraud Plaintiffs by failing to disclose that  they acted in concert, and not isolated, but rather the acts of Defendants were related in that they had the same or

similar purpose and result, participants, victims and method of repeated conduct during a period of time beginning in late 2015 or early 2016 and continuing to the present time, as alleged **herein** and there is a continued threat of repetition of such conduct.

508. Defendants , and each of them, combined and agreed with each other and/or others to defraud Plaintiff Keitel and FCM by perjury, suborning perjury, fraud, intentional that Callahan, White, Adams, Woodfield and HaileShaw they were working together with Keitel and FCM in an advisory and fiduciary relationship, as lenders and advisors to loan Keitel and FCM $5 million dollars from the "Bank of Callahan, at the 'Callahan family discount rate'"), for the development of townhouses on property that FCM owned (FCM was 100% own by Keitel, Callahan's son-in-law), only to find out over the next 12-16 months, that Callahan, White, Adams, Woodfield and HaileShaw were sabotaging Keitel and FCM venture and secretly nefariously working with all others defendants, to prevent Keitel and FCM from going forward with the project, all misrepresenting material facts, and reliance by Keitel and FCM, when defendants and, the Trustee, Webber and his lawyers, all defendants herein were working with all other defendants named herein to defraud Keitel by misrepresentation, perjury, fraud, obstruct of justice, suborning perjury, to discredit, sabotaged and, to defraud Keitel and FCM from doing forward, damaging Keitel in excess of $15 million.

509. The conspiracy commenced as early as late 2015 or early January 2016 and upon information and belief is on-going.

510. Pursuant to their agreement(s), Defendants, and each of them, acted in concert to support their common purpose of defrauding Plaintiff Keitel and FCM in order to deprive

Plaintiffs of the property, real estate, money, opportunity to develop the townhouses, the profits, and a home for Keitel and his family.

511. Each Defendant committed at least one overt act in furtherance of such conspiracy. Including misleading Plaintiff(s) as to the true purpose of their intent, and the intent of all the defendants, outlined in the paragraphs above in paragraphs above, including but not limited to mail and wire fraud, false and fraudulent misrepresentation, perjury, suborning perjury, extortion, filing false and fraudulent affidavits, to facilitate and manage the scheme to defraud Plaintiffs' Keitel and FCM out of money, property, real estate, and profits described above.

512. Each Defendant acted with the common intent to defraud Plaintiffs and understood that all other defendants shared the same intent in that common purpose.

513. Plaintiffs have been injured and continue to be injured in a business and property by Defendants'

514. Defendants' conduct was willful, wanton, malicious, and oppressive.

515. Defendants 's unlawful conduct has directly , legally and approximately caused and continues to cause injuries to Plaintiff Keitel in his business and personal life.  The injuries include Plaintiff loss of FCM property, profits, loss of FJK IV stock, set-offs, distributions, real estate, distribution and steady on-going stream of income. Plaintiff Keitel seeks an award of damages in compensation for among things, the millions of dollars Defendants stole from Plaintiff.

516. Further, Plaintiff seeks the imposition of punitive damages as a result of defendants' criminal behavior, including perjury, multiple counts of suborning perjury,

extortion, threats, and obstruction  of justice in an attempt to discredit Keitel as a

material witness [whistleblower-witness] in the investigation into corruption, case fixing,

threats and extortion all done to prevent Keitel from developing his townhome

### COUNT V

### Fraud

### Against Defendants

**Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A. Callahan, White, Adams and Haile Shaw.**

517.  Plaintiffs Keitel (FJK IV) and FCM  re-alleges repeats and incorporates by

reference herein all the allegations in paragraphs 1- 516 and specifically to this Cause

of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-

238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 518  -777,  803-

886  and 887 – 890  incorporates them as if fully alleged  herein.

518. Defendants Thomas B. D'Agostino, SR and Thomas B. D'Agostino, JR.,

individually and as Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and

on behalf of SLG; Christu, individually and as a partner in Shutts; Hart individually and

as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually

and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts &

Bowen, LLP and others unknown at this time, and Shutts & Bowen, Webber,

Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A.

Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A;  Zimmerman Kiser & Sutcliffe, P.A., and Callahan, White, Adams and Haile Shaw**.**

519. Upon information and belief, Defendants knowingly and intentionally misled Plaintiffs Keitel and FCM with their criminal actions named herein, by failing to disclose material false statement of facts made with the intent to deceive Plaintiffs and Plaintiff's reliance on defendants individually, and as association-in-facts, was damaged by the misrepresentation, especially when defendants  joined forces for the specific purpose of defrauding Plaintiffs Keitel, FCM [out of money, stock, property,  real estate and profits, through fraud, conspiracy to defraud, mail and wire fraud, and all  other unlawful activities set forth herein above.

520. Defendants  Fraudulent activities include those set forth herein and intentionally concealed criminal actions, mail and wire fraud, perjury, conspiracy because the intended to mislead Plaintiffs and did mislead Plaintiffs, who relied on their misrepresentations and was unaware of their unlawful activities.

521. Fraudulent acts included those set forth herein, Defendants' sabotaged  Keitel and FCM venture and secretly nefariously working with each other and others defendants, to prevent Keitel and FCM from going forward with buying back his property and building his townhouses, by intentionally misrepresenting material facts, and reliance by Keitel and FCM.  Defendants Webber , Anderson, Robinson and Zimmerman were secretly and nefariously working with Christu, Hart, Glick, Shutts, SR, JR, JD, ED and D'Agostino Trustees to defraud, discredit and defame Keitel on January 5, 2017, and demanded that Judge Oftedal [against Judge Oftedal's own  recommendation]  issue a

162

written order finding that Keitel committed fraud on the Court, drafted by Webber, Anderson Robinson Zimmerman and Christu, Hart, Glick and Shutts, so they could immediately submit the orders to the UST, and/or USA to discredit Keitel as a material witness during the on-going state and federal investigations into corruption, case fixing, threats and extortion in the U.S Bankruptcy Court, West Palm Beach, and UTS, Southern District of Florida. Larry Glick, Christu and Shutts had previously funneled documents to Heidi Feinman, UTS senior trial lawyer under investigation for corruption and case fixing deposition testimony and notes so she could coordinate her testimony with Robert Furr, also under investigation.

522. On January 6, 2017, Webber rejected Keitel's $5.5 million, all cash offer to buy back FCM and the property at 237 Brazilian Avenue, Palm Beach, Florida, for the FMV, October 2016 certified appraisal.

523. Webber rejected Keitel's offer, and immediately signed a contract to sell the property for $4 million, and Webber and Christu threatened and attempted to extort $4 million from Keitel, in exchange for their agreement not to object to Keitel's motion to intervene in the state court case. As soon as Keitel refused, Defendants good to their threats, immediately objected to Keitel's motion, and the judge denied Keitel's intervention. With Keitel silenced, defendants conspired to and did drop all defenses, affirmative defenses, counterclaims, and third party claims, to defrauded Keitel and FCM in excess of $6 million.

524. As a cover-up to their fraud, defendants Webber , Anderson, Robinson and Zimmerman secretly and nefariously worked with Christu, Hart, Glick, Shutts and filed a

sham pleading  Adv. Proc. Complaint Case No. 17-01245-EPK, that was dismissed by the court in June 2018.

525. On September 17, 2020, under oath Webber in a Florida Supreme Court case, Webber deliberately committed perjury on material issues to discredit Keitel,  when he falsely testified that he never received the appraisal, that the Keitel told him the worth was worth $14 million, and that there was a Nine or ten million mortgage on the property.

526. The invoices filed by  Zimmerman Kiser & Sutcliffe's for professional service dated October 13, 2017, lists on page two (2),  that RBW, Webber's initial, reviewed the appraisal of 237 Brazilian Avenue, Palm Beach, Florida on December 12, 2016 for 0.40, hrs.;  and the invoice also shows  "Webber review Email Correspondence from Keitel and Development and Plans for 237 Brazilian Avenue, Palm Beach, Florida", for .10 hrs.

527, Webber intentionally lied in his testimony on September 17, 2020 to materially discredit Keitel in his bar lawsuit, after  defrauding  Keitel by misrepresentation, perjury, fraud, obstruct of justice, suborning perjury, to discredit, sabotaged and, to defraud Keitel and FCM from doing forward, damaging Keitel in excess of $15 million.

528. Both Judge Oftedal  and the Florida Supreme Court Referee, relied on Defendant Webber's  misrepresenting material facts about Keitel and FCM, who were unaware of the extend of fraud, conspiracy to defraud and discredit Keitel and FCM, and as a material witness, to steal Keitel/FCM development project, from December 2016 to December 2018, and with the Florida Bar on September 17, 2020.

529. Defendants Webber Anderson, Robinson, Zimmerman's action with Christu, Hart, Glick Shutts, SR and JR., individually and as Trustees for the D'Agostino Trust, and ED, was intentional willful, wanton, malicious, and oppressive, with the intention to retaliate and punish Keitel, as a witness and or victim, and steal Keitel's property, [fully paid for,] and defraud his development project and profits.

530. Defendants 's unlawful conduct has directly, legally and approximately caused and continues to cause injuries to Plaintiff Keitel in his business and personal life. The injuries include Plaintiff loss of FCM property, profits, loss of FJK IV stock, set-offs, distributions, real estate, and steady on-going stream of income from FJK IV.

531. WHEREFORE Plaintiffs FCM and Keitel seeks an award of damages in compensation for among things, the millions of dollars Defendants stole from Plaintiff.

532. WHEREFORE, further, Plaintiffs FCM and Keitel seeks the imposition of punitive damages as a result of defendants' criminal behavior, including perjury, multiple counts of suborning perjury, extortion, threats, and obstruction of justice in an attempt to discredit Keitel as a material witness [whistleblower-witness] in the investigation into corruption, case fixing, threats and extortion all done to prevent Keitel from developing his townhomes.

## COUNT VI

### Civil Conspiracy to Defraud

### Against Defendants

**Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees for the D'Agostino Trust, ED, SLG, Stein individually and on behalf of SLG; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and**

**Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A., Callahan, White, Adams and Haile Shaw.**

533.  Plaintiffs Keitel (FJK IV) and FCM re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 532 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 533  -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

534.  Defendants and each of them, knowingly, willfully, and unlawfully, conspired to facilitate a scheme which included the operation or management  of a RICO enterprise through a pattern of racketeering activity as alleged herein.

536.  Defendants, and each of them, combined and agreed with each other and/or others to defraud Plaintiffs by threats, extortion, perjury, and retaliation against Keitel as a material witness in a federal investigation, and  failing to disclose that  they acted in concert, to prevent Keitel's intervention in the state court case, so they could continue to defraud Keitel and FCM, and their acts were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of repeated conduct during a period of time beginning in late  2015 or early 2016 and continuing to the present time, as alleged **herein.**

537.  Defendants, Webber Anderson, Robinson, Zimmerman's conspired with Christu, Hart, Glick Shutts,  SR and JR., individually and as Trustees  for the D'Agostino Trust, and ED,  and each of them, combined and agreed with each other and/or others,

including Callahan, White, Adams and Haile Shaw, to defraud Plaintiff Keitel and FCM by perjury, suborning perjury, fraud, extortion, threats, after Webber misrepresented material facts, said he would sell Keitel back his property, in good faith, and instead conspired and was working together with all defendants to defraud Keitel and FCM and sabotaging Keitel and FCM venture by secretly and nefariously working with all others defendants, to prevent Keitel and FCM from going forward with the project, all misrepresenting material facts, and reliance by Keitel and FCM, when defendants and, the Trustee, Webber and his lawyers, all defendants herein were working with all other defendants named herein to defraud Keitel by misrepresentation, perjury, fraud, obstruct of justice, suborning perjury, to discredit, sabotaged and, to defraud Keitel and FCM from doing forward, damaging Keitel in excess of $15 million] as retaliation and punishment as a material witness to corruption, case fixing in the bankruptcy and UTS.

538. The conspiracy commenced as early as November 2016 and upon information and belief is on-going.

539. Pursuant to their agreement(s), Defendants, and each of them, acted in concert to support their common purpose of defrauding Plaintiff Keitel and FCM in order to deprive Plaintiffs of the property, real estate, money, opportunity to develop the townhouses, the profits, and a home for Keitel and his family.

540. Each Defendant committed at least one overt act in furtherance of such conspiracy. Including misleading Plaintiff(s) as to the true purpose of their intent, and the intent of all the defendants, outlined in the paragraphs above in paragraphs above, including but not limited to mail and wire fraud, false and fraudulent misrepresentation, perjury, suborning perjury, extortion, filing false and fraudulent affidavits, to facilitate and

manage the scheme to defraud Plaintiffs' Keitel and FCM out of money, property, real estate, and profits described above.

541. Each Defendant acted with the common intent to defraud Plaintiffs and understood that all other defendants shared the same intent in that common purpose.

542. Plaintiffs have been injured and continue to be injured in a business and property by Defendants'

543. Defendants' conduct was willful, wanton, malicious, and oppressive.

544. Defendants 's unlawful conduct has directly, legally and approximately caused and continues to cause injuries to Plaintiff Keitel in his business and personal life. The injuries include Plaintiff loss of FCM property, profits, loss of FJK IV stock, set-offs, distributions, real estate, and steady on-going stream of income. Plaintiff Keitel seeks an award of damages in compensation for among things, the millions of dollars Defendants stole from Plaintiff, and the return of FJK IV stock stolen from Keitel.

545. Further, Plaintiff seeks the imposition of punitive damages as a result of defendants' criminal behavior, including perjury, multiple counts of suborning perjury, extortion, threats, and obstruction of justice in an attempt to discredit Keitel as a material witness [whistleblower-witness] in the investigation into corruption, case fixing, threats and extortion all done to prevent Keitel from developing his townhomes.

## COUNT VII

### Fraud

#### Against Defendants

**Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a**

168

**partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts; Menor, individually and as a partner and member of the executive committee of Shutts; Farrell individually and as a partner the executive committee Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR, ED, Reis; Fox.**

546.  Plaintiffs Keitel (FJK IV) and FCM  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 545 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 547  -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

547.  All Defendants named herein, and  Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts;  Menor, individually and as a partner and member of the executive committee of Shutts; Farrell individually and as a partner the executive committee Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A;  Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR, Reis; Fox, upon information and belief, Defendants knowingly and intentionally misled Plaintiffs Keitel and FJK IV  by filing false and fraudulent document,

corporate resolutions, letter, charts, motion and pleading all base on fraud, that RLLP owned 50% of FJK-Tee Jay, INC stock, despite the INC Shareholders Agreement clearly stating that G.P, a separate company own 50% of INC stock with FJK IV properties.

548.  criminal actions named herein, by failing to disclose material false statement of facts made with the intent to deceive Plaintiffs and Plaintiff's reliance on defendants individually, and as association-in-facts, was damaged by the misrepresentation, especially when defendants  joined forces for the specific purpose of defrauding Plaintiffs Keitel and FJK IV out of money, stock, property,  real estate and profits, through fraud, conspiracy to defraud, mail and wire fraud, and all  other unlawful activities set forth herein above.

549.  Defendants  Fraudulent activities include those set forth herein,  intentionally concealed criminal actions, mail and wire fraud, perjury, conspiracy because the intended to mislead Plaintiffs and did mislead Plaintiffs, who relied on their misrepresentations and was unaware of their unlawful activities.

550. Fraudulent acts included those set forth in herein, ands Defendants' sabotaged Keitel and FJK IV and FCM filed the following false and fraud documents:

551. July 9, 2013: Action by Written Consent of Shareholders of FJK-Tee Jay, INC., signed by JR & JD.

552.  July 9, 2013: Action by Written Consent of Directors  of FJK-Tee Jay, INC., signed by JR and JD.

553.  July 9, 2013:  Corporate Resolution: SHAREHOLDERS AGREEMENT FOR  FJK TEE JAY, INC., signed by JR and JD list the corporation as: **Tee Jay, Inc.,**  being equally owned by FJK IV and RLLP.    There is no such corporation as Tee Jay, Inc., owned by JR and JD. registered in Florida or anywhere, and as per the shareholders agreement, G.P. was the owner of 50% stock in INC, and RLLP never owned an interest in 2013.   The documents were drafted by Shutts lawyers, including Christu and Hart in conjunction with Andrew Rose.

554.  July 19, 2013.   Christu-Shutts letter to Keitel notifying him that on behalf of JR, JD, RLLP , INC and LTD informing Keitel, that he has been removed as president of INC and as a director in INC and LTD, by RLLP, JR and JD, with attached Action by Written Consent of Directors  of FJK-Tee Jay, INC., dated July 9, 2013 and Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by JR & JD; Both documents list Tee Jay, Inc being equally owned by FJK IV and RLLP.

555.  November 22, 2013: Christu-Shutts Letter notification Removal of Frederick J. Keitel, III as counsel for FJK-Tee Jay, LTD.,  and FJK-Tee Jay, INC., in cases:  Wells Fargo Bank, N.A. vs. FJK-Tee Jay, LTD.,  and FJK-Tee Jay, INC., Case No. 502012CA004665XXXXMB-AN:  FJK-Tee Jay, LTD., et al., vs. Thomas B. D'Agostino, Sr., Case No. 502012CA023240XXXXMB-AN, again with exhibits:  Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by .JR & JD, July 9, 2013, and Action by Written Consent of Directors  of FJK-Tee Jay, INC., July 9, 2013, and Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by JR & JD, both documents list **Tee Jay, Inc, a non-existent  company** being equally owned by FJK IV and RLLP.

556.  JR, JD, RLLP, Christu, Hart, INC and LTD conspired to fire Keitel based on false and fraudulent sworn affidavits, corporate resolutions, corporate organizational charts and letters all based on RLLP being the owner of 50% of INC.

557.  October 2, 2014: Shutts, Christu letter notifying Frederick J. Keitel, III of INC and LTD removal of Keitel as counsel for FJK-Tee Jay, LTD., and FJK-Tee Jay, INC. based on RLLP's allegations and July 9, 2013 Action by Written Consent of Directors of FJK-Tee Jay, INC., and Action by Written Consent of Shareholders of FJK-Tee Jay, INC., signed by JR & JD, both documents listing Tee Jay, Inc., as being equally owned by FJK IV and RLLP.

558.  November 10, 2014: Demand Civil Theft Demand Pursuant to Fla. Stat. Sec. 772.1, by LTD, INC and RLLP, Jr, JD draft by Shutts and Christu, for approximately $750,000.00, tremble damages of $2,225,000.00, based on same false affidavits, corporate resolution

559.  May 2014 Motion to Termination Frederick J. Keitel, III in Wells Fargo Bank, N.A. vs. FJK-Tee Jay, LTD., and FJK-Tee Jay, INC., Case No. 50-2012-CA-004665XXXXMB-AN:  in violation of Judge McSorley, Judge Brunson (Nov 28, 2012), and June Cox's (June 6, 2013 Orders prohibiting RLLP, JR, JD, Shutts & Bowens, and Eric Christo from appearing in Wells Fargo case, without an evidentiary hearing.

560. June 30, 2017:  TEE JAY of FLORIDA, RLLP, a Virginia Registered Limited Liability Partnership v. FJK IV Properties, INC, a Florida Corporation;  Case No 502016CA010381XXXXMB-AI.  Plaintiffs Motion for Summary Judgment, with exhibits: Shareholders Agreement for FJK – TEE JAY, INC (The Corporation) (exhibit "1");

Exhibit "A" Affidavit of Jonathan D'Agostino, with attachments Action by Written Consent of Shareholders of FJK-Tee Jay, INC. signed by JR & JD, July 9, 2013. Action by Written Consent of Directors of FJK-Tee Jay, INC. July 9, 2013 signed by Action by Written Consent of Shareholders of FJK-Tee Jay, INC. signed by JR & JD; Both documents list Tee Jay, Inc being equally owned by FJK IV and RLLP; November 22, 2013 letter; October 2, 2014 letter; February 23, 2015 Civil Theft Demand; March 19, 2015 Response letter to Wilton White re FJKIV stock, prohibited transfer; March 16, 2015 letter from Wil White re Thomas B. D'Agostino vs. Frederick J. Keitel, III and FJK PROPERTIES, INC re: "Trigger Events".

561. November13, 2017 Order Granting Plaintiff's Motion for Summary Judgment

TEE JAY of FLORIDA, RLLP, a Virginia Registered Liability Partnership v. FJK IV Properties, INC, a Florida Corporation; Case No 502016CA010381XXXXMB-AI. Order Granting Plaintiff's Motion for Summary Judgment,

562. December 11, 2017 Plaintiff's Motion for Award and Judgment of Attorney's Fees and Costs

563. TEE JAY of FLORIDA, RLLP, a Virginia Registered Liability Partnership v. FJK IV Properties, INC, a Florida Corporation; Case No 502016CA010381XXXXMB-AI. Plaintiffs Motion for Summary Judgment, with exhibits: Shareholders Agreement for FJK – TEE JAY, INC (The Corporation) (exhibit "1"); Exhibit "A" Affidavit of Jonathan D'Agostino, with attachments Action by Written Consent of Shareholders of FJK-Tee Jay, INC. signed by JR & JD, July 9, 2013. Action by Written Consent of Directors of FJK-Tee Jay, INC. July 9, 2013 signed by Action by Written Consent of Shareholders

of FJK-Tee Jay, INC. signed by JR & JD; Both documents list Tee Jay, Inc being equally owned by FJK IV and RLLP; November 22, 2013 letter; October 2, 2014 letter; February 23, 2015 Civil Theft Demand; March 19, 2015 Response letter to Wilton White re FJKIV stock, prohibited transfer; March 16, 2015 letter from Wil White re Thomas B. D'Agostino vs. Frederick J. Keitel, III and FJK PROPERTIES, INC re: "Trigger Events".

564. All the motions, pleading affidavits, corporate chart outlined in the cases filed herein in state and federal court, Case Nos.: 502016CA010381XXXXMB-AI; Case No. 502012CA004665XXXXMB-AN; Case No. 502016CA003785XXXXMB: Case No. 502012CA023240XXXXMB-AF; Case No. 502013CA004699XXXXMB-AA, Adv. Proc. 16-01440-EPK, (and conspiracy to defraud FCM, FJK IV and Keitel in Case No. 17-01245-EPK, filed by defendants Richard Webber, Anderson, Robinson and Zimmerman, with Shutts Christu, Hart and Glick); and Case No. 15-10576-BKC-PGH, against Florida Capital Management, LLC, FJK IV Properties, Inc., and Keitel, were all filed by defendants based on false and fraudulent court motions, pleading, affidavits, corporate resolutions that on their face are fraudulent including conspiracy to defraud FCM, FJK IV and Keitel in Case No. 17-01245-EPK by Richard Webber as trustee , Anderson, Robinson and Zimmerman, Shutts Christu, Hart and Glick.

565. Defendants Shutts, Christu, Hart, Glick, JD, JD, RLLP, INC, LTD Reis, Fox and Webber, Anderson, Robinson and Zimmerman individually and jointly drafted, prepared and filed motions, pleadings, answers and documents, that they knew were false and fraudulent on their face while they drafted and filed them, (SDNY can review the INC Shareholders Agreement, dated December 30, 1998 signed by JR on behalf of G.P.,

174

and INC as a Director, VP, Treasurer and Secretary can see that their fraudulent on their face)/

566. All defendants pleadings were based on false and fraudulent affidavits and documents, including that RLLP, a limited liability partnership falsely owned stock in INC, Subchapter S corporation beginning in 1998, despite having no ownership interest in INC, see the FJK-Tee Jay, INC Shareholders Agreement, ("INC-SHA"), for the common purpose and scheme to defraud plaintiffs Keitel, FJK IV out of real estate, property, personal property-stock, and money, while acting in an illegal and criminal manner, outside their scope of their roles in their individual companies, corporations, partnerships, and/or law firms.

567. Defendants acted to discredit Keitel as a material witness during the on-going state and federal investigations into corruption, case fixing, threats and extortion in the U.S Bankruptcy Court, West Palm Beach, and UTS, Southern District of Florida. Larry Glick, Christu and Shutts had previously funneled documents to Heidi Feinman, UTS senior trial lawyer under investigation for corruption and case fixing deposition testimony and notes so she could coordinate her testimony with Robert Furr, also under investigation.

568. Webber objected to Keitel's attempt to be allowed to intervene in the state court **actions.**

569. As a cover-up to their fraud, defendants Webber , Anderson, Robinson and Zimmerman secretly and nefariously worked with Christu, Hart, Glick, Shutts and filed a

sham pleading Adv. Proc. Complaint Case No. 17-01245-EPK, with 8 counts dismissed immediately and the Trustee and Zimmerman abandoning the case.

570. All defendants named herein acted to defraud Keitel by misrepresentation, perjury, fraud, obstruct of justice, suborning perjury, to discredit Keitel, sabotaged and defraud Keitel and FCM from intervening, damaging Keitel in excess of $15 million.

571. Plaintiffs justifiably relied on Defendants misrepresenting material facts relied by Keitel and FJK IV who was unaware of the extend of fraud, defamation and efforts to defraud and discredit Keitel as a material witness and to steal his development project.

Defendants' actions was intentional willful, wanton, malicious, and oppressive, with the intention to retaliate and punish Keitel, as a witness and or victim, and steal Keitel's FJK IV stock [that was fully paid for] to prevent Keitel from suing all defendants.

572. Defendants 's unlawful conduct has directly, legally and approximately caused and continues to cause injuries to Plaintiff Keitel in his business and personal life. The injuries include Plaintiff loss of FJK IV stock in both INC and LTD, profits, set-offs, distributions, real estate, and steady on-going stream of income from FJK IV. Plaintiff Keitel seeks an award of damages in compensation for among things, the millions of dollars Defendants stole from Plaintiff, and the return of Keitel's FJK IV stock, and the distributions for the last 10 years. Further, Plaintiff seeks the imposition of punitive damages as a result of defendants' criminal behavior, including perjury, multiple counts of suborning perjury, extortion, threats, and obstruction of justice in an attempt to discredit Keitel as a material witness [whistleblower-witness] in the investigation into

corruption, case fixing, threats and extortion all done to obstruct Keitel as a material witness in the federal and state investigations

## COUNT VIII

### Civil Conspiracy to Defraud

### Against Defendants

**Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts; Menor, individually and as a partner and on the executive committee of Shutts; Farrell individually and as a partner and on the executive committee of Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock; Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A;   Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR; Reis; Fox.**

573.  Plaintiffs re-alleges repeats and incorporates by reference herein all the allegations in paragraphs  1- 572 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287, 288-326, 329-340, 367-382, 384-402, above 574 -777,  803-886  and 887 – 890 incorporates them as if fully alleged  herein.

574. Defendants and each of them, knowingly, willfully, and unlawfully, conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged herein.

575. Defendants, and each of them, combined and agreed with each other and/or others to defraud Plaintiffs by threats, extortion, perjury, and retaliation against Keitel as a material witness in a federal investigation, and  failing to disclose that  they acted in concert, to prevent Keitel's intervention in the state court case, so they could continue to

defraud Keitel and FJK IV , and their acts were not isolated, but rather the acts of

576.Defendants were related in that they had the same or similar purpose and result, participants, victims and method of repeated conduct during a period of time beginning in late  2015 or early 2016 and continuing to the present time, as alleged herein.

577. Defendants, Thomas B D'Agostino, JR and Jonathan D'Agostino, individually and as officer and directors of RLLP, G.P., LTD, INC and FJK IV; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts;  Menor, individually and as a partner and on the executive committee of Shutts; Farrell individually and as a partner and on the executive committee of Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, LLP as escrow agents for Frederick J. Keitel, III and FJK IV Properties, Inc stock; Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A. Thomas B D'Agostino, SR; Reis; Fox,   all defendants herein were working with all other defendants named herein to defraud Keitel by misrepresentation, perjury, fraud, obstruct of justice, suborning perjury, to discredit, sabotaged and, to defraud Keitel and FJK IV from doing forward, damaging Keitel in excess of $15 million] as retaliation and punishment as a material witness to corruption, case fixing in the bankruptcy and UTS.

578. The conspiracy commenced as early as November  2013 and  upon information and belief is on-going.

579. Pursuant to their agreement(s), Defendants, and each of them, acted in concert to support their common purpose of defrauding Plaintiff Keitel and FJK IV in order to deprive Plaintiffs of the property, real estate, money, profits, and distributions

580. Each Defendant committed at least one overt act in furtherance of such conspiracy. Including misleading Plaintiff(s) as to the true purpose of their intent, and the intent of all the defendants, outlined in the paragraphs above in paragraphs above, including but not limited to mail and wire fraud, false and fraudulent misrepresentation, perjury, suborning perjury, extortion, filing false and fraudulent affidavits, to facilitate and manage the scheme to defraud Plaintiffs' Keitel and FJK IV out of money, property, real estate, distributions and profits described above.

581. Each Defendant acted with the common intent to defraud Plaintiffs and understood that all other defendants shared the same intent in that common purpose.

582. Plaintiffs have been injured and continue to be injured in a business and property by Defendants'

583. Defendants' conduct was willful, wanton, malicious, and oppressive.

584. Defendants 's unlawful conduct has directly, legally and approximately caused and continues to cause injuries to Plaintiff Keitel in his business and personal life. The injuries include Plaintiff loss of FCM property, lost profits, loss of FJK IV stock, set-offs, distributions, real estate, and steady on-going stream of income. Plaintiff Keitel seeks an award of damages in compensation for among things, the millions of dollars Defendants stole from Plaintiff, and the return of FJK IV stock stolen from Keitel.

585. Further, Plaintiff seeks the imposition of punitive damages as a result of defendants' criminal behavior, including perjury, multiple counts of suborning perjury, extortion, threats, and obstruction of justice in an attempt to discredit Keitel as a material witness [whistleblower-witness] in the investigation into corruption, case fixing, threats and extortion all done to prevent Keitel from developing his townhomes.

## COUNT IX

**Fraud by Defendants Zimmerman Kiser & Sutcliffe Richard Blackstone Webber, Bradley Anderson and Kevin Robinson**
**Against**
**FCM and FJK IV/Keitel**

586. Plaintiffs FCM FJK IV/Keitel re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 586 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287, 288-326, 329-340, 367-382, 384-402, above 587 -777, 803-886 and 887 – 890 incorporates them as if fully alleged herein.

588. At all times defendants named herein, individually and as attorney (a) intentionally made false, fraudulent and untrue statements of material facts, (b) that he knew were false in Case No. 502016CA010381XXXXMB-AI, including but not limited to all motions and pleading file3d for Motion for Summary Judgment, (c) refused to allow FJK IV's sole shareholder Keitel to intervene, file affidavits or refute the false allegations, fraudulent affidavits and pleadings, that he knew were false, refused to raise affirmative defenses, dismissed all FJK IV claims, causing millions of dollars in damages and loss of reputation to FJK IV and Keitel, (d) that was relied on by Judge Sasser and opposing counsel, while FJK IV and Keitel were silenced, while Webber's action were intentionally to deceive, defraud and cause damages to FJK IV Properties, Inc and Keitel.

589.  Kevin Robinson  and all defendants named herein this count, individually and as attorney  of the Frederick J. Keitel, III bankruptcy estate, (a) intentionally made false and fraudulent material statements and filed pleading that Webber individually and as trustee knew were false, (b) the statements were material facts that Anderson  knew the court would rely on, (c) the court did reply on those false material facts, and plaintiff FJK IV was damages as a result of those false statements and (d) Webber's intention was to defraud plaintiff FJK IV by the false material statement in Case No 502016C A010381XXXXMB-AI.

590.  As a direct result of defendant's actions including t Robinson's  action against plaintiff FJK IV, including but not limited to opposing FJK IV (and Keitel's) motions to intervene, filed affidavits and pleading, counterclaims and affirmative defenses in Case No.  502016C A010381XXXXMB-AI, especially knowing of the prejudice and bias of Judge Sasser,  plaintiff FJK IV was denied a jury trial, and has been damaged despite overwhelming substantial evidence of fraud by the opposing party,  in the amount in excess of  $30 million dollars jurisdictional amount of this court, and Punitive Damages in excess of $30 million dollars.

   WHEREFORE, Plaintiffs FJK IV  demands in excess of $30,000,000.00 for damages from Robinson, plus pre-judgment interest, attorney fees, costs, and punitive damages and for other such relief as the court deems just and proper under the circumstances.

## COUNT X

**Fraud  Against  Defendants Webber, Anderson, Robinson and Zimmerman Kiser & Sutcliffe, P.A.**

**By FCM, Frederick J. Keitel, III, [FJK IV Properties, Inc]**

591.   Plaintiffs Keitel (FJK IV) and FCM   re-alleges repeats and incorporates by reference herein all the allegations in paragraphs   1- 518 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 592 -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

592. This is an action by Plaintiff FJK IV for fraud by defendant Zimmerman Kiser & Sutcliffe, P.A. ("Zimmerman"), attorney  for  the Frederick J. Keitel, III bankruptcy estate, against FJK IV Properties, Inc.

593.  At all times Zimmerman as attorneys  (a) intentionally made false, fraudulent  and untrue statements of material facts, (b)  that he knew were false in Case No. 502016CA010381XXXXMB-AI, including but not limited to all motions and pleading file for Motion for Summary Judgment, (c) refused to allow FJK IV's sole shareholder Keitel to intervene, file affidavits or refute the false allegations, fraudulent affidavits and pleadings, that he knew were false, refused to raise affirmative defenses, dismissed all FJK IV claims,  causing millions of dollars in damages and loss of reputation to FJK IV and Keitel, (d) that was relied on by Judge Sasser and opposing counsel, while FJK IV and Keitel were silenced, while Webber's action were intentionally to deceive, defraud and cause damages to FJK IV Properties, Inc and Keitel.

594.  Defendants Webber, Anderson, Robinson and Zimmerman Kiser Sutcliffe, P.A. actions against FCM, Frederick J. Keitel, III, [FJK IV] and the bankruptcy estate, were (a) intentionally false and fraudulent material statements and defendants filed pleading that Webber, individually and as trustee , and Anderson Robinson and Zimmerman knew were false, as a criminal fraud (b) the statements were material facts that

182

Anderson  knew the court would rely on, (c) the court did reply on those false material facts, and plaintiff FJK IV was damages as a result of those false statements and (d) Webber's intention was to defraud plaintiff FJK IV by the false material statement in Case No 502016C A010381XXXXMB-AI

595.  As a direct result of defendants  Webber, Anderson, Robinson and Zimmerman Kiser Sutcliffe, P.A.   action against plaintiff FJK IV, including but not limited to opposing FJK IV (and Keitel's) motions to intervene, filed affidavits and pleading, counterclaims and affirmative defenses in Case No.  502016C A010381XXXXMB-AI, especially knowing of the prejudice and bias of Judge Sasser,  plaintiff FJK IV was denied a jury trial, and has been damaged despite overwhelming substantial evidence of fraud by the opposing party,  in the amount in excess of  $30 million dollars jurisdictional amount of this court, and Punitive Damages in excess of $30 million dollars.

   WHEREFORE, Plaintiffs FJK IV  demands in excess of $30,000,000.00 for damages from Defendants Webber, Anderson, Robinson and Zimmerman Kiser Sutcliffe, P.A., plus pre-judgment interest, attorney fees, costs, and punitive damages and for other such relief as the court deems just and proper under the circumstances.

## **Count XI**
### **Actual Fraud by Thomas B. D'Agostino, JR and Jonathan D'Agostino**

596.  Plaintiffs Keitel (FJK IV) and FCM   re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 619 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 621  -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

597. This is an action for fraud by defendants JR and JD , against Keitel (FJK IV).

598. As noted above, FJK IV was owned by Frederick L. Keitel, III for 23 years from December 29, 1998 until May 3, 2021, when JR, JD, acting with others, including but not limited to: RLLP,LTD, INC, RLLP, and G.P. Shutts & Bowen, Christu, Hart, Glick, Farrell, Menor, and SR, violated multiple federal and state criminal violations, including Fraud, [and federal and state RICO under statute 18 U.S.C § 1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act complaint by all JD individually and "declaring himself president and director of INC" FJK-Tee Jay, INC,] all based on the false and fraudulent filing of affidavits, corporate resolutions, charts, since March 2013, and in which JD admitted under oath on October 27, 2017 that RLLP never owned INC stock and allegations were false regarding RLLP ever being a shareholder in INC.

599. At all times JR and JD, were willing participants in an on-going fraud [including RICO actions; and FRCP § 23.1; Fla. Stat. 617.07401, and Fla. Stat. § 620.2002, Business Corporate Law Section § 626(b) filed by FJK IV and Plaintiffs Frederick J. Keitel, III, ("KEITEL"),individually and as shareholder of Plaintiff FJK IV Properties, Inc ("FJK IV")] against Keitel [and FJK IV] who owned stock when all actions took place and/or by operation of law, for equitable relief, the return of FJK IV stock to Frederick J. Keitel, LLL, its rightful owner, and damages, plus interest, costs and attorney's fees, on behalf of Frederick J. Keitel, III and FJK IV Properties, Inc (and INC and LTD), who own stock during the time of the claims and challenge as an exception to the continuous shareholder rule, due to multiple egregious predicate criminal actions by JD (and JR), ,

including fraud, extortion, threats, conspiracy to defraud, mail and wire fraud, perjury and suborning perjury, bank, mortgage fraud, and fraudulent payment of interest for a non-existence loan, to defraud and steal Keitel's FJK IV stock, prevent this derivative lawsuit, and challenge the fraud leading to, during and the Palm Beach County Sheriff's Sale, by INC, LTD, RLLP, G.P. its officers and directors,  JD and JR, its lawyers, Shutts, Christu, Glick, Hart, Farrell and Menor  and in house CPA  Stein and accounting firm SLG located in New York. and hereby sues the following Defendants  Jonathan D'Agostino, ("JD"), individually, Thomas B. D'Agostino, JR. ("JR"), individually and as directors and officers in Tee Jay of Florida G.P., ("G.P."),  a Virginia General Partnership, Tee Jay of Florida, RLLP,  ("RLLP"), a Virginia Registered Limited Liability Partnership, ("G.P."), FJK-Tee Jay, Ltd, ("LTD"), a Florida limited liability partnership; FJK-Tee Jay, Inc., ("INC"),

600. That the actions and fraud by JD (and JR), caused This Derivative Action, and  is a direct result of  "inciting criminal incidents" and criminal actions by the officers and directors of INC and LTD, court appointed escrow agents Shutts & Bowen, LLP and Shutts partner Eric Christu against a FJK IV, a shareholder of LTD and INC,  in violation of: 18 U.S.C. § 1961(1)(A),  extortion and racketeering activity; 18 U.S.C. § 875 threats and extortion; Fla. Stat. 836.05 threats, extortion; 18 U.S.C. § 1512, intimidation of  a federal witness in a federal U.S. bankruptcy courthouse prior to testifying and  paying off all judgments, to redeem stock, (see affidavit of banker/lender Fred Latsko), as a result of violation of 18 U.S.C. § 1341 and §1343, mail and wire fraud; 18 U.S.C. §1621 perjury, suborning perjury 18 U.S.C. §162; ,and multiple other violations of federal and state criminal statutes to prevent shareholders from redeeming shares or their stock,

including interfering with court a ordered sheriff's sale; and refusal to turn over critical financial documents prior to  court ordered sheriff's sale, all violations with the specific intent to deprive or prevent a derivative action from going forward.

601. JR and JD  signed and filed multiple sworn affidavits, corporate resolutions, organization charts, motions and pleadings,  all false and fraudulent, stating that RLLP was an owner of INC stock, which they knew was false when they sent letters, resolutions, affidavit to remove Frederick J. Keitel, III, as President of INC, the general partner of LTD.

602. All the orders entered in state and federal court, were based on the same false and fraudulent affidavits and testimony by JD (and JR),  and corporate resolutions filed by Shutts lawyer Christu, Hart, Glick, Rose, King, Reis, Fox, with WARZ knowledge in total disregard for the truth, or the FJK- Tee Jay, INC Shareholders Agreement, the controlling documents per Jonathan D'Agostino's October 27, 2017 court testimony.

603. That at all times since 2012, JD  (and JR), committed bank fraud, and attempted to steal FJK IV stock from Keitel based on false and fraudulent affidavits, corporate resolutions and allegations, they either knew were false and fraudulent or should have known.

604. That the actions by JD, JR, G,P., RLLP and later INC and LTD  were not only fraudulent but RLLP could never have owned INC stock and a Registered limited liability partnership, which would have automatically changed the tax status of INC, under the federal IRS code and extinguished the Subchapter S status.

605. That RLLP never had standing to challenge FJK IV as a shareholder in INC and LTD.

606. That at all times, only G.P. had the right under the INC Shareholders Agreement, and  G.P. never exercised these rights, and the Shareholder Agreement was never amended or changed.

607. That as a direct result and proximate cause of JD's (and JR), fraud and filing false and fraudulent affidavits, corporate resolutions and charts, motions, pleadings, certain order rendered by multiple courts effecting the ownership and voting rights of FJK IV and INC, which were issued based on fraud by JR (and JD),  false affidavits that RLLP was the owner of INC stock, and had always been the owner, which is in direct conflict with the INC Shareholder Agreement, and but for the fraud, the court(s) would never have made ruling that RLLP was the owner of INC stock.

608. That at all times JD used Shutts & Bowen law firm, to devised a plan to defraud FJK IV and Frederick J. Keitel, III,  out of FJK IV's ownership of both INC and LTD stock.

609. Declare that the all changes to the ownership of INC and LTD was based on fraud.

610. Declare that either G.P. and or RLLP was at all times beginning in 2014 a purged Virginia partnership, and/or  administratively dissolved years before the claims made by either G.P., and /or RLLP.

611. That all of  FJK IV's stock in INC and LTD must and will be returned to Frederick J. Keitel, III, due to the fraud, perjury, suborning perjury, extortion, threats, mail and wire fraud and all criminal violations listed herein this RICO and Verified Derivative action. by

INC, LTD, RLLP's lawyers against FJK IV banker/lenders to prevent paying off all judgments and redeeming stock by Frederick J. Keitel, III, and Keitel has been damaged in excess of $40 million in foreseeable losses.

WHEREFORE  Keitel [FJK IV Properties, Inc.,]  is the  rightful owner of FJK IV stock, Frederick J. Keitel, III requests entry of the  follows: (1)  that JD committed fraud in his affidavits (2) all  corporate resolutions on or about July 9, 2013 and thereafter were based on false and fraud information; (3) that RLLP was not a shareholder under the 1998 INC Shareholders Agreement, (4) the Shareholders Agreement was never altered or changed (5) that any and all affidavit by RLLP and or JD and/or JR were false, (5) that any and all affidavit by JD and/or JR, saying that RLLP owned 50% of the shares in INC were false and fraudulent statement when made (6) that RLLP was never a shareholder under the INC Shareholders Agreement (7) that FJK IV's stock must/will be returned to Frederick J. Keitel, III due to the fraud, perjury, suborning perjury, extortion, threats, mail and wire fraud and all violation named herein the RICO and Verified Derivative action by INC, LTD, RLLP's lawyers against FJK IV banker/lenders to prevent paying off all judgments and redeeming stock by Frederick J. Keitel III, and together with interest and attorney's fees to the extend allowed by law, including attorney's fees under FRCP 23.1, Fla Stat. § 620.2005, New York BCL 626, injunctive relief , (8) Keitel has been damaged in excess of $40 million of foreseeable losses, plus legal fees, costs and interest,  and (9) such other relief as this court deems just and proper.

### COUNT XII

**BREACH OF FIDUCIARY DUTY BY DEFENDANTS SHUTTS CHRISTU, HART MENOR, FARRELL, GLICK, WEBBER, ANDERSON ROBINSON AND ZIMMERMAN**

612.  Plaintiffs Keitel (FJK IV) and FCM   re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 611 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 613  -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

613.  This is an action by Plaintiff's FJK IV for breach of fiduciary duty by defendants Shutts, Christu, Hart, Glick, Farrell, Menor, Webber individually, as trustee and as partner in Zimmerman, Anderson, Robinson  and Zimmerman.

614.  At all times, defendants   committed negligence, breach of Fiduciary duty as escrow agents, and lawyers with multiple conflicts, working against Keitel and FJK IV properties to defraud and steal FJK IV stock, while having a duty to plaintiff(s), the estate and creditors to conduct themselves in a competent and skillful professional manner, breached that duty by negligence, malpractice and breach of fiduciary duty, through fraud, conspiracy to defraud, gross incompetence,  malpractice and fraud in their actions to the estate, creditors and plaintiff(s) who had a pecuniary  interest, causing substantial damages, injury and harm.

615.  As a direct result of defendant's escrow agents Shutts, Christu, Hart Glick, Menor, Farrell, and Estate lawyers Webber, Anderson and Zimmerman's action against plaintiff FJK IV have been damaged in the amount of $30 million dollars jurisdictional amount of this court, and Punitive Damages in excess of $30 million dollars.

WHEREFORE, Plaintiff FJK IV demands in excess of $30,000,000.00 for damages plus pre-judgment interest, attorney fees, costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

## COUNT XIII
**Breach of Fiduciary Duty and Fraud, Extortion and Threats by Defendants Christu and Shutts & Bowen as Escrow Agent for FJK IV Properties Stock, and as counsel for SR, JR, JD, RLLP, INC, LTD against Keitel and FJK IV**

616.  Plaintiffs Keitel (FJK IV) and FCM   re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 619 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 621  -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

617. This is an action by Plaintiff's Keitel   against **DEFENDENTS ERIC CHRISTU AND SHUTTS & BOWEN LLP AS COURT APPOINTED ESCROW AGENT S FOR FJK IV AND ATTORNEYS FOR LTD AND INC**  for extortion and threats against FJK IV, Keitel and Keitel's bankers/lenders Fred Latsko and others, (including Louis Capano),

618.  At all times, defendants **DEFENDENTS ERIC CHRISTU AND SHUTTS & BOWEN LLP AS COURT APPOINTED ESCROW AGENTS FOR Keitel's FJK IV stock AND Attorney's for JR, JD, RLLP, G.P. LTD and INC**  intentionally committed criminal acts of extortion and threats against Keitel's Fred Latsko to interfere Keitel's redeeming his FJK IV stock on October 17, 2018 with cause fear and prevent him from tendering cashier's checks to help FJK IV and Keitel payoff FJK IV and Keitel's judgments, liens, legal fees and costs to redeem FJK IV stock worth over $8 million dollars creditors

619.  As a direct result of defendant's actions **DEFENDENTS ERIC CHRISTU AND SHUTTS & BOWEN LLP AS COURT APPOINTED ESCROW AGENT S FOR FJK IV AND ATTORNEYS FOR LTD AND INC** caused FJK IV and Keitel on-going damages in excess of $15 million dollars.

   WHEREFORE, Plaintiffs Keitel/FJK IV demands from **DEFENDENTS ERIC CHRISTU AND SHUTTS & BOWEN LLP AS COURT APPOINTED ESCROW AGENTS FOR FJK IV  AND ATTORNEYS FOR LTD AND INC**  in excess of $15,000,000.00 for damages plus pre-judgment interest, attorney fees, costs, and punitive damages and for other such relief as the court deems just and proper under the circumstances.


## COUNT XIV

### Fraud

### Defendants

**Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A.**


620.    Plaintiffs Keitel (FJK IV) and FCM   re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 619 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-

238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 621 -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

621.   Plaintiffs Keitel, (FJK IV), and FCM  and bring this cause of action for Fraud against all defendants herein, and are also  seeking to challenge as an exception to the continuous shareholder rule, due to 30+ continuous egregious predicate criminal acts against plaintiffs FJK IV and Keitel by defendants INC, LTD, its officers and directors, JR, JD , individually and as officers and directors of LTD, INC, RLLP, G.P., and their lawyers,  Christu, (extortion, threats to Keitel banker's Fred Latsko, perjury, suborning perjury), Glick (obstruction of justice with UTS, Feinman, Rodriguez in corruption investigation), Hart, Farrell, Menor, Shutts & Bowen as Escrow Agents for FJK IV/Keitel stock, Reis, Fox, in house bookkeepers, CPA, accountants, Stein and SLG, who participated in racketeering enterprise, filed fraudulent corporate records, fraudulent tax returns, withheld taxes certain returns to defraud FJK IV/Keitel, fraudulent income statements and balance sheet to defraud Keitel/FJK IV, and using interstate commerce, mail and wire fraud,  bank fraud, and conspired with each other and others including Trustee-Webber, individually, as Trustee and as a partner in Zimmerman, Anderson, Robinson and Zimmerman, and fraud before, during and after the Palm Beach County Sheriff's Sale on May 3, 2021 to defraud Keitel out of FJK IV stock, which Shutts & Bowens held as Escrow Agents since February 2015 Judge Sasser court order until 2020-2021.

622. Defendants Thomas B. D'Agostino, SR and Thomas B. D'Agostino, JR., individually and as Trustees  for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Christu, individually and as a partner in Shutts; Hart individually and

as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A.

623. Upon information and belief, Defendants knowingly and intentionally misled Plaintiffs Keitel and FCM with their criminal actions named herein, by failing to disclose material false statement of facts made with the intent to deceive Plaintiffs and Plaintiff's reliance on defendants individually, and as association-in-facts, was damaged by the misrepresentation, especially when defendants joined forces for the specific purpose of defrauding Plaintiffs Keitel, FCM out of money, stock, property, real estate and profits, through fraud, conspiracy to defraud, mail and wire fraud, and all other unlawful activities set forth herein above.

624. Defendants Fraudulent activities include those set forth herein to intentionally concealed criminal actions, mail and wire fraud, perjury, conspiracy because the intended to mislead Plaintiffs and did mislead Plaintiffs, who relied on their misrepresentations and was unaware of their unlawful activities.

625. Fraudulent acts included those set forth herein, in which Defendants' sabotaged Keitel (FJK IV) and FCM venture(s) and secretly nefariously working with each other and others defendants, to prevent Keitel and FCM from going forward with buying back his property and building his townhouses, by intentionally misrepresenting material

facts, and reliance by Keitel and FCM.  Defendants Webber , Anderson, Robinson and

Zimmerman were secretly and nefariously working with Christu, Hart, Glick, Shutts, SR,

JR, JD, ED and D'Agostino Trustees to defraud, discredit and defame Keitel on January

5, 2017, and demanded that Judge Oftedal [against Judge Oftedal's own

recommendation]  issue a written order finding that Keitel committed fraud on the Court,

drafted  by Webber, Anderson Robinson Zimmerman and Christu, Hart, Glick and

Shutts, so they could immediately submit the orders to the UST, and/or USA  to

discredit Keitel as a material witness during the on-going state and federal

investigations into corruption, case fixing, threats and extortion in the U.S Bankruptcy

Court, West Palm Beach,  and UTS, Southern District of Florida. Larry Glick, Christu

and Shutts had previously funneled documents to Heidi Feinman, UTS senior trial

lawyer under investigation for corruption and case fixing deposition testimony and notes

so she could coordinate her testimony with Robert Furr, also under investigation.

626. On January 6, 2017, Webber rejected Keitel's $5.5 million, all cash offer to buy

back FCM and the property at 237 Brazilian Avenue, Palm Beach, Florida, for the FMV,

October 2016 certified appraisal.

627. Webber rejected Keitel's offer, and immediately signed a contract to sell the

property for $4 million, and Webber and Christu threatened and attempted to extort $4

million from Keitel, in exchange for their agreement not to object to Keitel's motion to

intervene in the state court case.  As soon as Keitel refused, Defendants good to their

threats,  immediately objected to Keitel's motion, and the judge denied Keitel's

intervention.  With Keitel silenced, defendants conspired to and did drop all defenses,

affirmative defenses, counterclaims, and third party claims, to defrauded Keitel and FCM in excess of $6 million.

628. As a cover-up to their fraud, defendants Webber , Anderson, Robinson and Zimmerman secretly and nefariously worked with Christu, Hart, Glick, Shutts and filed a sham pleading Adv. Proc. Complaint Case No. 17-01245-EPK, that was dismissed by the court in different order in 2017, and June 2018.

629. On September 17, 2020, under oath Webber in a Florida Supreme Court case, Webber deliberately committed perjury on material issues to discredit Keitel, when he falsely testified that he never received the appraisal, that the Keitel told him the worth was worth $14 million, and that there was a Nine or ten million mortgage on the property.

630. Zimmerman Kiser & Sutcliffe's invoice for professional service dated October 13, 2017, lists on page two, that RBW, Webber's initial, reviewed the appraisal of 237 Brazilian Avenue, Palm Beach, Florida on December 12, 2016 for 0.40, hrs.; and the invoice also show Webber review ed Email correspondence from Keitel and development and plans for 237 Brazilian Avenue, Palm Beach, Florida, for .10 hrs.

631. Defendants named herein acted to defraud Keitel by misrepresentation, perjury, fraud, obstruct of justice, suborning perjury, to discredit, sabotaged and, to defraud Keitel and FCM from doing forward, damaging Keitel in excess of $15 million.

632. Plaintiffs justifiably relied on Defendants misrepresenting material facts relied by Keitel and FCM, who was unaware of the extend of fraud, defamation and efforts to defraud and discredit Keitel as a material witness and to steal his development project.

633.  Defendants Webber Anderson, Robinson, Zimmerman's action with Christu, Hart, Glick Shutts,  SR and JR., individually and as Trustees  for the D'Agostino Trust, and ED, was intentional willful, wanton, malicious, and oppressive, with the intention to retaliate and punish Keitel, as a witness and or victim, and steal Keitel's property, [fully paid for,] and defraud his development project and profits.

634.  Defendants 's unlawful conduct has directly, legally and approximately caused and continues to cause injuries to Plaintiff Keitel in his business and personal life.  The injuries include Plaintiff loss of FCM property, profits, loss of FJK IV stock, set-offs, distributions, real estate, and steady on-going stream of income from FJK IV.   Plaintiff Keitel seeks an award of damages in compensation for among things, the millions of dollars Defendants stole from Plaintiff.  Further, Plaintiff seeks the imposition of punitive damages as a result of defendants' criminal behavior, including perjury, multiple counts of suborning perjury, extortion, threats, and obstruction  of justice in an attempt to discredit Keitel as a material witness [whistleblower-witness] in the investigation into corruption, case fixing, threats and extortion all done to prevent Keitel from developing his townhomes.

   WHEREFORE, Plaintiff's Keitel (FJK IV) and FCM , respectfully requests judgment against all defendants named herein for fraud in excess of $30 million in damages, plus legal fees, costs, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

## COUNT XV

### Civil Conspiracy to Defraud
### Against Defendants

**Thomas B D'Agostino, SR and Thomas B D'Agostino, JR., individually and as Trustees for the D'Agostino Trust, ED; SLG; Stein individually and on behalf of SLG; Christu, individually and as a partner in Shutts; Hart individually and as a partner in Shutts; Glick individually and as a partner in Shutts Menor, individually and as a partner in Shutts; Farrell individually and as a partner in Shutts and Shutts & Bowen, LLP and others unknown at this time, and Shutts & Bowen, Webber, Individually, as Trustee and as a partner in Zimmerman Kiser & Sutcliffe, P.A. Anderson, Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A.; Robinson Individually, and as a partner in Zimmerman Kiser & Sutcliffe, P.A; Zimmerman Kiser & Sutcliffe, P.A.**

635.  Plaintiffs Keitel and FCM    re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 634 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 636 -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

636.  Defendants and each of them, knowingly, willfully, and unlawfully, conspired to facilitate a scheme which included the operation or management  of a RICO enterprise through a pattern of racketeering activity as alleged herein.

637.  Defendants, and each of them, combined and agreed with each other and/or others to defraud Plaintiffs by threats, extortion, perjury, and retaliation against Keitel as a material witness in a federal investigation, and  failing to disclose that  they acted in concert, to prevent Keitel's intervention in the state court case, so they could continue to defraud Keitel and FCM, and their acts were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of repeated conduct during a period of time beginning in late  2015 or early 2016 and continuing to the present time, as alleged  herein and there is a continued threat of repetition of such conduct , to collect money.

197

638.  Defendants, Webber Anderson, Robinson, Zimmerman's conspired with Christu, Hart, Glick Shutts,  SR and JR., individually and as Trustees  for the D'Agostino Trust, and ED,  and each of them, combined and agreed with each other and/or others to defraud Plaintiff Keitel and FCM by perjury, suborning perjury, fraud, extortion, threats, after Webber misrepresented material facts, said he would sell Keitel back his property, in good faith, and instead conspired and was working together with all defendants to defraud Keitel and FCM and sabotaging Keitel and FCM venture by secretly and nefariously working with all others defendants, to prevent Keitel and FCM from going forward with the project, all misrepresenting material facts, and reliance by Keitel and FCM, when defendants and, the Trustee, Webber and his lawyers, all defendants herein were working with all other defendants named herein to defraud Keitel by misrepresentation, perjury, fraud, obstruct of justice, suborning perjury, to discredit, sabotaged and, to defraud Keitel and FCM from doing forward, damaging Keitel in excess of $15 million as retaliation and punishment as a material witness to corruption, case fixing in the bankruptcy and UTS.

639.  The conspiracy commenced as early as November  2016 and  upon information and belief is on-going.

640.  Pursuant to their agreement(s), Defendants, and each of them, acted in concert to support their common purpose of defrauding Plaintiff Keitel and FCM in order to deprive Plaintiffs of the property, real estate, money, opportunity to develop the townhouses, the profits, and a home for Keitel and his family.

641.  Each Defendant committed at least one overt act in furtherance of such conspiracy. Including  misleading Plaintiff(s) as to the true purpose of their intent, and

the intent of all the defendants, outlined in the paragraphs above in paragraphs above, including but not limited to mail and wire fraud, false and fraudulent misrepresentation, perjury, suborning perjury, extortion, filing false and fraudulent affidavits, to facilitate and manage the scheme to defraud Plaintiffs' Keitel and FCM out of money, property, real estate, and profits described above.

642.  Each Defendant acted with the common intent to defraud Plaintiffs and understood that all other defendants shared the same intent in that common purpose.

Plaintiffs have been injured and continue to be injured in a business and property by Defendants'

643.  Defendants' conduct was willful, wanton, malicious, and oppressive.

644. Defendants 's unlawful conduct has directly, legally and approximately caused and continues to cause injuries to Plaintiff Keitel in his business and personal life.  The injuries include Plaintiff loss of FCM property, profits, loss of FJK IV stock, set-offs, distributions, real estate, and steady on-going stream of income. Plaintiff Keitel seeks an award of damages in compensation for among things, the millions of dollars Defendants stole from Plaintiff, and the return of FJK IV stock stolen from Keitel.

645.  Further, Plaintiff seeks the imposition of punitive damages as a result of defendants' criminal behavior, including perjury, multiple counts of suborning perjury, extortion, threats, and obstruction  of justice in an attempt to discredit Keitel as a material witness [whistleblower-witness] in the investigation into corruption, case fixing, threats and extortion all done to prevent Keitel from developing his townhomes.

WHEREFORE, Plaintiff's Keitel and FCM , respectfully requests judgment against all defendants named in this count herein **for civil conspiracy  to commit fraud Keitel and FCM  in excess of** $30 million in damages, plus legal fees, costs, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

### COUNT  XVI

**Civil Conspiracy to Defraud Plaintiffs Keitel/(FJK IV) by Defendants JR and JD, individually and as officers and directors of INC, LTD, RLLP, G.P., and their lawyers Shutts, Christu, Hart and Glick, Farrell, Menor**

646.  Plaintiffs Keitel/FJK IV   re-alleges repeats and incorporates by reference herein all the allegations in paragraphs   1- 645 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 647 -777,  803-886  and 887 – 890 incorporates them as if fully alleged  herein.



647.  Defendants JR and JD, individually and as officers and directors of INC, LTC, RLLP and their lawyers Shutts, Christu, Hart, Glick, Farrell, Menor and each of them, knowingly, willfully, and unlawfully, conspired to facilitate a scheme  to defraud Plaintiffs FJK IV and Keitel by signing, filing false and fraudulent affidavits, Corporate Resolutions and chart  to defraud FJK IV and Keitel as alleged herein.

648.  Defendants, and each of them, acted with each other and others, agreed with each other and/or others to defraud Plaintiffs Keitel (FJK IV) by threats, extortion, perjury, and retaliation against Keitel as a material witness in a federal investigation, and  failing to disclose that  they acted in concert, to prevent Keitel's intervention in the

200

state court case, so they could continue to defraud Keitel and FJK IV , and their acts
were not isolated, but rather the acts of Defendants were related in that they had the
same or similar purpose and result, participants, victims and method of repeated
conduct during a period of time beginning in   2012 and continuing to the present time,
there is a continued threat of repetition of such conduct.

649.  Defendants' fraud, extortion, threats, after Webber misrepresented material facts
to defraud Keitel and FJK IV of stock in INC and LTD, and conspired and was working
together with all defendants to defraud Keitel and FJK IV  and sabotaging Keitel and
FJK IV   during the May 3, 2021 Sheriff's sale and nefariously working with all others
defendants, to prevent Keitel and FJK IV  from keeping, all misrepresenting material
facts, and  intentional misrepresentation, perjury, fraud, obstruct of justice, suborning
perjury, to discredit, sabotaged and, to defraud Keitel and FJK IV  damaging Keitel (and
FJK IV) in excess of $15 million as retaliation and punishment.

650.  The conspiracy commenced as early as March 2012 and  upon information and
belief is on-going.

651.  Pursuant to their agreement(s), Defendants, and each of them, acted in concert to
support their common purpose of defrauding Plaintiff Keitel and FJK IV, until May 3,
2021 and then Keitel

652. Each Defendant committed at least one overt act in furtherance of such
conspiracy. Including  misleading Plaintiff(s) as to the true purpose of their intent, and
the intent of all the defendants, outlined in the paragraphs above in paragraphs above,
including but not limited to mail and wire fraud, false and fraudulent misrepresentation,

perjury, suborning perjury, extortion, filing false and fraudulent affidavits, to facilitate and manage the scheme to defraud Plaintiffs' Keitel and FJK IV out of stock in FJK IV, LTD, INC, distributions, money, property, real estate, and profits described above.

653.  Each Defendant acted with the common intent to defraud Plaintiffs and understood that all other defendants shared the same intent in that common purpose.

654.  Plaintiffs have been injured and continue to be injured in the loss of business and property by Defendants.'

655.  Defendants' conduct was willful, wanton, malicious, and oppressive.

656.  Defendants 's unlawful conduct has directly, legally and approximately caused and continues to cause injuries to Plaintiff Keitel and FJK IV in his business and personal life.  The injuries include Plaintiff loss of distributions, profits, loss of FJK IV stock, LTD and INC stock set-offs, real estate, and steady on-going stream of income. Plaintiff 657. Keitel seeks an award of damages in compensation for among things, the millions of dollars Defendants stole from Plaintiff, and the return of FJK IV stock stolen from Keitel.

658.  Further, Plaintiff seeks the imposition of punitive damages as a result of defendants' criminal behavior, including perjury, multiple counts of suborning perjury, extortion, threats, and obstruction of justice, and mail and wire fraud in an attempt to discredit Keitel as a material witness [whistleblower-witness] in the investigation into corruption, case fixing, threats and extortion all done to prevent Keitel from developing his townhomes.

WHEREFORE, Plaintiff's Keitel (FJK IV), respectfully requests judgment against all defendants JR and JD, individually and as officers and directors of INC, LTC, RLLP and

their lawyers Shutts, Christu, Hart and Glick **for civil conspiracy to commit fraud against Keitel (and FJK IV) in excess of** $30 million in damages, plus legal fees, costs, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

### COUNT XVII
### Actual Fraud by SR, JR, individually and as Trustee' of the D'Agostino, ED, King, Rose, Stein, SLG, Shutts, Christu, Hart, and Glick Against FCM and Keitel

659.  Plaintiffs Keitel  and FCM  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 658 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 660 -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

660.  This is an action for fraud against SR, JR, D'Agostino Trust and ED. King, Christu and Shutts, that began on March 15, 2005 when Keitel and FCM caused his lawyers at Boose Casey to send a wire transfer to the D'Agostino Charitable Trust as partial payment of its mortgage by sending the wire to Robert King, Trust Account, a lawyer for the D'Agostino Trust and SR as Trustee.

661.  It is undisputed that neither FCM or Keitel ever received any payment credit or reduction in FCM mortgage $2,000,000.00 mortgage for the $1,230,000.00 wire transfer by FCM/Keitel.

662.  Despite the wire transfer having a Boose Casey client ID number of FCM on the wire transfer, SR and his lawyer concealed the actual fraud from FCM, Keitel in his prior June 2013 deposition testimony, as payment "from some other deal", but couldn't remember.

663. SR received the $1,230,000.00 from King personally, placed it into his personal bank-brokerage account, and testified in 2014, that he never told anyone, never told his CPA or declared the $1,230,000.00 on his tax returns.

664. SR later testified that THE $1,230,000.00 was a gift from Keitel, that Robert King, never represented the D'Agostino Trust, didn't know why King received the money, and SR refused to testify or admit how he received the money from King, after being warned by Christo not to answer questions during multiple court hearing and depositions.

665. SR concealed the transfer of the $1,230,000.00, perjured himself during his June 2013 deposition and April 15, 2015 testimony before Judge Hyman, then refused in multiple deposition to answer questions about the $1,230,000.00.

666. SR also allowed his lawyers Christu, Hart and Shutts for the D'Agostino Trust to perjure both SR and King on the stand, and watch as his lawyers Christu, Hart and Shutts suborn perjury by allowing King (also Shutts and Christu client), to intentionally mislead the court when he falsely testified that he never represented the Trust when he received the $1,230,000.00 wire transfer.

667. At all times SR. King and their lawyers, Christu, Hart and Shutts knew that both clients committed perjury, and continued to ask question they knew would lead to further perjured testimony, and/or mage false proffers to the courts in order to intentionally deceive and mislead the court, Keitel and FCM, and cause, and did cause damages to Keitel's reputation and loss of over $12,000,000.00 in damages

668. Defendants SR, individually and as trustee, JR, D'Agostino Trust, its lawyers King, Christ, Hart and Shutts entered into an enterprise relationship over 8 years for the same

common purpose and pattern of racketeering illegal activities and fraud, wire, mail, electronic fraud to defraud and damage FCM and Keitel of real property, membership interest in FCM, millions of dollars and public humiliation by placing an article in the local Palm Beach Daily News to embarrass Keitel.

669. Defendants SR and JR individually and as trustee, the D'Agostino Trust, ED, and its lawyers King, Christu, Hart and Shutts continued and continues to this day to try to collect damages from FCM and Keitel for legal fees based on SR, JR, D'Agostino Trust, King and Christu, Hart and Shutts fraud, wire and mail fraud, perjury, suborn perjury.

**WHEREFORE**, Plaintiff FCM and Keitel prays that a jury and this court will enter a judgment against all defendant SR and JR, individually and as trustee of D'Agostino Trust, ED, Stein SLG, its lawyers King, Rose, Christ, Hart and Shutts for actual fraud in the amount of $30,000,000.00 plus continued attempt for legal fees, costs, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

## COUNT XVIII

**On-Going Conspiracy to Commit Fraud by SR, JR, Trustee's D'Agostino Trust Actual Fraud by SR, JR, individually and as Trustee' of the D'Agostino Trust, ED, King, Rose, Stein, SLG, Shutts, Christu, Hart, and Glick**
**Against**
**Plaintiffs FCM, Keitel (and FJK IV)**

670. Plaintiffs Keitel (FJK IV) and FCM re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 669 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287, 288-326, 329-340, 367-382, 384-402, above 671 -777, 803-886 and 887 – 890 incorporates them as if fully alleged herein.

671.  This is an action for fraud against defendants SR individually and as Trustee of D'Agostino Trust, and JR, individually and as Trustee of D'Agostino Trust,  D'Agostino Trust, ED, Christu, Hart, Shutts, King, Rose, (and Webber, Anderson and Zimmerman),for actual fraud,  during the perjury, cover-up and suborn perjury regarding the wire transfer of $1,230,000.00 from Keitel and FCM via Boose Casey et al on March 15, 2005 to Robert King Trust Account, attorney for the D'Agostino Trust, and the intentional failure to disclose during hearings and depositions on June 28, 2013, evidentiary hearing on April 15, May 6, 2015, deposition of King on July 11, 2016, January 5, 2017, March 2017,  and during the  June 26, 2017 judgment, sabotage by the defendants herein.

672.  On March 15, 2005 FCM caused his lawyers at Boose Casey et al to send a wire transfer to the D'Agostino Charitable Trust as partial payment of its mortgage by sending the wire to Robert King, Trust Account, a lawyer for the D'Agostino Trust and SR as Trustee.

673.  It is undisputed that neither FCM or Keitel ever received any payment credit or reduction in FCM mortgage $2,000,000.00 mortgage for the $1,230,000.00 wire transfer by FCM/Keitel, which also defraud Keitel and FJK IV to borrow $1,400,000.00 in funds that it didn't need from SR in 2008.

674.  Despite the wire transfer having a Boose Casey client ID number of FCM on the wire transfer, SR and his lawyer concealed the actual fraud from FCM, Keitel in his prior June 2013 deposition testimony, as payment "from some other deal", but couldn't remember.

675. SR received the $1,230,000.00 from King personally, placed it into his personal bank-brokerage account, and testified in 2014, that he never told anyone, never told his CPA or declared the $1,230,000.00 on his tax returns.

676. SR later testified that THE $1,230,000.00  was a gift from Keitel, that Robert King, never represented the D'Agostino Trust, didn't know why King  received the money, and SR refused to testify or admit how he received the money from King, after being warned by Christu not to answer questions during multiple court hearing and depositions.

677. SR concealed the transfer of the $1,230,000.00, perjured himself during his June 2013 deposition and April 15, 2015 testimony before Judge Hyman, then refused in multiple deposition to answer questions about the $1,230,000.00.

678. SR also allowed his lawyer for the D'Agostino Trust to perjure himself on the stand, and watch as his lawyers Christu, Hart and Shutts suborn perjury by allowing King to intentionally mislead the court when he falsely testified that he never represented the Trust when he received the $1,230,000.00 wire transfer.

679. At all times beginning in June 2013 and through present day. SR. King and their lawyers, Christu, Hart and Shutts knew that both clients committed perjury, and continued to ask question they knew would lead to further perjured testimony, and/or mage false proffers to the courts in order to intentionally deceive and mislead the court, Keitel and FCM.

680. Defendants SR, individually and as Trustee, JR, D'Agostino Trust, ED, its lawyers King, Christ, Hart and Shutts entered into an enterprise relationship over 8 years for the same common purpose and pattern of racketeering illegal activities and  fraud, wire,

mail, electronic fraud to defraud and damage FCM and Keitel of real property, membership interest in FCM, millions of dollars and public humiliation by placing an article in the local Palm Beach Daily News to embarrass Keitel.

681. Defendant's actions at all times not only defrauded FCM and Keitel, but misappropriated in excess of $1,230,000.00 plus interest from the D'Agostino Charitable Trust into his own personal account, in violation of New York State Trust and Estate laws, and fail to declare the income on his personal tax returns.

682. Defendants SR individually and as Trustee of D'Agostino Trust, JR, individually and as Trustee of D'Agostino Trust, the D'Agostino Trust, ED, Christu, Hart, Shutts, King, Rose, were aware at all times that SR perjured himself, changed his testimony, and knew that King perjured himself on April 15, 2015, and ignored perjury until July 11, 2016.

683. Defendants SR, JR, ED, D'Agostino Trust, conspired with Shutts lawyers, Christu and Hart to cover-up the truth facts, attempt a last ditch effort to transfer the case back to Meenu Sasser, who would whitewash the true facts, then use undue influence with Oftedal to prejudice Keitel.

684. At all times, defendants, Christu, Hart and Shutts mislead the court, and knew there was no res judicata regarding the $1,230,000.00 wire transfer, and the April 2016 Order by Judge Brunson denying Motion for Summary Judgment on the same facts and issues before the court when Webber, Christu, Hart, Shutts and SR acted together in concert to sabotage Keitel and FCM to damage his reputation, integrity, and cause over

$15,000,000.00 in damages, while calling in favors, to have the Palm Beach Daily News print a derogatory misleading article defaming Keitel.

685. Defendants Christu, Hart, Glick, Shutts individually and together with others, conspired to intentionally suborn perjury, lied, submitted fraudulent motions, proposed orders, exhibits and documents, by SR, JR, JD, King and others, that they knew were false with the intent to defraud plaintiff Keitel, FJK IV and his entities of over $30,000,000.00

686. Defendants, Christu, Hart, King, Rose, SR, JR, JD, RLLP, GP, FJK-Tee Jay, Ltd and others lied and suborned perjury when (1) Christu and Hart solicited direct testimony from JD, SR , JR and King that they knew to be false, as well as SR and King's testimony that King never represented the D'Agostino Trust; (2) that JR, JD and RLLP convened a shareholders meeting in July 2015, on behalf of RLLP, a one-half shareholders of INC, fired Keitel as an officer and director of FJK-Tee Jay, LTD and INC., and replaced him with Jonathan D'Agostino, when they all knew that RLLP had no legal authority or standing, never owned 0ne-hald of the 1% stock of INC, and had no authority to fire or replace Keitel in INC., (3) that Christu, Hart, Sr, Jr, JD, RLLP, Stein and SLG and others conspired and submitted false and fraudulent evidence and a fraudulent organizational chart falsely showing that RLLP owned one-half of 1% of INC stock, that they knew was false.

687. Plaintiffs Keitel, FCM (and FJK IV) suffered damages as a direct result of the intentional and fraudulent actions of defendants, Christu, Hart, Shutts, King, Rose, Sr, Jr, JD, RLLP, GP, LTD and INC and others, and have suffered damages in excess of $30 millions dollars.

WHEREFORE, Plaintiffs FCM and Keitel and prays that a jury and this court enter a judgment against defendants On-Going Conspiracy to Commit Fraud by SR, JR, Trustee's D'Agostino Trust Actual Fraud by SR, JR, individually and as Trustees' of the D'Agostino, ED, King, Rose, Stein, SLG, Shutts, Christu, Hart, and Glick for conspiracy to commit fraud in the amount of $30 million dollars, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper

## COUNT XVI

### Fraud and Mortgage Fraud by SR, JR, JD, RLLP, G.P., LTD, INC, King, Rose, Stein, SLG, Shutts, Christu, Hart, Glick

688. Plaintiffs Keitel (FJK IV) and FCM re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 687 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287, 288-326, 329-340, 367-382, 384-402, above 689 -777, 803-886 and 887 – 890 incorporates them as if fully alleged herein.


689. This is an action for fraud and Mortgage Fraud against defendants SR, JR, JD, RLLP, LTD, INC, King, Rose, Stein, SLG, Christ, Hart and Shutts for filing false and fraudulent mortgage on LTD, INC property located 241 Royal Palm Way, Palm Beak, Florida.

690. Defendants SR, JR, JD, RLLP, LTD, INC, King, Rose, Christ, Hart and Shutts as acted together in an on-going enterprise through a pattern of mail and wire fraud in the filing of an illegal mortgage on September 2014, without consideration for the purpose

of backdating default interest to loot over $30,000,000.00 in fraudulent default interest payment to an insider, to deplete the cash in LTD, to avoid paying distribution to Keitel and FJK IV.

691.  Defendants SR, JR, JD, RLLP, LTD, INC, King, Christ, Hart  and Shutts actions were an on-going pattern, of mortgage fraud, to loot and defraud LTD, FJK IV and Keitel, that continues to present date June 2021, including the  predicate acts, of fraudulent misrepresentation to a federally funded mortgage company, the  illegal redemption of the Final Judgment om Foreclosure, by SR, JR, JD, RLLP, King, Rose based on fraudulent representative that Rose was the lawyer for LTD, and had a right to redeem, and the on-going payment of interest, costs and expenses to SR, based on a fraudulent mortgage recorded without consideration, and in which SR never put funds directly into LTD.

    WHEREFORE, Plaintiff Keitel (FJK IV), prays that a jury and this  court will enter a judgment against defendants SR, JR, JD, RLLP, LTD, INC, King, Rose, Stein, SLG, Shutts, Christu, Hart, Glick individually and jointly, who as acted together in an on-going enterprise to pay SR, Shutts Christu, Hart and Glick  over $6,000,000.00 in illegal, fraudulent  default mortgage payments,  interest, legal fees, costs, expenses,  to loot LTD, in order to defraud FJK IV and Keitel out of his FJK IV stock, of distributions, dividends,  for damages in excess of $30 millions dollars, plus pre-judgment interest, attorney fees, costs, and punitive damages and for other such relief as the court deems just and proper under the circumstances.

## COUNT XVII

211

**Conspiracy to defraud Plaintiffs Keitel (FJK IV) and FCM by SR, JR, JD, RLLP, G.P., LTD, INC, King, Rose, Stein, SLG, Shutts, Christu, Hart, Glick, Reis, Fox, Webber, Anderson, Robinson, Zimmerman**

692.  Plaintiffs Keitel (FJK IV) and FCM  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 691 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 693 -777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein

693.  This is an action for conspiracy to fraud and mail and wire fraud, against Webber (individually, as Trustee and partner in Zimmerman), Anderson, Robinson, Zimmerman and against defendants SR, JR, JD, RLLP, G.P., LTD, INC, King, Rose, Stein, SLG, Shutts, Christu, Hart, Glick, Reis, Fox, Webber, Anderson, Robinson, Zimmerman for filing false and fraudulent motions, pleading and legal bills in plaintiff's bankruptcy and state court cases.

694.  Defendants SR, JR, JD, RLLP, G.P., LTD, INC, King, Rose, Stein, SLG, Shutts, Christu, Hart, Glick, Reis, Fox conspired to represent both RLLP, GP, SR, JR, JD, LTD and INC, to defraud  FJK IV in a double dipping invoice scheme, until the last moment, then Reis and Fox recused themselves, to avoid having Christu testify under oath, and double billing Keitel in Adv. Proc. Case No. 16-01440, causing damages in the amount of over $30,000,000.00.

695.  Defendants SR, JR, JD, RLLP, G.P., LTD, INC, King, Rose, Stein, SLG, Shutts, Christu, Hart, Glick, Reis, Fox, Webber, Anderson, Robinson, Zimmerman never intended to allow Reis and Fox to be trial counsel for RLLP, and conspired to let Reis and Fox masqueraded as trial counsel for the sole purpose of double billing legal fees,

in the bankruptcy court after Keitel's allegations as a whistle blower, and Chief Judge sua sponte  Ordered an investigation into corruption and case fixing in the bankruptcy court.

696.  Defendants SR, JR, JD, RLLP, G.P., LTD, INC, King, Rose, Stein, SLG, Shutts, Christu, Hart, Glick, Reis, Fox, Webber, Anderson, Robinson, Zimmerman actions were part of a pattern and enterprise designed by Shutts lawyers Christu, Hart, Glick and others to defraud Keitel, to strip Keitel and FJK IV of money, leaving Keitel unable to pay or hire a lawyer to defend himself, and allow themselves to filed false and fraudulent legal fees to the court for approval, but also sent through the U.S. Mail and internet to defraud plaintiff by wire fraud, even after Jonathan Hart's proffered to a U.S. Magistrate in U.S District Court, that he doesn't do bankruptcy work, yet charged tens of thousands of dollars in fraudulent legal fees.

WHEREFORE, Plaintiffs' Keitel (FJK IV), respectfully requests judgment against all defendants SR, JR, JD, RLLP, G.P., LTD, INC, King, Rose, Stein, SLG, Shutts, Christu, Hart, Glick, Reis, Fox, Webber, (individually and as Trustee), Anderson, Robinson, Zimmerman individually and as officers and directors of INC, LTC, RLLP and their lawyers Shutts, Christu, Hart and Glick for conspiracy to commit fraud in excess of $30 million in damages, plus legal fees, costs, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

## COUNT XVIII
### Conspiracy to Commit Fraud by Eric Christu

697.   Plaintiffs Keitel (FJK IV) and FCM  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 696 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 698-777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein

698. This is an action against Eric Christu for Fraud  [mail and wire fraud in violation of violation of  18 U.S.C §1341 & 1343,  Civil RICO under federal statute 18 U.S.C §1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act complaint] against Keitel (FJK IV) and FCM.

699. Beginning in January 2013, Christu met with and advised RLLP, G.P., JR, JD, SR in multiple lawsuits against LTD, INC, FJK IV and plaintiffs Keitel and FCM.

700. Christu was formerly retained on or about April 2, 2013, and immediately joined in to managed and operate the on-going association-in-fact, enterprise, through a pattern of racketeering activities including, but not limited to malicious prosecution, fraud, filing false and fraudulent pleading with the intent to defraud, perjury, multiple accounts of suborning perjury on over 10 different occasions in state and federal courts and  drafting false and fraudulent affidavits, mail and wire fraud in violation of 18 U.S.C § 1341 & 1343, participation in bank and mortgage fraud, threats, extortion in a federal courthouse against a witness` with the intention to harass, intimidate and cause fear, to prevent him from rendering cashier's check to the court, and other predicate criminal act, that caused injury to Keitel, and his business' and properties, stock and cash distributions (from LTD), with a common purpose of conspiring with JR, JD, SR, RLLP,

G.P., ED, D'Agostino Trustee  and others including Glick, Hart, Shutts (as court appointed escrow agent), and Shutts partners and members of the executive committee Menor and Farrell, and  King, Rose, Reis, Fox Rothschild, Furr, Charles Cohen, White, Adams, Haile Shaw, and Callahan to punish, defame, retaliate and defraud Keitel personally, FJK IV, FJK, FJK III and LTD and INC, out of over $40 million in violation of Civil RICO under federal statute 18 U.S.C §1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act complaint from 2013 until present, in a continuous conspiracy with others.

701. In April 2012, Christu immediately began to prosecute Keitel on a false and fraudulent Indirect criminal contempt Order to Show Cause, ("OTSC"), signed by Judge Cox, after a fraudulent motion filed on behalf of RLLP, G.P. JR and JD lawyer Andrew Rose, filed a false and fraudulent Motion for OTSC in violation of court orders, by Judges McSorley and Brunson signed on November 28, 2012, in Wells Fargo Bank, N.A. vs. FJK-Tee Jay, LTD.,  and FJK-Tee Jay, INC., Case No. 502012CA004665XXXXMB-AN: when the court told RLLP and counsel it  had had no standing in the case, couldn't file any motions unless and until he had an evidentiary hearing and received a court order.

702. Christu, a certified business lawyer despite knowing the  OTSC was incorrectly signed by Judge Cox based on false and fraudulent allegations by RLLP, continued  to pursue the indirect criminal OTSC against Keitel, in violation of  court orders. (see Judge Cox, order and June 6, 2013 transcript).

215

703. Instead of notifying the court, Christu actively participated in a wrongful and malicious prosecution against Keitel, as president of INC and LTD, in violation of court orders, that was vacated and stricken by Judge Cox on June 6, 2013, who warned Christu and Andrew Rose, that they violated court orders by appearing in and pursuing this charge, and Chrtistu continued with his false charge when Judge Cox recused himself, and Judge Janis Keyser in May 2014.

704. On May 8, 2013 Christu and Rose, filed a Verified Derivative Counterclaim against Defendants LTD, INC, FJK IV and Keitel, Case No 502012CA023240XXXXMB-AN and instead of attaching the FJK-Tee JAY, INC Shareholders Agreement, ("INC-SHA"), (The Corporation) controlling document, Christu attached a false and fraudulent copy of an organization chart that incorrectly showed that RLLP was a 50% owner of INC stock.

705. At all times, Christu and Rose knew that (i) the INC-SHA only listed FJK IV and Tee Jay of Florida, G.P., ("G.P." or "TEE JAY"), a Virginia general partnership as the owner of G50% of stock in INC, (ii) that on December 3, 2013 Rose filed a lawsuit against LTD, INC, FJK IV and Keitel, TEE JAY of FLORIDA, RLLP, a Virginia limited liability partnership, and TEE JAY of FLORIDA, G.P., a Virginia general partnership vs. Frederick J. Keitel, III, LTD., INC, FJK IV, and stated that (TEE JAY of FLORIDA, G.P., a Virginia general partnership, owns 50% of FJK-Tee Jay, INC (not RLLP) and (iii) that a limited liability partnership like RLLP was forbidden under the IRS tax code from owning stock in a subchapter S corporation.

706. Then on July 9, 2013 Christu participated in an on-going nine year mail and wire fraud campaign, including RICO enterprises by drafting false and fraudulent affidavits, corporate resolutions, filing false motions, pleading for JR, JD, RLLP, LTD, INC to sign

216

false and fraudulent corporate resolutions, firing Keitel, and appointing JD as president and director of INC and LTD, and used as a basis for all the fraudulent pleadings.

707. Christu and his wife were closes friend of JR and SR, knew that JR was a director, vice-president, secretary and treasurer of INC, and the general partner in Tee Jay of Florida G.P., who signed the originally INC-SHA, that Christu continuously misrepresented to multiple state and federal courts to defraud Keitel and FJK IV, (and FCM), with friendly judge who all looked the other way, because of Keitel's outspoken allegations of corruption in the judiciary.

708. Christu filed multiple motions in state and federal court using mail and wire fraud with the intent to defraud Keitel, (FCM, FJK IV, FJK, FJK III), and commit a fraud on the court, by filing false and fraudulent affidavits charts, motions, pleading and suborning perjury of SR, JR, JD, King and others in TEE JAY of FLORIDA, RLLP, a Virginia Registered Limited Liability Partnership v. FJK IV Properties, INC, a Florida Corporation; Case No 502016CA010381XXXXMB-AI; Case Nos.: 502016CA010381XXXXMB-AI; Case No. 502012CA004665XXXXMB-AN; Case No. 502016CA003785XXXXMB: Case No. 502012CA023240XXXXMB-AF; Case No. 502013CA004699XXXXMB-AA, Adv. Proc. 16-01440-EPK; and conspiracy to defraud FCM, FJK IV and Keitel in Case No. 17-01245-EPK, filed by Richard Webber, Anderson, Robinson and Zimmerman, with Shutts Christu, Hart and Glick; and suborning perjury in Case No. 15-10576-BKC-PGH, representing SR and Robert King, (who later recanted his testimony).

709. Christu also participated with Shutts, Glick, Hart, Farrell, Menor and others including UST's Heidi Feinman and Ariel Rodriguez in a fraudulent scheme to have the

UTS file motions, "front-running" for Shuts lawyers to defraud Keitel, FCM and FJK IV, then conspired with WARZ lawyers to defraud Keitel, FCM and FJK IV.

710. On October 17, 2018, Christu acting on behalf of all defendants named herein, and as partner in Shutts, court appointed Escrow Agent for FJK IV Stock (Keitel), threatened and extorted Fred Latsko, banker/lender/friend of Keitel (FJK IV), to cause fear and retaliation against Mr. Latsko in a federal courthouse, minutes before Mr. Latsko was about to submit cashier's checks, proof of funds and testify in the U.S. Bankruptcy Court, to pay off all Keitel and FJK IV's judgments, liens, legal fees and costs, so Keitel could get his FJK IV stock back (after Mr. Latsko previous provided proof of funds of $3,100,000.00 to Shutts as escrow agent, Christo, and Webber as trustee).

711. As a direct result of the actions by defendant Eric Christu, plaintiff Keitel (FJK IV), was damaged in an amount of over $40 million.

WHEREFORE, the plaintiff FREDERICK J. KEITEL, III demands judgment against defendant Christu personally, for Fraud, [mail and wire fraud, and Civil RICO] in excess of $40 million dollars plus treble damages exclusive of interest, costs and attorney fees, and such further relief as is deemed just and proper.

## COUNT XIX

### Conspiracy to Commit Fraud by Christu

712. Plaintiffs Keitel (FJK IV) and FCM re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 711 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287, 288-326, 329-340, 367-382, 384-402, above 713-777, 803-886 and 887 – 890 incorporates them as if fully alleged herein.

218

713. This is an action against Eric Christu individually and as a partner in Shutts for conspiracy to commit fraud, [mail and wire fraud in violation of violation of  18 U.S.C §1341 & 1343,   Civil RICO under federal statute 18 U.S.C §1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act complaint]  against Keitel (FJK IV).

714. Beginning in January 2013, Christu met with, advised and acted with SR, JR, JD, Rose, King, and JR and JD as officers and directors of  RLLP, and G.P.,  and others, including members of Shutts & Bowen, LLP, to conspire to defraud  LTD, INC, FJK IV Keitel and FCM.

715. Christu was formerly retained on or about April 2, 2013, and immediately conspired to joined, managed and operate the on-going association-in-fact, enterprise, through a pattern of racketeering activities including, but not limited to malicious prosecution, fraud, filing false and fraudulent pleading with the intent to defraud, perjury, multiple accounts of suborning perjury on over 10 different occasions in state and federal courts and  drafting false and fraudulent affidavits, mail and wire fraud in violation of 18 U.S.C § 1341 & 1343, participation in bank and mortgage fraud, threats, extortion in a federal courthouse against a witness` with the intention to harass, intimidate and cause fear, to prevent him from rendering cashier's check to the court, and other predicate criminal act, that caused injury to Keitel, and his business' and properties, stock and cash distributions (from LTD), with a common purpose of conspiring with JR, JD, SR, RLLP, G.P., ED, D'Agostino Trustee  and others including Glick, Hart, Shutts (as court appointed escrow agent), and Shutts partners and members of the executive committee

Menor and Farrell, and  King, Rose, Reis, Fox Rothschild, Furr, Charles Cohen, White, Adams, Haile Shaw, and Callahan to punish, defame, retaliate and defraud Keitel personally, FJK IV, FJK, FJK III and LTD and INC, out of over $40 million in violation of Civil RICO under federal statute 18 U.S.C §1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act complaint from 2013 until present, in a continuous conspiracy with others.

716. In April 2012, Christu immediately conspired with Rose, JR, JD, SR and other, still unknown, and began to falsely prosecute Keitel on a false and fraudulent Indirect criminal contempt Order to Show Cause, ("OTSC"), signed by Judge Cox, after a fraudulent motion filed on behalf of RLLP, G.P. JR and JD lawyer Andrew Rose, filed a false and fraudulent Motion for OTSC in violation of court orders, by Judges McSorley and Brunson signed on November 28, 2012, in Wells Fargo Bank, N.A. vs. FJK-Tee Jay, LTD.,  and FJK-Tee Jay, INC., Case No. 502012CA004665XXXXMB-AN: when the court told RLLP and counsel it  had had no standing in the case, couldn't file any motions unless and until he had an evidentiary hearing and received a court order.

717. Christu, a certified business lawyer despite knowing the  OTSC was incorrectly signed by Judge Cox based on false and fraudulent allegations by RLLP, conspired and acted with Rose, King, SR, JR, JD and others and continued  to pursue the indirect criminal OTSC against Keitel, in violation of  court orders. (see Judge Cox, order and June 6, 2013 transcript).

718. Instead of notifying the court, Christu acted with Rose, King, SR, JR, JD and actively participated in a fraudulent, wrongful and malicious prosecution against Keitel,

as president of INC and LTD, in violation of court orders, that was vacated and stricken by Judge Cox on June 6, 2013, who warned Christu and Andrew Rose, that they violated court orders by appearing in and pursuing this charge, and Chrtistu continued with his false charge when Judge Cox recused himself, and Judge Janis Keyser in May 2014.

719. On May 8, 2013 Christu and Rose, filed a Verified Derivative Counterclaim against Defendants LTD, INC, FJK IV and Keitel, Case No 502012CA023240XXXXMB-AN and on behalf of JR,JD, RLLP, and instead of attaching the FJK-Tee JAY, INC Shareholders Agreement, ("INC-SHA"), (The Corporation) controlling document, Christu attached a false and fraudulent copy of an organization chart that incorrectly showed that RLLP was  a 50%  owner of INC stock.

720.  At all times, Christu conspired with Rose, SR, JR, JD and others and  knew that (i) the INC-SHA only listed FJK IV and Tee Jay of Florida, G.P., ("G.P." or "TEE JAY"), a Virginia general partnership as the owner of G50% of stock in INC, (ii) that on December 3, 2013 Rose filed a lawsuit against LTD, INC, FJK IV and Keitel, TEE JAY of FLORIDA, RLLP, a Virginia limited liability partnership, and TEE JAY of FLORIDA, G.P.,  a Virginia general partnership vs. Frederick J. Keitel, III, LTD., INC, FJK IV, and stated that (TEE JAY of FLORIDA, G.P.,  a Virginia general partnership,  owns 50% of FJK-Tee Jay, INC (not RLLP) and (iii) that a limited liability partnership like RLLP was forbidden under the IRS tax code from owning stock in a subchapter S corporation.

721.  On July 9, 2013 Christu acted with and conspired with other Shutts lawyers, Including Hart and others, Rose, King, SR, JR, JD  to fraudulently participate in an on-going  nine year mail and  wire fraud campaign, including RICO enterprises by drafting

false and fraudulent affidavits, corporate resolutions, filing false motions, pleading for JR, JD, RLLP. LTD, INC  to sign false and fraudulent corporate resolutions, firing Keitel, and appointing JD as president and director of INC and LTD, and used as a basis for all the fraudulent pleadings with Reis, Fox, WARZ lawyers and others.

722. Christu even used his wife closes friend of JR and SR, to plan defamatory stories about Keitel, while knowing that JR was a director, vice-president, secretary and treasurer of INC, and the general  partner in Tee Jay of Florida G.P., who signed the originally INC-SHA,  that Christu continuously misrepresented to multiple state and federal courts to defraud Keitel and FJK IV, (and FCM), with friendly judge who all looked the other way, because of Keitel's outspoken allegations of corruption in the judiciary, and that Christo suborned perjury in FCM case with SR and King.

723. Christu filed multiple motions in state and federal court using mail and wire fraud with the intent to defraud Keitel, (FCM, FJK IV, FJK, FJK III),  and commit a fraud on the court, by filing false and fraudulent affidavits charts, motions, pleading and suborning perjury of SR, JR, JD, King and others in TEE JAY of FLORIDA, RLLP, a Virginia Registered Limited Liability Partnership v. FJK IV Properties, INC, a Florida Corporation;  Case No 502016CA010381XXXXMB-AI; Case Nos.: 502016CA010381XXXXMB-AI; Case No. 502012CA004665XXXXMB-AN; Case No. 502016CA003785XXXXMB:  Case No. 502012CA023240XXXXMB-AF; Case No. 502013CA004699XXXXMB-AA, Adv. Proc. 16-01440-EPK; and conspiracy to defraud FCM, FJK IV and Keitel  in Case No. 17-01245-EPK, filed by  Richard Webber, Anderson, Robinson and Zimmerman, with Shutts Christu, Hart and Glick; and

suborning perjury in Case No. 15-10576-BKC-PGH,  representing SR and Robert King, (who later recanted  his testimony).

724.  Christu also acted in concert with and participated with Shutts, Glick, Hart, Farrell, Menor  and others including UST's  Heidi Feinman and Ariel Rodriguez in a fraudulent scheme to have the UTS file motions, "front-running" for Shuts lawyers to defraud Keitel, FCM and FJK IV, then conspired with WARZ lawyers to defraud Keitel, FCM and FJK IV.

725. On October 17, 2018, Christu acting on behalf of all defendants named herein, and as partner in Shutts, court appointed Escrow Agent for FJK IV Stock (Keitel), threatened and extorted Fred Latsko, banker/lender/friend of Keitel (FJK IV), to cause fear and retaliation against Mr. Latsko in a federal courthouse, minutes before Mr. Latsko was about to submit cashier's checks, proof of funds (previously sent to Shutts, Christu , Webber WARZ), and testify in the U.S. Bankruptcy Court, to pay off all Keitel and FJK IV's judgments, liens, legal fees and costs, so Keitel could get his FJK IV stock back (after Mr. Latsko previous provided proof of funds of $3,100,000.00.

726.  As a direct result of the actions by defendant Eric Christu, plaintiff Keitel (FJK IV), was damaged in an amount of over $40 million.

   WHEREFORE,  the plaintiff  Frederick J. Keitel, III  (FJK IV), demands judgment against defendant Christu personally, and as partner in Shutts for conspiracy to commit fraud, with damages in excess of $40 million dollars plus treble damages exclusive of interest, costs and attorney fees, and such further relief as is deemed just and proper.

## **COUNT XX**

**Fraud Against Plaintiffs' Keitel, FCM and FJK IV by U.S. Panel  Trustee Webber, WARZ, Shutts, Christu, Glick, Hart, Reis, Fox, Judge  Kimball, UST, Rodriguez, to have  Webber File a Sham Complaint, Adv. Proc. 17-01245-EPK Beyond Statute of Limitations, to Conceal  Fraud in Failure to Contest FCM, FJK IV Claims, and Adv. Proc Case No. 16-01400-EPK Complaint to Determine Debt and Determine Dischargeability under  11 U.S.C. §523(A), when all defendants knew  that the FJK-Tee Jay, INC SHA Proved RLLP never owned Stock in FJK-Tee Jay, INC**

727. Plaintiffs Keitel (FJK IV) and FCM  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 727 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382, 384-402, above 727-777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.


This is an action against all defendants named herein for Fraud against Keitel, FCM (FJK IV).

728. On January 5, 2017  Webber fired FCM and Keitel's lawyers, then fired Keitel as co-counsel in court, and intentionally sabotaged Keitel and Florida Capital Management, LLC ("FCM") case, and later FJK IV in the following U.S. Bankruptcy Court and Palm Beach County Circuit Court cases:

(a). June 23, 2017:  Adv. Proc.  17-01245-EPK.  Adversary Proceeding Complaint to Avoid and Recover Fraudulent transfers and Post-Petition Transfers for Accounting, for Setoff, for Turnover, for Breach of Fiduciary Duty, for Declaratory Relief, and for Injunction

(b). June 26, 2017:   Amended  Adversary Proceeding Complaint to Avoid and Recover Fraudulent transfers and Post-Petition Transfers for Accounting, for Setoff, for Turnover, for Breach of Fiduciary Duty, for Declaratory Relief, and for Injunction, Adv. Proc. 17-01245-EPK.

(c ). June 26, 2017: Order Granting Final Judgment of Foreclosure, for $5,090094.46 uncontested by the Trustee Webber. Case No 502013CA004699XXXXMB-AA.

(d). October 23, 2017. Order and Judgment of Attorney's Fee and Costs,   $444,968.46: Case No. 502013CA004699XXXXMB-AA

(e).  June 30, 2017:  TEE JAY of FLORIDA, RLLP, a Virginia Registered Limited Liability Partnership v. FJK IV Properties, INC, a Florida Corporation;  Case No 502016CA010381XXXXMB-AI.  Plaintiffs Motion for Summary Judgment, with exhibits: Shareholders Agreement for FJK – TEE JAY, INC (The Corporation) (exhibit "1"); Exhibit "A" Affidavit of Jonathan D'Agostino, with attachments Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by JR & JD, July 9, 2013.   Action by Written Consent of Directors  of FJK-Tee Jay, INC.   July 9, 2013 signed by  Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by JR & JD; Both documents list Tee Jay, Inc being equally owned by FJK IV and RLLP; November 22, 2013 letter; October 2, 2014 letter; February 23, 2015 Civil Theft Demand; March 19, 2015 Response letter to Wilton White re FJKIV stock, prohibited transfer; March 16, 2015 letter from Wil White re Thomas B. D'Agostino vs. Frederick J. Keitel, III and FJK PROPERTIES, INC re: "Trigger Events".

(f). November 13, 2017: Order Granting Plaintiff's Motion for Summary Judgment for TEE JAY of FLORIDA, RLLP, a Virginia Registered Liability Partnership v. FJK IV Properties, INC, a Florida Corporation; Case No 502016CA010381XXXXMB-AI. Order Granting Plaintiff's Motion for Summary Judgment,

(g). December 11, 2017: Plaintiff's Motion for Award and Judgment of Attorney's Fees and Cost

(h). TEE JAY of FLORIDA, RLLP, a Virginia Registered Liability Partnership v. FJK IV Properties, INC, a Florida Corporation; Case No 502016CA010381XXXXMB-AI. Plaintiffs Motion for Summary Judgment, with exhibits: Shareholders Agreement for FJK – TEE JAY, INC (The Corporation) (exhibit "1"); Exhibit "A" Affidavit of Jonathan D'Agostino, with attachments Action by Written Consent of Shareholders of FJK-Tee Jay, INC. signed by JR & JD, July 9, 2013. Action by Written Consent of Directors of FJK-Tee Jay, INC. July 9, 2013 signed by Action by Written Consent of Shareholders of FJK-Tee Jay, INC. signed by JR & JD; Both documents list Tee Jay, Inc being equally owned by FJK IV and RLLP; November 22, 2013 letter; October 2, 2014 letter; February 23, 2015 Civil Theft Demand; March 19, 2015 Response letter to Wilton White re FJKIV stock, prohibited transfer; March 16, 2015 letter from Wil White re Thomas B. D'Agostino vs. Frederick J. Keitel, III and FJK PROPERTIES, INC re: "Trigger Events".

(i). October 17, 2018: Shutts & Bowen LLP, court appointed escrow agent for FJK IV Stock, and Shutts lawyer Eric Christu individually and as counsel for JD, JR, SR, RLLP, G.P., LTD and INC threatened and extorted FJK IV and Keitel's banker/lender/friend Fred Latsko in a conference room, while he was waiting to appear in court, with cashier's checks and proof of funds (previously sent to Shutts as escrow agent, Christu

226

and the Trustee Webber), to pay off all judgments, liens, attorney's fees and cost, so Keitel could get back his FJK IV stock.

729.  At all times, in October -November 20-18 and thereafter in April-May 2021, Christu, JD, JR, RLLP, G.P., INC and LTD, individually and acting with other defendants named herein, to defraud Keitel, FCM (FJK IV), by criminal conduct,  to interfere, impede and obstruct Keitel's attempt to have his FJK IV stock released, and  was prevented by extortion, threats, fraud, mail & wire fraud,  organized, operated, managed as an enterprise through a pattern of racketeering with multiple criminal acts of racketeering which caused injury to the Keitel's business, property, stock, distributions for a common purpose by the individuals, partnerships, corporations, association-in-facts beginning in February 2016 and continuing through May 12, 2021.

730. June 24, 2019 FJK – TEE JAY, LTD, et al.,  vs. FJK – TEE JAY, LTD et at., Case No. 502012CA023240XXXXMB-AN, Tee JAY of FLORIDA, RLLP,JD, JR Motion for Award and Judgment of Attorney's Fees and Cost, FJK – TEE JAY, LTD, AGREEMENT OF LIMITED PARTNERSHP,  (exhibit "A"); signed by  THOMAS B. D'AGOSTINO, JR., as General Partner of TEE JAY of FLORIDA, G.P., a Virginia Registered general partnership.

731. August 21, 2019, FJK – TEE JAY, LTD, et al.,  vs. FJK – TEE JAY, LTD et at., Case No. 502012CA023240XXXXMB-AI, Order and Judgment of Attorney's Fees and Cost against FJK IV Properties, Inc, for $394,552.75 because FJK IV had no representation, due to fraud by defendants in withholding LTD distributions to FJK IV and Keitel.

732. All the motions, pleading affidavits, corporate chart outlined  in the cases filed herein in state and federal court, Case Nos.: 502016CA010381XXXXMB-AI; Case No. 502012CA004665XXXXMB-AN; Case No. 502016CA003785XXXXMB:  Case No. 502012CA023240XXXXMB-AF; Case No. 502013CA004699XXXXMB-AA, Adv. Proc. 16-01440-EPK, (and conspiracy to defraud FCM, FJK IV and Keitel  in Case No. 17-01245-EPK, filed by defendants Richard Webber, Anderson, Robinson and Zimmerman, with Shutts Christu, Hart and Glick); and Case No. 15-10576-BKC-PGH, against Florida Capital Management, LLC, FJK IV Properties, Inc., and Keitel, were all filed by defendants based on false and fraudulent court motions, pleading, affidavits, corporate resolutions that on their face are fraudulent including conspiracy to defraud FCM, FJK IV and Keitel  in Case No. 17-01245-EPK by Richard Webber as trustee , Anderson, Robinson and Zimmerman, Shutts Christu, Hart and Glick.

733. Defendants  Shutts, Christu, Hart, Glick, JD, JD, RLLP, INC, LTD  Reis, Fox, --and Webber, Anderson, Robinson and Zimmerman individually and jointly drafted, prepared and filed motions, pleadings, answers  and documents, that they knew were false and fraudulent on their face while they drafted and filed them, (SDNY can review the INC Shareholders Agreement, dated December 30, 1998 signed by JR on behalf of G.P., and INC as a Director, VP, Treasurer and Secretary  can see that their fraudulent on their face).

734. All pleadings are based on false and fraudulent affidavits and documents, including that RLLP, a limited liability partnership  falsely owned stock in INC, Subchapter S corporation beginning in 1998, despite having no ownership interest in INC, see the FJK-Tee Jay, INC Shareholders Agreement,  ("INC-SHA"), for the common purpose and

228

scheme to defraud plaintiffs Keitel, FJK IV out of real estate, property, personal property-stock, and money, while acting in an illegal and criminal manner, outside their scope of their roles in their individual companies, corporations, partnerships, and/or law firms.

735.  February 13, 2020: Order on Plaintiff's Motion for Court Order Instituting Sheriff's Sale/Levy Proceeding Relating to Sale of Stock Certificates, issued on Plaintiff RLLP motion, in violation of FJK IV and Keitel's 4th Amendment Due Process Right to Notice of a hearing, when Keitel never received any notice of the motion filed, or the hearing.

736. As a direct result of the actions by all defendants named herein, Plaintiff Keitel , FCM (FJK IV), was damaged in an amount of over $40 million.

   WHEREFORE,  the plaintiffs   Frederick J. Keitel, III, FCM (FJK IV),  demands judgment against all defendant individually and jointly  for Fraud, in excess of $40 million dollars plus treble damages exclusive of interest, costs and attorney fees, and such further relief as is deemed just and proper.

## COUNT XXI

**Conspiracy to Defraud Plaintiffs Keitel, FCM and FJK IV by  U.S. Panel  Trustee Webber, WARZ, Shutts, Christu, Glick, Hart, Reis, Fox, SR, JR, JD, RLLP, G.P., LTD, INC Judge Kimball, UST, Rodriguez, to have  Webber file a Sham Complaint, Adv. Proc. 17-01245-EPK Beyond Statute of Limitations, to Conceal  Conspiracy to Defraud Plaintiffs and Failure to Contest FCM, FKL IV Claims, and  Adv. Proc Case No. 16-01400-EPK Complaint to Determine Debt and Determine Dischargeability under  11 U.S.C. §523(A), when all defendants knew that the FJK-Tee Jay, INC SHA Proved RLLP never owned Stock in FJK-Tee Jay, INC**

737.   Plaintiffs Keitel (FJK IV) and FCM  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 736 and specifically to this Cause

of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 245-287,  288-326, 329-340, 367-382,  384-402, above 737-777,  803-886  and 887 – 890  incorporates them as if fully alleged  herein.

738. This is an action against all defendants named herein for conspiracy to defraud Keitel (FJK IV) and FCM

739. On January 5, 2017  Webber fired FCM and Keitel's lawyers, then fired Keitel as co-counsel in court, and intentionally sabotaged Keitel and Florida Capital Management, LLC ("FCM") case, and later FJK IV in the following U.S. Bankruptcy Court and Palm Beach County Circuit Court cases:

(a). June 23, 2017:  Adv. Proc.  17-01245-EPK.  Adversary Proceeding Complaint to Avoid and Recover Fraudulent transfers and Post-Petition Transfers for Accounting, for Setoff, for Turnover, for Breach of Fiduciary Duty, for Declaratory Relief, and for Injunction

(b). June 26, 2017:   Amended  Adversary Proceeding Complaint to Avoid and Recover Fraudulent transfers and Post-Petition Transfers for Accounting, for Setoff, for Turnover, for Breach of Fiduciary Duty, for Declaratory Relief, and for Injunction, Adv. Proc. 17-01245-EPK.

(c ). June 26, 2017: Order Granting Final Judgment of Foreclosure, for $5,090094.46 uncontested by the Trustee Webber. Case No 502013CA004699XXXXMB-AA.

(d). October 23, 2017. Order and Judgment of Attorney's Fee and Costs,   $444,968.46: Case No. 502013CA004699XXXXMB-AA

(e) June 30, 2017:  TEE JAY of FLORIDA, RLLP, a Virginia Registered Limited Liability Partnership v. FJK IV Properties, INC, a Florida Corporation;  Case No 502016CA010381XXXXMB-AI.  Plaintiffs Motion for Summary Judgment, with exhibits:  Shareholders Agreement for FJK – TEE JAY, INC (The Corporation) (exhibit "1");  Exhibit "A" Affidavit of Jonathan D'Agostino, with attachments Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by JR & JD, July 9, 2013.   Action by Written Consent of Directors  of FJK-Tee Jay, INC.   July 9, 2013 signed by  Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by JR & JD; Both documents list Tee Jay, Inc being equally owned by FJK IV and RLLP; November 22, 2013 letter; October 2, 2014 letter; February 23, 2015 Civil Theft Demand; March 19, 2015 Response letter to Wilton White re FJKIV stock, prohibited transfer; March 16, 2015 letter from Wil White re Thomas B. D'Agostino vs. Frederick J. Keitel, III and FJK PROPERTIES, INC re: "Trigger Events".

(f). November 13, 2017:  Order Granting Plaintiff's Motion for Summary Judgment for TEE JAY of FLORIDA, RLLP, a Virginia Registered Liability Partnership v. FJK IV Properties, INC, a Florida Corporation;  Case No 502016CA010381XXXXMB-AI.  Order Granting Plaintiff's Motion for Summary Judgment,

(g). December 11, 2017:  Plaintiff's Motion for Award and Judgment of Attorney's Fees and Cost

(h). TEE JAY of FLORIDA, RLLP, a Virginia Registered Liability Partnership v. FJK IV Properties, INC, a Florida Corporation;  Case No 502016CA010381XXXXMB-AI.  Plaintiffs Motion for Summary Judgment, with exhibits:  Shareholders Agreement for FJK – TEE JAY, INC (The Corporation) (exhibit "1"); Exhibit "A" Affidavit of Jonathan

231

D'Agostino, with attachments Action by Written Consent of Shareholders of FJK-Tee Jay, INC. signed by JR & JD, July 9, 2013. Action by Written Consent of Directors of FJK-Tee Jay, INC. July 9, 2013 signed by Action by Written Consent of Shareholders of FJK-Tee Jay, INC. signed by JR & JD; Both documents list Tee Jay, Inc being equally owned by FJK IV and RLLP; November 22, 2013 letter; October 2, 2014 letter; February 23, 2015 Civil Theft Demand; March 19, 2015 Response letter to Wilton White re FJKIV stock, prohibited transfer; March 16, 2015 letter from Wil White re Thomas B. D'Agostino vs. Frederick J. Keitel, III and FJK PROPERTIES, INC re: "Trigger Events".

(i). October 17, 2018: Shutts & Bowen LLP, court appointed escrow agent for FJK IV Stock, and Shutts lawyer Eric Christu individually and as counsel for JD, JR, SR, RLLP, G.P., LTD and INC threatened and extorted FJK IV and Keitel's banker/lender/friend Fred Latsko in a conference room, while he was waiting to appear in court, with cashier's checks and proof of funds (previously sent to Shutts as escrow agent, Christu and the Trustee Webber), to pay off all judgments, liens, attorney's fees and cost, so Keitel could get back his FJK IV stock.

740. At all times, in October -November 20-18 and thereafter in April-May 2021, Christu, JD, JR, RLLP, G.P., INC and LTD, individually and acting with other defendants named herein, to defraud Keitel, FCM (FJK IV), by criminal conduct, to interfere, impede and obstruct Keitel's attempt to have his FJK IV stock released, and was prevented by extortion, threats, fraud, mail & wire fraud, organized, operated, managed as an enterprise through a pattern of racketeering with multiple criminal acts of racketeering which caused injury to the Keitel's business, property, stock, distributions

232

for a common purpose by the individuals, partnerships, corporations, association-in-facts beginning in February 2016 and continuing through May 12, 2021.

741.  June 24, 2019 FJK – TEE JAY, LTD, et al.,  vs. FJK – TEE JAY, LTD et at., Case No. 502012CA023240XXXXMB-AN, Tee JAY of FLORIDA, RLLP,JD, JR Motion for Award and Judgment of Attorney's Fees and Cost, FJK – TEE JAY, LTD, AGREEMENT OF LIMITED PARTNERSHP,  (exhibit "A"); signed by  THOMAS B. D'AGOSTINO, JR., as General Partner of TEE JAY of FLORIDA, G.P., a Virginia Registered general partnership.

742.  August 21, 2019, FJK – TEE JAY, LTD, et al.,  vs. FJK – TEE JAY, LTD et at., Case No. 502012CA023240XXXXMB-AI, Order and Judgment of Attorney's Fees and Cost against FJK IV Properties, Inc, for $394,552.75 because FJK IV had no representation, due to fraud by defendants in withholding LTD distributions to FJK IV and Keitel.

743.  All the motions, pleading affidavits, corporate chart outlined  in the cases filed herein in state and federal court, Case Nos.: 502016CA010381XXXXMB-AI; Case No. 502012CA004665XXXXMB-AN; Case No. 502016CA003785XXXXMB:  Case No. 502012CA023240XXXXMB-AF; Case No. 502013CA004699XXXXMB-AA, Adv. Proc. 16-01440-EPK, (and conspiracy to defraud FCM, FJK IV and Keitel  in Case No. 17-01245-EPK, filed by defendants Richard Webber, Anderson, Robinson and Zimmerman, with Shutts Christu, Hart and Glick); and Case No. 15-10576-BKC-PGH, against Florida Capital Management, LLC, FJK IV Properties, Inc., and Keitel, were all filed by defendants based on false and fraudulent court motions, pleading, affidavits, corporate resolutions that on their face are fraudulent including conspiracy to defraud

FCM, FJK IV and Keitel in Case No. 17-01245-EPK by Richard Webber as trustee , Anderson, Robinson and Zimmerman, Shutts Christu, Hart and Glick.

744. All Defendants named herein acted together with each other and others, including Shutts, Christu, Hart, Glick, JD, JD, RLLP, INC, LTD Reis, Fox, and Webber, Anderson, Robinson and Zimmerman individually and jointly drafted, prepared and filed motions, pleadings, answers and documents, that they knew were false and fraudulent on their face while they drafted and filed them, (SDNY can review the INC Shareholders Agreement, dated December 30, 1998 signed by JR on behalf of G.P., and INC as a Director, VP, Treasurer and Secretary can see that their fraudulent on their face).

745. All pleadings are based on false and fraudulent affidavits and documents, including that RLLP, a limited liability partnership falsely owned stock in INC, Subchapter S corporation beginning in 1998, despite having no ownership interest in INC, see the FJK-Tee Jay, INC Shareholders Agreement, ("INC-SHA"), for the common purpose and scheme to defraud plaintiffs Keitel, FJK IV out of real estate, property, personal property-stock, and money, while acting in an illegal and criminal manner, outside their scope of their roles in their individual companies, corporations, partnerships, and/or law firms.

746. February 13, 2020: Order on Plaintiff's Motion for Court Order Instituting Sheriff's Sale/Levy Proceeding Relating to Sale of Stock Certificates, issued on Plaintiff RLLP motion, in violation of FJK IV and Keitel's 4th Amendment Due Process Right to Notice of a hearing, when Keitel never received any notice of the motion filed, or the hearing.

747.  As a direct result of the Conspiracy to defraud Plaintiffs Keitel, FCM (FJK IV), by all defendants named herein, Plaintiffs  Keitel, FCM (FJK IV), were damaged in excess of $40 million.

WHEREFORE,  the plaintiffs  Frederick J. Keitel, III, FCM (FJK IV),  demands judgment against all defendant U.S. Panel  Trustee Webber, WARZ, Shutts, Christu, Glick, Hart, Reis, Fox, SR, JR, JD, RLLP, G.P., LTD, INC Judge Kimball, UST, Rodriguez, individually and jointly for Conspiracy to Defraud Plaintiffs, in excess of $40 million dollars plus treble damages exclusive of interest, costs and attorney fees, and such further relief as is deemed just and proper.

## COUNT XXII
## BREACH OF FIDUCIARY DUTY

748. Plaintiffs Keitel (FJK IV),  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 747 and specifically to this Cause of Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 288-326, 329-340, 367-382, 384-402, above 749-777,  803-886  and 887 – 890 incorporates them as if fully alleged  herein.

749. This is a cause of action for Breach of Fiduciary Duty  against Keitel (FJK IV), by defendants Trustee Webber individually, as Trustee and partner in Zimmerman, WARZ, Shutts, Christu, Glick, Hart, Reis, Fox, SR, JR, JD, RLLP, G.P., LTD, INC Judge Kimball, UST, Rodriguez, individually and jointly for Breach of Fiduciary Duty to Plaintiffs

750.  Beginning  on July 9, 2013 up until the recent Declaration of Jonathan D'Agostino's ("JD") filed on January 12, 2022, JD, JR, Christu, Hart, Glick, Menor,

235

Farrell, Shutts, Reis, Fox Rothschild who intentionally misrepresented the truth, and with his lawyers at Shutts & Bowen deliberately failed to file the controlling document, the FJK-Tee Jay, INC.,  Shareholders Agreement (attached as **exhibit "1"),** that definitively proves beyond a reasonable doubt that RLLP never owned any stock in FJK-Tee Jay, INC. (see The FJK-Tee Jay, INC Shareholders Agreement signed by his brother and partner, Thomas D'Agostino, Jr, ("JR") as General Partner of Tee Jay of Florida G.P. ("G.P.). a Virginia General Partnership that owned 50% of INC stock, and JD's sworn testimony under oath on October 27, 2017 (transcript excerpts p.75-85, dated October 27, 2017) that G.P. was the owner of INC, not RLLP.

751.  On July 9, 2013 as defined herein below, Shutts lawyers, Christu, Hart together with  Rose, JD and JR, drafted false and fraudulent affidavits, corporate resolutions, organization charts, motions and pleadings signed by JR, JD, RLLP to intentionally defraud Keitel, FJK IV and LTD and INC and managed and operated an enterprise with the D'Agostino's through a pattern of racketeering activity, including mail and wire fraud, perjury, fraud, conspiracy to commit fraud, suborning perjury that was meant to cause and did cause Keitel and FJK IV (and FCM), in an association-in-fact group for the common purpose of committing RICO offense casing  lose over  $30 million in damages, and an injury to Keitel, FJK IV and FCM business, real property, personal property, stock money and falsely defame Keitel, by predicate acts detailed herein, over a 10 year period to pursue enterprise common purposes with others of defrauding Keitel, FCM, FJK IV.

752.  JR, JD, Sr, RLLP, G,P. conspired with each other, and others including,  Shutts lawyers, Chrisrtu, Hart, Glick, Fox Rothschild lawyers, Reis and Dadakis, ("Dadakis"),

the Trustee Webber, and Zimmerman lawyer Anderson, Robinson and others, and the

UTS, including Feinman, Rodriguez and Turner, to defraud FJK IV and Keitel by mail

and wire fraud, perjury, suborning perjury( threats and extortion, conspiracy to defraud,

tax fraud, illegal backdating interest of a fraudulent mortgage,  false and fraudulent

drafting and signing of (i) sworn affidavits, (ii) corporate resolutions (iii) organization

ownership charts (iv) motions and (v) pleadings that RLLP owned or had any rights in

INC, when the INC Shareholders Agreement signed by Thomas B. D'Agostino on

December 30, 1998, as General Partner of Tee Jay of Florida, G.P. and director, vice-

president, secretary, and treasurer of INC, certifying that G.P., a separate independent

company c owned 50% of INC (not RLLP, a limited liability partnership forbidden by IRS

regulations from owning stock in a subchapter S corporation).

753.  Defendants JR, JD, SR, ED, RLLP, G.P. Stein, SLG, Christu, Hart, Glick, Shutts,

King and Rose engaged in the following criminal actions:

754.  Perjury, mail and wire fraud, suborning perjury  in the following actions:

July 9, 2013: Action by Written Consent of Shareholders of FJK-Tee Jay, INC., signed

by JR & JD.

755. July 9, 2013: Action by Written Consent of Directors  of FJK-Tee Jay, INC., signed

by JR and JD.

756.  July 9, 2013:  Corporate Resolution: SHAREHOLDERS AGREEMENT FOR  FJK

TEE JAY, INC., signed by JR and JD list the corporation as: **Tee Jay, Inc.,**  being

equally owned by FJK IV and RLLP.    There is no such corporation as Tee Jay, Inc.,

owned by JR and JD. registered in Florida or anywhere, and as per the shareholders

agreement, G.P. was the owner of 50% stock in INC, and RLLP never owned an interest in 2013.   The documents were drafted by Shutts lawyers, including Christu and Hart in conjunction with Andrew Rose.

757.  July 19, 2013.   Christu-Shutts letter to Keitel notifying him that on behalf of JR, JD, RLLP , INC and LTD informing Keitel, that he has been removed as president of INC and as a director in INC and LTD, by RLLP, JR and JD, with attached Action by Written Consent of Directors  of FJK-Tee Jay, INC., dated July 9, 2013 and Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by JR & JD; Both documents list Tee Jay, Inc being equally owned by FJK IV and RLLP.

758.  November 22, 2013: Christu-Shutts Letter notification Removal of Frederick J. Keitel, III as counsel for FJK-Tee Jay, LTD.,  and FJK-Tee Jay, INC., in cases:  Wells Fargo Bank, N.A. vs. FJK-Tee Jay, LTD.,  and FJK-Tee Jay, INC., Case No. 502012CA004665XXXXMB-AN:  FJK-Tee Jay, LTD., et al., vs. Thomas B. D'Agostino, Sr., Case No. 502012CA023240XXXXMB-AN, again with exhibits:  Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by .JR & JD, July 9, 2013, and Action by Written Consent of Directors  of FJK-Tee Jay, INC., July 9, 2013, and Action by Written Consent of Shareholders of FJK-Tee Jay, INC.  signed by JR & JD, both documents list Tee Jay, Inc, a non-existent  company being equally owned by FJK IV and RLLP.

759.  JR, JD, RLLP, Christu, Hart, INC and LTD conspired to fire Keitel based on false and fraudulent sworn affidavits, corporate resolutions, corporate organizational charts and letters all based on RLLP being the owner of 50% of INC.

760. October 2, 2014: Shutts, Christu letter notifying Frederick J. Keitel, III of INC and LTD removal of Keitel as counsel for FJK-Tee Jay, LTD., and FJK-Tee Jay, INC. based on RLLP's allegations and July 9, 2013 Action by Written Consent of Directors of FJK-Tee Jay, INC., and Action by Written Consent of Shareholders of FJK-Tee Jay, INC., signed by JR & JD, both documents listing Tee Jay, Inc., as being equally owned by FJK IV and RLLP.

761. November 10, 2014: Demand Civil Theft Demand Pursuant to Fla. Stat. Sec. 772.1, by LTD, INC and RLLP, Jr, JD draft by Shutts and Christu, for approximately $750,000.00, tremble damages of $2,225,000.00, based on same false affidavits, corporate resolution

762. May 2014 Motion to Termination Frederick J. Keitel, III in Wells Fargo Bank, N.A. vs. FJK-Tee Jay, LTD., and FJK-Tee Jay, INC., Case No. 50-2012-CA-004665XXXXMB-AN: in violation of Judge McSorley, Judge Brunson (Nov 28, 2012), and June Cox's (June 6, 2013 Orders prohibiting RLLP, JR, JD, Shutts & Bowens, and Eric Christu from appearing in Wells Fargo case, without an evidentiary hearing.

763. Christu, Hart and Shutts lied to the court, and stated that the Wells Fargo case closed, when Judge Cox's specifically refused their motion in June 2013, to close the case as a result of RLLP, JR, JD, SR, Christu, Rose and King's fraudulent illegal Redemption of the Final Judgment on Foreclosure in Wells Fargo Bank, N.A. vs. FJK-Tee Jay, LTD., and FJK-Tee Jay, INC., Case No. 50-2012-CA-004665XXXXMB-AN, without standing to even enter the case, false and fraudulent misrepresentation to the Palm Beach County Clerk of County, in violation of Fla. Stat., and violation of order courts by Judge McSorley and Judge Brunson (Nov 28, 2012),

764. On December 21, 2015 deposition of Eric Christu, he pulled away documents, after realizing that they showed that LTD paid the hundreds of thoughts in legal invoices for Thomas B D'Agostino, SR, even though he had no interest or stock in any of LTD and INC companies. Upon information and belief approximately $430,000.00 to deplete LTD funds, and deny FJK IV and Keitel distributions, in a mail and wire fraud scheme.

765. December 21, 2015 deposition of Eric Christu, who refused to answer any questions about a December 7, 2015 letter he drafted, authored and prepared for JD, based on fraud and violation of the court's stay order, then lied about knowing about the letter during a hearing from 1:30 pm to 2:30 pm, in a mail and wire fraud scheme

766. October 2015, Shutts, Glick and Christu pressuring Heidi Feinman and UTS to dismiss Christu, Hart, Shutts from a

767. August 2016:  Adv. Proc 16-01440-EPK

768. October 20, 2016: emails between Shutts lawyer Larry Glick, attorneys  for JR, JD, SR, ED, RLLP, G.P., INC, LTD, D'Agostino Trust (opposing Keitel and FJK IV), and Heidi Feinman, UST senior trial lawyer, under investigation for corruption, case fixing, extortion and threats with Robert Furr (UTS Panel Trustee) all opposing FCM, FJK IV and Keitel, are trading document and deposition testimony y to help Feinman prepare for her interview, so she could coordinate her answer with Furr, to impede, obstruct and cover-up criminal activities, with Rodriguez, and Judge Kimball.

769.  All defendants, the UST, Feinman, Rodriguez, Furr, Cohen and Judge Kimball are doing everything in their power(s) to obstruct, impede and cover-up all criminal conduct, including Judge Kimball who misrepresented the evidence, and audio recording, (when

he listened to it alone, in camera, without allowing anyone else to participate), then sealing all the material evidence, to prevent law enforcement, U.S. Attorney, FBI, UST, PBAO, PBPD from viewing it  evidence.  Judge Kimball has no jurisdiction of criminal matters, but refused to release the evidence, even when the Florida Supreme Court requested the evidence, in a contempt complaint by Judge Kimball, after Keitel filed the recording in court, to prove beyond a reasonable doubt, that Judge Kimball lied about the evidence to cover up the criminal activity proving corruption, case fixing, extortion and threats against Keitel.

770. As a direct result of the Breach of Fiduciary Duty, Plaintiffs Keitel, FCM (FJK IV), by all defendants named herein, Plaintiffs  Keitel, FCM (FJK IV), were damaged in excess of $40 million.

   WHEREFORE,  the plaintiffs  Frederick J. Keitel, III, FCM (FJK IV),  demands judgment against all defendants Trustee Webber individually, as Trustee and partner in Zimmerman, WARZ, Shutts, Christu, Glick, Hart, Reis, Fox, SR, JR, JD, RLLP, G.P., LTD, INC Judge Kimball, UST, Rodriguez, individually and jointly for Breach of Fiduciary Duty to Plaintiffs, in excess of $40 million dollars plus treble damages exclusive of interest, costs and attorney fees, and such further relief as is deemed just and proper.

## **COUNT XXIII**

### **Fraud  by Callahan, White and HaileShaw Against FJK, FJK III, Keitel**

771. Plaintiffs Keitel (FJK IV), FJK, FJK III,  and FCM  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 771 and <u>specifically</u> to this Cause of Action 112-133, 190-304, 321,  339 – 340, 344, 346, 384 – 388, 391,

393 – 395, 399 – 402, 440 – 545, 771 - 791 above 792- 803.,      803-886  and 887 –
890  incorporates them as if fully alleged  herein.

772. This is an action for Fraud against defendants, Callahan, White, Adams, Woodfield
Haile Shaw and others unknow at this time, to defraud Plaintiffs FJK, FJK III, and Keitel.

773. Callahan continuously made (a) False statement of material fact promising Keitel
that he would provide a  second mortgage at the family discount rate, (b) which
Callahan knew were false, when he made the statement relied by Keitel.

774. At all times, Callahan made the false statement, (c ) for the purpose of inducing
Keitel not to accept other /another loan(s), and Keitel acted and relied  on Callahan's
promises (d) causing injury and damages to Keitel and plaintiff(s) FJK and   FJK III, in a
bait and switch scheme, that were intended by Callahan (and HaileShaw lawyer White),
to dupe Keitel and other plaintiff(s) FJK, FJKIII with intent and malice.

775. Defendants named herein, acted together to misrepresent material facts that they
knew were false, for the purpose of inducing Plaintiffs  to act, and Plaintiffs did act by
defendants intentional misrepresentation to damage Plaintiffs by defendants action to
conspired with each other and others to formulate a bait and switch of closing
documents, to deceive and defraud FJK/FJKIII/Keitel out of millions of dollars in interest
and profits, by changing a participation agreement overnight, without the knowledge or
consent of  Keitel, FJK and FJK III to maliciously defraud Plaintiffs

776. Defendant Callahan Initially claiming a mistake and clerical error in the mortgage
documents, Participation Agreement, Callahan, and  HaileShaw lawyers agreed to the

242

change and insert "a slip sheet",  that would be inserted prior to filing.  However, neither Callahan, White, HaileShaw, intentionally neglected  ever inserted the slip sheet to correct "their mistake".

777.   Claiming the mistake in the mortgage documents by Callahan, PJCF, White and HaileShaw, White and HaileShaw  fraudulently recorded  the mortgage without the corrected  slip sheet to correct the defect, while defendants  Callahan. PJCF, White and HaileShaw  later continued  to renegotiate the terms of the mortgage details on multiple occasions, and promise to change the document in an on-going fraud until February 2016.

778. The actions of Callahan, PJCF, White, HaileShaw lawyers, including Adams, was an on-going action and conspiracy to defraud, inflate, and increase the mortgage, interest, profit and participation profits of both Callahan and PJCF, to the detriment of Keitel. FJK and FJK III.

779.  At all times, Callahan, PJCF, White and HaileShaw, knew that Keitel, FJK and FJK III  was unaware of the initial mistake, then thought the mistake had been corrected, and the document been properly recorded or re-recorded.

780.  The actions  and conspiracy by Callahan, PJCF, White and HaileShaw, to cover up the mistake, deceive Keitel, FJK and FJK III into believing it had been corrected was an on-going continuous scheme until payment 2016.

781. Callahan, PJCF, White and HaileShaw, knew by their actions, that Keitel, FJK and FJK III would be unable to refinance the buildings when the PJCF mortgage was due, unless and until Callahan and HaileShaw removed the fraud participation agreement

and re-recorded the mortgage, and to prevent severe consequences to FJK/FJKIII/Keitel and his other businesses.

782.  At all times, Callahan, PJCF, White and Haile Shaw's actions caused millions of dollars in foreseeable damages  to Keitel, individually and  FJK and FJK III, including forcing FJK and FJK III into bankruptcy, even though both companies had positive cash flow and $10,000,000.00 in equity above its mortgages, according to a sworn affidavit filed by White and on behalf of White, Adams, HaileShaw, Callahan and PJCF in Court stating FJK and FJK III properties were worth $24.5 million.

783.   Callahan, PJCF, White, Haile Shaw's actions were calculated to make substantial profits from their own fraud and conspiracy to defraud KEITEL, FJK and FJK III.

784. As a result of defendant Callahan actions, Keitel individually (and  Plaintiffs)  have been damaged in the amount greater than $20,000,000.00

.    WHEREFORE, Keitel individually and Plaintiff's demand judgment against Defendant Callahan in excess of $20,000,000.00 in damages and interest, costs and fees, and such other relief as the Court deemed just, equitable and appropriate.

## COUNT XXIV

### Conspiracy to Commit Fraud by Callahan, White, Adams, Woodfield, Woodfield Against  FJK, FJK III and  Keitel

785.  Plaintiffs Keitel (FJK IV), FJK, FJK III,  and FCM  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 790 and specifically to this Cause of Action 112-133, 190-304, 321,  339 – 340, 344, 346, 384 – 388, 391, 393 – 395, 399 – 402, 440 – 545, 771 – 785  above 786-802,       803-886  and 887 – 890  incorporates them as if fully alleged  herein.

244

786 This is an action for Conspiracy to Commit Fraud by Callahan, White, Adams, Woodfield, Woodfield Against FJK, FJK III and Keitel.

787. Defendants named herein, acted together to misrepresent material facts that they knew were false, for the purpose of inducing Plaintiffs to act, and Plaintiffs did act by defendants intentional misrepresentation to damage Plaintiffs by defendants action to conspired with each other and others to formulate a bait and switch of closing documents, to deceive and defraud FJK/FJKIII/Keitel out of millions of dollars in interest and profits, by changing a participation agreement overnight, without the knowledge or consent of Keitel, FJK and FJK III to maliciously defraud Plaintiffs

788. At all times, Defendants Callahan and HaileShaw lawyers including White, conspired with each other and others, continuously promise to fix and refile the documents, up to an including February 2016 in violation of Florida Usury laws to defraud defendants out of millions.

789. Defendants Callahan and HaileShaw lawyers White succeeded in their conspiracy, refused to correct their participation agreement, preventing FJK/FJKIII/Keitel from refinancing the buildings, while charging FJK, FJK III and Keitel over 80% return on investment, and holding a fraudulent participation amount over Plaintiffs causing FJK/FJKIII to go into bankruptcy

790. As a result of Defendant's HaileShaw and Callahan's actions Plaintiffs FJK, FJKIII have been damaged in an amount greater than $20,000,000.00 jurisdictional amount of this Court.

WHEREFORE, the Plaintiffs FJK and FJKIII demand judgment against Defendants HaileShaw and Callahan in excess $20,000.000.00, exclusive of interest, costs, and fees, and such further relief as this court deemed just and proper.

## COUNT XXV

### Conspiracy to Commit fraud by Callahan, White, Adams, Woodfield HaileShaw Against Keitel and FCM

791.  Plaintiffs Keitel (FJK IV), FJK, FJK III,  and FCM  re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 790 and <u>specifically</u> to this Cause of Action 112-133, 190-304, 321,  339 – 340, 344, 346, 384 – 388, 391, 393 – 395, 399 – 402, 440 – 545, 771 - 791 above 792- 803.,  803-886  and 887 – 890 incorporates them as if fully alleged  herein.

 792.  This is an action by Plaintiff  KEITEL, for Fraud against CALLAHAN, WHITE, ADAMS, WOODFIELD  and HAILE SHAW.

793.  Defendants  intentionally  interfered with KEITEL's $5,500,000.00  Purchase and Sales Agreement  and attempt to purchase 237 Brazilian Avenue to develop and build 2 townhomes'

794.  Defendant CALLAHAN and his new entity, then put the same property under contract for only $4,000,000.00 within 25 days under suspicious conditions, and then CALLAHAN, WHITE  and ADAMS   conspired to hid CALLAHAN's involvement.  After multiple telephone calls, CALLAHAN hereafter agreed to assign the contract on KEITEL in mid-February 2017.

795.  Then CALLAHAN reneged on his promises and commitments,  used his lawyers WHITE, ADAMS and HAILESHAW to participate and conspire with  CALLAHAN and others named above to defraud KEITEL.

796.  Despite his promise, CALLAHAN delayed assigning the contract for almost month, causing KEITEL to file objections in Court to the Sale to CALLAHAN for $4,000,000.00, ($1,500,000.00 less than KEITEL's initial bid/Purchase and Sales Agreement).

797.  Unknown to Keitel at the time, WHITE, ADAMS, WOODFILED and  HAILE SHAW and CALLAHAN  were continually negotiating against Keitel's interest  with WEBBER, ANDERSON, ROBINSON  and ZIMMERMAN regarding the Sale and about assigning the contract to KEITEL.

798.  After stalling and delaying a simple assign for almost a month, 2 days before the hearing on Trustee's motion to Sell the property to CALLAHAN,  ADAMS emailed KEITEL in the early evening,  multiple documents labeled "TRANSACTION AGREEMENT" including a Release, Assignment Indemnification and Note for $550,000.00 never discussed beforehand, in a continuing Fraud upon KEITEL.

799.  CALLAHAN, ADAMS WHITE, and HAILE SHAW together and with others, including  WEBBER, ANDERSON and ZIMMERMAN and others conspired to get KEITEL to sign a non-dischargeable Note/contract for the payment of $550,000.00 even though they knew the WEBBER was withdrawing the CALLAHAN'S contract and the Court wouldn't approve the contract or sale.

800.  Unknown to Keitel , was that CALLAHAN, WHITE, ADAMS, WOODFIELD and HAILE SHAW already had confidential information not available to KEITEL, and knew

that the Trustee WEBBER, ANDERSON and ZIMMERMAN were filing a Notice of

Withdrawal of their  Motion to Sell the Property, and were conspiring to defraud KEITEL

into signing a worthless contract, with a Note, which would make him responsible for

$550,000.00.

801.   CALLAHAN intentionally conspired with WHITE, ADAMS and HAILE SHAW  to

swindle, cheat and defraud KEITEL, his son-in-law, out of $550,000.00 after sabotaging

KEITEL"S purchase of FCM and 237 Brazilian Avenue property

802.  As a result of Defendant's CALLAHAN, WHITE, ADAMS HAILE SHAW,  Plaintiff

KEITEL has suffered and been damaged in excess of $20,000,000.00  jurisdictional

amount of this Court.

     WHEREFORE, the Plaintiff, KEITEL, demands judgment against Defendants

CALLAHAN, WHITE, ADAMS, HAILE SHAW, in excess of  $20,000,000.00, exclusive

of interest, costs,  fees and such other relief deemed just and proper.

### COUNT XXVI
### Breach of Fiduciary Duty by defendants Shutts & Bowen, LLP, as   Escrow Agents for Keitel and FJK IV Properties, Inc Stock, and by Eric Christu individually as a Partner in Shutts, Escrow Agents  for Keitel and FJK IV Properties, Inc Stock

803.   Plaintiffs Keitel (FJK IV),  re-alleges repeats and incorporates by reference herein

all the allegations in paragraphs    1- 802 and specifically to this Cause of Action 73-

111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244,

288-326, 329-340, 367-382,  384-402, 803-886  above and 887 – 890  incorporates

them as if fully alleged  herein.

804.  This is an action by Plaintiff  Keitel (FJK IV),  for Breach of Fiduciary Duty against Keitel by Shutts & Bowen, LLP and Eric Christu as Escrow Agents, and Shutts and Christu individually and as partner in Shutts against Keitel (FJK IV).

805. On October 17, 2018, Keitel's (and his son Sebastian Keitel's "SKeitel"), banker/lender/friend Fred Latsko appeared in the U.S. Bankruptcy Courthouse with cashier's check for the total amount of $493,000. and proof of funds of over $3.1 million (previously sent to the Trustee, WARZ, and Shutts & Bowen, LLP and Christu as escrow agents, and Shutts Hart and Glick representing defendants SR, JR, JD, RLLP, G.P., LTD and INC, to redeem Keitel's FJK IV stock held by Shutts.

806. Shutts partner Eric Christu filed motions before Judge Sasser in February 2015 and Judge Sasser granted his motion to take possession and control of FJK IV, Stock, over Keitel's objections, with Judge Sasser's warning, that neither Shutts & Bowen or Christu wouldn't breach their fiduciary duty, and the FJK IV stock would be safe.

807.  Shutts & Bowen (and Eric Christu),  were acting as a fiduciary of plaintiff Keitel's stock of FJK IV Properties, Inc. from February 2015 until sometime in 2020 or 2021.

805.  Defendants Shutts & Bowen and Christu and others, breached their fiduciary duty to protect FJK IV stock for Keitel, and as a result of actions by defendants Shutts, Christu and other lawyers at Shutts,  Keitel has been damages in the amount in excess of $12 to $15 million, and Shutts & Bowen, Christu and others at Shutts & Bowen caused the damages.

806. On or about October 15 or 16, 2018, Shutts and Christu requested the  meeting with Keitel's banker/lender/friend, Fred Latsko without knowledge or consent of Keitel,

and met with Latsko, minutes before he was to appear in court to testify, and Christo and Shutts threatened, intimidated and extorted Mr. Latsko to prevent him from tendering his cashier's checks and proof of funds of $3.1 million to the judge in the U.S. Bankruptcy Court, in violation of multiple predicated acts under the federal RICO statute(s): 18 U.S.C §1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act, in a federal building, after Mr. Latsko ("Latsko"), flew in from Chicago to attend the hearing(s).

807.  Shutts and Christu breached multiple conflicts of interest as Fiduciaries, and representing SR, JR, JD, RLLP, G.P., LTD, INC, D'Agostino Trust, all opposed to Keitel, FCM and FJK IV, especially when Christu, Glick, Hart and Shutts continuously themselves committed mail and wire fraud, perjury, suborning perjury, and other predicate acts, including extortion, threats, and obstruction of justice.

808. Upon information and belief, Shutts and Christu acted with the permission and/or consent of WARZ and Shutts clients SR, JR, JD, RLLP, G.P., LTD, INC. after WARZ, Shutts, Christu, Hart and Glick, SR, JR, JD, INC and LTD refused to turn over financial information, evaluations, taxes to Keitel, and his bankers, including Latsko and Louis Capano (who also sent proof of fund of $600,000.00 from M&T Bank), after WARZ, Shutts, Christu and SR, rejected a $2 million all cash offer on behalf of Keitel, and Latsko for the return of FJK IV Stock, refused to cooperate with Keitel's banker and lenders and accept payment in exchange for FJK IV stock, and any and all judgments, liens, legal fees and costs.

809. Shutts, Christu, Glick and WARZ stone walled Keitel and Latsko instead of cooperating, because at all times, they knew that had a "free pass" from Judge Kimball, who wouldn't take any action against the same lawyers that attacked Keitel

810. Fred Latsko brought certified checks ($490,000.00) and he and Louis Capano provide proof of funds for over $3,100,000.00. to Shutts as escrow agents, Christu and WARZ, who all worked to defraud, Keitel personally and FJK IV stock worth $12 - $15 million to Keitel.

811. Fred Latsko filed a sworn affidavit dated December 2018 outlining the threats and extortion by Christ and Shutts in the federal courthouse, to intimidate and tortiously interfere with his business relationship with Keitel, FJK IV, FCM and SKeitel (Keitel's son), and prevent them from lending money, even though they had a cashier's check.

812. As a result of Christu, Shutts lawyers, SR, JR, JD, RLLP, LTD, INC, and WARZ's actions with others to deny all financial to Latsko, Capano, Keitel, FJK IV, FCM and SKeitel to defraud Keitel and FJK IV from getting back his stock, not only was Keitel unable to get his stock back, not only in October-November 2018, but also in April- May 2021, due to fraud, continuous threats, and refusal to allow Sebastian Keitel's lawyer or banker Fred Latsko or Keitel and FJK IV to have the relevant financials needed to redeem and/or buy/bid at the Palm Beach County Sheriffs Sale, due to continued threats, extortion and fear caused by Shutts and Christu's threats, that they will interfere with and prevent recouping Latsko's loans for 20-40 years.

813. At all times Christu , SR, JR, JD, RLLP, GP, LTD, INC, GLICK, the court appoint Trustee Webber, Anderson and Zimmerman and others, conspired to prevent FJK IV

and Keitel from paying off all judgments, getting FJK IV stock back to prevent a jury trial or prove the on-going mail and wire fraud, Civil RICO claims, tortious interference and other claims.

814. Any money FJK IV and Keitel put up at the Sheriff's sale, would automatically be 50% of Keitel's money because he owned stock in LTD, which is the reason for the fraud by JR, JD, RLLP, LTD, INC, Shutts, Christo, Hart, Glick, Farrell and Menor.

815. However, by fraudulently withholding critical financials, and fraud in the financials, including illegally paying SR almost $5 - $6 million in illegal interest to SR, for never having lent any money to LTD or INC, Shutts Christu, Glick, Hart, Farrell, Menor, JR, JD, RLLP, SR, LTD, INC, Stein and SLG's sole intent was to prevent Keitel and/or his son, Sebastian Keitel (and Keitel's banker/lenders/friends(or any interested bidder in violation of Florida law), from redeeming and/or purchasing back his FJK IV stock.

816. At all times, JR, JD, LTD, INC, RLLP, G.P. SR and their lawyers Christu, Hart, Glick, Farrell Menor all informed their actions was a continuing pattern of Civil RICO, fraud, mail and wire fraud, together with Shutts' past fraud and criminal activities

### Sworn Affidavit of Fred Latsko

817. The following numbers correspond Mr. Latsko's affidavit (exhibit "2")

2. "I'm a friend, lender and/or banker of Frederick J. Keitel, III."

4. "I also offered in writing to pay off the Mr. Keitel and/or FJK IV Properties, Inc., lien held by Thomas D'Agostino, Sr of $439,483.13 on FJK IV stock, with all interest, cost and expenses and requested a payoff."

5. "I also sent proof of funds and available cash to help Mr. Keitel buy back-purchase the stock immediately to both Mr. Webber and Mr. Christu."

8. **On October 17, 2018, I personally spoke with Eric Christu**, a lawyer at Shutts and Bowen, LLP, (:"Shutts"), that represents Thomas D'Agostino, Sr, FJK-Tee Jay, Inc., ("INC"), FJK-Tee Jay, Ltd, ("LTD"), Tee Jay of Florida RLLP, ("RLLP"), Tee Jay of

Florida , GP, ("GP"), Jonathan D'Agostino ("JD"), and Thomas D'Agostino, Jr., ("JR"), **in a conference room at the Bankruptcy Court, West Palm Beach, Florida**

9. "Mr. Christu was aware that on behalf of Mr. Keitel, I previously offered the Trustee, Richard Webber $2,000,000.00 for the 49.5% stock in FJK IV Properties, Inc with Frederick J. Keitel, III the owner of the stock, **being held in escrow by Mr. Christu and Shutts."**

10. During that October 17, 2018 conversation, Mr. Christ made threats . . .  He threatened me that he would sue me  . . ."

11.  "Mr. Christu's threats on behalf of FJK-Tee Jay, Ltd, FJK-Tee Jay, INC., RLLP, GP, JD (individually and as president), JR was meant to frighten me, interfere with prevent me and discourage me from helping Mr. Keitel pay the judgment(s), lien to get back his stock in October 2018."

14.  "During the entire time I attempted to get cooperation from . . .Mr. Christu, I was met with their attempts to interfere with mine and Mr. Keitel's attempts to get information and pay off the judgment(s), liens and any costs or expenses."

818.  As a result of Christu's threats and attempt to extort prevented Keitel, FCM and

FJK IV from hiring an attorney to represent Keitel's corporate entities, causing further

damage.

819. Shutts, Christu, JD, JR, LTD, INC,  RLLP, GP, Karen Stein CPA firm and Webber,

Anderson, Robinson and Zimmerman conspired to deny Keitel and  FJK IV full access

to all financial Books, Check Register, Records, Taxes returns and deposit slips by

Thomas D'Agostino, Sr who conspired with his D'Agostino's sons, JD, JR and LTD, INC

RLLP, G.P. and Stein and SLG to file a false and fraudulent mortgage and Note of

$4,734,000.00 and received over $5,00,000.00 in fraudulent interest payments,

penalties and late fees to defraud FJK and Keitel out of over $4,000,000.00, in

distribution, to pay off any judgments

820. As a result of all defendant's actions Keitel has been injured in excess of $40

million dollars, exclusive of interest, fees and costs.

821.  At all times between 2015 through 2021 LTD, INC, RLLP, JD,JR, Stein, SLG, and Shutts and Christu as escrow agents, (and later 2016-2020 WARZ), all denied and refused to give FJK IV and Keitel critical financial records, documents, tax returns evaluations, distributions, and check registered and proof of funds deposited for illegal and fraudulent mortgages, and mortgage payments by SR to JR, JD as officers and directors of LTD and INC.

822.  On February 5, 2016, Keitel's lawyer Robert Furr sent a wire transfer to SR's lawyer, Shutts, Glick, Christu, Hart, the same lawyers, Shutts and Christu, who were escrow agents for FJK IV stock, the same lawyers who had multiple conflicts and represented JR, JD, LTD, INC, RLLP and G.P. to refused to return Keitel's FJK IV stock, and later claimed that even though Keitel put $305,000.00 in escrow after paying the full amount  Shutts and Christu refused to turnover Keitel's stock.

823. Unknown to FJK IV or Keitel, defendants Shutts, Christu, LTD, INC, RLLP, JD, JR filed motion (December  2019) with the state court, and had a hearing without notice, in January 2020, to take Keitel's FJK IV stock,  in violation of Keitel's 4th amendment constitutional right to taking property without due process.

834. Defendants in December 2019 Shutts and Christu, (escrow agents), Hart , LTD, INC, RLLP, JD, JR conspired to defraud FJK IV, Keitel, and Keitel's son Sebastian Keitel, ("SKeitel"), by limiting the bidders in a potential Sheriff's sale of FJK IV and Keitel's stock, when defendants intentional and nefariously omitted, and failed to enter Keitel's email address in the court docket, in Case No 502019CA014777XXXXMB, so Keitel never received notice of the hearing in January 2020, in violation of Keitel's 4th

amendment due process rights against taking property without notice and/or a hearing, (so Keitel and FJK IV couldn't object.)

825. In April and May 2021, JD,JR,LTD, INC and Shutts lawyers including Christu refused to allow my son Sebastian (and his lawyer Mr. Machate or his banker/lender, Mr. Latsko), who had a right to my stock under the By-Laws of FJK-Tee Jay, LTD was denied financial records and the right to look at the books and records of LTD and INC to evaluate and conduct due diligence, when defendants, including , LTD,INC, JD JR, and Shutts lawyers Christu intentionally interfered with the auction process, to prevent me from putting up the necessary funds to redeem  my FJK IV stock, to file this derivative complaint and action.

826. Defendants Shutts, Christu, Hart, Glick, Farrell, Menor, Stein, SLG,  LTD, INC, RLLP, JD, JR, conspired to defraud Keitel, FJK IV and SKeitel, because if they deemed the FJK IV stock, Keitel, FJK IV and/or SKeitel were entitled to 49% to 50% of the all proceeds, making their FJK IV stock even more valuable.

827. FJK IV and Keitel were  forced to file this derivative action herein, and  challenge as an exception, 'inciting egregious criminal incident(s)" to the continuous ownership rule including extortion, threats, mail and wire fraud, illegal mortgage, bank fraud perjury and suborning perjury to prevent the return of FJK IV stock, and conspiracy to defraud Keitel, FJK IV and SKeitel, by Shutts, Christu, Hart, Glick, Farrell, Menor, Stein, SLG, JD, JR, LTD, INC, RLLP and G.P.'s denying relevant financials, tax records, and evidence of loan/mortgage money deposits and receipts.

828. At all times, defendant's actions to deny Keitel's bankers/lenders financials were as well as withholding distribution to FJK IV, was the direct and proximate cause of Keitel and FJK IV being out bid at the action by LTD on May 3, 2021.

829. May 3, 2021 Sheriff's Sale: Keitel offer of $2,300,000.00 was outbid by $2,320,000.00 actual cost $3,525,000.00), by LTD, after JD, JR, RLLP, G.P., LTD, INC, Stein, SLG, Shutts , Christu, Hart, Glick, Menor, Farrell refused to provide the financials or appraisal from experts & Trustee

830. Keitel managed to get another friend to help, (who also couldn't get financials and was reluctant to bid on May 3, 2021), but put up a $2,325,000.00 cashier's check to redeem FJK IV stock on May 7, 10 and 11, 2021, but the Palm Beach County Sheriff's refused the cashier's check for redemption of FJK IV stock, allowing LTD, JR, JD and RLLP to steal Keitel's stock, for $3,525,000.00, after they previous stated FJK IV stock worthless.

831. All demands for information prior to the Sheriff's sale in writing were ignored, and denied by Shutts & Bowen, LLP as court appointed escrow agent for FJK IV Properties, and later Shutts, Christu, Glick, Hart, Farrell, Menor, JR, JD, LTD, INC Stein and SLG, who all had multiple conflicts by representing including RLLP, JD, JR, SR, LTD and INC, while Shutts and Christu threatened and extorted banker/lender/friend Fred Latsko.

832. As a result of Defendant's Shutts & Bowen, LLP. and Christu, individually and as a partner in Shutts, actions against Plaintiff Keitel (and FJK IV), have caused damages in an amount greater than $15,000,000.00 jurisdictional amount of this Court.

WHEREFORE, the Plaintiff Keitel (FJK IV), demands judgment against Defendants Shutts & Bowen, LLP and Eric Chrisrtu for an amount in excess $20,000.000.00, exclusive of interest, costs, and fees, and such further relief as this court deemed just and proper.

**PLAINTIFFS REQUEST A JURY TRIAL ON ALL ISSUES TRIABLE IN THE RICO AND VERIFIED DERIVATIVE ACTION**

## Derivative Action

833. This is a Verified Derivative Action and Plaintiffs FJK IV and Keitel, re-alleges repeats and incorporates by reference herein all the allegations in paragraphs   1- 832 and specifically to Derivative Action 73-111, 134-189, 162(i) – **(21)**, 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 288-326, 329-340, 367-382,  384-402 803-833 above and 834 – 890  incorporates them as if fully alleged  herein.

834.  This is a Verified Derivative Action brought FRCP  § 23.1; Fla. Stat. 617.07401, and Fla. Stat. §  620.2002,  Business Corporate Law Section § 626(b) for equitable relief and damages, filed by Plaintiffs Frederick J. Keitel, III, ("KEITEL"),individually and as shareholder of  Plaintiff FJK IV Properties, Inc ("FJK IV"), who owned stock when all actions took place and/or by operation of law, for equitable relief, the return of FJK IV stock to Frederick J. Keitel, III, its rightful owner, and damages, plus interest, costs and attorney's fees, on behalf of Frederick J. Keitel, III and FJK IV Properties, Inc (and INC and LTD), who own stock during the time of the claims and challenge as an exception to the continuous shareholder rule, due to multiple egregious predicate criminal actions, including fraud, extortion, threats, conspiracy to defraud, mail and wire fraud, perjury

and suborning perjury, bank, mortgage fraud, and fraudulent payment of interest for a non-existence loan, to defraud and steal Keitel's FJK IV stock, prevent this derivative lawsuit, and challenge the fraud leading to, during and the Palm Beach County Sheriff's Sale, by INC, LTD, RLLP, G.P. its officers and directors,  JD and JR, its lawyers, Shutts, Christo, Glick, Hart, Farrell and Menor  and in house CPA  Stein and accounting firm SLG located in New York. and hereby sues the following Defendants  Jonathan D'Agostino, ("JD"), individually, Thomas B. D'Agostino, Jr. , ("JR"), individually and as directors and officers in Tee Jay of Florida G.P., ("G.P."),  a Virginia General Partnership, Tee Jay of Florida, RLLP,  ("RLLP"), a Virginia Registered Limited Liability Partnership, ("G.P."), FJK-Tee Jay, Ltd, ("LTD"), a Florida limited liability partnership; FJK-Tee Jay, Inc., ("INC"),  a Florida Subchapter S Corporation and FJK IV Properties, a Florida subchapter S corporation;  and all law firms, lawyers and Trustee and lawyers Shutts & Bowen, LLP, Eric Christu, Jonathan Hart, Larry Glick, Heather Reis, Fox Rothschild, Webber, Anderson, Robinson, Zimmerman and in house INC, INC, LTD, RLLP, G.P.  in house bookkeeper, CPA  Stein and accounting Firm SLG and in support thereof and states that this is a Verified Derivative Action.

835. This Derivative Action is a direct result of  "inciting criminal incidents" and criminal actions by the officers and directors and court appointed escrow agents Shutts & Bowen, LLP and partner Eric Christu against a FJK IV, a shareholder of LTD and INC, , in violation of: 18 U.S.C. § 1961(1)(A),  extortion and racketeering activity; 18 U.S.C. § 875 threats and extortion; Fla. Stat. 836.05 threats, extortion; 18 U.S.C. § 1512, intimidation of  a federal witness in a federal U.S. bankruptcy courthouse prior to testifying and  paying  off all judgments, to redeem stock, (see affidavit of banker/lender

Fred Latsko), as a result of violation of 18 U.S.C. § 1341 and §1343, mail and wire fraud; 18 U.S.C. §1621 perjury, suborning perjury 18 U.S.C. §162; ,and multiple other violations of federal and state criminal statutes to prevent shareholders from redeeming shares or their stock, including interfering with court a ordered sheriff's sale; and refusal to turn over critical financial documents prior to court ordered sheriff's sale, all violations with the specific intent to deprive or prevent a derivative action from going forward, this court should allow "an exception 'to the continuous ownership rule'", allow the derivative action to go forward and allow punitive damages, to deter other companies from similar criminal actions, threats, extortion, and bullying shareholders forcing them under duress and intimidation to sell, give up or prevent redemption of their stock, and or defrauding a shareholder before, during and after a Sheriff's Sale to prevent the shareholder from redeeming his stock during the continued threats and extortion.

836. All conditions precedent to this action have occurred, have been performed, or have been waived.

837. This action is brought not as a collusive action to confer jurisdiction, that the court would otherwise lack.

## COUNT A
### Breach of Fiduciary Duty

838. This is a Verified Derivative Action and Plaintiffs FJK IV and Keitel, re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 837 and specifically to Derivative Action 73-111, 134-189, 162(i) – **(21)**, 183-189, 163-

167,174,175-181,190-193, 229-238, 242-244, 288-326, 329-340, 367-382, 384-402, 803-837  above and 837 – 890  incorporates them as if fully alleged  herein.

839. This is for Declaratory Relief brought pursuant to FRCP 23.1 and Fla. Stat. 617.07401, and Fla. Stat. § 620.2002; and New York  Business Corporate Law NYBCL § 626(b)

840. As the President of  FJK-Tee Jay, INC, the general Partner of FJK-Tee Jay, LTD, Jonathan D'Agostino ("JD"), (and a director), owed a duty of care and loyalty to the partners of FJK-Tee Jay, LTD. and was obligated to discharge those duties consistent with the obligation of good faith and fair dealing.

841. JD breached his duties as president and a director of INC and LTD to the partners of LTD, inter alia, (1) failing to account to LTD, and its partners for profits derived by his operation of the property;  (2) failing to refrain from acting on behalf of a party having interests adverse to those of LTD; (3) failing to refrain from engaging in grossly negligent and reckless conduct, intentional misconduct, and knowing violations of the law; (4) converting for his own use, and the use of his brother Thomas B. D'Agostino, JR.,  and father Thomas B. D'Agostino, SR, the assets of LTD; (5) refusing to attend and/or call meeting of LTD and of the General Partner; (6) filing false and fraudulent affidavits, corporate resolutions, charts with the intentional to defraud, LTD and its partners; (7) filing false and fraudulent financial statement, that you know are false; (8) giving an illegal first mortgage  to your father, Thomas B. D'Agostino, SR, without SR ever directly` giving a loan or first mortgage directly to  LTD (and or INC)for $4,740,000.00. when he never made a loan to LTD; (9) paying Thomas B. D'Agostino, Sr., over $4 million in interest payments, for an illegal, non-existence first mortgage, in

violation of federal Usury , in violation of 18 U.S.C. § 86, and Usury in violation of Fla. Stat 687:    (10), for the payment of approximately $465,000.00 for Thomas B. D'Agostino, Sr, legal bills (11), fraudulent tax evasion and tax fraud with   LTD's accounting and CPA Stein and SLG in the payment of over $2,100,000.00 to Thomas B. D'Agostino, Sr, a non-shareholder without reporting the income to the IRS.

842.  As a result of the JD's breach of his duties, FJK-Tee Jay, LTD , Plaintiff FJK IV and the others Partners of LTD, have suffered damages in excess of $10 million, plus the stock of FJK IV stock due to JD fraudulent criminal acts.

    WHEREFORE,  Plaintiff FJK IV and Frederick J. Keitel, III, demands judgment against JD, for compensatory damages and the return of FJK IV Stock, together with interest and attorney's fees to the extend allowed by law, including attorney's fees under FRCP 23.1, Fla Stat. § 620.2005, New York BCL 626, injunctive relief removing JD as President of INC, the general Partner, of LTD, and appointing a CPA firm for audit all financials since January 1,  2013 and for  turnover of all FJK IV stock (in LTD and INC), to its rightful owner, Frederick Keitel, III, and such other relief as this court deems just and proper.

COUNT B

Accounting

843 This is a Verified Derivative Action and Plaintiffs FJK IV and Keitel, re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 842 and specifically to Derivative Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 288-326, 329-340, 367-382,  384-402, 803-843  above and 843 – 890  incorporates them as if fully alleged  herein.

261

843-A.  JD has received assets, resources and payments belonging to LTD, including fraudulent management fees received from the property for his benefit, and fraudulent interest payment to his father  Thomas B. D'Agostino, SR,  and payment of legal fees, but failed to account for or disclose any such assets, including fraudulently using LTD funds give to his father  Thomas B. D'Agostino, Sr,  and has failed to account for them after repeated demands.

844. Plaintiff FJK IV `and the LTD partner are entitled to a full accounting of all book and records, since January 2013.

WHEREFORE,  Plaintiff FJK IV demands an accounting since January 1, 2013 by JD, and an independent CPA firm certifying any and all costs and expenses, all payments made to JD, and or JR, all interest payments and legal fees paid to  Thomas B. D'Agostino, Sr,  together with interest and attorney's fees to the extend allowed by law, including attorney's fees under FRCP 23.1, Fla Stat. § 620.2005, New York BCL 626, injunctive relief removing JD as President of INC, the general Partner, of LTD, and appointing a CPA firm for audit all financials since January 1,  2013 and such other relief as this court deems just and proper.

## COUNT C
### Actual Fraud

845. This is a Verified Derivative Action and Plaintiffs FJK IV and Keitel, re-alleges repeats and incorporates by reference herein all the allegations in paragraphs    1- 842 and specifically to Derivative Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 288-326, 329-340, 367-382,  384-402, 803-844  above and 846 – 890  incorporates them as if fully alleged  herein.

846. This is for Fraud against JD, individually and as president of INC and LTD and request Declaratory Relief brought pursuant to FRCP 23.1 and Fla. Stat. 617.07401, and Fla. Stat. § 620.2002; and New York  Business Corporate Law NYBCL § 626(b), for actual fraud.

847. As noted above, FJK IV was owned by Frederick L. Keitel, III for 23 years from December 29, 1998 until May 3, 2021, when JD, JR, RLLPLTD, INC, RLLP, and G.P. violated  multiple federal and state criminal violations, under  the federal and state RICO under statute 18 U.S.C § 1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act complaint  by all JD individually and "declaring himself president and director of INC" FJK-Tee Jay, INC, based on the false and fraudulent filing of affidavits, corporate resolutions, charts, in which he admitted under oath on October 27, 2017 were false regarding RLLP ever being a shareholder in  INC.

848.  At all times JD (and JR),  as willing participants in the RICO actions; and FRCP  § 23.1; Fla. Stat. 617.07401, and Fla. Stat. § 620.2002,  Business Corporate Law Section § 626(b) filed by FJK IV and Plaintiffs Frederick J. Keitel, III, ("KEITEL"),individually and as shareholder of  Plaintiff FJK IV Properties, Inc ("FJK IV"), who owned stock when all actions took place and/or by operation of law, for equitable relief, the return of FJK IV stock to Frederick J. Keitel, LLL, its rightful owner, and damages, plus interest, costs and attorney's fees, on behalf of Frederick J. Keitel, III and FJK IV Properties, Inc (and INC and LTD), who own stock during the time of the claims and challenge as an exception to the continuous shareholder rule, due to multiple egregious predicate

criminal actions by JD (and JR), , including fraud, extortion, threats, conspiracy to defraud, mail and wire fraud, perjury and suborning perjury, bank, mortgage fraud, and fraudulent payment of interest for a non-existence loan, to defraud and steal Keitel's FJK IV stock, prevent this derivative lawsuit, and challenge the fraud leading to, during and the Palm Beach County Sheriff's Sale, by INC, LTD, RLLP, G.P. its officers and directors,  JD and JR, its lawyers, Shutts, Christu, Glick, Hart, Farrell and Menor  and in house CPA  Stein and accounting firm SLG located in New York. and hereby sues the following Defendants  Jonathan D'Agostino, ("JD"), individually, Thomas B. D'Agostino, Jr. , ("JR"), individually and as directors and officers in Tee Jay of Florida G.P., ("G.P."), a Virginia General Partnership, Tee Jay of Florida, RLLP,  ("RLLP"), a Virginia Registered Limited Liability Partnership, ("G.P."), FJK-Tee Jay, Ltd, ("LTD"), a Florida limited liability partnership; FJK-Tee Jay, Inc., ("INC");

849.  That the actions and fraud by JD (and JR), caused This Derivative Action, and  is a direct result of  "inciting criminal incidents" and criminal actions by the officers and directors pf INC and LTD and court appointed escrow agents Shutts & Bowen, LLP and partner Eric Christu against a FJK IV, a shareholder of LTD and INC, , in violation of: 18 U.S.C. § 1961(1)(A),  extortion and racketeering activity; 18 U.S.C. § 875 threats and extortion; Fla. Stat. 836.05 threats, extortion; 18 U.S.C. § 1512, intimidation of  a federal witness in a federal U.S. bankruptcy courthouse prior to testifying and  paying  off all judgments, to redeem stock, (see affidavit of banker/lender Fred Latsko), as a result of violation of 18 U.S.C. § 1341 and §1343, mail and wire fraud; 18 U.S.C. §1621 perjury, suborning perjury 18 U.S.C. §162; ,and multiple other violations of federal and state criminal statutes to prevent shareholders from redeeming shares or their stock,

including interfering with court a ordered sheriff's sale; and refusal to turn over critical financial documents prior to  court ordered sheriff's sale, all violations with the specific intent to deprive or prevent a derivative action from going forward, this court should allow  "an exception 'to the continuous ownership rule'", allow the derivative action to go forward and allow punitive damages, to deter other companies from similar criminal actions, threats, extortion, and bullying shareholders forcing them under duress and intimidation to sell, give up or prevent redemption of their stock, and or defrauding a shareholder before, during and after a Sheriff's Sale to prevent the shareholder from redeeming his stock during the continued threats and  extortion.

850.  JD  (and JR) sent and filed multiple sworn affidavits, corporate resolutions, organization chart, motion and pleading all false and fraudulent, stating that RLLP was an owner of INC stock, which they knew was false when they sent the letters to remove Frederick J. Keitel, III, as President of INC, the general partner of LTD.

That all the orders entered in state and federal court, were based on the same false and fraudulent affidavits and testimony by JD (and JR),  and corporate resolutions filed by Shutts lawyer Christu, Hart, Glick, and Rose King, and Reis and Fox, in total disregard for the truth, and or the FJK- Tee Jay, INC shareholders Agreement, the controlling documents in this case.

851.  That at all times since 2012, JD  (and JR), committed bank fraud, and attempted to steal FJK IV stock from Keitel based on false and fraudulent affidavits, corporate resolutions and allegations, they either knew were false and fraudulent or should have known.

852.  That the actions by JD, JR, G,P., RLLP and later INC and LTD  were not only fraudulent but RLLP could never have owned INC stock and a Registered limited liability partnership, which would have automatically changed the tax status of INC, under the federal IRS code and extinguished the Subchapter S status.

853.  That RLLP never had standing to challenge FJK IV as a shareholder in INC and LTD.

854.  That at all times, only G.P. had the right under the INC Shareholders Agreement, and  G.P. never exercised these rights, and the Shareholder Agreement was never amended or changed.

855.  That as a direct result and proximate cause of JD's (and JR), fraud and filing false and fraudulent affidavits, corporate resolutions and charts, motions, pleadings, certain order rendered by multiple courts effecting the ownership and voting rights of FJK IV and INC, which were issued based on fraud by JR (and JD),  false affidavits that RLLP was the owner of INC stock, and had always been the owner, which is in direct conflict with the INC Shareholder Agreement, and but for the fraud, the court(s) would never have made ruling that RLLP was the owner of INC stock.

856.  That at all times JD used Shutts & Bowen law firm, to devised a plan to defraud FJK IV and Frederick J. Keitel, III,  out of FJK IV's ownership of both INC and LTD stock.

857.  Declare that the all changes to the ownership of INC and LTD was based on fraud.

858. Declare that either G.P. and or RLLP was at all times beginning in 2014 a purged Virginia partnership, and/or administratively dissolved years before the claims made by either G.P., and /or RLLP.

859. That all of FJK IV's stock in INC and LTD must and will be returned to Frederick J. Keitel, III, due to the fraud, perjury, suborning perjury, extortion, threats, mail and wire fraud and all criminal violations listed herein this RICO and Verified Derivative action. by INC, LTD, RLLP's lawyers against FJK IV banker/lenders to prevent paying off all judgments and redeeming stock by Frederick J. Keitel III

WHEREFORE FJK IV Properties, INC and its rightful owner, Frederick J. Keitel, III requests entry of the follows: (1) that JD committed fraud in his affidavits (2) all corporate resolutions on or about July 9, 2013 and thereafter were based on false and fraud information; (3) that RLLP was not a shareholder under the 1998 INC Shareholders Agreement, (4) the Shareholders Agreement was never altered or changed (5) that any and all affidavit by RLLP and or JD and/or JR were false, (5) that any and all affidavit by JD and/or JR, saying that RLLP owned 50% of the shares in INC were false and fraudulent statement when made (6) that RLLP was never a shareholder under the INC Shareholders Agreement (7) that FJK IV's stock must/will be returned to Frederick J. Keitel, III due to the fraud, perjury, suborning perjury, extortion, threats, mail and wire fraud and all violation named herein the RICO and Verified Derivative action by INC, LTD, RLLP's lawyers against FJK IV banker/lenders to prevent paying off all judgments and redeeming stock by Frederick J. Keitel III, and together with interest and attorney's fees to the extend allowed by law, including attorney's fees under FRCP 23.1,

Fla Stat. § 620.2005, New York BCL 626, injunctive relief and such other relief as this court deems just and proper.

## **COUNT D**

## **Declaratory Judgment**

860.  This is a Verified Derivative Action and Plaintiffs FJK IV and Keitel, re-alleges repeats and incorporates by reference herein all the allegations in paragraphs   1- 842 and specifically to Derivative Action 73-111, 134-189, 162(i) – (21), 183-189, 163- 167,174,175-181,190-193, 229-238, 242-244, 288-326, 329-340, 367-382,  384-402, 803-859  above and 860 – 890  incorporates them as if fully alleged  herein.

861.  This is for Declaratory Relief brought pursuant to FRCP 23.1 and Fla. Stat. 617.07401, and Fla. Stat. §  620.2002; and New York  Business Corporate Law NYBCL § 626(b)

862.  As noted above, FJK IV was owned by Frederick J. Keitel, III, for 23 years from December 29, 1998 until May 3, 2021, when LTD, INC, RLLP, and G.P. violated multiple federal and state criminal violations, under  the federal and state RICO under statute 18 U.S.C § 1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); Fla. Stat. § 895.01 – § 895.08; and New York Penal law Article 460, known as the Organized crime Control Act complaint  by all FJK-Tee Jay, INC, FJK-Tee Jay, LTD, Tee Jay of Florida , G.P., and Tee Jay of Florida , RLLP, defendants named herein, including multiple individuals, lawyers, law firms, their clients, corporation(s), and partnerships and the Trustee, named herein, who acted at all times as willing participants in the RICO actions;  AND

863.  FRCP  § 23.1; Fla. Stat. 617.07401, and Fla. Stat. §  620.2002,  Business

Corporate Law Section § 626(b) for equitable relief and damages, filed by Plaintiffs

Frederick J. Keitel, III, ("KEITEL"),individually and as shareholder of  Plaintiff FJK IV

Properties, Inc ("FJK IV"), who owned stock when all actions took place and/or by

operation of law, for equitable relief, the return of FJK IV stock to Frederick J. Keitel,

LLL, its rightful owner, and damages, plus interest, costs and attorney's fees, on behalf

of Frederick J. Keitel, III and FJK IV Properties, Inc (and INC and LTD), who own stock

during the time of the claims and challenge as an exception to the continuous

shareholder rule, due to multiple egregious predicate criminal actions, including fraud,

extortion, threats, conspiracy to defraud, mail and wire fraud, perjury and suborning

perjury, bank, mortgage fraud, and fraudulent payment of interest for a non-existence

loan, to defraud and steal Keitel's FJK IV stock, prevent this derivative lawsuit, and

challenge the fraud leading to, during and the Palm Beach County Sheriff's Sale, by

INC, LTD, RLLP, G.P. its officers and directors,  JD and JR, its lawyers, Shutts, Christo,

Glick, Hart, Farrell and Menor  and in house CPA  Stein and accounting firm SLG

located in New York. and hereby sues the following Defendants  Jonathan D'Agostino,

("JD"), individually, Thomas B. D'Agostino, Jr. , ("JR"), individually and as directors and

officers in Tee Jay of Florida G.P., ("G.P."),  a Virginia General Partnership, Tee Jay of

Florida, RLLP,  ("RLLP"), a Virginia Registered Limited Liability Partnership, ("G.P."),

FJK-Tee Jay, Ltd, ("LTD"), a Florida limited liability partnership; FJK-Tee Jay, Inc.,

("INC"),  a Florida Subchapter S Corporation and FJK IV Properties, a Florida

subchapter S corporation;  and all law firms, lawyers and Trustee and lawyers Shutts &

Bowen, LLP, Eric Christu, Jonathan Hart, Larry Glick, Heather Reis, Fox Rothschild,

269

Webber, Anderson, Robinson, Zimmerman and in house INC, INC, LTD, RLLP, G.P. in house bookkeeper, CPA Stein and accounting Firm SLG and in support thereof and states that this is a Verified Derivative Action.

864. This Derivative Action is a direct result of "inciting criminal incidents" and criminal actions by the officers and directors and court appointed escrow agents Shutts & Bowen, LLP and partner Eric Christu against a FJK IV, a shareholder of LTD and INC, , in violation of: 18 U.S.C. § 1961(1)(A), extortion and racketeering activity; 18 U.S.C. § 875 threats and extortion; Fla. Stat. 836.05 threats, extortion; 18 U.S.C. § 1512, intimidation of a federal witness in a federal U.S. bankruptcy courthouse prior to testifying and paying off all judgments, to redeem stock, (see affidavit of banker/lender Fred Latsko), as a result of violation of 18 U.S.C. § 1341 and §1343, mail and wire fraud; 18 U.S.C. §1621 perjury, suborning perjury 18 U.S.C. §162; ,and multiple other violations of federal and state criminal statutes to prevent shareholders from redeeming shares or their stock, including interfering with court a ordered sheriff's sale; and refusal to turn over critical financial documents prior to court ordered sheriff's sale, all violations with the specific intent to deprive or prevent a derivative action from going forward, this court should allow "an exception 'to the continuous ownership rule'", allow the derivative action to go forward and allow punitive damages, to deter other companies from similar criminal actions, threats, extortion, and bullying shareholders forcing them under duress and intimidation to sell, give up or prevent redemption of their stock, and or defrauding a shareholder before, during and after a Sheriff's Sale to prevent the shareholder from redeeming his stock during the continued threats and extortion.

865.  JR and JD sent and filed multiple sworn affidavits, corporate resolutions, organization chart, motion and pleading all false and fraudulent, stating that RLLP was an owner of INC stock, which they knew was false when they sent the letters to remove Frederick J. Keitel, III, as President of INC, the general partner of LTD.

866.  That all the orders entered in state and federal court, were based on the same false and fraudulent affidavits and testimony by JD, and JR testimony, and corporate resolutions filed by Shutts lawyer Christu, Hart, Glick, and Rose King, and Reis and Fox, in total disregard for the truth, and or the FJK- Tee Jay, INC shareholders Agreement, the controlling documents in this case.

867. That at all times since 2012, JD, JR, committed bank fraud, and attempted to steal FJK IV stock from Keitel based on false and fraudulent affidavits, corporate resolutions and allegations, they either knew were false and fraudulent or should have known.

868.  That the actions by JD, JR, G,P., RLLP and later INC and LTD  were not only fraudulent but RLLP could never have owned INC stock and a Registered limited liability partnership, which would have automatically changed the tax status of INC, under the federal IRS code and extinguished the Subchapter S status.

869.  That RLLP never had standing to challenge FJK IV as a shareholder in INC and LTD.

870.  That at all times, only G.P. had the right under the INC Shareholders Agreement, and  G.P. never exercised these rights, and the Shareholder Agreement was never amended or changed.

871. Accordingly, there is an actual bona fide need for a declaratory judgment and practical need for a Declaratory Judgment regarding the rights and status of FJK IV , as a result of the false and fraudulent motions, pleadings and order rendered by multiple courts effecting the ownership and voting rights of FJK IV and INC, which were issued based on JR and JD false affidavits that RLLP was the owner of INC stock, and had always been the owner, which is in direct conflict with the INC Shareholder Agreement, and but for the fraud, the court(s) would never have made ruling that RLLP was the owner of INC stock.

872. That Shutts & Bowen law firm, at all times devised a plan to defraud FJK IV and Frederick J. Keitel, III,  out of FJK IV's ownership of both INC and LTD stock.

Declare that the all chances to the ownership of INC and LTD was based on fraud.

Declare that either G.P. and or RLLP was at all tiles beginning in 2014 a purged Virginia partnership, and administratively dissolved years before the claims made by either G.P., and /or RLLP.

873. That all of  FJK IV's stock in INC and LTD must and will be returned to Frederick J. Keitel, III, due to the fraud, perjury, suborning perjury, extortion, threats, mail and wire fraud and all criminal violations listed herein this RICO and Verified Derivative action. by INC, LTD, RLLP's lawyers against FJK IV banker/lenders to prevent paying off all judgments and redeeming stock by Frederick J. Keitel III

    WHEREFORE FJK IV properties, INC and its rightful owner, Frederick J. Keitel, III requests entry of a Declaratory Judgement as follows: (1) that RLLP was not a shareholder under the 1998 INC Shareholders Agreement, (2) the Shareholders

Agreement was never altered or changed (3) that any and all affidavit by RLLP and or JD and/or JR were false, (4) that any and all affidavit by JD and/or JR, saying that RLLP owned 50% of the shares in INC were false and fraudulent statement when made (5) RLLP was never a shareholder under the INC Shareholders Agreement (6) that FJK IV's stock must be returned to Frederick J. Keitel, III due to the fraud, perjury, suborning perjury, extortion, threats, mail and wire fraud and all violation named herein the RICI and Verified Derivative action by INC, LTD, RLLP's lawyers against FJK IV banker/lenders to prevent paying off all judgments and redeeming stock by Frederick J. Keitel III, and together with interest and attorney's fees to the extend allowed by law, including attorney's fees under FRCP 23.1, Fla Stat. § 620.2005, New York BCL 626, injunctive relief and such other relief as this court deems just and proper.

## COUNT E
## Accounting

874. This is a Verified Derivative Action and Plaintiffs FJK IV and Keitel, re-alleges repeats and incorporates by reference herein all the allegations in paragraphs  1- 842 and specifically to Derivative Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 288-326, 329-340, 367-382,  384-402, 803-873  above and 875 – 890  incorporates them as if fully alleged  herein.

875. This is for Declaratory Relief brought pursuant to FRCP 23.1 and Fla. Stat. 617.07401, and Fla. Stat. §  620.2002; and New York  Business Corporate Law NYBCL § 626(b)

876. This count is brought against INC and LTD for an accounting.

An accounting is necessary to determine the theft and diversion of any and all interest payment made to Thomas B. D'Agostino, SR based on "interest payment" on a September 19, 2014 mortgage placed on LTD, without any transfer of funds to either INC or LTD.

877. The Accounting is needed to review the financial information from 2004 forward to present day February 15, 2022.

WHEREFORE Frederick J. Keitel, III and or FJK IV prays that this court order an accounting regarding all payment, funds, deposits,  taxes, 1099s, mortgages and whether Thomas B. D'Agostino, Sr, ever deposit approximately $4,730,000.00 into any LTD and/or INC account in September 2014, and how much SR has taken from LTD and/or INC since inception.

## COUNT F

### Conversion and Turn Over of Any and All Mortgage Payments Made to Thomas B. D'Agostino, SR and/or Elzbieta D'Agostino Since September 2014

878. This is a Verified Derivative Action and Plaintiffs FJK IV and Keitel, re-alleges repeats and incorporates by reference herein all the allegations in paragraphs   1- 842 and specifically to Derivative Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 288-326, 329-340, 367-382,  384-402, 803-877  above and 878 – 890  incorporates them as if fully alleged  herein.

879. This is for Declaratory Relief brought pursuant to FRCP 23.1 and Fla. Stat. 617.07401, and Fla. Stat. §  620.2002; and New York  Business Corporate Law NYBCL § 626(b)

880. This count is brought against LTD, INC, JD and JR for conversion and for Turnover of any and all mortgage payments made and or interest payments made to Thomas B. D'Agostino, SR., individually and/or Thomas B. D'Agostino, SR and Elzbieta D'Agostino.

881. FJK IV and Frederick J. Keitel, III requests the Turnover of all mortgage payment made after January 14, 2013, to Thomas B. D'Agostino, SR., individually and/or Thomas B. D'Agostino, SR and Elzbieta D'Agostino, turned over retroactivity to January 14, 2013, to avoid conversion, fraud to FJK IV and FJK III in the valuation, and or distribution to LTD partners.

882. The Accounting is also needed to review any and all mortgage on LTD after January 14, 2013 forward to present day February 15, 2022.

WHEREFORE Frederick J. Keitel, III and or FJK IV prays that this court order will order the turnover of any and all mortgage payments and/or interest payment made to Thomas B. D'Agostino, SR., individually and/or Thomas B. D'Agostino, SR and Elzbieta D'Agostino on any mortgage(s) since January 14, 2013, retroactively to January 14, 2013, of avoid any conversion, fraud to FJK IV and/or Frederick J. Keitel, III, and/or fraud to in the valuation, and or distribution to LTD partners from January 14, 2013 until May 3, 2021, and present.

## COUNT G

### Breach of Fiduciary Duty by Thomas B. D'Agostino, JR

883. This is a Verified Derivative Action and Plaintiffs FJK IV and Keitel, re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 842 and specifically to Derivative Action 73-111, 134-189, 162(i) – (21), 183-189, 163-

167,174,175-181,190-193, 229-238, 242-244, 288-326, 329-340, 367-382, 384-402, 803-882 above and 883 – 890 incorporates them as if fully alleged herein.

884. As the Director, Vice President, Secretary and Treasurer of FJK-Tee Jay, INC, the general Partner of FJK-Tee Jay, LTD, Thomas B. D'Agostino, Jr ("JR"), (and a director), owed a duty of care and loyalty to the partners of FJK-Tee Jay, LTD. and was obligated to discharge those duties consistent with the obligation of good faith and fair dealing.

885. JR breached his duties as vice-president, Secretary and Treasurer and a director of INC and LTD to the partners of LTD, inter alia, (1) failing to account to LTD, and its partners for profits derived by his operation of the property; (2) failing to refrain from acting on behalf of a party having interests adverse to those of LTD; (3) failing to refrain from engaging in grossly negligent and reckless conduct, intentional misconduct, and knowing violations of the law; (4) converting for his own use, and the use of his brother Thomas B. D'Agostino, Jr., and father Thomas B. D'Agostino, SR, the assets of LTD; (5) refusing to attend and/or call meeting of LTD and of the General Partner; (6) filing false and fraudulent affidavits, corporate resolutions, charts with the intentional to defraud, LTD and its partners; (7) filing false and fraudulent financial statement, that you know are false; (8) giving an illegal first mortgage to his father, Thomas B. D'Agostino, SR, without SR ever directly` giving a loan or first mortgage directly to LTD (and or INC)for $4,740,000.00. when he never made a loan to LTD; (9) paying Thomas B. D'Agostino, Sr., over $4 million in interest payments, for an illegal, non-existence first mortgage, in violation of federal Usury , in violation of 18 U.S.C. § 86, and Usury in violation of Fla. Stat 687: (10), for the payment of approximately $465,000.00 for Thomas B. D'Agostino, Sr, legal bills (11), fraudulent tax evasion and tax fraud with

LTD's accounting and CPA Stein and SLG in the payment of over $2,100,000.00 to Thomas B. D'Agostino, Sr, a non-shareholder without reporting the income to the IRS.

886.  As a result of the JRs breach of his duties, FJK-Tee Jay, LTD , Plaintiff FJK IV and the others Partners of LTD, have suffered damages in excess of $10 million, plus the loss stock of FJK IV stock due to JR fraudulent criminal acts.

     WHEREFORE,  Plaintiff FJK IV and Frederick J. Keitel, III, demands judgment against JR, for compensatory damages and the return of FJK IV Stock, together with interest and attorney's fees to the extend allowed by law, including attorney's fees under FRCP 23.1, Fla Stat. § 620.2005, New York BCL 626, injunctive relief removing JR as President of INC, the general Partner, of LTD, and appointing a CPA firm for audit all financials since January 1,  2013 and for  turnover of all FJK IV stock (in LTD and INC), to its rightful owner, Frederick Keitel, III, and such other relief as this court deems just and proper.

## COUNT H
### Breach of Fiduciary Duty by Jonathan D'Agostino

887.  This is a Verified Derivative Action and Plaintiffs FJK IV and Keitel, re-alleges repeats and incorporates by reference herein all the allegations in paragraphs  1- 842 and specifically to Derivative Action 73-111, 134-189, 162(i) – (21), 183-189, 163-167,174,175-181,190-193, 229-238, 242-244, 288-326, 329-340, 367-382, 384-402, 803-886  above and 887 – 890  incorporates them as if fully alleged  herein.

888.   As President of  FJK-Tee Jay, INC, the General Partner of FJK-Tee Jay, LTD, Thomas B. D'Agostino, Jr ("JR"), (and a director), owed a duty of care and loyalty to the

partners of FJK-Tee Jay, LTD. and was obligated to discharge those duties consistent with the obligation of good faith and fair dealing.

889.  JD breached his duties as President of INC and LTD to the partners of LTD, inter alia, (1) failing to account to LTD, and its partners for profits derived by his operation of the property;  (2) failing to refrain from acting on behalf of a party having interests adverse to those of LTD; (3) failing to refrain from engaging in grossly negligent and reckless conduct, intentional misconduct, and knowing violations of the law; (4) converting for his own use, and the use of his brother Thomas B. D'Agostino, Jr.,  and father Thomas B. D'Agostino, SR,  the assets of LTD; (5) refusing to attend and/or call meeting of LTD and of the General Partner; (6) filing false and fraudulent affidavits, corporate resolutions, charts with the intentional to defraud, LTD and its partners; (7) filing false and fraudulent financial statement, that you know are false; (8) giving an illegal first mortgage  to your father, Thomas B. D'Agostino, SR, without SR  ever directly` giving a loan or first mortgage directly to  LTD (and or INC) for $4,740,000.00. when he never made a loan to LTD; (9) paying Thomas B. D'Agostino, Sr., over $4 million in interest payments, for an illegal, non-existence first mortgage, in violation of federal Usury , in violation of 18 U.S.C. § 86, and Usury in violation of Fla. Stat 687; (10), for the payment of approximately $465,000.00 for Thomas B. D'Agostino, Sr, legal bills (11), fraudulent tax evasion and tax fraud with   LTD's accounting and CPA Stein and SLG in the payment of over $2,100,000.00 to Thomas B. D'Agostino, Sr, a non-shareholder without reporting the income to the IRS.

890.  As a result of the JD's breach of his duties, FJK-Tee Jay, LTD , Plaintiff FJK IV

and the others Partners of LTD, have suffered damages in excess of $10 million, plus

the stock of FJK IV stock due to JD fraudulent criminal acts.

WHEREFORE,  Plaintiff FJK IV and Frederick J. Keitel, III, demands judgment

against JD, for compensatory damages and the return of FJK IV Stock, together with

interest and attorney's fees to the extend allowed by law, including attorney's fees under

FRCP 23.1, Fla Stat. § 620.2005, New York BCL 626, injunctive relief removing JD as

President of INC, the general Partner, of LTD, and appointing a CPA firm for audit all

financials since January 1,  2013 and for  turnover of all FJK IV stock (in LTD and INC),

to its rightful owner, Frederick Keitel, III, and such other relief as this court deems just

and proper.

### PLAINTIFFS REQUEST A JURY TRIAL ON ALL ISSUES TRIABLE IN THE RICO AND VERIFIED DERIVATIVE ACTION

Submitted March 17, 2022.

### <u>VERITICATION OF DERIVATIVE ACTION</u>

I HEREBY CERTIFY in good faith, that I have read the Derivative complaint, and
that a true and correct copy of the Verified Derivative Action to request the court to grant
a fraud acceptance (and extortion and threats against shareholders banker and witness
in a federal courthouse  minutes prior to his testimony and proffer to redeem FJK IV
stock), as an exception to the "continuous ownership requirement" in a Derivative Action
under  FRCP 23.1; Fla. Stat. § 620.2002(2) and New York Business Corporate Law §
626, due to the  egregious "inciting incidents"  and multiple predicate criminal herein,
acts so egregious to defrauded FJK IV Properties, Inc., and Frederick J. Keitel, III,
shareholder in FJK IV Properties, Inc who owned stock during the time of the actions
out of their stock.

I request this court to grant an exception to the continuous ownership rule'  based on
fraud, inciting incidents in this Derivative Action as a direct result of  multiple predicate
activity, including fraud(s), extortion and violations listed herein by and on behalf of JD,

279

and JR, the officers and directors of LTD, INC, RLLP and G.P., and SR, and their counsel Shutts & Bowen, LLP and partner Eric Christu, who were also court appointed escrow agents, Shutts & Christu when they breached their fiduciary duties against FJK IV and Frederick J. Keitel, III, a shareholder of FJK IV, LTD and INC, in violation of: 18 U.S.C. § 1341 fraud; 18 U.S.C. § 1961(1)(A), extortion and racketeering activity; 18 U.S.C. § 875 threats and extortion; Fla. Stat. 836.05 threats, extortion; 18 U.S.C. § 1512, intimidation of a federal witness in a federal U.S. bankruptcy courthouse prior to testifying and paying off all judgments, to redeem stock, (see affidavit of banker/lender Fred Latsko), as a result of violation of 18 U.S.C. § 1341 and §1343, mail and wire fraud; 18 U.S.C. §1621 perjury, suborning perjury 18 U.S.C. §162; ,and multiple other violations of federal and state criminal statutes to prevent shareholders from redeeming shares or their stock, including interfering with court a ordered sheriff's sale; and refusal to turn over critical financial documents prior to court ordered sheriff's sale, all violations with the specific intent to deprive or prevent a derivative action (and all actions), from going forward, and this court should allow FJK IV and Keitel to pursue all allegations as a fraud (conspiracy, threats, extortion) "exception 'to the continuous ownership rule'", and allow the derivative action to go forward and allow punitive damages, to deter other companies from similar criminal actions, threats, extortion, and bullying shareholders, forcing them under duress and intimidation to sell, give up or prevent redemption of their stock, and or defrauding a shareholder before, during and after a Sheriff's Sale to prevent the shareholder from redeeming his stock during the continued threats and extortion, for the sole purpose of defeating a derivative action under federal and state statutes.

   I HEREBY CERTIFY that a true and correct copy of the Verified Derivative Action And documents have been served via e-portal of the PACER, ECF/CM electronic filing system and via email to the all defendants and/or their counsel on this 17th day of March 2022.

*/s/Frederick J. Keitel, III*

FREDERICK J. KEITEL, III


*/s/Spencer Robbins*

Spencer B. Robbins

NYSBR: 1740158

92 Harmon Street

Long Beach, NY 11561

Ph: (732) 636-1600

Lawoffices@robbinsandrobbinsllp.com

for Plaintiffs, FJK IV Properties, Inc.;

FJK Properties, Inc.; FJK III Properties, Inc;

Florida Capital Management, LLC

Frederick J. Keitel, III, pro se

100 Jane Street

New York, New York 10014

Ph: (561) 310-6864

Email: rickkeitel@aol.com

Case 3:15-cv-03428-DSF-EC   Document 543-1 Filed 03/23/22 Page 282 of 283

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the following documents have been served via e-portal of the PACER, electronic filing system to the following defendants listed herein on this day 17th of March, 2022

/s/ Spencer Robbins

Spencer B. Robbin

EXHIBIT "A"

SWORN AFFIDAVIT BY FREDERICK J. KEITEL, III, IN SUPPORT OF THE DERIVATIVE ACTION

Frederick J. Keitel, III

State of New Jersey

County of Middlesex

    Before me, the undersigned authority, personally appeared Frederick J. Keitel, III, who produced _License_ as identification and who being duly sworn deposes and says that the Verified Derivative Action-Affidavit attached hereto is true and correct to the best of my knowledge, information and belief.

    SWORN TO AND SUBSCRIBED before me this 17 day of March 2022.

NOTARY PUBLIC, State of New Jersey

At Large

Shannon Lipari

Print Name

Commission No.             SHANNON C. LIPARI
                          NOTARY PUBLIC
                        STATE OF NEW JERSEY
                        ID # 2441115
        MY COMMISSION EXPIRES DEC. 3, 2023

My Commission expires:

282

EXHIBITS filed separately


EXHIBIT "1"

EXHIBIT "2"